## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TROY SMITH, individually and on behalf
of all others similarly situated,

     Plaintiff,

                                      CASE NO. 3:18-cv-1011-TJC-JRK

vs.

COSTA DEL MAR, INC., a Florida
corporation,

     Defendant.

_____

## DEFENDANT COSTA DEL MAR, INC.'S RESPONSE
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
## <u>JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

STATEMENT OF MATERIAL FACTS .................................................................... 2

I.    COSTA STANDS BEHIND ITS PRODUCTS WITH A WRITTEN WARRANTY THAT CLEARLY DISCLOSES A PROCESSING FEE................... 2

II.   COSTA'S MARKETING MATERIALS ONLY REFER TO THE EXISTENCE OF THE WARRANTY ........................................................... 4

III.  COSTA'S PROCESSING OF WARRANTY CLAIMS ................................. 5

IV.  SMITH'S MULTIPLE WARRANTY CLAIMS AND PURCHASES.................... 5

MEMORANDUM OF LAW ....................................................................................... 6

I.    PLAINTIFF'S FAILURE TO PROVE THE EXISTENCE OF A "WRITTEN WARRANTY" IS FATAL ....................................................... 6

    A.   Plaintiff Must Establish Statements Made by Costa Meet the Definition of a "Written Warranty"; He Has Not ........................... 7

    B.   Plaintiff's Attempts to Side-Step His Burden Through Assumptions Fail ................................................................................ 9

    C.   The Box Statement(s) Do(es) Not Qualify as a "Written Warranty ............. 10

    D.   The Box Statements Cannot Be "Written Warranties" as to Smith.............. 12

    E.   The Card Is the Applicable "Written Warranty ............................................ 13

II.   EVEN IF THE "WRITTEN WARRANTY" IS PROPERLY CONFINED TO THE CARD, SUMMARY JUDGMENT IS STILL IMPROPER ............................ 14

    A.   Because the Warranty Is Limited by its Terms, and There Is No Breach of its Express Terms, Plaintiff's MMWA Claim Fails as a Matter of Law ........................................................................... 14

    B.   Plaintiff's Cases Are Inapposite........................................................ 16

III.  EVEN IF IT WERE A FULL WARRANTY, MMWA EXPLICITLY ALLOWS FOR INCIDENTAL EXPENSES ........................................... 17

    A.   Costa Is Permitted to Recover Incidental Expenses ..................................... 18

    B.   The Processing Fee Is Not an Unreasonable Burden on Consumers............. 19

CONCLUSION.......................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blanco v. Capform, Inc.*,
   No. 11-23508-CIV, 2013 WL 118171 (S.D. Fla. Jan. 9, 2013)........................................10

*Cesco Mfg. Corp. v. Norcross, Inc.*,
   7 Mass. App. 837, 391 N.E.2d 270 (1979) ........................................................................19

*Council Bros., Inc. v. Ray Burner Co.*,
   473 F.2d 400 (5th Cir. 1973) ............................................................................................19

*Crabtree v. Donzi Marine, LLC*,
   No. 3:07-cv-464, 2009 WL 10670949 (M.D. Fla. Oct. 27, 2009)............................7, 8, 14

*Davenport v. Thor Motor Coach, Inc.*,
   No. 3:14-cv-737, 2015 WL 13021664 (M.D. Fla. Aug. 6, 2015)........................................9

*F.T.C. v. Virginia Homes Mfg. Corp.*,
   509 F. Supp. 51 (D. Md. 1981).....................................................................................16, 17

*Forcellati v. Hyland's, Inc.*,
   No. CV12-1983, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) ........................................11

*Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*,
   86 Ill. App. 3d 980, 408 N.E.2d 403 (1980) ....................................................................19

*Gaynor Elec. Co., Inc. v. Hollander*,
   29 Conn. App. 865, 618 A.2d 532 (1993) ........................................................................19

*Goodman v. Perlstein*,
   No. CIV. A. 86-2144, 1989 WL 83452 (E.D. Pa. July 21, 1989)....................................11

*Hairston v. S. Beach Bev. Co., Inc.*,
   No. CV 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) .....................................11

*In re Hardieplank Fiber Cement Siding Litig.*,
   No. 12-MD-2359, 2014 WL 2987657 (D. Minn. Jun. 30, 2014).......................................10

*Henson v. Allison Transmission*,
   No. 07-80382-CIV, 2008 WL 239153 (S.D. Fla. Jan. 28, 2008).......................................14

*Hobco, Inc. v. Tallahassee Assocs.*,
    807 F.2d 1529 (11th Cir. 1987) ...........................................................................8

*Hughes v. Segal Enter., Inc.*,
    627 F. Supp. 1231 (W.D. Ark. 1986)...............................................13, 15, 16

*Kehoe v. Fid. Fed. Bank & Tr.*,
    421 F.3d 1209 (11th Cir. 2005) ...........................................................................1

*Key v. Celadon Trucking Servs., Inc.*,
    No. CV 108-165, 2010 WL 11531270 (S.D. Ga. Feb. 9, 2010) .......................10

*London v. Wal-Mart Stores, Inc.*,
    340 F.3d 1246 (11th Cir. 2003) ...........................................................................1

*LVMH Swiss Mfrs., S.A. v. Meierotto's Jewelry, L.P.*,
    No. 12-1201-CV-W-ODS, 2013 WL 176115 (W.D. Mo. Jan. 16, 2013)..........17

*Marty v. Anheuser-Busch Companies, LLC*,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ................................................................14

*McKissic v. Country Coach, Inc.*,
    No. 8:07-cv-1488-T-17EAJ, 2008 WL 2782678 (M.D. Fla. Jul. 16, 2008)..........14, 15, 19

*McKissic v. Country Coach, Inc.*,
    No. 8:07-cv-1488-T-17EAJ, 2008 WL 616093 (M.D. Fla. Mar. 3, 2008) .......13

*Moroz v. Alexico Corp.*,
    No. 07-3188, 2008 WL 109090 (E.D. Penn. Jan. 8, 2008).........................14, 15

*Nature's Prods., Inc. v. Natrol, Inc.*,
    990 F. Supp. 2d 1307 (S.D. Fla. 2013) ................................................................8

*Ocana v. Ford Motor Co.*,
    992 So. 2d 319 (Fla. 3d DCA 2008) ..................................................................15

*Powers v. Lazy Days RV Ctr., Inc.*,
    No. 8:05CV1542T17EAJ, 2006 WL 2620107 (M.D. Fla. Sept. 13, 2016) .......17

*Pratt v. Winnebago Indus., Inc.*,
    463 F. Supp. 709 (W.D. Pa. 1979).....................................................................19

*Ruffin v. Fleetwood Motor Homes of Pa., Inc.*,
    No. CIV.A. 96-4922, 1997 WL 752000 (E.D. Pa. Dec. 4, 1997).....................19

