# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

TROY SMITH, individually and
on behalf of all others similarly situated,
GERALD E. REED IV, individually and
on behalf of all others similarly situated, *and*
BRENDAN C. HANEY, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.                                    Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,           **JURY TRIAL DEMANDED**
a Florida corporation,

     Defendant.

_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Troy Smith ("Smith"), Gerald E. Reed IV ("Reed"), and Brendan C. Haney ("Haney") (Smith, Reed, and Haney are collectively referred to herein as "Plaintiffs"), by and through undersigned counsel, hereby sue Costa Del Mar, Inc. ("Costa"), individually and on behalf of a nationwide class of consumers.  In support, Plaintiffs allege as follows:

## INTRODUCTION

1.     Costa promotes and advertises its sunglasses as being "backed for life," and touts its sunglasses warranty as "the best in the industry," with "no gimmicks" and "no disclaimers."

2.     Costa promises: (i) to repair sunglasses damaged due to accident, normal wear and tear, or misuse for a nominal fee ("Repair Promise"); and (ii) to provide a "Lifetime Warranty" on manufacturer's defects.

3.     On the side of every box of non-prescription, non-promotional Costa sunglasses sold during the relevant class period, Costa warrants: "[I]f our sunglasses are damaged by accident,

normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts <u>for a nominal</u> <u>fee</u>." But, this claim is false.

4.      Consumers who purchased sunglasses during the class period are not charged a "nominal" fee to repair damage due to accident, normal wear and tear, or misuse, but are instead charged far higher amounts for replacement lenses and frames, along with shipping and handling fees.

5.      Costa's promise to repair damaged sunglasses "<u>for a nominal fee</u>" is false and deceptive, designed to lure consumers into paying a premium for sunglasses with a "rock solid" warranty against damage due to accident, normal wear and tear, or misuse, only for consumers to later discover the bait-and-switch.  Unfortunately, Costa's "no gimmicks" warranty is designed to trick consumers and maximize revenue for Costa's repair center at the expense of Costa's customers.

6.      Costa's Repair Promise is deceptive and unfair under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. ("FDUTPA"), and  constitutes a breach of its warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2304 ("MMWA").

7.      In addition, as part of its "rock solid Lifetime Warranty," Costa also warrants against manufacturer's defects on its sunglasses.  This promise is communicated through every medium of communication with its customers: on its website, on its sunglass boxes, on its advertisements, in videos, on plaques, in promotional material, and elsewhere.

8.      On the packaging for every pair of Costa sunglasses, Costa prominently displays the words "**BACKED BY OUR LIFETIME WARRANTY**" in all capital letters, along with the promise that "[W]e stand behind our craftsmanship with a rock solid <u>Lifetime Warranty</u> against manufacturer's defects."

9.     Once the consumer purchases the sunglasses and opens the package, a warranty card (placed on the inside of the package) titled "Costa's Lifetime Warranty" provides that Costa will "warrant these sunglasses against defects in materials or workmanship for the life-time of the product."

10.    And to avoid any confusion about its full warranty, Costa touts on its website, under the heading **"BACKED FOR LIFE"** that, "[B]ecause we monitor the quality of every pair of sunglasses we build, we back them with a lifetime warranty.  If a pair of Costas needs to be fixed, they get sent back to the shop where they were made and the Costa Repair Shop experts will bring them back to 'like-new' standards. Our product quality, backed by our Lifetime Warranty, makes Costa Sunglasses the best value available in the sunglass industry today.  No other manufacturer offers a combination that even comes close."

11.    Costa advertises elsewhere on its website that its sunglasses are **"BUILT BY HAND. BACKED FOR LIFE."**

12.    And in brochures distributed to customers and retailers, Costa states that, "[A]t Costa, we stand behind our work.  That's why every pair of sunglasses we make is backed with a Lifetime Warranty against manufacturer's defects."

13.    However, as it is applied by Costa, Costa's purported "Lifetime Warranty" against manufacturer's defects violates federal law because customers must pay a fee to take advantage of it.  More specifically, although Costa offers a "Lifetime Warranty," Costa does not repair or replace Costa sunglasses damaged by a manufacturer's defect "without charge," as required by federal law. Instead Costa charges customers a fee — $11.95 plus tax — to repair or replace sunglasses with a manufacturer's defect.

