**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

       Plaintiff,

v.                                  Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

       Defendant.
_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT**
**CLASS, APPROVAL OF NOTICE TO SETTLEMENT CLASS,**
**AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     HISTORY OF THE LITIGATION ........................................................................... 2

    A.    The *Haney* Action ............................................................................................... 3

    B.    The *Reed* Action ................................................................................................. 4

    C.    The *Smith* Action ............................................................................................... 5

    D.    The Global Action ................................................................................................ 6

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS ....................................... 6

    A.    The Classes ........................................................................................................... 6

    B.    Monetary and Non-Monetary Benefits for the Settlement Class ........................... 7

    C.    Class Release ...................................................................................................... 10

    D.    Incentive Awards, Attorneys' Fees, Costs and Expenses ..................................... 10

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL ........................................ 10

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL.................................... 12

    A.    The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel.......................................................................... 12

    B.    The Settlement is Fair, Adequate and Reasonable............................................... 13

        i.     Likelihood of Success at Trial ................................................................ 13

        ii.    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair................................................. 15

        iii.   Complexity, Expense and Duration of Litigation .................................... 16

        iv.    Stage of the Proceedings ......................................................................... 17

VI.     THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED................... 17

    A.    The Requirements of Rule 23(a) Are Met. .......................................................... 18

        i.     Numerosity is Established........................................................................ 18

        ii.    Commonality is Established ..................................................................... 18

        iii.   Typicality is Established .......................................................................... 19

        iv.    Adequacy is Established .......................................................................... 20

        v.     Ascertainability is Established ................................................................. 21

    B.    The Requirements of Rule 23(b)(3) – Predominance and Superiority – Are Met.21

VII.    THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED....... 22

VIII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................ 25

IX.     CONCLUSION........................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Appleyard v. Wallace*,
754 F.2d 955 (11th Cir. 1985) ...............................................................20

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ............................................................10

*Behrens v. Wometco Enterprises, Inc*.,
118 F.R.D. 534 (S.D. Fla. 1988)............................................................15

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) .........................................................10, 11

*Borcea v. Carnival Corp.*,
238 F.R.D. 664 (S.D. Fla. 2006) ............................................................17

*Brendan C. Haney v. Costa Del Mar, Inc.*,
Case No. 16-2017-CA-004794-XXXX-MA.............................................2

*Busby v. JRHBW Realty, Inc.*,
513 F.3d 1314 (11th Cir. 2008) .............................................................19

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
562 F. App'x 782 (11th Cir. 2014) (unpublished) .................................21

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 654 (S.D. Fla. 2011)..............................................12, 13, 17

*In re Checking Account Overdraft Litig.*,
286 F.R.D. 645 (S.D. Fla. 2012)............................................................18

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1997) ..............................................................15

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).....................................................................13

*In re Disposable Contact Lens Antitrust Litig.*,
170 F.R.D. 524 (M.D. Fla. 1996)...........................................................20

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).................................................................................23

*Ferguson v. Upscale Saturday Night, Inc.*,
   2007 WL 2774196 (M.D. Fla. Sept. 6, 2007) ......................................................11

*Francisco v. Numismatic Guar. Corp. of Am.*,
   2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .........................................................12

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 14, 2007) .......................................................24

*Gerald E. Reed IV v. Costa Del Mar, Inc.*,
   Case No. 6:19-cv-1751-Orl-37LRH (M.D. Fla.) ...................................................3

*Hernandez v. Tropical Constr. & Maint. Corp.*,
   2007 WL 1201143 (M.D. Fla. Apr. 23, 2007) ......................................................11

*Holman v. Student Loan Xpress, Inc.*,
   2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) .....................................................13

*Kelly v. Phiten USA Inc.*,
   277 F.R.D. 564 (S.D. Iowa 2011) ........................................................................25

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) .............................................................................20

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...............................................................................25

*Lipuma v. American Express Co.*,
   406 F.Supp. 2d 1298 (S.D. Fla 2005) .............................................................16, 17

*Little v. T-Mobile USA, Inc.*,
   691 F.3d 1302 (11th Cir. 2012) ...........................................................................21

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*,
   221 F.3d 1235 (11th Cir. 2000) ...........................................................................20

*Mills v. Foremost Ins. Co.*,
   269 F.R.D. 663 (M.D. Fla. 2010).........................................................................18

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................24, 25

*Murray v. Auslander*,
   244 F.3d 807 (11th Cir. 2001) .........................................................................18, 20

*Rollins, Inc. v. Butland*,
   951 So. 2d 860 (Fla. 1st DCA 2006) ....................................................................14

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ............................................................................22

*Smith v. Wm. Wrigley Jr. Co.*,
  No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010)............................................11

*In re Sony Corp. SXRD Rear Projection Telev. Mktg., Sales Practices & Prods. Liab. Litig.*,
  2010 WL 1993817 (S.D.N.Y. May 19, 2010) ..........................................................25

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005)..........................................................................11

*Troy Smith v. Costa Del Mar, Inc.*,
  Case No.: 3:18-cv-1011-J-32JRK (M.D. Fla.)..........................................................3

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) ............................................................................23

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ............................................................................10

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ............................................................................18

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) ............................................................................18

**Statutes**

15 U.S.C. § 2304 ............................................................................19

**Other Authorities**

Fed. R. Civ. P. 23(a)(1)............................................................................18

Fed. R. Civ. P. 23(a)(2)............................................................................18

Fed. R. Civ. P. 23(a)(3)............................................................................19

Fed. R. Civ. P. 23(b)(3)............................................................................22

Manual for Complex Litigation (3d ed. 1995)................................................11, 12, 22

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Brendan Haney, Gerald Reed, and Troy Smith (collectively, "Plaintiffs") respectfully move for preliminary approval of the proposed Settlement, memorialized by the Settlement Agreement attached hereto as **Exhibit 1** (the "Agreement"), which will resolve Plaintiffs' and all Class Members' Claims in the Litigation.[1] Defendant Costa Del Mar, Inc. ("Costa") does not oppose this motion. The Court should grant preliminary approval because the Agreement provides substantial relief for the Class and because the terms of the settlement are fair, adequate, and reasonable.