*Schechner v. Whirlpool Corp.*,
    237 F. Supp. 3d 601 (E.D. Mich. 2017)................................................................11

*Semitekol v. Monaco Coach Corp.*,
    582 F. Supp. 2d 1009 (N.D. Ill. 2008) ...............................................................11

*Skelton v. Gen. Motors Corp.*,
    660 F.2d 311 (7th Cir. 1981) .............................................................................11

*In re Sony Grand Wega KDF–EA10/A20 Series Rear Projection HDTV*
    *Television Litig.*,
    758 F.Supp.2d 1077 (S.D. Cal. 2010)................................................................15

*In re Std. Jury Instr. In Civil Cases – Rpt. No. 13-01*,
    160 So. 3d 869 (Fla. 2015)...................................................................................8

*Stuto v. Corning Glass Works*,
    No. 88-1150-WF, 1990 WL 105615 (D. Mass. 1990).......................................13

*Taliaferro v. Samsung Telecomms. Am., LLC*,
    No. 3:11-CV-1119-D, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012)..................15

*Temple v. Fleetwood Enters., Inc.*,
    133 F. App'x 254 (6th Cir. 2005) ......................................................................15

*Thursby v. Reynolds Metals Co.*,
    466 So. 2d 245 (Fla. 1st DCA 1984) ..................................................................8

*Weber v. Fleetwood Motor Homes of Ind., Inc.*,
    No. CIV 03-2606-PHX-JWS, 2005 WL 8161115 (D. Ariz. Dec. 30, 2005)...............13, 15

**Statutes**

15 U.S.C.
    § 2301(6).......................................................................................................8, 11
    § 2302(a)....................................................................................................13, 19
    § 2304(d)....................................................................................................15, 18
    § 2304(e)........................................................................................................15

**Other Authorities**

16 C.F.R.
    § 701.3……...…………………………………………………………………..13

## TABLE OF EXHIBITS

Transcript of the Deposition of Holly Rush,
    Taken in the *Smith* Action on June 12, 2019
    (Volumes 1 and 2)........................................................................... Composite Exhibit 1

Exhibit 12 to the Deposition of Holly Rush,
    Taken in the *Smith* Action on June 12, 2019 ....................................................Exhibit 2

Exhibit 10 to the Deposition of Troy Smith,
    Taken in the *Smith* Action on June 27, 2019 ....................................................Exhibit 3

Exhibit 36 to the Deposition of Terri Hannah,
    Taken in the *Haney* Action on August 2, 2018.................................................Exhibit 4

Exhibit 40 to the Deposition of Terri Hannah,
    Taken in the *Haney* Action on August 2, 2018.................................................Exhibit 5

Exhibit 45 to the Deposition of Terri Hannah,
    Taken in the *Haney* Action on August 2, 2018.................................................Exhibit 6

Declaration of Terri Ossi Hannah in Support of Defendant Costa Del Mar, Inc.'s
    Motion for Summary Judgment with Incorporated Memorandum of Law,
    and Associated Exhibits, Dated August 1, 2019.................................................Exhibit 7

Transcript of the Deposition of Holly Rush,
    Taken in the *Haney* Action on October 24, 2018 .............................................Exhibit 8

Exhibit 140 to the Deposition of Holly Rush,
    Taken in the *Haney* Action on October 24, 2018 .............................................Exhibit 9

Transcript of the Deposition of Travis Owens,
    Taken in the *Haney* Action on July 31, 2018...................................................Exhibit 10

Transcript of the Deposition of Terri Hannah,
    Taken in the *Haney* Action on August 2, 2018...............................................Exhibit 11

Transcript of the Deposition of Felicia Morrisey,
    Taken in the *Haney* Action on October 3, 2018 ..............................................Exhibit 12

Declaration of Travis Owens and Associated Exhibits,
    Dated August 15, 2018 ..................................................................................Exhibit 13

Declarations of Certain Costa Retailers.......................................................................Exhibit 14

Defendant Costa Del Mar, Inc.'s First Amended Responses and
    Objections to Plaintiff Troy Smith's First Set of Interrogatories,
    Dated February 20, 2019...................................................................................Exhibit 15

Transcript of the Deposition of Alvin Perkinson,
    Taken in the *Haney* Action on September 14, 2018 ......................................Exhibit 16

Transcript of the Deposition of Troy Smith,
    Taken in the *Smith* Action on June 27, 2019 ..................................................Exhibit 17

Transcript of the Deposition of Mark Ritter,
    Taken in the *Smith* Action on April 12, 2019 .................................................Exhibit 18

Excerpts of Plaintiff's Proposed Order on Class Certification
    Submitted to the Court in the *Haney* Action via Electronic
    Mail on or about January 11, 2019 .................................................................Exhibit 19

Transcript of the Deposition of Chas MacDonald,
    Taken in the *Haney* Action on October 22, 2018 ...........................................Exhibit 20

Transcript of Deposition of Ian Ratner,
    Taken in the *Smith* Action on July 18, 2019
    (Volumes 1 and 2)....................................................... Composite Exhibit 21

Defendant Costa Del Mar, Inc. ("Costa") hereby responds in opposition to Plaintiff Troy Smith's ("Plaintiff" or "Smith") Motion for Summary Judgment ("Motion")[1] (D.E. 56):

## **INTRODUCTION**

Plaintiff wholly fails to satisfy his burden on summary judgment.  Although Plaintiff refers to Costa's "Lifetime Warranty" repeatedly throughout his Motion, he does not define, identify, or *prove* the existence of any "written warranty" upon which his claim is based.  The Magnuson-Moss Warranty Act ("MMWA") *only* applies to "written warranties," a defined term under the Act.  There is no dispute that Costa's warranty and information card provided with every pair of sunglasses constitutes a "written warranty" under MMWA.  Yet, Plaintiff wants this Court to also *assume* that any marketing statement (and particularly statements on a shipping/packaging box) referencing the *existence* of the warranty are themselves a "written warranty."  However, despite being his burden, Plaintiff made *no* effort to prove that these other marketing statements qualify as a "written warranty" under MMWA.

Even had he attempted to meet his burden, Plaintiff would have failed as none of the statements on the shipping and packaging box are "written warranties," since they do not (i) concern the nature or performance of the sunglasses; or (ii) utilize language that could be reasonably described as an "affirmation of fact...or promise" nor include "specifications" for any "undertaking" in connection with remedial action for the sunglasses.  In addition, Plaintiff has not and cannot prove that any of these marketing statements were made to him "in connection with the sale" of the sunglasses at issue, nor that such statements formed the basis

---

[1] Although discretionary as to timing, generally ruling on summary judgment prior to a decision on Plaintiff's Motion for Class Certification (D.E. 40) violates the rule against one-way intervention.  *See* 3 Newberg on Class Actions § 7:11 (5th ed.); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003); *but see Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1211 n.1 (11th Cir. 2005) (sequencing discretionary).

of his bargain.  Further abrogating his burden, Plaintiff again asks this Court to *assume* that because the shipping and packaging box exists, statements thereon are necessarily part of Smith's bargain.  Even if proper (it is not), such assumption still ignores the myriad other elements of a "written warranty," none of which he has even attempted to establish.