#73150407_v2

14.     Costa's actions — advertising, promoting, and offering a "Lifetime Warranty," but charging customers $11.95 plus tax per warranty claim for sunglasses with a manufacturer's defect — violate the MMWA, which requires warrantors like Costa advertising full lifetime warranties to remedy consumer products "*without charge*."

15.     This action is brought in an effort to curb Costa's false, deceptive and illegal warranty practices, which constitute violations of the FDUTPA and the MMWA.

16.     Plaintiffs bring this case pursuant to Federal Rule of Civil Procedure 23 on behalf of several classes of Costa consumers, seeking damages, including costs of suit, interest, and reasonable attorneys' fees, as well as injunctive relief to remedy Costa's improper warranty practices.

## PARTIES, JURISDICTION AND VENUE

17.     Plaintiff Troy Smith is a citizen of the State of Florida.

18.     Plaintiff Brendan Haney is a citizen of the State of Florida.

19.     Plaintiff Gerald E. Reed IV is a citizen of the State of Louisiana.

20.     Costa is a corporation incorporated under the laws of the State of Florida, with its principal place of business in Daytona Beach, Florida.  Accordingly, Costa is deemed to be a citizen of the State of Florida.

21.     Costa conducts business throughout the state of Florida and, specifically, within the Middle District of Florida.  Costa has received and continues to receive substantial revenue and profits in the Middle District of Florida and throughout the state of Florida.

22.     Upon information and reasonable belief, the proposed classes consists of over 1 million members nationwide.   In the aggregate, these proposed class members seek over $5,000,000 in damages, exclusive of costs and interest.

4

23.     The Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Smith, Haney, and Costa reside within this district and a substantial part of the events and omissions giving rise to these claims occurred within this district.

25.     All conditions precedent to the institution and maintenance of this action have been satisfied or waived.

26.     Plaintiffs have retained the law firm of Holland & Knight LLP to represent them and the class, and such firm is entitled under applicable law to seek attorneys' fees from Costa as set forth herein.

### FACTUAL ALLEGATIONS RELATED TO THE REPAIR PROMISE

#### *Costa's Brand Image: Quality Products and a "No Gimmicks" Warranty.*

27.     Costa is in the business of manufacturing, marketing, and selling sunglasses.  Costa sells a variety of types of sunglasses, including its regular (plano) sunglasses, limited edition sunglasses, special collection sunglasses, and prescription sunglasses.

28.     Costa touts itself as "the best value available in the sunglass industry," due to a combination of its high product quality and its "rock solid" sunglasses warranty.

29.     During the class period, Costa sunglasses were marketed and intended to be sold in a uniform Costa box, upon which Costa prominently printed the below warranty:

#73150407_v2

**BACKED FOR LIFE.**

We stand behind our craftsmanship with a rock solid Limited Lifetime Warranty against manufacturer's defects.  <u>And if our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee</u>.  Our product quality, backed by our Limited Lifetime Warranty, makes Costa Sunglasses the best value available in the sunglass industry today.  No other manufacturer offers a combination that even comes close.



30.     On the box, one side panel described "**WHAT MAKES THEM COSTAS?**"  The final characteristic listed as "making them Costas" is that the glasses are "backed by our lifetime warranty."  At that statement, there is an arrow which directs the observer to the opposite panel of the box where the nominal fee statement quoted above is presented.

31.     During the class period, Costa's in-store displays stressed that Costa's sunglasses are "backed for life," and advertised Costa's warranty as "[t]he best in the industry," with no gimmicks and no disclaimers:

#73150407_v2

**BACKED FOR LIFE**
The best in the industry. No gimmicks.
No disclaimers. Just an unwaivering
confidence in our product.



***Costa's Repair Promise is part of every consumer's bargain.***

32.     Costa's lifetime warranty is an important part of the Costa brand, and Costa believes this lifetime warranty sets it apart from its competitors.

33.     During the class period, Costa's lifetime warranty included its promise to replace damaged parts for a nominal fee.

34.     Costa understood customers had an expectation – based on the language on the box – that any repairs to their Costa sunglasses would be completed for a nominal fee.