Following nearly three years of hotly-contested litigation and extensive negotiations, the Parties have reached a settlement of this consumer class action resulting in over $60 million of value to the Class, consisting of over 2.1 million claims. The Settlement is a modern settlement that provides Class Members with various forms of relief and allows Class Members to obtain such relief without ever leaving their homes. ***First***, Costa has agreed to establish a $40 million fund, from which Costa will issue non-personalized, stackable, transferable Product Vouchers, ranging in value from $8.99 to $19.99 per Claim (at minimum), that can be redeemed for hundreds of items on Costa's website, without Class Members having to spend any of their own money to obtain such products. ***Second***, Costa has agreed to cover, at no cost to the consumer, all shipping and handling expenses (a value of approximately $21 million to the entire Class), such that Class Members can redeem Product Vouchers on Costa's website and the product will be delivered to Class Members for free. ***Third***, Class Members will not be charged sales tax on products chosen by Class Members, to the extent of the value of the Product Vouchers (an additional monetary value to the Class). ***Fourth***, by Court approval of this Settlement, consumers nationwide, including

---

[1] All capitalized terms not otherwise defined herein shall have the meanings provided in the Agreement.

Class Members, will obtain significant injunctive relief that prohibits Costa from engaging in the conduct that gave rise to the Litigation.[2] Specifically, as a direct result of this Litigation, Costa agreed to modifications to product packaging and marketing materials to: (i) not title its warranty for Costa's plano sunglasses as a "Lifetime Warranty" for so long as the terms and conditions of such warranty are substantially the same as currently offered by Costa; and (ii) refrain from describing fees for replacement of scratched lenses, frames and other parts caused by accidental damage, wear and tear, or misuse as "nominal" fees. The Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, including mediation efforts conducted by Terrence White. In view of the procedural posture and risks presented, the Settlement is an excellent result for the Class. *See* Declaration of Peter P. Hargitai ("Hargitai Decl."), **Exhibit 2.**

Because the proposed Settlement meets the standard for preliminary approval, the Parties move the Court to enter the Proposed Preliminary Approval Order attached hereto as **Exhibit 3**. The Order will: (1) preliminarily approve the terms of the proposed Settlement; (2) preliminarily certify the Florida Purchase, Florida Repair, Nationwide Repair, and Warranty Classes; (3) approve Plaintiffs as class representatives and appoint Plaintiffs' Class Counsel as counsel for the Class; (4) appoint the Settlement Administrator, determine that the Notice program complies with all legal requirements, and approve the form, content and manner of the notices; and (5) schedule a Fairness Hearing, and certain deadlines related thereto, on final approval of the Settlement and Plaintiffs' Class Counsel's motion for Attorneys' Fees, Costs, and Expenses.

## II.   HISTORY OF THE LITIGATION

This Litigation stems from three putative class actions addressing Costa's warranty and repair practices: (1) *Brendan C. Haney v. Costa Del Mar, Inc.*, Case No. 16-2017-CA-004794-

---

[2] Plaintiffs have engaged an expert witness to measure the value of this relief, and will provide further information on the value of this injunctive relief in the Motion for Final Approval.

XXXX-MA, Fourth Judicial Circuit of Florida, on appeal to Florida's First District Court of Appeal, Case No. 1D19-1787 [*Haney* Action]; (2) *Gerald E. Reed IV v. Costa Del Mar, Inc.*, Case No. 6:19-cv-1751-Orl-37LRH (M.D. Fla.) [*Reed* Action]; and (3) *Troy Smith v. Costa Del Mar, Inc.*, Case No.: 3:18-cv-1011-J-32JRK (M.D. Fla.) [*Smith* Action].

A.    The *Haney* Action

The *Haney* Action was filed on July 28, 2017 in the Duval County Circuit Court, Fourth Judicial Circuit of Florida. *Haney* involved claims for alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and breach of warranty under the Magnuson-Moss Warranty Act ("MMWA") arising out of Costa's promise that "if our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee." The *Haney* Action was heavily litigated by both parties, as set forth in depth in the Hargitai Declaration, **Exhibit 2**. Plaintiff successfully briefed and defended against Costa's Motion to Dismiss. The parties engaged in multiple rounds of written discovery, and Plaintiff reviewed and analyzed over 149,000 pages of documents produced by Costa. The parties had several discovery disputes, resulting in Plaintiff's filing of three Motions to Compel and a Motion for in Camera Review of Documents on Costa's Privilege Log and to Un-Designate Documents Marked "Confidential." In the *Haney* Action, Plaintiff deposed fourteen Costa witnesses, including three expert witnesses. Costa took the deposition of named Plaintiff Brendan Haney along with the depositions of Plaintiff's three expert witnesses. Plaintiff successfully defended against Costa's Motion to Strike Stefan Boedeker as Expert Witness. Plaintiff then briefed and filed a comprehensive, Motion for Class Certification with a detailed Statement of Facts in support thereof. After a three-day evidentiary hearing, involving testimony from fifteen witnesses and argument of counsel, Plaintiff was successful in obtaining class certification on both the FDUTPA

3

and MMWA classes. Costa appealed the Court's Order Granting Class Certification, and after appellate briefing, the First District Court of Appeal heard oral argument on February 11, 2020.