Assuming this Court properly confines this case to Costa's official "written warranty" as depicted on the warranty and information card, Plaintiff's claims must still fail because (i) Costa's written warranty was unambiguously limited as it disclosed the warranty processing fee; and (ii) even under the "full" warranty Plaintiff alleges, MMWA permits reasonable conditions (including certain expenses) to be placed on the consumer. Costa's warranty processing fee is just such reasonable condition contemplated by MMWA.

Accordingly for the reasons set forth more particularly below, Plaintiff's Motion must be denied, and summary judgment granted in favor of Costa.

## STATEMENT OF MATERIAL FACTS

**I.  COSTA STANDS BEHIND ITS PRODUCTS WITH A WRITTEN WARRANTY THAT CLEARLY DISCLOSES A PROCESSING FEE**

1.  Costa has always had a warranty program covering manufacturer's defects for the lifetime of non-prescription sunglasses ("Warranty").  (*See generally* Rush Tr. 97:15-24). Costa's designated official statement of its Warranty is stated on the warranty and information card ("Card") provided to consumers with each pair of sunglasses.  (*Id.* at 29:16-18; 30:15-31:13; 34:20-35:11).  The Warranty terms were also described, and the amount of the processing fee was disclosed, on Costa's website, where consumers are directed by the Card if they have issues with their Costa sunglasses.  (*See, e.g.*, Rush Dep. Ex. 12; Smith Dep. Ex. 10; Hannah (Haney) Dep. Exs. 36, 40, and 45).

2.     Importantly, the existence of an $11.95 processing fee associated with the Warranty has been disclosed on the Card since at least 2006.  (Rush Tr. 41:6-9; 91:9-16; *see* Decl. of Hannah Exs. A-I (2006-2018 Cards)).  By way of example, the Card used in approximately 2011 was as follows:

**Costa's Lifetime Warranty**

We warrant these sunglasses against defects in materials or workmanship for the lifetime of the product. Costa handles every repair or warranty claim directly. If you should have a problem with your Costas, please refer to the Care & Repair section of our website at www.costadelmar.com, complete and print the repair form, affix the top bar-coded portion as the label outside the box, and then send them to CDM Repair, 2361 Mason Avenue, Suite 150, Daytona Beach, FL 32117.

Costa will repair or replace, at our option, any product determined by Costa to be a manufacturer's defect. Since eventual wear and tear can be expected, reasonable repair charges will be levied if repairs are necessary as a result of normal wear, scratched lenses, broken hinges, accidental damage, misuse or any other problems determined not to be defects. Prescription sunglasses cannot be covered under this warranty. A small processing fee will be charged for each warranty claim processed.

For more information: 1.855.MYCOSTA (855.692.6782) or www.costadelmar.com          PP18

(Decl. of Hannah Ex. C (2011 Cards)) (emphasis added).

3.     Each pair of Costa sunglasses is shipped to Costa's retailer establishments[2] in a disposable cardboard shipping and packaging box. (Rush (Haney) Tr. 63:9-14; Rush (Haney) Dep. Ex. 140).  Inside the boxes, a "clamshell" case (the protective hard case for the sunglasses) contains the sunglasses, a Costa logo sticker, a quality control card, a lens cleaning cloth, and the Card, which consumers receive with each purchase. (Rush Tr. 30:15-32:8; Owens (Haney) Tr. 87:6-19; Hannah (Haney) Tr. 34:16-23; Morrisey (Haney) Tr. 37:16-24).

4.     Until October 2015, the Warranty was titled "Costa's Lifetime Warranty." (Rush Tr. 200:6-16; Decl. of Hannah Exs. A-E). In October 2015, Costa began titling its Warranty as "Costa's Limited Lifetime Warranty."  (*Id.*).  While the exact wording on the Card has changed slightly over time, "nothing of substance [] changed about the warranty," even after the word "limited" was added to the Warranty title.  (*Id.* at 40:14-21; 48:11-49:2).

---

[2] Sunglasses shipped to retailers at consumer shows and other promotional events are, in contrast, shipped in trays rather than boxes.  (Owens Decl. ¶ 14).

3

5.     Internal data, information from retailers, and Costa's experience shows that consumers do not purchase Costa sunglasses specifically because of the Warranty, but rather primarily purchase sunglasses based on style or fit.  (*See id.* at 95:24-96:7; 212:24-213:13; Owens Decl. ¶¶7-9; Retailer Decls. 4:¶7; 6:¶8; 8:¶8; 10:¶8; 12:¶¶10-12).

## II.    COSTA'S MARKETING MATERIALS ONLY REFER TO THE EXISTENCE OF THE WARRANTY

6.     Costa's official statement of its Warranty is solely on the Card. (Hannah (Haney) Tr. 26:3-11).  However, the *existence* of the Warranty has been messaged directly to consumers via media such as Costa's website, social media, or correspondence with Costa representatives, and indirectly through retailers with brochures, plaques, totems, and the brown shipping/packaging box for non-promotional sunglasses ("Box").[3]  (*See* Rush Tr. 45:23-48:6).

7.     These marketing materials are not uniformly distributed to consumers, displayed by retailers, or seen by purchasing consumers. (Retailer Decls. 1:¶4; 2:¶7; 3:¶¶4-5; 5:¶¶6-7; 7:¶5; 11-12:¶¶5-7).  Most consumers never receive the Box, but if they do, most receive it *after* purchase. (*Id.* at 1:¶¶5-6; 3-4:¶¶4-6; 5:¶¶6-7; 7:¶¶5-6; 9-10:¶¶5-6; 12:¶8).  If questions about Costa's Warranty arise during the sale, retailers typically refer consumers to the Card and Costa's website. (*Id.* at 1:¶6; 3¶6; 5:¶7; 8:¶7).

8.     The word "limited" was added to references to the Warranty title in Costa's marketing materials, including the Box, blast consumer emails, and the website, at various times beginning in 2015. (1st Rog. Am. Resp., No. 2; Hannah (Haney) Dep. Ex. 45).