35.     Each and every box of non-prescription, non-promotional Costa sunglasses distributed during the class period contains this nominal fee Repair Promise.

36.     During the class period, Costa's employees were trained to understand that the nominal fee Repair Promise was part of the lifetime warranty.

37.     During the class period, Costa's retailers were trained to understand that the nominal fee Repair Promise is an important part of the lifetime warranty, and that accidental damage and normal wear and tear would be repaired by Costa for a nominal fee.

38.     During the class period, the nominal fee Repair Promise was uniformly printed on the side of every non-promotional, non-prescription box of Costa sunglasses, and was communicated to Plaintiff and every other member of the class at every point of purchase.

39.     Millions of boxes containing the nominal fee Repair Promise were delivered to retailers and consumers during the class period.

40.     The boxes were intended to be maintained by the retailers and provided to customers at the point of purchase.

41.     The nominal fee Repair Promise was available to every consumer because (in addition to it being printed on every box during the class period), any purchaser could view the Costa box online, and on hundreds of websites.

42.     During the class period, Costa sunglasses were sent to customers and retailers in the box and were intended to be provided to the consumer in the box.

43.     During the class period, the boxes were designed to go on display at the retailer.

44.     During the class period, Costa intended for the statements on the box – including the nominal fee Repair Promise – to be part of every customer's deal, no matter where they purchased the sunglasses, and no matter whether or not they actually received the box.

8

45.     When customers send their sunglasses to Costa for repair, Costa honors the Repair Promise on the box (albeit for a price Plaintiffs contend is ***not*** nominal), regardless of whether the customer received the box.

46.     Costa does not require proof of purchase or a receipt for a customer to have his or her Costa sunglasses repaired.

47.     Costa does not require customers to prove that they received the box in order to have their Costa sunglasses repaired.

### *Plaintiff Haney's Purchase and Repair Experience.*

48.     On April 1, 2016, Plaintiff Haney purchased a pair of Costa sunglasses for $149.00.

49.     In March 2017, one of the lenses in Plaintiff Haney's sunglasses was accidentally shattered.

50.     Plaintiff Haney filled out the online repair form available at www.costadelmar.com and paid to mail his sunglasses to Costa for repair.

51.     Costa received Plaintiff Haney's sunglasses on or about March 31, 2017.

52.     On April 6, 2017, and after inspecting the sunglasses, Costa advised Plaintiff Haney that he would need to pay for replacement lenses at a cost of $89, plus taxes and shipping and handling, for a total cost of $105.18.

53.     On April 27, 2017, Costa charged Plaintiff Haney a total of $105.18 in repair and shipping costs, which was far more than the "nominal fee" promised by Costa.

### *Plaintiff Reed's Purchase and Repair Experience.*

54.     Plaintiff Reed purchased a pair of Costa Harpoon sunglasses for $259.00 from Academy Sports + Outdoors.

55.     In 2016, Plaintiff Reed's sunglasses were damaged by accident, normal wear and tear, or misuse.

56.     In accordance with Costa's standard repair protocol, Plaintiff Reed filled out the online repair form available at www.costadelmar.com and paid to mail his sunglasses to Costa for repair.

57.     Costa received Plaintiff Reed's sunglasses and, after inspecting the sunglasses, determined that they were damaged by accident, normal wear and tear, or misuse.  Costa advised Plaintiff Reed that he would be required to pay a total of $100.95 to repair his sunglasses.

58.     In September 2016, Costa charged Plaintiff Reed $100.95 in repair and shipping costs, which was far more than the "nominal fee" promised by Costa.

### *The "Gimmick".*

59.     Costa advertises that its sunglasses are durable, built to last, and made to withstand extreme and intense conditions.

60.     Costa markets itself to consumers as "the best value available in the sunglass industry," due to a combination of its high product quality and its "rock solid" sunglasses warranty.

61.     But while Costa touts the high quality of its sunglasses, Costa knows that its sunglasses have a significantly higher failure rate than its competitors.

62.     Further, Costa's warranty to replace sunglasses damaged by "accident, normal wear and tear, or misuse … for a nominal fee" is false, deceptive, and unfair.