### B.    The *Reed* Action

Plaintiff filed the *Reed* Action on April 3, 2019 in the United States District Court, Middle District of Florida, Jacksonville Division. The case was subsequently transferred to the Middle District of Florida, Orlando Division. Like the *Haney* Action, *Reed* involves claims for alleged violations of FDUTPA arising out of Costa's promise that, "if our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee." In the *Reed* Action, Plaintiff sought to certify a nationwide class for violations of FDUTPA, contending that Costa's fees to repair or replace damaged components of Costa sunglasses were not nominal. Excluded from the class in *Reed* were citizens of the State of Florida, who were included in the classes sought to be certified in *Haney*.

The claims in *Reed* were similar to the claims in *Haney* insofar as they arose out of Costa's "nominal fee" language, but the cases had material differences. First, *Haney* concerned only Florida consumers, whereas *Reed* concerned consumers nationwide (excluding consumers in Florida). Second, *Reed* concerned only consumers who had sunglasses actually repaired, whereas the *Haney* FDUTPA class concerned Florida consumers who purchased Costa sunglasses, regardless of whether their sunglasses were actually repaired.

Like the *Haney* Action, the *Reed* Action involved significant efforts from both parties. The parties engaged in written discovery and participated in various conferences regarding the sufficiency of discovery. After issuing a subpoena to McGarrah Jessee LP, Plaintiff was required to file an action in the United States District Court, Western District of Texas to enforce the subpoena, which was transferred to the Middle District of Florida, Jacksonville Division. After oral argument and extensive briefing, the Court granted Plaintiff's Motion to Compel Non-Party

McGarrah Jessee LP to respond to Subpoena to Produce Documents. Plaintiff also filed a Motion for Protective Order regarding additional depositions of Costa's witnesses, and briefed and argued a Motion to Stay the case pending a ruling from Florida's First District Court of Appeal in *Haney*. Plaintiff's Class Counsel prepared for and defended the deposition of named Plaintiff Gerald E. Reed IV. Plaintiff also deposed two Costa witnesses, issued subpoena *duces tecum* to four Costa retailers, and retained four expert witnesses in support of class certification.

### C.      The *Smith* Action

Plaintiff filed the *Smith* Action on August 20, 2018 in the United States District Court, Middle District of Florida. *Smith* involves a federal statutory claim for Costa's alleged failure to comply with the substantive requirements of the MMWA by charging consumers a "processing fee" for repairs to sunglasses performed under Costa's unlimited "Lifetime Warranty." Plaintiff sought to certify a nationwide class of consumers under the MMWA.

Again, the parties aggressively prosecuted and defended the action. The parties engaged in multiple rounds of written discovery, and participated in various conferences regarding the sufficiency of discovery. Plaintiff analyzed voluminous data provided by Costa regarding warranty claims made by consumers nationwide, including over 30,000 additional pages of documents produced by Costa (in addition to the 149,000 documents deemed produced from the *Haney* Action). Plaintiff was successful in filing, and prevailing on, a Motion to Compel Defendant's Settlement Agreement with David Scott and Testimony Related Thereto. Plaintiff filed a Motion for Leave to Use Certain Depositions from an Earlier Action [the *Haney* Action] in Connection with this Case. Prior to oral argument, the parties reached a stipulation that permitted the use of the depositions from the *Haney* Action. Plaintiff retained two expert witnesses, who disclosed full expert reports in accordance with the Court's deadlines for expert witnesses. Plaintiff's counsel researched and defended against Costa's expert witness, Ian Ratner, CPA/ABV, ASA, CFE.

Plaintiff's counsel deposed three Costa witnesses, and prepared for and defended the deposition of named Plaintiff Troy Smith, along with the depositions of Plaintiff's two expert witnesses.

Plaintiff drafted and filed a 40-page Motion for Class Certification and a Motion for Summary Judgment, along with a Motion to Strike and Exclude the Testimony of Defendant's Expert, Ian Ratner. Plaintiff also filed an opposition to Costa's Motion for Summary Judgment. Plaintiffs' Counsel were heavily involved in preparation for a hearing on all pending motions scheduled for February 21, 2020, at the time the parties reached a global settlement of the Litigation. The *Smith* Action involved novel issues of law with no binding authority. On the merits, the claim was subject to cross-motions for summary judgment, and Costa opposed class certification on numerous grounds.

### D.     The Global Action

On February 11, 2020, the parties reached a global resolution of the *Haney*, *Reed*, and *Smith* Actions. To effectuate the Settlement, Plaintiffs filed an Unopposed Motion to Amend the Complaint in the *Smith* Action, consolidating the claims and classes sought to be certified. The Amended Complaint was docketed on March 2, 2020 (Dkt. 84).

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The Settlement's terms are detailed in the Agreement attached hereto as **Exhibit 1**. The following is a summary of the Settlement's material terms.

### A.     The Classes

For the purpose of implementing the terms of the Agreement, Plaintiffs request conditional certification of the following Classes, pursuant to Rule 23(b)(3):

**Florida Repair Class**: All citizens of the State of Florida who: (i) purchased Costa plano sunglasses before January 1, 2018; and (ii) were charged a fee by Costa, from July 28, 2012 through the date of entry of the Court's Final Order, to repair or replace their Costa plano sunglasses damaged by accident, normal wear and tear, or misuse.

**Nationwide Repair Class**: All citizens of the United States (excluding citizens of the State of Florida) who: (i) purchased Costa plano sunglasses before January 1, 2018, and (ii) were charged a repair fee by Costa, from April 3, 2015 through the date of entry of the Court's Final Order, to repair or replace their Costa plano sunglasses damaged by accident, normal wear and tear, or misuse.