---

[3] Of note, the shipping boxes for Costa's limited/special collection sunglasses are colorful and have no reference to the Warranty, whereas non-promotional sunglasses are shipped in the Box that does refer to the existence of the Warranty. (Perkinson (Haney) Tr. 20:9-14; 1st Rog. Am. Resp., No. 2).  Moreover, prior to the existence of the current Box, Costa used a number of other boxes that were various colors, at least one of which Smith believes he may have received with one of these purchases.  (*See* Smith Tr. at 32:14-16; 106:19-107:1; 115:11-15).  None of these other boxes contained *any* reference to the Warranty.  (*See id.* at 116:25-117:4).

### III.    COSTA'S PROCESSING OF WARRANTY CLAIMS

9.    Most consumers commence the Warranty claim process on Costa's website. (Rush Tr. 16:20-17:11; Ritter Tr. 77:22-78:10).   After completing the online form, the consumer receives a shipping label with Costa's address.  The consumer pays for shipping to Costa. (Ritter Tr. 88:7-16). Plaintiff takes no issue with this consumer responsibility.

10.    Once received and routed to Costa's Care and Repair Department, an assessor processes the sunglasses to determine whether the damage is a manufacturer's defect covered by the Warranty, or normal wear and tear, misuse, or accidental damage that can be repaired under Costa's separate repair program.  (Ritter Tr. 91:1-3).  If damage is determined to be covered by the Warranty, the sunglasses are repaired, or often replaced with a brand new pair. (*See* Rush Tr. 31:5-18). The sunglasses are then repackaged for shipping back to the consumer (or retailer if the retailer aggregated repairs). (*Id.* at 31:19-32:8).  Unless the fee has been waived or reduced, consumers (or retailers) are then charged the $11.95 processing fee, plus applicable sales tax for the state to which the sunglasses are shipped.  (*Id.* at 19:7-15).

### IV.    SMITH'S MULTIPLE WARRANTY CLAIMS AND PURCHASES

11.    Smith purchased his first pair of Costas in approximately 2007, after trying on a friend's pair of sunglasses, as he liked how they looked (style) and the way they fit on his face ("First Pair").  (Smith Tr. 18:19-24; 20:2-8; 22:8-9).  Smith dropped and broke the lenses of his First Pair, and he sent them to Costa for repair. (*Id.* at 26:1-19; 27:17-21).  Despite the First Pair being admittedly damaged by accident (which would have cost more to repair under the repair program), Costa covered the sunglasses under the Warranty and provided Smith a new pair for only the $11.95 processing fee plus tax.  (*Id.* at 26:23-27:5; 28:11-16; 71:10-17).

12.     After losing his First Pair, Smith purchased a second pair of Costas in 2014, the sunglasses at issue in this case ("Second Pair").  (*Id.* at 33:15-21; 34:24-35:6).  At the time of this purchase, Smith was aware of the $11.95 processing fee.  (*Id.* at 28:2-10; 36:2-11).  In fact, his previous experience with the Warranty was a positive factor in his decision to purchase the Second Pair.  (*Id.* at 144:12-17).  In or around September 2015, Smith's Second Pair became damaged, and he initiated a Warranty claim.  (*Id.* at 101:7-11; 102:8-17).  He again received a brand new pair of sunglasses and describes Costa's Warranty process (including payment of the $11.95) as a "positive experience."[4]  (*Id.* at 102:18-103:17; 142:25-143:3; 148:16-22).

13.     Smith does not specifically recall what marketing materials he saw in connection with any particular sale.  (*Id.* at 82:22-83:21).  At most, he received a shipping/packaging box after payment for the various sunglasses (although he cannot recall which version of any box he received, suggesting he may have received a blue box at least once, and admitting he likely received at least one or more older boxes that contained no reference to the Warranty).  (*Id.* at 32:14-16; 115:11-15; 116:25-117:4; 123:15-124:8; 147:18-148:9; 149:20-150:4; 156:11-14; Retailer Dec. 10:¶6 (Strike-Zone)).

## MEMORANDUM OF LAW

### I.     PLAINTIFF'S FAILURE TO PROVE THE EXISTENCE OF A "WRITTEN WARRANTY" IS FATAL

MMWA's labeling requirements (i.e., "limited" or "full") only apply to a "written warranty," as defined under the Act.  There can be no dispute that the Card is a "written warranty."  Yet, Plaintiff implausibly contends that statements on the Box referring to the

---

[4] After taking advantage of the Warranty program twice, Smith purchased yet another pair of Costa sunglasses in 2015.  (*Id.* at 34:9-15; 38:2-9).

*existence* of the Warranty also constitute a "written warranty" or somehow trump or modify Costa's "written warranty" on the Card. [5] D.E. 56 at 17-19.  While Plaintiff seeks to side-step his fundamental burden to prove the existence and identity of the "written warranty" upon which his MMWA claim is based, he has no claim if the statement he contends must be labeled is not a "written warranty."  Plaintiff bears the burden to prove the existence of a "written warranty" and he has not even marginally attempted to do so, requiring denial of summary judgement. *See, e.g.*, *Crabtree v. Donzi Marine, LLC*, No. 3:07-cv-464, 2009 WL 10670949, at *11-14 (M.D. Fla. Oct. 27, 2009).   Moreover, the statements appearing on the Box do not constitute a "written warranty," gutting Smith's claims as a matter of law.

### A.   Plaintiff Must Establish Statements Made by Costa Meet the Definition of a "Written Warranty"; He Has Not

Because Plaintiff claims that the marketing materials alone, and particularly the Box, are themselves a "written warranty," he must not only (i) prove that each statement is either:

(A) [a] written affirmation of fact or written promise <u>made in connection with the sale</u> of a consumer product by a supplier to a buyer <u>which relates</u> to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, *or*

(B) [an] undertaking in writing <u>in connection with the sale</u> by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the <u>specifications set forth in the undertaking,</u>

but also must (ii) demonstrate that the "written affirmation, promise, or undertaking [became]

---

[5] Notably, Plaintiff's filings have been inconsistent in what they contend is the applicable "written warranty," intermixing discussions of the Box, with the Card, with yet other statements made in marketing materials.  While Plaintiff still references marketing materials in the Motion, he appears focused on primarily the Box and Card. Accordingly, Costa focuses its Response on the Card and Box, but notes that the same analysis as to the Box's marketing language would apply to other marketing materials to the extent Smith makes such claims.

***part of the basis of the bargain*** …." 15 U.S.C. § 2301(6) (emphasis added). The Court must determine whether (i) Plaintiff was exposed to a marketing statement (and if so, which one), (ii) each disparate statement was made "in connection with the sale" of sunglasses to Plaintiff (and not at some other undefined time), <u>and</u> (iii) Plaintiff made that "written affirmation, promise, or undertaking" a "part of the basis of the bargain" for his purchase.