63.     Black's Law Dictionary defines the term "nominal" as: "(Of a price or amount) trifling, esp. as compared to what would be expected <the lamp sold for a nominal price of ten cents>."  *See* Black's Law Dictionary 1148 (9th ed. 2009).

10

64.     Merriam-Webster defines the term "nominal" as "being so small or trivial as to be a mere token."  *See* "Nominal," Merriam-Webster.com (last accessed July 20, 2017).

65.     The charges imposed by Costa are not nominal.

66.     In addition to the substantial repair charges, customers whose sunglasses have been broken by accident, misuse, or normal wear and tear are also charged a "shipping" fee.

67.     During the class period, Costa did not disclose the repair charges or the shipping fee to customers on the box or at the point of purchase.

68.     During the class period, when a consumer called the phone number listed on the Costa sunglass box (1.855.MYCOSTA, or 1.855.692.6782), the recording instructed that Costa does not provide repair assessments over the phone.  Accordingly, consumers must pay to ship their sunglasses to Costa before Costa will provide a repair assessment or disclose the cost of the repairs.

69.     During the class period, Costa did not display its allegedly "nominal" repair costs on its website.  And in general, a consumer was not able to receive pricing or repair information over the phone.  Thus, discovery of the true nature and extent of Costa's deception requires owning a pair of Costas and sending them in for repair.  Only after paying to ship and relinquishing possession of the sunglasses to Costa does a consumer learn that he or she has been duped.

70.     Upon information and belief, over time and without changing its "nominal fee" warranty, Costa inflated its repair charges so that they were far above a nominal amount and for the purpose of generating a significant profit from repairs.

71.     Costa has profited from its falsely-marketed products and its carefully-orchestrated label and image.

72.     As an immediate, direct, and proximate result of Costa's false warranty, Costa injured Plaintiffs Reed and Haney, and the class members.

11

## FACTUAL ALLEGATIONS RELATED TO THE "LIFETIME WARRANTY"

73.     Costa advertises to consumers through a variety of mediums a "backed for life" "Lifetime Warranty" against manufacturer's defects.

74.     Costa's "Lifetime Warranty" was uniformly printed on the side of every Costa sunglasses box, placed on a card inside of every Costa sunglasses box, and was part of the basis of the bargain for each purchase.

75.     In order for consumers to take advantage of Costa's "Lifetime Warranty," Costa requires that consumers send their damaged sunglasses to Costa's warranty center for evaluation by Costa.  Once the consumer sends his or her sunglasses to the warranty center, Costa inspects the sunglasses to determine the cause of the damage.

76.     If Costa determines that the consumer's sunglasses were damaged as a result of a manufacturer's defect, Costa honors its advertised "Lifetime Warranty" but charges the consumer $11.95 plus tax per warranty claim.  The fee that Costa charges consumers to take advantage of Costa's "Lifetime Warranty" is illegal under the MMWA.

### *Plaintiff Smith's Purchase and Warranty Experience.*

77.     In 2014, Smith purchased a pair of Costa Fisch sunglasses backed by Costa's purported "Lifetime Warranty" against manufacturer's defects.

78.     In September of 2015, Smith sent his sunglasses to Costa's warranty center for inspection.

79.     After inspection, Costa determined that Smith's rubber gaskets (nose piece) needed to be replaced and the lenses were delaminated, and that these issues were caused by a manufacturer's defect.

80.     Costa purported to honor the "Lifetime Warranty," but violated its obligations under the MMWA by charging Plaintiff Smith $11.95 plus tax to take advantage of Costa's "Lifetime Warranty."

81.     Smith paid the $11.95 plus tax charged by Costa to take advantage of the "Lifetime Warranty."

82.     Costa's actions — by advertising a "Lifetime Warranty" but charging Smith and other customers $11.95 plus tax per warranty claim — violate the MMWA, which requires warrantors providing full lifetime warranties to remedy consumer products "***without charge***."

83.     As an immediate, direct, and proximate result of Costa's illegal warranty practices, Costa has unfairly and unjustly charged customers $11.95 plus tax on each warranty claim made under a purported "Lifetime Warranty" against manufacturer's defects on Costa sunglasses.

84.     Smith and the members of the class have paid $11.95 plus tax per warranty claim to Costa, when the MMWA required that Costa honor its warranty "without charge."