**Florida Purchase Class**: All citizens of the State of Florida who purchased Costa plano sunglasses from July 28, 2013 to January 31, 2018.

**Warranty Class**: All citizens in the United States who: (i) purchased a pair of non-prescription Costa sunglasses prior to January 1, 2016; and (ii) paid Costa a warranty fee to repair or replace non-prescription sunglasses damaged by a manufacturer's defect from August 20, 2013 through the date of entry of the Court's Final Order.

Agreement, § II(A)(8). Excluded from the Class are: (1) Costa, any entity or division in which Costa has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the judge(s) to whom Litigation is or has previously been assigned and each judge's respective staff; (3) counsel for each of the Parties in this case; and (4) persons who timely and properly exclude themselves from the Class. *Id.*

### B. Monetary and Non-Monetary Benefits for the Settlement Class

Costa has agreed to provide significant monetary and non-monetary relief to Class Members. First, Costa has agreed to dedicate a Settlement Fund in the amount of $40,000,000 (Forty Million Dollars), from which the following will be paid: (i) payments to the Class Members in the form of Product Vouchers; (ii) Incentive Awards to Plaintiffs; (iii) payments to Plaintiffs' Class Counsel for approved Attorneys' Fees, Costs, and Expenses; (iv) any costs associated with disseminating the notice and otherwise implementing the notice program and claims administration, (v) and if due to be paid pursuant to the terms of the Agreement, a Cy Pres Payment of no more than $1,000,000 (One Million Dollars). *See* Agreement, § IV(A). Costa has also agreed to pay shipping and handling costs for all items redeemed by Class Members from Costa's online webstore, and consumers will not be charged sales tax on items redeemed up to the amount of the

Product Vouchers. *See* Agreement, § IV(D), (G). Thus, in addition to the value of the Product Vouchers, Class Members are entitled to receive additional substantial value deriving from more than $20 million in free shipping and handling[3] and saved sales tax costs on items redeemed using Product Vouchers.

All Claimants who submit a valid and timely Claim shall be entitled to receive a non-personalized, transferable, stackable Product Voucher with a two-year expiration date, which can be redeemed via Costa's online webstore or a toll-free number. *See* Agreement, § IV(D), (F). The estimated minimum value of Product Vouchers by class is set forth below:

| Class | Estimated Minimum Product Voucher Value |
|---|---|
| Florida Repair Class | $19.99 |
| Nationwide Repair Class | $19.99 |
| Florida Purchase Class | $10.00 |
| Warranty Class | $8.99 |

The Product Vouchers are redeemable for whole good merchandise items (as opposed to a discount or coupon off the purchase price). *See* Agreement, § IV(D). In other words, Class Members will not be required to pay any amount to Costa, separate and apart from the Product Voucher, in order to receive Costa merchandise. Under the Agreement, the express intention of the Parties is for Claimants to have maximum flexibility in connection with the use of the Product Vouchers. To that end, Claimants will not be required to travel to any retail establishment to redeem Product Vouchers, nor pay shipping costs or handling expenses, to redeem Product Vouchers for Costa merchandise. *Id.* Nor will class members be required to pay sales tax on items redeemed entirely with Product Vouchers. In addition, a Claimant may use multiple Product Vouchers at different times prior to their expiration, or stack some or all of the Product Vouchers

---

[3] Costa generally charges customers $9.95 for shipping on its webstore. The settlement in this case provides benefits to approximately 2.1 million consumers. Thus, the value to the Class of free shipping is over $20 million.

to obtain higher-valued products at no cost to the Claimant. *See* Agreement, § IV(F). For the Florida Repair Class, Nationwide Repair Class, and Warranty Class, the Class Members will receive a Product Voucher corresponding to every repair or warranty claim made to Costa, with no cap on the number of Product Vouchers received. For the Florida Purchase Class, there will be no cap on the number of Product Vouchers that a Class Member is entitled to receive, but a Class Member must submit verifiable proof-of-purchases in order to receive more than five (5) Product Vouchers. *See* Agreement, § IV(E).

Costa has also agreed to significant non-monetary relief in connection with this Settlement, which benefits consumers nationwide. As a result of the Litigation, Costa has agreed to the following modifications to its product packaging and marketing materials: (i) not title its warranty for Costa's plano sunglasses as a "Lifetime Warranty" for so long as the terms and conditions of such warranty are substantially the same as currently offered by Costa; and (ii) refrain from describing fees for replacement of scratched lenses, frames and other parts caused by accidental damage, wear and tear, or misuse as "nominal" fees. *See* Agreement, § IV(C).

Moreover, as a result of this Litigation, Costa has changed certain consumer-facing marketing materials and product packaging, including: (i) discontinuing the distribution of plano sunglasses in shipping boxes containing the "nominal fee" language; (ii) disposing of shipping boxes in inventory containing the "nominal fee" language, (iii) discontinuing the description on Costa's website of its warranty on plano sunglasses as a "Lifetime Warranty"; (iv) creating new sunglass shipping boxes that removes any reference to a "nominal fee" language related to repairs of sunglasses; and (v) modifying the repair section of Costa's website to disclose repair pricing to the consumer and describe such prices upfront, before sunglasses are sent in for repairs.

### C.     Class Release

In exchange for the benefits conferred by the Settlement, Plaintiffs and all Class Members who do not file a timely written request for exclusion will be deemed to have released Costa (and the Released Parties) from any and all claims and damages of any kind and/or type that were or could have been brought related to Costa's "nominal fee" promise or Costa's "lifetime warranty," including any and all claims that arise out of or relate to the facts and circumstances giving rise to the claims which were brought or could have been brought in the Litigation. The detailed release language can be found in Section XII of the Agreement.