All of this requires that the seller's statement must actually *reach the purchaser*. 16 C.F.R. § 700.11(b) (to be "part of the basis of the bargain" under MMWA, a "written warranty . . . must be *conveyed* at the time of sale") (emphasis added). This exposure must occur *before* the purchase; receipt of materials post-purchase is insufficient to establish that any statement was made "in connection with the sale" or forms the "basis of the bargain." *See Crabtree*, 2009 WL 10670949, at *11-13 (collecting cases; "courts have concluded that representations in documents only provided after a sale is completed are not part of the basis of the parties' bargain, and thus, do not constitute warranties under the MMWA"); *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1320-21 (S.D. Fla. 2013) (denying summary judgment; it was unclear there was any affirmation or promise "prior to the beginning of the transaction."); *Hobco, Inc. v. Tallahassee Assocs.*, 807 F.2d 1529, 1533 (11th Cir. 1987) (no express warranty claim when plaintiff was not even aware of survey prior to agreement).  Exposure to any statement is crucial.

In Florida (as in many states) express warranties arise "only where the seller asserts a fact … on which the buyer justifiably relies as part of the 'basis of the bargain.'" *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. 1st DCA 1984); *see also In re Std. Jury Instr.*

*In Civil Cases – Rpt. No. 13-01*, 160 So. 3d 869, 873 (Fla. 2015) (Instr. 403.4).[6] The multi-prong analysis that Plaintiff must prove and the Court must undertake is demonstrated below:



## B.    Plaintiff's Attempts to Side-Step His Burden Through Assumptions Fail

Plaintiff undertakes no such analysis as outlined in the flowchart, and instead *assumes* statements on the Box meet the definition of a "written warranty" merely because Plaintiff alleges certain Costa witnesses in a different case regarding Costa's separate *repair* program stated Costa "honor[ed]" or "intend[ed]" for the marketing language on the Box to be the "part of every consumer's deal."  D.E. 56 at 6.  Even assuming, *arguendo*, such testimony were competent evidence to prove a legal theory (it is not),[7] this testimony does not *prove* (as

---

[6] To the extent Plaintiff claims that express warranties under MMWA do not incorporate state law (D.E. 40 at 12 n.7), Plaintiff's counsel took a contrary position in the related *Haney* matter.  *See* excerpts of Proposed Order on Class Certification at ¶97 (citing *Davenport v. Thor Motor Coach, Inc.*, No. 3:14-cv-737, 2015 WL 13021664, at *3 (M.D. Fla. Aug. 6, 2015) (applying Florida warranty law to express MMWA warranty claim)).  State law must be considered; there cannot be an MMWA action without a state breach of warranty claim.  *See* § II.A, *infra*.

[7] Plaintiff's counsel repeatedly asked the same question in multiple depositions whether it was Costa's intention to "honor" the language on the Box.  There is a difference between "standing behind" marketing language which merely refers to the existence of the Warranty and intending to make marketing language a warranty or a part of

Plaintiff intimates) that marketing statements on the Box meet the other definitional requirements of a "written warranty." *See* Flowchart, *supra*.  And, Plaintiff cites no case law to support his theory.  Nor did he provide authority that, even if accepted as true, the "intent" of the supplier, by itself, is sufficient to establish a "written warranty," without evidence of (i) exposure to the statement during the sale (prongs 2-4), and (ii) active reliance or other action by the purchaser to make the statement part of their bargain (prongs 3 and 4).  It is not.

### C.      The Box Statement(s) Do(es) Not Qualify as a "Written Warranty"

Plaintiff appears to claim two statements on the Box are a "written warranty."  Yet, both statements merely reference the *existence* of Costa's Warranty, and neither meet the definition of a "written warranty":  (i) "BACKED BY **<u>OUR</u>** LIFETIME WARRANTY," and (ii) "BACKED FOR LIFE…We stand behind our craftsmanship with **a** rock solid Lifetime Warranty against manufacturer's defects." D.E. 56 at 3-4.  Plaintiff's argument defies logic.  By a common sense reading, these statements are merely referring to the existence of a warranty (as further evidenced by the qualifiers "our" and "a" in both statements). These statements are not a "written warranty." *In re Hardieplank Fiber Cement Siding Litig.*, No. 12-MD-2359, 2014 WL 2987657, at *3 (D. Minn. Jun. 30, 2014) ("An advertisement's reference to a formal limited warranty does not, on its own, create a new informal promise that

---

the basis of the bargain.  Plaintiff points to testimony by Crockett that Costa intended the "nominal fee" language on the Box concerning the separate repair program, to be a part of consumers' deals.  In addition to improperly requesting a legal conclusion, Crockett was <u>not</u> designated as a corporate representative on this issue, nor is she deemed a corporate representative in this case (D.E. 35), and her testimony is refuted by the majority of Costa employees who testified that the Box contained only marketing language.  (MacDonald (Haney) Tr. 11:16-25; Hannah (Haney) Tr. 35:19-36:4; 37:4-16; 94:18-21; Owens (Haney) Tr. 111:22-112:4; Perkinson (Haney) Tr. 74:2-4; 74:17-24; 103:2-20).  Crockett's (or other witnesses') testimony as a lay witness is an improper and incompetent evidence to prove any legal conclusion.  *Blanco v. Capform, Inc.*, No. 11-23508-CIV, 2013 WL 118171, at *1 (S.D. Fla. Jan. 9, 2013); *Key v. Celadon Trucking Servs., Inc.*, No. CV 108-165, 2010 WL 11531270, at *9 (S.D. Ga. Feb. 9, 2010) (summary judgment denied where plaintiff relied on legal conclusion testimony of witnesses to prove essential element of claim).

the product will last for a certain amount of time without any of the terms or conditions of the limited warranty.")

These Box statements contain no language indicating any type of "affirmation" or "promise" or "undertaking." 15 U.S.C. §2301(6). Courts routinely hold that where, as here, there is no specified level of performance for a specified period of time, no warranty will stand. *See, e.g.*, *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1028 (N.D. Ill. 2008) (writing stating "Warranty Received" does not contain a promise that the item sold is defect-free or will meet a "specified level of performance" over a certain period of time, and thus is not a "written warranty"); *see also, e.g.*, *Forcellati v. Hyland's, Inc.*, No. CV12-1983, 2015 WL 9685557, at *6 (C.D. Cal. Jan. 12, 2015); *Hairston v. S. Beach Bev. Co., Inc.*, No. CV 12-1429, 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012). While the language on the Box contains a duration ("Lifetime") it lacks any "specified level of performance" as is required.

Similarly, there is no affirmative promise or affirmation that the sunglasses will be "defect free." *See, e.g.*, *Schechner v. Whirlpool Corp.,* 237 F. Supp. 3d 601, 615 (E.D. Mich. 2017) ("a mere 'product description' may implicitly promise a product will meet expectations or not fall short, *but it does not affirmatively promise defect-free performance* and it therefore falls outside MMWA's definition.") (emphasis added); *see also, e.g.*, *Forcellati*, 2015 WL 9685557, at *6; *Goodman v. Perlstein*, No. CIV. A. 86-2144, 1989 WL 83452, at *2 (E.D. Pa. July 21, 1989).