85.     Costa failed to comply with its obligations under the MMWA, and each of the members of the class were harmed by Costa's failures.

## CLASS ALLEGATIONS

86.     As set forth below, Plaintiffs bring this action both on behalf of themselves and as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of the following class members (the "Class"):

> **COUNT I - FLORIDA PURCHASE CLASS: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 et seq.):**
>
> All citizens of the State of Florida who purchased non-prescription, non-promotional Costa sunglasses from July 28, 2013 to January 31, 2018.

**COUNT II - FLORIDA REPAIR CLASS: BREACH OF WARRANTY VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, et seq.):**

All citizens of the State of Florida who: (i) purchased non-prescription, non-promotional Costa sunglasses before January 1, 2018; and (ii) were charged a repair fee by Costa, from July 28, 2012 to the present, to repair or replace their Costa sunglasses damaged by accident, normal wear and tear, or misuse.

**COUNT III – NATIONWIDE REPAIR CLASS: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 et seq.):**

All citizens in the United States (excluding citizens of the State of Florida) who: (i) purchased non-prescription, non-promotional Costa sunglasses before January 1, 2018, and (ii) were charged a repair fee by Costa, from April 3, 2015 to the present, to repair or replace their Costa sunglasses damaged by accident, normal wear and tear, or misuse.

**COUNT IV - NATIONWIDE WARRANTY CLASS: OVERCHARGE VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, et seq.):**

All citizens in the United States who: (i) purchased a pair of Costa sunglasses prior to January 1, 2016; and (ii) paid Costa a warranty fee to repair or replace sunglasses damaged by a manufacturer's defect from August 20, 2013 to the present.

87.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their respective claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

88.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1):**  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  Upon information and belief, and based on Costa's records and estimates, the Florida Purchase Class contains over 1.1 million members; the Florida Repair Class contains over 141,000 members; the Nationwide Repair Class contains approximately 529,000 members; and the Nationwide Warranty Class contains approximately 500,000 members.   The precise number of

14

Class members is unknown to Plaintiffs, but may be ascertained from Costa's books and records. However, by any account, it is clear that numerosity is met here.

89.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):** This action involves common questions of law and fact which predominate over any questions affecting individual Class members including, without limitation:

   a.    Whether Costa engaged in the conduct alleged herein;

   a.    With respect to Counts I, II and III, whether the amount charged by Costa to repair sunglasses damaged by accident, normal wear and tear, or misuse is "nominal";

   b.    With respect to Counts I and III, whether Costa engaged in deceptive and unfair trade practices by claiming Costa will repair sunglasses damaged due to accident, normal wear and tear, or misuse for a nominal fee

   c.    With respect to Count IV, whether Costa charged customers a fee to repair or replace sunglasses damaged by a manufacturer's defect;

   d.    With respect to Count IV, whether Costa's conduct in charging a fee for the repair of manufacturer's defects covered by a "Lifetime Warranty" constitutes a violation of the MMWA as asserted herein;

   e.    Whether Plaintiffs and the other members of the Classes were injured by Costa's conduct and, if so, the appropriate class-wide measure of damages for Class members; and

   f.    The scope of any declaratory or non-monetary relief to which Plaintiffs and the other Class members are entitled.

90.    **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiffs' claims are typical of the claims of the Class because, among other things, all Class members were comparably

injured through Costa's wrongful conduct as described herein. Under Counts I, II and III, all Class members purchased Costa sunglasses purportedly backed by Costa's claim that it would repair sunglasses damaged due to accident, normal wear and tear, or misuse for a nominal fee. Under Count IV, all Class members purchased Costa sunglasses purportedly backed by Costa's "Lifetime Warranty" for damage to the sunglasses as a result of a manufacturer's defect, and were illegally charged a fee by Costa to repair those sunglasses damaged by a manufacturer's defect. The injuries to each Class member were caused directly by Costa's wrongful conduct. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

91. **Adequacy – Federal Rule of Civil Procedure 23(a)(4):** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class. None of the Plaintiffs, nor counsel, have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by seeking the maximum possible recovery for the Class.

92. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2):** Costa has acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

93. **Superiority – Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no

unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Costa, so it would be impracticable for the Class members to individually seek redress for Costa's wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

94.     The issues raised herein arise under federal law, and having all claims nationwide be decided in a single lawsuit, in Florida where Costa is located, is efficient, economical, and fair.

## <u>COUNT I</u>
## FLORIDA PURCHASE CLASS: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 *et seq.*)

95.     Haney, individually and on behalf of all others similarly situated, realleges and incorporates the allegations of paragraphs 1-53, 59-72 and 86-94 above.

96.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (the "Act").

97.     The stated purpose of the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

98.     Haney and all Class members are "consumers," and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Fla. Stat. § 501.203(7) and (8).  Costa sunglasses are a "good" within the meaning of the Act.

17

99.     Costa violated and continues to violate the Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

100.    It is Costa's policy not to provide repair assessments over the phone. Nor does Costa display repair costs on its website.  Thus, a customer cannot learn the true cost of Costa's repair services until the customer mails its sunglasses to Costa (at the customer's expense).

101.    Costa prominently advertises the terms and conditions of its warranty on the side of each box of sunglasses.  The box states: "[I]f our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee."

102.    However, contrary to its representations, Costa does not repair sunglasses damaged by accident, normal wear and tear, or misuse for a nominal fee, and withholds such information from consumers at the time of sale.

103.    Costa's acts and omissions constitute unfair and deceptive business practices because Costa's claim that it will repair sunglasses damaged by misuse for a "nominal" fee is likely to mislead a reasonable consumer.

104.    A reasonable consumer would believe that a "nominal" fee would be no more than a few dollars, and certainly far less than Costa charges.

105.    Haney and the other Class members could not have reasonably avoided the injury each of them suffered.

106.    As a direct and proximate cause of the violations herein, Haney and the Class members have suffered injury in fact, actual damages, and have lost money as a result of Costa's unlawful, unfair, and fraudulent conduct.  Accordingly, Haney and the Class members are entitled to compensatory damages, including but not limited to the difference in value between the Costa

#73150407_v2

sunglasses as originally delivered and as they should have been delivered, injunctive relief, costs and reasonable attorneys' fees.

107.    Pursuant to Section 501.211(1), Florida Statutes, Haney and the Class members seek a declaration that Defendant's conduct is in violation of applicable law.

108.    Pursuant to Section 501.211(1), Florida Statutes, Haney and the Class members seek injunctive relief barring Costa from continuing to falsely advertise and label its sunglasses to the public by stating that the sunglasses will be repaired for a nominal fee.  Injunctive relief is necessary and proper because, unless so enjoined, Costa will continue to engage in the deceptive actions explained herein.  Injunctive relief is further appropriate here because:

    a.    Haney can demonstrate a likelihood of irreparable harm and lack of an adequate remedy at law;

    b.    Haney can demonstrate a substantial likelihood of success on the merits of the FDUTPA claim;

    c.    The threatened injury to the public as a result of Costa's deceptive and unlawful actions outweighs any possible harm to Costa; and

    d.    Granting a preliminary injunction will benefit, and not disserve, the public interest.

<u>**COUNT II**</u>
**FLORIDA REPAIR CLASS: BREACH OF WARRANTY VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. §§ 2301, et seq.)**

109.    Haney, individually and on behalf of all others similarly situated, realleges and incorporates the allegations of paragraphs 1-53, 59-72 and 86-94 above.

110.    Costa's acts and omissions, as alleged herein, violate the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA"), which governs consumer product warranties and sets forth the rights of consumers and the obligations of warrantors who provide written warranties.

19

111.    The MMWA allows consumers to bring civil actions for both legal and equitable relief.  15 U.S.C. §2310(d)(1).

112.    Haney and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

113.    Costa is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

114.    Costa sunglasses constitute a consumer product as defined in 15 U.S.C. §2301(1).

115.    Costa has provided a written warranty to Haney and members of the Class that its sunglasses, if damaged by accident, normal wear and tear, or misuse, will be repaired for "a nominal fee."

116.    Costa has breached the terms of its written warranty by failing to repair sunglasses damaged by accident, normal wear and tear, or misuse, for "a nominal fee."