### D.     Incentive Awards, Attorneys' Fees, Costs and Expenses

Plaintiffs' Class Counsel will seek Incentive Awards of $10,000.00 for each Plaintiff. Agreement at § X(B). The Incentive Awards will compensate the Plaintiffs for their significant time and effort in the Litigation, and for the risks they undertook in prosecuting the Litigation. Plaintiffs' Class Counsel will request an award of Attorneys' Fees, Costs and Expenses of 30% (thirty percent) of the total Settlement Fund, which the parties estimate will be well below 25% of the measurable benefits to the Class. *Id.* at § X(A).

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed class action settlement. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. The policy favoring settlement is especially relevant in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Assoc. for Disabled Am., Inc. v. Amoco*

*Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being the most complex."); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005). Indeed, the promotion of fair, adequate, and reasonable settlements is a fundamental tenet of litigation in the federal courts and there is a strong initial presumption that the compromise is fair and reasonable. *See Ferguson v. Upscale Saturday Night, Inc.*, 2007 WL 2774196, at *1 (M.D. Fla. Sept. 6, 2007); *Hernandez v. Tropical Constr. & Maint. Corp.*, 2007 WL 1201143, at *2 (M.D. Fla. Apr. 23, 2007).

Preliminary approval is "appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that "involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Id.* When determining whether a settlement is ultimately fair, adequate and reasonable, courts in the Eleventh Circuit look to six factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986. At times, courts will engage in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage. *See, e.g.*, *Smith*, 2010 WL 2401149, at *2. At this stage, however, the Court need only conduct a *prima facie* review of the relief and notice provided by the Agreement to determine whether notice should be sent to the Class Members. *Manual for Complex Lit.* at § 21.632.

11

## V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Each of the relevant factors weighs in favor of Preliminary Approval. First, the Settlement is the product of good-faith, informed and arm's length negotiations by competent counsel. A preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates the Settlement falls well within the range of reasonableness, such that Preliminary Approval is appropriate. Any settlement requires parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. With the benefit of full merits and expert discovery and preliminary trial preparations, Plaintiffs and Plaintiffs' Class Counsel ultimately concluded the benefits of this Settlement outweigh the risks attendant to continuing to fight over class certification and the merits of Plaintiffs' claims.

### A.      The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel

Courts accord considerable weight to the opinion of experienced and informed counsel in evaluating a proposed class action settlement. *See, e.g.*, *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("Counsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."). Accordingly, "a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litigation § 30.42, at 240 (3d ed. 1995); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (same).

As noted above, the Settlement was achieved after nearly three years of hard-fought litigation, involving three separate lawsuits filed in state and federal courts, an appeal to Florida's

First District Court of Appeal, and a comprehensive mediation conference with highly-respected mediator Terrence M. White. After intense back-and-forth negotiations, heavy briefing on all major issues in the cases – including class certification, summary judgment, and appellate briefing – the Parties reached an agreement in principle to settle the Litigation. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[M]ediator's involvement in … settlement negotiations helps to ensure that the proceedings are free of collusion and undue pressure."); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (no fraud or collusion on reaching settlement because the settlement is the product of "an arm's length, 'protracted and contentions' negotiation with a mediator"); *Checking Account*, 275 F.R.D. at 662 (approving settlement that was "the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator"). The extensive nature of the negotiations, the experience of Plaintiffs' Class Counsel, and the fair result reached illustrate the arm's-length negotiations that led to the ultimate Settlement.

### B.     The Settlement is Fair, Adequate and Reasonable

The Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that class notice and preliminary approval of the fairness, adequacy and reasonableness of the Settlement are warranted.[4]

### i.     Likelihood of Success at Trial

The Settlement provides Class Members with substantial monetary and non-monetary benefits. This recovery is an excellent benefit to the Settlement Class, especially in light of the

---

[4] Plaintiffs do not address the fifth factor – the substance and amount of opposition to the settlement – in the context of this Motion because at the preliminary stage, notice has not yet been distributed and no objections to the Settlement have been raised. Plaintiffs address the remaining factors herein, but reserve a more thorough analysis of each factor for the Motion for Final Approval.

significant risks posed by continued litigation. While Plaintiffs' Class Counsel was prepared to continue litigating these cases through trial, and Plaintiffs and Plaintiffs' Class Counsel remain confident in their ability to ultimately prove the claims, further litigation and trial posed risks. Although Plaintiffs and Plaintiffs' Class Counsel believe their case to be strong, Defendants advanced several arguments disputing liability, class certification, and damages.

In the *Haney* Action, the key issue on appeal involved a legal interpretation of the FDUTPA standard, and whether a plaintiff is required to prove that Plaintiff and the class members were uniformly *exposed* to a deceptive promise. This was a novel issue, with limited on-point authority, but depending on the appellate court's ruling, could have resulted in a reversal of the trial court's 93-page class certification order. The FDUTPA exposure issue was also relevant to the *Reed* Action, which involved a similar FDUTPA claim. In addition, in *Reed*, the parties disputed the extraterritorial application of FDUTPA to consumers outside of the State of Florida. Case law on the issue is divided. Finally, the *Smith* Action involved novel issues of federal MMWA law with no binding authority.