The text on the Box lacks the detail required for a "written warranty" under any part of prong 1. *Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 314 (7th Cir. 1981) ("the FTC has, by regulation, required that warrantors [make] *detailed disclosures* of information necessary to

allow consumers to understand and enforce written warranties" (emphasis added)).

###### D.      The Box Statements Cannot Be "Written Warranties" as to Smith

Even if the Box's statements met the first prong of the "written warranty" definition, these statements unquestionably fail as to Smith because no statements were provided "in connection with" the sale nor constituted the basis of his bargain (prongs 2 and 3).  Nor did he rely on the Box (prong 4).  As a threshold matter, Smith could not recall what box he may have received for any transaction, suggesting that he may have received a blue box for at least one purchase, not the Box he raises in his Motion.  (SOF ¶13).  Any blue Costa box did *not* contain *any* language regarding the Warranty.  (*Id.*).  Drawing all inferences in favor of Costa, as this Court must on summary judgment, any box Smith may have seen cannot support his claim because he simply cannot prove what he may have viewed at any particular time.  (*See* Smith Tr. at 82:22-83:21; 123:15-124:8; 147:18-148:9; 149:20-150:4; 156:11-14).

Even assuming he could prove any box he received contained language referencing the Warranty, Smith could not have seen or been aware of any statements on the Box "in connection with" any of his purchases as he would not have received the Box until *after* purchase (SOF  ¶13); nor does Smith allege such pre-purchase exposure or knowledge.  D.E. 56 at 9.  His lack of pre-purchase exposure eviscerates both the "in connection" and basis of the bargain prongs of a written warranty (prongs 2 and 3).  *See* cases *supra*.[8]

Smith also purchased the Second Pair with knowledge of the issue over which he now sues, negating basis of the bargain and reliance (prongs 3 and 4).  (SOF ¶12).  He was aware of the Warranty and $11.95 processing fee at the time he purchased his Second Pair because

---

[8] The same is true for most of the remainder of Smith's proposed class as multiple retailers attest that they did not (and do not) retain or display the Box.  (SOF ¶7).

*he had already been through Costa's warranty process*[9] ***and paid the fee***.  (*Id.*).  Smith is not

an "innocent purchaser without knowledge" of the Warranty, disproving any argument the Box

was a written warranty as to him.  *See Stuto v. Corning Glass Works*, No. 88-1150-WF, 1990

WL 105615, at *6 (D. Mass. 1990); *cf. Hughes v. Segal Enter., Inc.*, 627 F. Supp. 1231, 1239

(W.D. Ark. 1986).  Because Smith did not rely on and did not receive, any statements prior to

purchase, the Box cannot be a written warranty under prongs 2-4.  *See* Flowchart, *supra*.

### E.   The Card Is the Applicable "Written Warranty"

In stark contrast to the various marketing statements, the Card meets the definition of

a "written warranty."  *See* D.E. 58 at 11-14.  MMWA requires that a written warranty "fully

and conspicuously disclose in simple and readily understood language the terms and conditions

of such warranty" in a single document.  15 U.S.C. § 2302(a); *see also* 16 C.F.R. § 701.3(a).

MMWA Section 2302(a) and 16 C.F.R. § 701.3 specifically provide the "terms and conditions"

of the warranty that should be disclosed, if applicable or offered.  The *only* "single document"

reflecting the applicable terms specified in Sections 2302(a) and 701.3 is the Card.  (SOF ¶1-

2).  The Card is the "single document" to which the designation obligation of Section 2303(a)

relates, not extraneous marketing materials.  *See Weber v. Fleetwood Motor Homes of Ind.,

Inc.*, No. CIV 03-2606-PHX-JWS, 2005 WL 8161115, at *4 (D. Ariz. Dec. 30, 2005); *see also

McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2008 WL 616093, at *3 (M.D.

Fla. Mar. 3, 2008).  Unlike the Box, the Card also describes in specific detail the undertaking

Costa will perform if there is a defect in the sunglasses (prong 1).[10]

---

[9] Smith also confirmed that there was no difference between the warranty process with his First Pair and the warranty process with his Second Pair.  (Smith Tr. 36:22-37:7; 96:6-19).

[10] However, Plaintiff's admission that he did not review the Card at any time (pre- or post-purchase) calls into question whether even the Card was a part of his (or any other potential class members') basis of the bargain as

The fact that the Card is packaged inside the clamshell cases and shipped to retailers in a packaging box does not affect its "written warranty" status.  The only case Plaintiff cites for this proposition involved *misrepresentations* on packaging, not an attempt to turn packaging into a warranty; therefore, it is inapplicable here.  *See generally Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014).

## II.  EVEN IF THE "WRITTEN WARRANTY" IS PROPERLY CONFINED TO THE CARD, SUMMARY JUDGMENT IS STILL IMPROPER

When read in its entirety, there can be no doubt the Card provides a limited warranty.

### A.  Because the Warranty Is Limited by its Terms, and There Is No Breach of its Express Terms, Plaintiff's MMWA Claim Fails as a Matter of Law

Notably, Plaintiff agrees that Costa *honored* the terms of its Warranty.  D.E. 56 at ¶22.  Plaintiff also makes no claim that the Card text itself is ambiguous as to the existence of the processing fee.  In fact, he admits that the text of the Card depicts a "limited" warranty.  D.E. 56 at 18-19.  Rather, his argument, at base, is that although the Card discloses the fee, the Warranty is somehow rendered "ambiguous," and, thus "full," merely because of a lack of labeling.  This argument is circular and incorrect.

It is improper to transmute the Warranty into a "full" warranty due solely to lack of labeling.  D.E. 58 at 21-27; *Moroz v. Alexico Corp.*, No. 07-3188, 2008 WL 109090, at *5-6 (E.D. Penn. Jan. 8, 2008); *McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488-T-17EAJ, 2008 WL 2782678, at *6-7 (M.D. Fla. Jul. 16, 2008).  Courts look to the terms of a warranty to determine its nature; a warranty that is limited by its terms is still "limited" despite a lack of label.  *Henson v. Allison Transmission*, No. 07-80382-CIV, 2008 WL 239153, at *3 (S.D. Fla.

---

it was not reviewed and considered prior to the decision to purchase.  *Crabtree, LLC*, 2009 WL 10670949, at *15.

Jan. 28, 2008); *McKissic*, 2008 WL 2782678, at *6.  A court must read the requirements of a full warranty into an otherwise limited warranty only when the warranty is expressly labeled "full."  *Weber*, 2005 WL 8161115, at *4; *see also* 15 U.S.C. § 2304(e).  This is not that case.