117.    A timely notice to Costa of the breach on behalf of all members of the Class was sent to Costa by letter dated July 12, 2017.

118.    Through this letter, Costa was provided with a reasonable opportunity to cure Costa's failure to comply with the terms of its written warranty.

119.    In response to the letter, Costa failed and has continued to refuse to cure its noncompliance.

120.    Costa's breach of the written warranty resulted in damages to Haney and other members of the Class, who bought Costa sunglasses but did not receive the goods as warranted.

## <u>COUNT III</u>
### NATIONWIDE REPAIR CLASS: VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 *et seq.*)

124.    Reed, individually and on behalf of all others similarly situated, realleges and incorporates the allegations of paragraphs 1-47, 54-72 and 86-94 above.

125.    This cause of action is brought on behalf of the Class pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (the "Act").

126.    The stated purpose of the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

127.    Reed and all Class members are "consumers," and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Fla. Stat. § 501.203(7) and (8).

128.    Costa violated and continues to violate the Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

129.    Specifically, during the class period, Costa prominently advertised the terms and conditions of its warranty on the side of each box of non-promotional, non-prescription sunglasses. The box stated: "[I]f our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee."

130.    Contrary to those representations, Costa does not repair sunglasses damaged by accident, normal wear and tear, or misuse for a nominal fee.

131.    During the class period, Costa did not provide pricing information to customers at the point of purchase.  It is Costa's policy not to provide repair assessments over the phone.  And Costa does not display repair costs on its website.  Thus, a customer cannot learn the true cost of Costa's repair services until the customer mails its sunglasses to Costa (at the customer's expense).

132.    Costa's acts and omissions are a violation of the Act because Costa's claim that it will repair sunglasses damaged by misuse for a "nominal" fee is deceptive, unfair, unconscionable,

and likely to mislead a reasonable consumer, and its practice of charging an amount for repairs that is far more than nominal is likewise deceptive, unfair, and unconscionable.

133.   A reasonable consumer would believe that a "nominal" fee would be no more than a few dollars, and certainly far less than Costa charges.

134.   Reed and the other Class members had no way of reasonably knowing at the time of purchase that the sunglasses they purchased did not have the warranty that was marketed and advertised by Costa.  Thus, they could not have reasonably avoided the injury each of them suffered.

135.   As a direct and proximate cause of the violations herein, Reed and the Class members have suffered injury in fact, actual damages, and have lost money as a result of Costa's unlawful, unfair, and fraudulent conduct.

136.   Costa's deceptive and unfair trade practices have resulted in damages to Reed and other members of the Class.

137.   Costa's offending conduct occurred predominately within Florida such that the application of the Act to a nationwide class of consumers is proper.  Specifically, during the class period:

    a.  Costa's headquarters is in Florida;

    b.  Costa sunglasses are manufactured in Florida and distributed out of Florida;

    c.  Costa's "nominal fee" warranty was printed on the sunglass box, and these sunglass boxes were printed and shipped to customers and distributors from Florida;

    d.  Costa directed its communications and advertisements from Florida to consumers around the country;

    e.  Costa required each and every consumer to send their sunglasses to Costa's repair center in Florida for review and analysis;

f.   Upon assessment by Costa's repair technicians, Costa contacted customers to advise of the significant repair costs via email and phone from its repair center in Florida;

g.   Costa conducted the repairs in Florida;

h.   Costa charged customers a fee for the repairs in Florida; and

i.   After the repairs were completed, Costa mailed the repaired sunglasses to customers from its repair center in Florida.

138.   Pursuant to Section 501.211(1), Florida Statutes, Reed and the Class members seek a declaration that Defendant's conduct is in violation of applicable law.

139.   Pursuant to Section 501.211(1), Florida Statutes, Reed and the Class members seek injunctive relief barring Costa from continuing to falsely advertise and label its sunglasses to the public by stating that the sunglasses will be repaired for a nominal fee. Injunctive relief is necessary and proper because Reed and the Class members have been aggrieved by Costa's unfair and deceptive acts and, unless so enjoined, Costa will continue to engage in the deceptive actions explained herein.