Moreover, even if Plaintiffs established liability, the Parties would have debated the issue of damages, particularly as to the FDUTPA claims. Damages under FDUTPA are generally measured by the "price premium," or the difference between the value of the product as advertised and the value of the product received. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 1st DCA 2006). To determine the "price premium" attributable to Costa's "nominal fee" promise, Plaintiffs engaged expert Ph.D. economist Stefan Boedeker to conduct a survey to determine how much Costa's use of the "nominal fee" claim increased the price of Costa's sunglasses. As an alternative, Plaintiffs engaged Alexander Rey, a certified valuation analyst and forensic accountant, to opine on the value of the "nominal fee" repair charge that Costa consumers were denied. Although the

survey and the valuation of the repair promise were not complete at the time of the global settlement, it is likely that the Voucher amounts for the Classes – resulting in $19.99 for the Florida and Nationwide Repair Classes, and $10.00 for the Florida Purchase Class – reflect a strong recovery for the Class Members. The maximum amount of damages that each member of the Warranty Class would have been entitled to receive, if ultimately successful on all of the claims, was $11.95 per class member. Costa also argued that, even it was liable, it was entitled to charge consumers for incidental expenses, which would reduce any recovery. The Settlement recovery of $8.99 per Class Member (plus free shipping and handling, typically $9.95) is therefore over 100% of the total maximum recovery to Class Members, which is a significant victory.

The Settlement balances the risks, costs, and delay inherent in complex cases. Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. Considering the risks of continued litigation and the time and expense which would be incurred to prosecute the Litigation through a trial, the Settlement represents a meaningful recovery that is in the best interests of the Class.

### ii. Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial…the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d 1326, 1330 (5th Cir. 1997). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* Courts have found settlements may be reasonable even where the plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts only to a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "[S]trong defenses to the claims presented makes

the possibility of a low recovery quite reasonable." *Lipuma v. Am. Express Co.*, 406 F.Supp. 2d 1298, 1323 (S.D. Fla. 2005). Here, Plaintiffs' Class Counsel have a thorough understanding of the practical and legal issues they would continue to face through trial, based on their experience in similar actions and the procedural posture of this Litigation at the time settlement was reached. Hargitai Decl. at ¶¶ 4-7.

Plaintiffs faced a number of challenges – including achieving class certification, proving liability, and calculating damages – as discussed above. The monetary value available to the Class far exceeds reasonable given the procedural posture, the complexity of the Litigation, and the significant barriers that stood between a final judgment in favor of Plaintiffs and the Class: potential denial of class certification; interlocutory Rule 23(f) appeal of class certification; summary judgment; trial; and post-trial appeals. Additionally, the non-monetary relief—Costa's agreement to refrain from titling its warranty as a "Lifetime Warranty" and to refrain from describing fees for the repair or replacement of damaged sunglasses as "nominal" fees—provides significant, meaningful benefits to the Class.

### iii.    Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would unduly tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of individual Class Members, would be impracticable. The Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner. The Parties already expended significant resources, including retaining and deposing experts, deposing witnesses, participating in a three-day evidentiary hearing on class certification, and briefing and arguing an appeal before Florida's First District Court of Appeal, among other things. Additional pretrial and trial proceedings in this Court and the appellate courts would have involved additional substantial and expensive resources, and

recovery for the Class would have been delayed, even if the Classes were ultimately successful. Absent settlement, this case would likely take at least another two years to exhaust all appeals.

### iv. Stage of the Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiff had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma,* 406 F. Supp. 2d at 1324. This Settlement was reached at a pivotal stage in the Litigation: in *Smith*, after full merits and expert discovery with pending motions for class certification and summary judgment; in *Haney*, after full merits and expert discovery, after class certification, and pending an appeal to Florida's First District Court of Appeal; and in *Reed*, in the midst of fact discovery and just days prior to the deadline for disclosure of class certification experts. Hargitai Decl. ¶¶ 4-5. Plaintiffs settled the Litigation with the benefit of significant discovery, which enabled Plaintiffs' Class Counsel to evaluate with confidence the strength and weaknesses of Plaintiffs' claims and Costa's defenses.

## VI. THE PROPOSED SETTLEMENT CLASSES SHOULD BE CERTIFIED

It is "well established" that "[a] class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Checking Account*, 2012 WL 4173458, at *2 (quoting *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006)). A settlement class, like other certified classes, must satisfy all of the requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, and one of the three requirements of Rule 23(b). *Borcea*, 238 F.R.D. at 672. The Classes satisfy each of these requirements. For settlement purposes, Costa does not oppose class certification.

### A.     The Requirements of Rule 23(a) Are Met.

#### i.     Numerosity is Established

The first explicit requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a general rule, more than forty class members will be adequate to meet the numerosity requirement. *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 670 (M.D. Fla. 2010). A plaintiff need not demonstrate the exact number of class members at the class-certification stage of the proceedings. *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 651 (S.D. Fla. 2012). Here, numerosity is satisfied because, based on Costa's records and data, the Class consists of approximately 2.1 million claims throughout the United States, and joinder of such persons is impracticable.

#### ii.     Commonality is Established

Commonality requires at least one question of law or fact common to the members of the Class. Fed. R. Civ. P. 23(a)(2). This is a "relatively light burden" that does not require "all questions of law and fact raised by the dispute be common." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citations omitted). Rather, it simply requires at least one issue whose resolution will affect all or a significant number of the putative class members. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). A "class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The commonality requirement is satisfied because the allegations of wrongdoing here involve Costa's standard repair charges and uniform warranty.