Here, the Card "fully and conspicuously" disclosed the processing fee (sometimes identified as a shipping and handling fee) since at least 2006.  (SOF ¶2).  Plaintiff understood the existence of the fee, was not confused by it, and paid it (with no complaint) twice.  (SOF ¶¶11-12).  If the processing fee does not meet the minimum requirements of Section 2304(d), the Warranty is, by definition, limited, an issue Plaintiff concedes.  D.E. 56 at 18-19.

Plaintiff's claim also fails because he cannot identify any breach of the terms of Costa's Warranty.  Plaintiff admits that Costa honored the Warranty, he just disagrees with the legality of the fee vis-à-vis the Warranty's title.  Without a breach of the terms of the Warranty, Plaintiff has no claim under MMWA.[11]  *See* D.E. 58 at 16-20; *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 324 (Fla. 3d DCA 2008); *see also Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Moroz*, 2008 WL 109090, at *5-6 ("In the absence of any allegation of breach, it is difficult to see how Defendants' actions [not labeling the warranty as full or limited] caused Plaintiffs to sustain actual damages"; lack of labeling did not cause any harm).

### B.     Plaintiff's Cases Are Inapposite

None of Plaintiff's cases support summary judgment in his favor and, in fact, undermine his position. Plaintiff relies heavily on *Hughes*, contending the Warranty here is

---

[11] In fact, MMWA does not provide its own cause of action absent a state warranty claim.  *See In re Sony Grand Wega KDF–EA10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d 1077, 1101 (S.D. Cal. 2010) ("The [MMWA] provides a federal cause of action for state law express and implied warranty claims."); *Taliaferro v. Samsung Telecomms. Am., LLC*, No. 3:11-CV-1119-D, 2012 WL 169704, at *11 (N.D. Tex. Jan. 19, 2012) ("The MMWA's jurisdictional clause allows a party to sue in federal court based on state-law warranty claims, but it does not permit an MMWA breach of warranty claim without an underlying state cause of action.").

"automatically" a "full" warranty because it is not clearly and conspicuously designated a "limited" warranty.  D.E. 56 at 13-16.  Yet, Plaintiff later admits that there must be "vagueness in the warranty" to transform it into a "full" warranty. D.E. 56 at 13.  However, Plaintiff identifies no vagueness in the Warranty - because there is none.

Additionally, *Hughes* is distinguishable and inapplicable. D.E. 58 at 18-19. Contrary to Plaintiff's contention, the lack of a designation as limited or full does <u>not</u> "automatically" render the warranty a "full" warranty.  Where a warranty is designated neither full nor limited, the lack of designation "***may*** render it a 'full' warranty." 627 F. Supp. at 1239 (emphasis added).[12]  The *Hughes* court stated that a warranty should be interpreted in a manner most favorable to the consumer, particularly where (as in *Hughes*) the language was confusing.  *Id.* In stark contrast to *Hughes*, there is no confusion about the plain meaning of Costa's Warranty, and Smith has not cited a single ambiguity in the text of the Card.  *See* discussion *supra*. Further, the *Hughes* court was concerned that the warrantor was attempting to avoid personal injury liability by gamesmanship with the labeling of its warranty.  That does not exist here.

Neither does *F.T.C. v. Virginia Homes Mfg. Corp.*, 509 F. Supp. 51 (D. Md. 1981) support Plaintiff's theory.  There, the FTC brought suit because, after modifying its warranty at the request of the FTC, a manufacturer refused to notify holders of the old warranty about the change.  509 F. Supp. at 52-3.  In determining the necessity of notification, the court analyzed the initial warranty and determined that the initial warranty violated MMWA, in part, because it was not designated "full" or "limited," and ordered the manufacturer to notify the

---

[12] In both his class certification motion and the Motion, Smith mischaracterizes *Hughes*, claiming that court held "that the failure to designate the warranty as a 'limited' warranty ***will*** render it a 'full' warranty." D.E. 56 at 13; D.E. 40 at 13 (emphasis added).  The *Hughes* case includes no such language.

holders of the old warranty of the amendments and possible additional legal rights. *Id.* at 57,

59. The court did not suggest that a non-designated warranty is automatically a "full" warranty,

as Plaintiff suggests.  D.E. 56 at 13. *Virginia Homes* simply does not address the issues here.

Plaintiff's other cases similarly support Costa's (not Plaintiff's) position.  In *Powers*,

while noting that ambiguities in a warranty may be construed against the drafter, the court

granted summary judgment for the warrantor because there was <u>no ambiguity</u> in any of the

documents provided at the time of sale. *Powers v. Lazy Days RV Ctr., Inc.*, No.

8:05CV1542T17EAJ, 2006 WL 2620107, at *2-3 (M.D. Fla. Sept. 13, 2016).  *Powers*

determined that even construing any potential ambiguities in a document referencing a "Full

Ownercare Warranty" against the warrantor, no reasonable person could conclude the warranty

was full when read in context. *Id.*  Next, Plaintiff points to mere dicta from *LVMH Swiss Mfrs.,*

*S.A. v. Meierotto's Jewelry, L.P.*, No. 12-1201-CV-W-ODS, 2013 WL 176115 (W.D. Mo. Jan.

16, 2013).  D.E. 56 at 13.  There, the court disagreed with the "remarkably harsh proposition

that the insertion of *any* word with the phrase 'limited warranty' automatically, and as a matter

of law, deprives the warranty of its limited status and transforms it into a full warranty." *LVMH*

*Swiss Mfrs., S.A.*, 2013 WL 176115 at *4.

## III.     EVEN IF IT WERE A FULL WARRANTY, MMWA EXPLICITLY ALLOWS FOR INCIDENTAL EXPENSES

Even if this Court were to determine that the Warranty should be deemed "full" under

MMWA, this does not end the inquiry.  MMWA allows for the imposition of certain conditions

with full warranties, including the payment of "incidental expenses" and the placement of

reasonable duties on consumers.  The processing fee falls squarely within these parameters.[13]

### A.    Costa Is Permitted to Recover Incidental Expenses

While a full warranty must generally be offered "without charge," MMWA acknowledges there may be incidental expenses, including transportation, and shipping and handling charges, for which the consumer is responsible.  *See* 15 U.S.C. § 2304(d).  MMWA prohibits charging under a full warranty "any costs the warrantor or his representatives incur in connection with the ***required remedy*** of a warranted consumer product."  15 U.S.C. § 2304(d) (emphasis added).  The "required remedy" here is the repair or replacement of the damaged sunglasses.  (SOF ¶¶1-2).  No portion of the processing fee charged by Costa relates to the material or labor associated with the actual act of repair or replacement. (Rush Tr. 59:22-24; 83:3-6; 163:21-164:2; 206:20-207:5).