## **COUNT IV**
## **NATIONWIDE WARRANTY CLASS: OVERCHARGE VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT  (15 U.S.C. §§ 2301, *et seq.*)**

140.   Smith, individually and on behalf of the Class, re-alleges and incorporates the allegations of paragraphs 1-26 and 73-94 as if fully set forth herein.

141.   Smith brings this count individually and on behalf of the Class.

142.   Costa's acts and omissions, as alleged herein, violate the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"), which governs consumer product warranties and sets forth the rights of consumers and the obligations of warrantors who provide written warranties.

23

143.   The MMWA allows consumers to bring civil actions for both legal and equitable relief.  15 U.S.C. § 2310(d)(1).

144.   Smith and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

145.   Costa is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

146.   Costa sunglasses constitute a consumer product as defined in 15 U.S.C. § 2301(1).

147.   Costa has provided, advertised, and promoted a written warranty to Smith and members of the Class in connection with the sale of Costa sunglasses that its sunglasses are backed by a "Lifetime Warranty" against manufacturer's defects.  This constitutes a written warranty within the meaning of the MMWA, 15 U.S.C. § 2301(6).

148.   This written warranty was advertised and promoted by Costa through a variety of different means and types of mediums.

149.   Costa's "Lifetime Warranty" constitutes a full warranty under the MMWA.

150.   Among other things, a full warranty requires the warrantor to remedy defects in a product within a reasonable time and *without charge*. 15 U.S.C. § 2304.

151.   The term "without charge" means that the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy or a warranted consumer product.  15 U.S.C. § 2304(d).

152.   Costa has violated the MMWA by charging Smith and members of the Class a fee in connection with warranty claims made on Costa sunglasses subject to Costa's "Lifetime Warranty."

153.   A timely notice to Costa of its violations of the MMWA, on behalf of Smith and all members of the Class, was sent to Costa by letter dated July 18, 2018.  Through this letter, Costa

was provided a reasonable opportunity to cure Costa's illegal warranty practices.  In response to the letter, Costa failed and/or has continued to refuse to cure its noncompliance.

154.    Costa's illegal warranty practices, as described herein, have resulted in damages to Smith and the members of the Class who bought Costa sunglasses subject to a "Lifetime Warranty," but were charged an illegal fee in connection with warranty claims for sunglasses damaged as a result of a manufacturer's defect.

**WHEREFORE,** Plaintiffs, individually and on behalf of the Class, pray for relief as follows:

a) An order certifying that this action is properly brought and may be maintained as a class action, that Haney be appointed the class representative for Counts I and II, that Reed be appointed the class representative for Count III, that Smith be appointed as the class representative for Count IV, and that Plaintiffs' counsel, Holland & Knight LLP, be appointed counsel for the Class;

b) An Order declaring Defendant's conduct to be in violation of applicable law and enjoining Defendant from pursuing the unlawful acts and practices alleged herein;

c) An Order enjoining Defendant from falsely promising to repair or replace its sunglasses damaged by normal wear and tear, accident or misuse for a nominal fee;

d) An Order enjoining Defendant from violating MMWA, as alleged herein;

e) Compensatory damages, and all other damages allowable under the law, sustained by Plaintiffs and the Class members;

f) Payment of costs of suit herein incurred;

g) Pre-judgment and post-judgment interest at the maximum rate allowable at law on any amounts awarded;

h)   Payment of reasonable attorneys' fees pursuant to Sections 501.211(2) and

501.2105, Florida Statutes, and 15 U.S.C. § 2310(d)(2); and

i)   Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated this <u>25th</u> day of February, 2020.

                                                **HOLLAND & KNIGHT LLP**

                                                /s/ Peter P. Hargitai
                                                Peter P. Hargitai (FBN 85375)
                                                peter.hargitai@hklaw.com
                                                Joshua H. Roberts (FBN 042029)
                                                joshua.roberts@hklaw.com
                                                Laura B. Renstrom (FBN 108019)
                                                laura.renstrom@hklaw.com
                                                Michael M. Gropper (FBN 105959)
                                                michael.gropper@hklaw.com
                                                50 North Laura Street, Suite 3900
                                                Jacksonville, Florida 32202
                                                Telephone:  (904) 353-2000
                                                Facsimile:  (904) 358-1872

                                                *Attorneys for Plaintiffs*
                                                *and the Class*