More specifically, for the Florida Repair Class, Nationwide Repair Class, and Florida Purchase Class, many common questions are implicated, including: (i) whether Costa advertised and offered to repair or replace sunglasses damaged by accident, normal wear and tear, or misuse for a "nominal fee"; (ii) what constitutes a "nominal fee"; (iii) whether Costa actually repairs or

replaces sunglasses damaged by accident, normal wear and tear, or misuse for a "nominal fee"; (iv) whether Costa's representation that it would repair sunglasses for a "nominal fee" would deceive an objective consumer acting reasonably under the circumstances; (v) whether Costa failed to honor the "nominal fee" promise as to the class; (vi) whether the "nominal fee" promise has value; (vii) whether Plaintiffs and the Class Members were deprived of the value of the "nominal fee" promise; (viii) whether Plaintiffs and the Class Members are entitled to damages and, if so, the method for calculating them. The *Haney* Court agreed that common questions exist and pervade, and certified the Florida Repair and Purchase Classes in a 93-page certification order.

For the Warranty Class, numerous common questions are implicated, including: (i) whether Costa offered a Lifetime Warranty on its sunglasses that covered any manufacturing defects on the sunglasses; (ii) whether Costa's Lifetime Warranty constitutes a warranty under the MMWA; (iii) whether Costa's Lifetime Warranty is a "full warranty" under the MMWA; (iv) whether Costa charged consumers a "processing fee," plus tax, to repair or replace their sunglasses covered by the Lifetime Warranty and damaged by a manufacturer's defect; and (v) whether Costa's act of charging consumers a "processing fee," plus tax, to take advantage of the Lifetime Warranty violates the MMWA, 15 U.S.C. § 2304. Plaintiffs' and the Class Members' claims rise and fall on these straightforward questions, and Plaintiffs' claims arise from the same practice and course of conduct that gives rise to the claims of each and every Class Member.

### iii.    Typicality is Established

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314 (11th Cir. 2008). The typicality requirement, like commonality, is not demanding. *See In re Disposable Contact Lens Antitrust Litig*., 170 F.R.D.

524, 532 (M.D. Fla. 1996). "[A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). Named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members." *Murray*, 144 F.3d at 811. Here, Plaintiffs' claims are reasonably coextensive with those of absent Class Members because they are based on the same conduct and the same injury. Both from a legal and a factual perspective, Plaintiffs' claims are substantially similar to the claims of every other class member. They were exposed to the same "nominal fee" or "Lifetime Warranty" claim, and suffered the same economic injuries.

For the Florida Repair, Nationwide Repair, and Florida Purchase Classes, Plaintiffs and each Class Member purchased Costa sunglasses covered by the same "nominal fee" promise. Each Class Member was damaged by Costa's failure to abide by the "nominal fee" promise. For the Warranty Class, Plaintiff and each Class Member purchased Costa sunglasses covered by the same full Lifetime Warranty. Each Class Member was charged and paid Costa an unlawful fee to repair or replace sunglasses backed by this Lifetime Warranty. And, each Class Member was damaged by Costa's alleged failure to comply with the requirements of the MMWA, specifically by charging the Class Members to repair or replace their sunglasses. Typicality is satisfied.

### iv.   Adequacy is Established

Rule 23(a)(4) requires a showing that the representative parties will fairly and adequately protect the interests of the class. The requirement applies both to the class representatives and their counsel. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000). Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Class because they have an equally great interest

in the relief offered by the Settlement, and absent Class Members have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel with extensive experience prosecuting complex class actions. *See* Hargitai Decl. ¶¶ 39-44 (attaching firm resumes).

### v.    Ascertainability is Established

Although not a Rule 23 prerequisite, courts note an implied requirement that a class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc*., 691 F.3d 1302, 1303-04 (11th Cir. 2012) (citation omitted). There is no need to identify individual class members as a prerequisite to certification; rather they must be identifiable by reference to objective criteria. *Bussey v. Macon Cnty. Greyhound Park, Inc*., 562 F. App'x 782, 787 (11th Cir. 2014) (unpublished). The analysis of the criteria should be "administratively feasible," meaning identifying class members should be "a manageable process that does not require much, if any, individual inquiries." *Id*. In the context of a class settlement, the class definition must be sufficiently precise and based on objective criteria such that a person reading the class definition as part of the nationwide notice campaign would be able to determine he or she is a Class Member. *Id.* Here, the Classes are defined with respect to objective criteria: citizens of certain states who purchased Costa sunglasses during a specific date range, and who were charged a repair or warranty fee by Costa during a specific date range. This objective criteria is administratively feasible here, as Class Members for the Florida Repair Class, the Nationwide Repair Class, and the Warranty Class are self-evident from Costa's own data, and the Florida Purchase Class can self-identify. Thus, in the context of the Settlement, the Class is sufficiently ascertainable.

### B.    The Requirements of Rule 23(b)(3) – Predominance and Superiority – Are Met.

A class action may be maintained if Rule 23(a) is satisfied and Plaintiff demonstrates predominance and superiority. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) requires common questions

of law or fact to predominate over individual questions, and that class action treatment is superior to other available methods of adjudication. Predominance requires common issues of fact and law to have "a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible individual issues. The claims of the Class Representatives and the Settlement Class are based on the same legal theories and the same uniform "nominal fee" and "Lifetime Warranty" advertising. Whether the "nominal fee" claims are false or deceptive need only be determined once as to the entire Class. Likewise, whether Costa violated the MMWA by charging a processing fee for warranty repairs under its "Lifetime Warranty" need only be determined once as to the Class. Resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication. See Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the small awards involved.

## VII.   THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED

"Rule 23(e)(1) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312 (internal quotation marks omitted). The test is whether the method employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy this standard, "[n]ot only must

22

the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

Costa has selected Epiq as the notice and settlement administrator. Agreement §§ II(A)(35), V. The notice program is described in the Settlement Agreement and in the attached Declaration of Cam Azari, **Exhibit 4**. The notice program has been designed to give the best notice practicable, is tailored to reach putative Class Members, and is reasonably calculated under the circumstances to apprise the Class of the pendency of the Litigation, Class Members' rights to make a claim, opt out, or object to the Settlement, and Class Counsel's fee application and request for Incentive Awards. *See* Agreement § V and Exhibits 1-2. Costa's Notice Program is comprised of three parts: (1) print publication notice (in newspapers, magazines, media outlets, and internet banners); (2) electronic notice (by email, and then first-class regular mail if there are any email bounce-backs); and (3) long form notice, which will be available on the Settlement Website, via e-mail, and via first-class regular mail if there are any email bounce-backs. *See* Agreement § V.