In distinguishing allowable incidental expenses from the "required remedy," Section 2304(d) further states: "An obligation under subsection (a)(1)(A) to remedy without charge does not necessarily require the warrantor to compensate the consumer for incidental expenses…." *Id.*  MMWA does not define "incidental expenses," but reference to comparable UCC provisions and cases discussing "incidental damages" illustrates the distinction between costs related to the repair act versus incidental expenses.  *See* 2 The Law of Prod. Warranties § 16:9, Substantive requirements—Remedy within a reasonable time and without charge; *see*

---

[13] Plaintiff attacks the opinion of Costa's expert Ian Ratner primarily because Plaintiff disagrees with Costa's position on the law.  D.E. 56 at 22-24. Ratner's opinion, however, provides context for the purpose of the processing fee, and further quantifies components of that fee. First, whether it costs Costa $2.40 or $3.10 or $100.00, Plaintiff fails to dispute the fact that Costa bears expenses incidental to the repair of its sunglasses. The Court may deem undisputed any fact not properly countered by record evidence. *See* Fed. R. Civ. P. 56(e)(2).  Second, the question relevant here is not what it costs Costa to-the-penny for incidentals, but whether Costa is entitled to recover such expenses. If Plaintiff is concerned over a sixty cent difference and whether Costa's expenses justify an $11.95 fee, Costa can think of no better issue for a jury than the reasonableness and amount of such fee recoverable. **Costa incorporates its response to the Motion to Strike Expert. D.E. 63.**

*also McKissic*, 2008 WL 2782678, at *6.  Courts and various UCC provisions include shipping and processing costs within the definition of "incidental damages."  *See, e.g.*, *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.,* 86 Ill. App. 3d 980, 988, 408 N.E.2d 403, 409 (1980); *Council Bros., Inc. v. Ray Burner Co.*, 473 F.2d 400, 408 (5th Cir. 1973); *Gaynor Elec. Co., Inc. v. Hollander*, 29 Conn. App. 865, 871, 618 A.2d 532, 535 (1993); *see also Cesco Mfg. Corp. v. Norcross, Inc.*, 7 Mass. App. 837, 844, 391 N.E.2d 270, 275 (1979).  By analogy, it is reasonable to construe MMWA to allow for the recovery of incidental expenses from the consumer for the shipping expenses incidental to the repair.  *See also* D.E. 58 at 20-23.

### B.      The Processing Fee Is Not an Unreasonable Burden on Consumers

The fee is also a reasonable condition to repair under Section 2304(b). *See* D.E. 58 at 23.  MMWA recognizes that even under a "full" warranty, reasonable duties and conditions may be placed on a consumer.  One such reasonable duty includes requiring a consumer to be responsible for transporting the product to and from the warrantor.  *See, e.g.*, *Pratt v. Winnebago Indus., Inc.*, 463 F. Supp. 709, 714 (W.D. Pa. 1979) (mobile home warranty; MMWA "clearly contemplated that written warranties could be conditioned upon the obligation of consumers to return the defective item to its place of purchase for repair….").

Further, Section 2302(a) permits the disclosure of certain terms and conditions to warranties, including:  (i) "at whose expense" a defect will be cured; and (ii) "[a] statement of what the consumer must do and expenses he must bear."  15 U.S.C. § 2302(a)(4), (5).  And, even where a warranty is explicitly designated as "full," courts have specifically noted the ability to include limitations as allowed in 15 U.S.C. § 2302(a).  *E.g.*, *Ruffin v. Fleetwood Motor Homes of Pa., Inc.*, No. CIV.A. 96-4922, 1997 WL 752000, at *5 (E.D. Pa. Dec. 4,

1997). Thus, even if the Warranty is deemed "full," the inclusion of reasonable conditions (like the processing fee) are explicitly allowed under Section 2302(a) and 2304(b).

While Smith does not contest the requirement that he pay to ship his sunglasses to Costa for repair, he contends that MMWA does not allow the converse, i.e., it is improper to hold the consumer responsible for the return shipping costs. His argument is premised on a belief that incidental expenses under MMWA only include costs directly paid by the consumer to a third party (which the warrantor need not *reimburse*). D.E. 56 at 21-22. Illogically, Smith contends that because the Warranty requires consumers to "reimburse" Costa for return shipping and handling (rather than the consumer arranging to transport the sunglasses after repair), such expense is not incidental and is, rather, a cost that must be borne by Costa. *Id.* This narrow reading of MMWA is unsupported. Requiring consumers to arrange for return through in-person or pre-paid shipping cuts against the goals of MMWA and would make it *less* likely that customers would use the Warranty as the cost to consumers could greatly increase. Costa's average shipping cost over the years is $3.10, exclusive of handling and packaging materials. (Ratner Tr. 128:2-3). Smith's cost of shipping to Costa was far greater, approximately $8-10, again, exclusive of his time, mileage, and packaging materials. (Smith Tr. 104:23-105:13). A fair reading of MMWA makes clear that reasonable conditions and incidental expenses such as shipping charges are not limited solely to reimbursements and properly are the responsibility of the consumer, particularly where they are fully and conspicuously disclosed.

## <u>CONCLUSION</u>

For the foregoing reasons and authorities, Costa respectfully requests that the Motion (D.E. 56) be denied.

Dated: August 23, 2019

McGuireWoods LLP

By: */s/ Sara F. Holladay-Tobias*
Sara F. Holladay-Tobias
Florida Bar No. 0026225
stobias@mcguirewoods.com
Emily Y. Rottmann
Florida Bar No. 0093154
erottmann@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)
Secondary Service Emails:
flservice@mcguirewoods.com
clambert@mcguirewoods.com
csweeney@mcguirewoods.com

– *and* –

Justin R. Opitz (*admitted pro hac vice*)
jopitz@mcguirewoods.com
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 932-6471
(214) 273-7487 (fax)

– *and* –

Mark E. Anderson (*admitted pro hac vice*)
manderson@mcguirewoods.com
Jocelyn M. Mallette (*admitted pro hac vice*)
jmallette@mcguirewoods.com
434 Fayetteville Street, Suite 2600
Raleigh, North Carolina 27601
(919) 755-6600
(919) 755-6699 (fax)

*Attorneys and Trial Counsel for Defendant
Costa Del Mar, Inc.*

21

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 23, 2019, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to the following:

Peter P. Hargitai, Esq.
peter.hargitai@hklaw.com
Joshua H. Roberts, Esq.
joshua.roberts@hklaw.com
Laura B. Renstrom, Esq.
laura.renstrom@hklaw.com
Michael M. Gropper, Esq.
michael.gropper@hklaw.com
HOLLAND & KNIGHT LLP
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
*Attorneys for Plaintiff Troy Smith*

/s/ Sara F. Holladay-Tobias
Attorney

22