Costa maintains electronic records (containing emails, phone numbers, and addresses) for Class Members in the Florida Repair Class, Nationwide Repair Class, and Warranty Class. The Class Members in the above-mentioned Classes sent their sunglasses to Costa in connection with repair or warranty claims, communicated with Costa by email and telephone, and had their sunglasses mailed back to the address on file with Costa. Accordingly, the Parties anticipate they will be able to reach a large majority of the Class Members in the Florida Repair Class, Nationwide Repair Class, and Warranty Class with the information already maintained in Costa's systems. Further, Costa anticipates that due to the strong "tribe" affiliation, and given that a majority of

Costa consumers are brand loyal and repeat purchasers, Costa expects that consumers of Costa products will readily participate in this Settlement because Costa consumers value and purchase Costa non-sunglass merchandise and Costa expects that its consumers will readily participate in a settlement that provides consumers with free Costa merchandise. Costa also expects that many consumers may be entitled to multiple Product Vouchers from the Settlement. *See* Declaration of Travis Owens, **Exhibit 5**.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process and Federal Rule of Civil Procedure 23.[5] The Notice and Summary Notice "concisely and clearly state, in plain, easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, and defenses; that a class member may enter an appearance through counsel if the member so desires; and the binding effect of a class judgment on class members." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *8 (S.D. Fla. May 14, 2007). Further, the manner of providing notice – individual notice by email or by first-class regular mail to all Settlement Class Members who can be reasonably identified – represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262–63 (S.D. Fla. 2016) (recognizing that "[c]ourts have routinely held that notice programs that provide notice through a variety of media, including through email notice, satisfy the requirements of Federal Rule of Civil Procedure 23"); *see also Kelly v. Phiten USA Inc.*, 277 F.R.D. 564, 569–70 (S.D. Iowa 2011)

---

[5] The Summary Notice, Long Form Notice, and Claim Form are attached hereto as **Composite Exhibit 6**. Costa believes the Long Form Notice and Claim Form should state that two collections of Costa sunglasses (Del Mar and Untangled) are excluded from the Class, despite the fact that these collections were released after the class period and consumers who purchased these collections are not class members. Plaintiffs believe that referencing "Del Mar and Untangled Collections" is unnecessary, irrelevant, and would cause confusion. More specifically, the Del Mar and Untangled collections are special collections that were not released until after the class period. Further, the name of one special collection – Del Mar – matches the name of the company – Costa Del Mar – and creates unnecessary confusion for consumers.

(approving class notice where notice was sent through email relying on defendant's records of class members' email addresses). Courts have acknowledged that email notification is particularly appropriate where a majority of the defendant's contact and communications with class members occur electronically. *Morgan*, 301 F. Supp. 3d at 1262–63 (citing *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *In re Sony Corp. SXRD Rear Projection Telev. Mktg., Sales Practices & Prods. Liab. Litig.*, 2010 WL 1993817, at \*5 (S.D.N.Y. May 19, 2010)). Here, email notice to Class Members is appropriate because Costa maintains email addresses for a majority of the class members, and Costa's primary method of communication with the Class was through email.

## VIII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Preliminary Approval Order is entered by June 1, 2020, the Parties propose that the dates in the Joint Submission of Proposed Dates, Doc. 89, be adopted by the Court.

## IX.   CONCLUSION

Plaintiffs respectfully request that the Court preliminarily approve the class action settlement, conditionally certify the Class, approve the proposed Notice Plan, appoint Plaintiffs as class representatives and the undersigned counsel as Plaintiffs' Class Counsel, and enter the Parties' agreed-upon form of proposed Preliminary Approval Order, attached hereto as **Exhibit 3**.

## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel hereby certifies that they conferred with counsel for Costa regarding this Motion, and Costa does not oppose the relief requested herein.

Respectfully submitted this 1st day of May, 2020.

**HOLLAND & KNIGHT LLP**

/s/ Peter P. Hargitai
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)

joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 1, 2020, I filed the foregoing document with the

Court's CM/ECF system, which will provide notice of filing to the following recipients:

Sara F. Holladay-Tobias
Florida Bar No. 0026225
stobias@mcguirewoods.com
Emily Y. Rottmann
Florida Bar No. 0093154
erottmann@mcguirewoods.com
MCGUIREWOODS LLP
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)
Secondary Service Emails:
flservice@mcguirewoods.com
clambert@mcguirewoods.com
csweeney@mcguirewoods.com

– and –

Justin R. Opitz (*admitted pro hac vice*)
jopitz@mcguirewoods.com
MCGUIREWOODS LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 932-6471
(214) 273-7487 (fax)

– and –

Mark E. Anderson (*admitted pro hac vice*)

manderson@mcguirewoods.com
Jocelyn M. Mallette (*admitted pro hac vice*)
jmallette@mcguirewoods.com
MCGUIREWOODS LLP
434 Fayetteville Street, Suite 2600
Raleigh, North Carolina 27601
(919) 755-6600
(919) 755-6699 (fax)

*Attorneys and Trial Counsel for Defendant*
*Costa Del Mar, Inc.*

By: */s/ Peter P. Hargitai*
Peter P. Hargitai