**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**Case No. 3:18-cv-1011-J-23JRK**

**BRENDAN HANEY, GERALD REED, and TROY SMITH,**
**individually and on behalf of all others similarly situated,**

**Plaintiffs,**
**vs.**

**Costa Del Mar Inc.,**

**Defendant.**

**DECLARATION**
**OF**
**STEFAN BOEDEKER**

**June 10, 2020**

## List of Tables

Table 1: Summary of Survey Results ............................................................................. 6

Table 2: Costa Del Mar's Actual Annual Revenue 2010-2016 ..................................... 8

Table 3: Forecasted Revenue and Estimated Economic Loss Based on Average Revenues in 2010-2016 ........................................................................................................ 9

Table 4: Estimated Monetary Value of Injunctive Relief Related to Lifetime Warranty Claim .... 9

Table 5: Estimated Monetary Value of Injunctive Relief Related to Nominal Fee Claim ........... 12

Table 6: Estimated Monetary Value of Injunctive Relief for a Four Year Period by Claim (Nominal Fee Claim and Lifetime Warranty Claim) .................................................... 13

Declaration of Stefan Boedeker                    i

I, Stefan Boedeker, declare as follows:

1.      I am a Statistician and an Economist. I received a Bachelor of Science degree in Statistics and a Bachelor of Arts degree in Business Administration from the University of Dortmund/Germany in 1988. I received a Master of Science degree in Statistics from the University of Dortmund/Germany in 1988, and I received a Master of Arts degree in Economics from the University of California, San Diego in 1992. I also completed Ph.D. requirements (except dissertation) in Economics at the University of California, San Diego.

2.      I am a Managing Director at the Berkeley Research Group ("BRG") based at 550 South Hope Street, Suite 2150, Los Angeles, CA, 90071. Prior to joining BRG, I was a Partner at Resolution Economics. I also held Managing Director positions at Alvarez & Marsal, Navigant Consulting, and LECG, LLC. I held partner-level positions at Deloitte & Touche LLP, PricewaterhouseCoopers LLP, and Arthur Andersen LLP. At the three latter firms, I was responsible for the Economic and Statistical Consulting group on the West Coast. Before moving to the United States to attend graduate school, I worked as a statistician for the German Government from 1986 to 1989.

3.      For over 25 years, my work has focused on the application of economic, statistical, and financial models to a variety of areas. This includes providing solutions to business problems, supporting complex litigation in a consulting and expert witness role, and conducting economic impact studies in a large variety of industries including, but not limited to, healthcare, retail, grocery, manufacturing, technology, entertainment, manufacturing, automotive, energy and utilities, hospitality, and federal, state, and local government agencies.

4.      I have extensive experience designing and conducting surveys and conjoint studies, as well as statistically analysing results from surveys in both the litigation context as a consultant and/or designated expert and the non-litigation context as a statistical or economic consultant. I have issued numerous expert and rebuttal reports dealing with surveys, conjoint analysis, and statistical sampling related issues. I have been deposed on numerous occasions and have testified in court regarding surveys, conjoint studies, and statistical sampling-related issues.  My work in various cases has been admitted over *Daubert*-related challenges.

5.      I was initially retained in the matter of ***Brendan C. Haney v. Costa Del Mar Inc.***, **No. 16-2017-CA-004794-XXXX-MA (Fourth Judicial Circuit, Duval County, Florida) (the *Haney* Action)** in October 2016.  I submitted an Expert Report in the *Haney* Action on November 21, 2016. I was deposed on November 27, 2016 and I provided testimony at the class certification hearing in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida, on December 5, 2016.

6.      I was recently retained in the matter of ***Brendan Haney, Gerald Reed, and Troy Smith v. Costa Del Mar, Inc.***, **Case No. 3:18-cv-1011-J-32JRK (United States District Court, Middle District of Florida, Jacksonville Division) (the *Smith* Action)**, to quantify the monetary value of certain Injunctive Relief obtained by Plaintiffs in a global settlement of the *Smith* Action.

7.      The Amended Complaint in the *Smith* Action alleges that Costa's Sunglass Products carry a "Lifetime Warranty" against manufacturer's defects.  However, for consumers to take advantage of Costa's "Lifetime Warranty," Costa charges the customer $11.95 per warranty claim.  Plaintiff Smith contends that this $11.95 warranty fee is illegal under the Magnuson-Moss Warranty Act.[1]

8.      The Amended Complaint in the *Smith* Action also alleges that Defendant, Costa Del Mar Inc.,[2] falsely advertises and markets its sunglass products as "backed for life," with a warranty claiming to be "the best in the industry," with "no gimmicks" and "no disclaimers." More specifically, on every sunglass box, Costa Del Mar advertises, "If our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee" ("Nominal Fee Claim").  I understand that this Nominal Fee Claim applies for the lifetime of the product to which Costa's warranty applies.

9.      However, the Amended Complaint alleges that purchasers are not charged a "nominal" fee for damages due to accident, normal wear and tear, or misuse, but are instead charged $89.00 for replacement glass lenses, $69.00 for replacement plastic lenses, $49.00 for replacement plastic frames, and $79.00 for replacement metal frames, along with a shipping fee.

---

[1]   *Id*. at ¶ 76.

[2]   For purposes of my declaration, I may reference "Costa Del Mar Inc." as "Costa Del Mar" or "Costa."

Declaration of Stefan Boedeker                    2

10.     The relevant products for purposes of the *Smith* Action are certain non-promotional, non-prescription Costa sunglasses, as further detailed in the Amended Complaint.[3] These products are hereafter referred to as the "Sunglass Products." Plaintiffs in the *Smith* Action contend that the term "nominal" means that there is a trivially small *de minimis* fee associated with sunglass repair.[4] However, Costa's Sunglass Products repairs are subject to large repair fees.  For instance, Plaintiff Haney was charged $89 for replacement glass lenses along with shipping fees.[5] Likewise, Plaintiff Reed was charged over $100 for repairs.[6] Plaintiffs contend that Costa's Nominal Fee Claim is false and deceptive.

11.     The Amended Complaint alleges that Costa did not comply with its Nominal Fee Claim, and therefore Plaintiffs were deprived of the value of the Nominal Fee Claim and, hence, suffered damages. Costa commanded a price premium for its Sunglass Products because the Nominal Fee Claim attached to them.  However, because the Nominal Fee Claim was false, the Sunglass Products were worth less than what Plaintiffs (and the class members) paid for them.

12.     It is my understanding that Plaintiffs and Costa Del Mar reached a global resolution of the claims in the *Smith* Action, on a class-wide basis, in February 2020.  I have reviewed the parties' global Settlement Agreement ("Settlement").   In the Settlement Agreement, Costa has acknowledged that it made a variety of substantial changes to its business practices as a direct result of the litigation brought by Plaintiffs.  Those changes are reflected in WHEREAS Clause G, which states as follows:

> **"WHEREAS, as a result of the Litigation, but without any admission of liability, Costa has changed certain consumer-facing marketing materials and product packaging, including: (i) covering the "nominal fee" language printed on shipping boxes for plano sunglasses with a sticker; (ii) discontinuing the distribution of plano sunglasses in shipping boxes containing the "nominal fee" language; (iii) disposing of shipping boxes in inventory containing the "nominal fee" language; (iv) discontinuing**

---

[3]     *Smith* Action, Amended Class Action Complaint at ¶ 86.

[4]     *Id.* at ¶¶ 63-64.

[5]     *Id*. at ¶ 52.

[6]     *Id*. at ¶ 58.

**the description on Costa's website of its warranty on plano sunglasses as a "Lifetime Warranty"; (v) creating new sunglass shipping boxes that removes any reference to a "nominal fee" language related to repairs of sunglasses; and (vi) modifying the repair section of Costa's website to disclose repair pricing to the consumer and describe such prices;"**[7]

13.     In the Settlement Agreement, Costa expressly agreed to make certain changes to its business practices, product packaging and marketing materials to address the Lifetime Warranty designation and the Nominal Fee Claim going forward (hereinafter, the "Injunctive Relief"). Those changes are as follows:

**"Agreement Regarding the "Nominal Fee" and "Lifetime Warranty" Language on Shipping Boxes and in Marketing Materials. As a result of this Litigation, Costa modified its product packaging and marketing materials as set forth in Whereas Clause G., above. In further consideration for the dismissal of the Litigation and the Global Action with prejudice, and for the full and complete Release, Final Judgment and Final Order provided below, Defendant agrees, on its shipping boxes and in marketing materials to: (i) not title its warranty for Costa's plano sunglasses as a "Lifetime Warranty" for so long as the terms and conditions of such warranty are substantially the same as currently offered by Costa; and (ii) refrain from describing fees for replacement of scratched lenses, frames and other parts caused by accidental damage, wear and tear, or misuse as "nominal" fees. Nothing in this Agreement shall prohibit Costa from offering different warranties on later manufactured products or defined collections."**[8]

14.     I was asked to quantify the monetary value of the foregoing agreement. I do not offer an opinion as to the efficacy of this Injunctive Relief; my assignment was to calculate the potential monetary value of the Injunctive Relief secured by the Settlement.

---

[7]     *Smith* Action, Settlement Agreement (Dkt. 91-1), ¶ 1(G).

[8]     *Id.* at ¶ IV(C).

15.     My understanding is that the Injunctive Relief was designed to address Plaintiffs' claims in the *Smith* Action regarding Costa's Lifetime Warranty and Nominal Fee Claim.  By imposing changes to Costa's product packaging and marketing materials to eliminate the "Lifetime Warranty" designation and Nominal Fee Claim, the Injunctive Relief effectively ends the actions which Plaintiffs contend caused economic harm to consumers of the Sunglass Products with the allegedly illegal Lifetime Warranty or the allegedly deceptive Nominal Fee Claim.

16.     Based on the voluminous data produced during discovery, a consumer survey (which I designed and analyzed) and relying on certain analysis of the price premium of the Nominal Fee Claim conducted and testified to by Mr. Alexander Rey at the certification hearing, I was able to reliably calculate the monetary value of the Injunctive Relief secured by the Settlement.

17.     The survey was designed to allow me to understand (a) how much value consumers place on a "Lifetime Warranty" compared to a "Limited Lifetime Warranty" and (b) how consumers of Costa sunglasses define and quantify the value of a "nominal" fee in connection with the Nominal Fee Claim. [9]

18.     I commissioned a survey company called Amplitude Research ("Amplitude") to program and host surveys and conjoint studies of my design and then provide me with the raw data so that I could analyze the preferences and choices of consumers.

19.     Founded in 2002, Amplitude Research® is one of the leading mail, telephone and online survey companies serving clients throughout the United States, Canada, South America, and Asia. Clients include commercial, educational and governmental organizations. Amplitude Research® is a member of the American Marketing Association (AMA), Marketing Research Association (MRA), Interactive Marketing Research Organization (IMRO), and Marketing Research Association of South Florida, and adheres to the professional guidelines for survey companies applied by these organizations. Amplitude Research is also A+ Rated by the Better Business Bureau.[10]

---

[9]     Screenshots of the survey questionnaire are attached to this Declaration as Appendix 1.

[10]     http://www.amplituderesearch.com/survey-company.shtml.

20.     Amplitude fielded the survey from April 15, 2020 to May 13, 2020, resulting in 200 completed surveys. The survey was conducted as an internet survey. As is standard survey practice for surveys used in litigation proceedings, the surveys were conducted in a "double-blind" fashion,[11] that is, neither the vendor nor the respondents were aware of the survey sponsor or the ultimate intention of the survey. Additionally, the data collection and initial tabulation was automated and concurrent with answering the online questionnaire.

21.     Using the survey vendor's access to large online consumer panels, I targeted a group of respondents who have been purchasers of Costa Del Mar sunglasses. When recruiting survey participants, the survey vendor employed a method of balancing the survey participants based on demographics and socio-economic factors such as gender, age, income, and geographical region.

22.     The following Table 1 summarizes the survey results:

## Table 1: Summary of Survey Results

| Variables | | Result | Responses |
|---|---|---|---|
| Lifetime Warranty Premium | | $    33.77 | 200 |
| | Percentage | 14.7% | |
| | Measured by version A (upgrade) | $    33.41 | 100 |
| | Average Price Version A | $   235.50 | |
| | Percentage Increase | 14.2% | |
| | Measured by version B (downgrade) | $    34.12 | 100 |
| | Average Price Version B | $   223.00 | |
| | Decrease | 15.3% | |
| | | | |
| Average Price | | $   229.3 | 200 |
| Nominal fee % | | 17.7% | 200 |
| | Implied Dollar Amount | $    40.6 | |
| Nominal fee $ | | $    25.45 | 200 |
| | Implied Percentage | 11.1% | |

*Source: Own analysis based on COSTA(REED)0000011.xls through COSTA(REED)0000060.xls and Survey Data.*

---

[11]   Diamond, Shari, S. (2012) "Reference Guide on Survey Research," *Reference Manual on Scientific Evidence*, Committee on the Development of the Third Edition of the Reference Manual on Scientific Evidence; Federal Judicial Center; National Research Council, Pages 410-411.

23. **Lifetime Warranty Claim Approach:** In the survey, the group of participants was randomly split into two cohorts. The first cohort saw Version A where they were told to assume that they had purchased a pair of Costa Del Mar sunglasses with a Limited Lifetime Warranty for the price they had indicated to have paid for the pair of Costa Del Mar sunglasses they had purchased. They were then asked how much <u>more</u> they would pay for the same pair of sunglasses with a Lifetime Warranty. The second cohort saw Version B where they were told to assume that they had purchased a pair of Costa Del Mar sunglasses with a Lifetime Warranty for the price they had indicated to have paid for the pair of Costa Del Mar sunglasses they had purchased. They were then asked how much <u>less</u> they would pay for the same pair of sunglasses with a Limited Lifetime Warranty.

24. Both types of warranties were explained to them as follows:

   a. **Lifetime Warranty**: If you buy a pair of Costa Del Mar sunglasses with a Lifetime Warranty, any manufacturer defects with your sunglasses will be repaired for free.

   b. **Limited Lifetime Warranty:** If you buy a pair of Costa Del Mar sunglasses with a Limited Lifetime Warranty, you will be charged a processing fee of $11.95 per repair to have manufacturer defects repaired.

25. Based on the survey results, the Version A cohort would pay $33.41 more to "upgrade" from a Limited Lifetime Warranty to a Lifetime Warranty. Based on an average purchase price of $235.50 for a pair of Costa Del Mar sunglasses, this implies a 14.2% price premium for the Lifetime Warranty. Conversely, the Version B cohort would pay $34.12 less if they had to "downgrade" from a Lifetime Warranty to a Limited Lifetime Warranty. Based on an average purchase price of $223.00 for a pair of Costa Del Mar sunglasses, this implies a 15.3% price premium for the Lifetime Warranty.

26. The weighted average of the price premium for the Lifetime Warranty measured from an "upgrade" and a "downgrade" point of view is $33.77 which represents 14.7% of the overall purchase price average of $229.30. This percentage applied to the projected revenue is the correct measure of the value of the "Lifetime Warranty" component of the Injunctive Relief.  Simply put, had Costa promoted a "Lifetime Warranty" on future sales, and it would have been able to

command a 14.7% price premium.  In light of the Injunctive Relief afforded to consumers under the settlement, the absence of that premium inures to the benefit of the consumer.

27.    There are alternative methods to predict future sales that can be used in the analysis of the monetary value of the Injunctive Relief such as

   a.  Method A: Using an annual average for all sales data,

   b.  Method B: Using the last data point in the time series of annual revenue data, or

   c.  Method C: Using projected revenues based on a statistical time trend model.

28.    All three methods are statistically valid and involve straightforward applications of my economic loss model to forecasted future revenue during a two-year time period  (hereinafter, "Partial Injunctive Relief Period").[12]  However, the methods would yield varying predictions for future revenue because of the high growth that Costa Del Mar experienced in the time period for which data were available. The lowest prediction can be obtained by using the overall average rather than predicting past growth patterns into the future or using the maximum amount of revenue from the historical data. To be conservative, I used Method A (annual average for all sales data) in my computations.

29.    Table 2 below shows Costa Del Mar's actual revenues for full calendar years 2010 to 2016. I utilized these revenue figures to make the projection for the Partial Injunctive Relief Period.

### Table 2: Costa Del Mar's Actual Annual Revenue 2010-2016

| Year | Actual Revenue Excluding Repair |
|------|---------------------------------|
| 2010 | |
| 2011 | |
| 2012 | |
| 2013 | |
| 2014 | |
| 2015 | |
| 2016 | |

*Source: Years 2010-2013 were taken from COSTA(HOWLAND)130729; Years 2014-2016 were taken from COSTA(HOWLAND)130730.XLSX*

---

[12] While Costa has agreed to Injunctive Relief going forward for an unlimited time frame, the two-year time period was selected as a conservative measure of the value of the Injunctive Relief.  Thus, the value of the Injunctive Relief in perpetuity is likely much higher than the calculations set forth in this declaration.

30.     Using the data summarized in Table 2, I was able to calculate the average annual revenue from 2010-2016 and then use that number (███████) to calculate economic loss related to a component of the Injunctive Relief, as shown in Table 3. This calculation is very conservative because the revenue numbers in Table 1 reflect an increase in revenue over the years such that Costa's revenue was approximately ███████ in 2016 and climbing.  An ███████ revenue calculation is akin to Costa's revenues in the 2013 timeframe and it is very likely that Costa's revenues in 2020-2023 far exceed ███████.  My calculation model also assumes no growth in Costa's revenues over time.

31.     Table 3 reflects the estimated economic loss related to the component of the Injunctive Relief related to Costa's agreement to refrain from titling its warranty a "Lifetime Warranty," based on Costa's average revenues from the 2010-2016 time period:

**Table 3: Forecasted Revenue and Estimated Economic Loss Based on Average Revenues in 2010-2016**

| Year | Forecasted Revenue | Economic Loss at 14.7% |
|---|---|---|
| 1 | ███████ | $11,783,434 |
| 2 | ███████ | $11,783,434 |
| Total | ███████ | $23,566,868 |

*Source: Own analysis based on COSTA(HOWLAND)130729, COSTA(HOWLAND)130730.XLSX and Survey Data*

32.     The value of the component of the Injunctive Relief related to Costa's agreement to refrain from titling its warranty a "Lifetime Warranty," based on Method A, is summarized in Table 4.

**Table 4: Estimated Monetary Value of Injunctive Relief Related to Lifetime Warranty Claim**

| Assumption | Projected Two Year Revenue | Value of Injunctive Relief |
|---|---|---|
| The average annual revenue in the period 2010 to 2016 is applied for a two year period | ███████ | $23,566,868 |

*Source: Own analysis based on COSTA(HOWLAND)130729, COSTA(HOWLAND)130730.XLSX and Survey Data*

33.     **Nominal Fee Claim Approach:** I calculated the economic value of the Injunctive Relief related to the Nominal Fee Claim by determining price premium associated with the Nominal Fee Claim as a percentage of the projected two-year revenue.

34.     In conducting my analysis of the value of the Nominal Fee Claim, I began by ascertaining the price premium associated with the Nominal Fee Claim.  I relied on the analysis and testimony of Alexander Rey, a Certified Master Analyst of Financial Forensics, Certified Valuation Analyst, and Certified Fraud Examiner.  Mr. Rey testified as a damages valuation expert at the class certification hearing in the *Haney Action*.  I find his analysis, calculations, and testimony to be reliable and accurate.  According to Mr. Rey, the value of the Nominal Fee Claim can be ascertained by calculating the average repair cost, less a nominal fee, multiplied by the probability that a repair would be needed.  Mr. Rey explained that this formula produces a weighted average expected repair value.  The mathematical formula is: (Average Repair Cost – Nominal Fee) x Probability = Weighted Average Expected Repair Value.  This results in a reliable measure of the price premium for the Nominal Fee Claim.

35.     In performing his calculation of the first variable in the above formula, Mr. Rey conducted a comprehensive analysis of Costa's voluminous historical repair data and pricing and calculated the average repair cost that a consumer would pay for a single repair as approximately $75.

36.     I cross-checked Mr. Rey's calculation of the average repair costs of approximately $75 and found it to be consistent with the repair data provided to me in 50 spreadsheets labeled COSTA(REED)0000011.xls through COSTA(REED)0000060.xls.[13]

37.     Mr. Rey did not opine on what constituted a nominal fee, opting to leave the determination of that amount for the factfinder.

38.     Mr. Rey studied the final variable in the above formula and determined that it was appropriate to use a 100% probability that a consumer would need a repair during the lifetime of a pair of sunglasses. In determining that a 100% probability of needing a repair was appropriate,

---

[13] I performed three scenarios of utilizing varying methods of weighted average costs to project the costs for a two year horizon which resulted in cost estimates of $74.79, $77.44, and $80.72 per year which confirms Mr. Rey's estimate. With his estimate being at the lower end of my independent estimates, I will continue to use $75 for the calculations of the value of the Injunctive Relief.

Mr. Rey looked at a number of factors including: (i) the intended use of these sunglasses, as marketed by Costa, in harsh outdoor and fishing environments; (ii) Costa's admission in documentary evidence that the sunglasses were not of a high quality construction, were prone to defects, and were likely to fail if exposed to sun and salt water environments; and (iii) the broad scope of the lifetime repair promise which covers any damage, including ordinary wear and tear, which by definition will occur to every pair of sunglasses and results in an exceedingly low threshold for repairs.

39.    Without even reducing the expected repair value by a nominal fee, Mr. Rey's analysis is consistent with the price Dick's Sporting Goods charges for a two-year warranty that they offer on Costa sunglasses through a third-party provider, which provides less coverage for a limited time for $69.99.

40.    Upon determining that Mr. Rey's analysis, calculations and proposed formula for determining the price premium associated with the Nominal Fee Claim were accurate and reliable, I used the survey data to ascertain what constitutes a "nominal fee." The average price the survey participants paid for their Costa Del Mar sunglasses was $229.30. When asked about what they considered a nominal fee expressed as a percentage, the participants' responses averaged to 17.7% of the price they paid for their sunglasses which corresponds to $40.60. Conversely, when asked what they considered a nominal fee expressed as a dollar amount, the participants' responses averaged to $25.45 which corresponds to 11.1% of the price they paid for their sunglasses. Accordingly, the survey results show that consumers' definition of a nominal fee ranges from $25.45 to $40.60.

41.    Therefore, using the Weighted Average Expected Repair Value formula, a reliable measure of the price premium for the Nominal Fee Claim ranges from $34.40 on the low end of the spectrum (i.e., $75.00 - $40.60 x 100% probability) to $49.55 on the high end of the spectrum (i.e., $75.00 - $25.45 x 100% probability).  This results in the Price Premium range for the Nominal Fee Claim.

42.    Next, I calculated the Price Premium as a percentage of the average price of Sunglass Products.  This calculation is detailed in Table 5.

43.     It is my opinion that the economic value of the Injunctive Relief related to Costa's agreement to refrain from using the Nominal Fee representation equals Costa's projected two-year revenue multiplied by the Price Premium Percentage.  As set forth below, had Costa promoted a "Nominal Fee" warranty on future sales, it would have been able to command a higher price in the amount of the Price Premium attributable to the Nominal Fee Claim.  In other words, as set forth in Table 5 below, Costa could have charged between 15% and 21.61% more for Sunglass Products.  In light of the Injunctive Relief afforded to consumers under the settlement, the absence of that Price Premium inures to the benefit of the consumer. The following Table 5 details the calculations:

**Table 5: Estimated Monetary Value of Injunctive Relief Related to Nominal Fee Claim**

| | Measure | Value |
|---|---|---|
| A | Price Premium $ (low end) | $34.40 |
| B | Average Price of Sunglasses (from survey) | $229.30 |
| C | Price Premium % (low end) [A]/[B] | 15.00% |
| D | Price Premium $ (high end) | $49.55 |
| E | Average Price of Sunglasses (from survey) | $229.30 |
| F | Price Premium % (high end) [D]/[E] | 21.61% |
| G | Projected Two Year Revenue | ███████ |
| H | Injunctive Relief Estimate (low end) [G]*[C] | $24,051,321 |
| I | Injunctive Relief Estimate (high end) [G]*[F] | $34,643,690 |

*Source: Own analysis based on COSTA(REED)0000011.xls through COSTA(REED)0000060.xls, COSTA(HOWLAND)113311 - master revenue info.xls, and Survey Data.*

44.     The value of the component of the Injunctive Relief related to Costa's agreement to refrain from using the Nominal Fee Claim ranges from $24,051,321 to $34,643,690.

## CONCLUSION

45.     Based on the survey results and Costa sales and repair cost data, I quantified the value of the Injunctive Relief associated with the:

    a.  Nominal Fee Claim, and

    b.  Lifetime Warranty Claim.

Declaration of Stefan Boedeker          12

46.     In my opinion, an estimate of the monetary value of the Injunctive Relief over a two-year period after the Effective Date of the settlement can be obtained based on the above analysis. The following Table 6 summarizes the monetary value of the Injunctive Relief by Claim:

**Table 6: Estimated Monetary Value of Injunctive Relief for a Two Year Period by Claim (Nominal Fee Claim and Lifetime Warranty Claim)**

| Claim | Value of Injunctive Relief - Low Estimate | Value of Injunctive Relief - High Estimate |
|---|---|---|
| Nominal Fee Claim | $24,051,321 | $34,643,690 |
| Lifetime Warranty Claim | $23,566,868 | $23,566,868 |
| **Total** | **$47,618,189** | **$58,210,558** |

*Source: Own analysis based on COSTA(REED)0000011.xls through COSTA(REED)0000060.xls, COSTA(HOWLAND)130729, COSTA(HOWLAND)130730.XLSX and Survey Data.*

47.     Using my economic loss model, Mr. Rey's formula for calculating the price premium for the Nominal Fee Claim, Costa's historical repair cost data, the estimated annual sales revenues and the results from a consumer survey that I designed, and that Amplitude, a survey vendor implemented as an internet panel survey, I was able to quantify the monetary value of the Injunctive Relief related to Costa's agreement to refrain from using the Nominal Fee Claim and the Lifetime Warranty Claim to be between $47,618,189 and $58,210,558 for a two-year period.

Under penalties of perjury, I declare that the facts stated herein are true to the best of my knowledge and belief.  Respectfully submitted on June 10, 2020.

_____

Stefan Boedeker

Declaration of Stefan Boedeker          13

**APPENDIX 1**



[TERMINATE IF Under 15 IS SELECTED]

## Amplitude Research, Inc.

The next question is about the total income of YOUR HOUSEHOLD for last calendar year – for the 12 months of 2019. Please include your income PLUS the income of all members living in your household (including cohabiting partners and armed forces members living at home). Please count income BEFORE TAXES and from all sources (such as wages, salaries, tips, net income from a business, interest, dividends, child support, alimony, Social Security, public assistance, pensions, and retirement benefits). What was your total HOUSEHOLD income for the 12 months of 2019?

○ Less than $25,000
○ $25,000 to $34,999
○ $35,000 to $49,999
○ $50,000 to $74,999
○ $75,000 to $99,999
○ $100,000 to $149,999
○ $150,000 or more
○ Prefer not to answer

---

**In which state do you live?**

○ Alabama
○ Alaska
○ Arizona
○ Arkansas
○ California
○ Colorado
○ Connecticut
○ Delaware
○ District of Columbia
○ Florida
○ Georgia
○ Hawaii
○ Idaho
○ Illinois
○ Indiana
○ Iowa
○ Kansas
○ Kentucky
○ Louisiana
○ Maine
○ Maryland
○ Massachusetts
○ Michigan
○ Minnesota
○ Mississippi
○ Missouri

○ Montana
○ Nebraska
○ Nevada
○ New Hampshire
○ New Jersey
○ New Mexico
○ New York
○ North Carolina
○ North Dakota
○ Ohio
○ Oklahoma
○ Oregon
○ Pennsylvania
○ Rhode Island
○ South Carolina
○ South Dakota
○ Tennessee
○ Texas
○ Utah
○ Vermont
○ Virginia
○ Washington
○ West Virginia
○ Wisconsin
○ Wyoming
○ None / Not in U.S.
○ Other

---

**What is your highest level of education?**

○ Less than high school
○ Graduated high school
○ Some college
○ Bachelor's degree or higher

[ Next > ]

Completed:

[TERMINATE IF None / Not in U.S. or Other IS SELECTED]



[TERMINATE IF No, I have not purchased sunglasses in the past five years IS SELECTED]

## Amplitude Research, Inc.

**What type of sunglasses did you purchase? (Please select all that apply.)**

- [ ] Sports sunglasses
- [ ] Prescription sunglasses
- [ ] Fashion sunglasses
- [ ] Other

**Have you purchased any of the following brands of sunglasses? (Please select all that apply.)**

- [ ] Costa Del Mar
- [ ] Smith
- [ ] Spy
- [ ] Oakley
- [ ] Bolle
- [ ] Gucci
- [ ] Foster Grant
- [ ] Prada
- [ ] Maui Jim
- [ ] Ray Ban
- [ ] None of the above

Next >

Completed:

[TERMINATE IF Costa Del Mar IS NOT SELECTED]

**Amplitude Research, Inc.**

**Please indicate the price range ($) of the sunglasses you purchased. (Please select all that apply.)**

☐ Under 75
☐ 75 - 124.99
☐ 125 - 174.99
☐ 175 - 224.99
☐ 225 - 274.99
☐ 275 - 324.99
☐ 325 or more

Next >

Completed:

[TERMINATE IF Under 75 and 75 – 124.99 ARE THE ONLY SELECTIONS]

5

## Amplitude Research, Inc.

**Which of the following attributes are important to you in your purchasing decision when shopping for sunglasses? (Select all that apply.)**

☐ Impact resistant lenses

☐ Safety rating

☐ Lens Polarization

☐ UV Protection

☐ Durability

☐ Warranty

☐ Comfort

☐ Other _____

Next >

Completed:

[The selected attributes appear in the following question. If only one attribute is selected then the following question does not appear.]

## Amplitude Research, Inc.

Next, we would like to understand how important each of these features is you when you purchase sunglasses. Please allocate **100 points** across the features by putting a number between 0 and 100 for each feature. Enter the most points for the features you care about the most and the fewest points for features you care about the least.

UV Protection

Warranty

**Total**

Next >

Completed:

[The total must add up to 100]

## Amplitude Research, Inc.

**Please read the following statement.**

"__A nominal fee refers to a very small price or an amount of money that is far below the real value or cost__."

**What is your expectation when you see a pair of sunglasses advertised with a warranty to replace lenses, frames, and other parts damaged by accident, normal wear and tear, or misuse, for a "nominal fee"? Please select all that apply.**

☐ I expect to pay a fixed percentage of the purchase price of the sunglasses for a repair.

☐ I expect to pay a percentage of the purchase price of the sunglasses for a repair based on the type of repair.

☐ I expect to pay a fixed dollar amount for a repair, no matter what the repair costs.

☐ I expect to pay a dollar amount for a repair based on the type of repair.

☐ Other [                    ]

[ Next > ]

Completed: [          ]

**Amplitude Research, Inc.**

Assume you paid *$250.00* for a pair of sunglasses. Further assume that the sunglasses you bought offer repairs for a nominal fee.

What <u>percentage</u> of the purchase price of the sunglasses would you consider to be a "nominal fee 💬' for repairs?

[          ]

---

Assume you paid *$250.00* for a pair of sunglasses. Further assume that the sunglasses you bought offer repairs for a nominal fee.

What <u>dollar amount</u> would you consider to be a "nominal fee 💬' for repairs?

[          ]

[ Next > ]

Completed: [/////////]

[The price shown is the mid-point of the selection made in the purchase question on page 5. If multi-selected, the highest mid-point is shown. The hover over text for "nominal fee" is **A nominal fee refers to a very small price or an amount of money that is far below the real value or cost**.]

9

### Amplitude Research, Inc.

**Are you aware of the concept of a "Limited Lifetime Warranty"?**

○ Yes
○ No

**Have you ever bought a pair of sunglasses with a "Limited Lifetime Warranty"?**

○ Yes
○ No

**Are you aware of the concept of a "Lifetime Warranty"?**

○ Yes
○ No

**Have you ever bought a pair of sunglasses with a "Lifetime Warranty"?**

○ Yes
○ No

Next >

Completed:

10

**Amplitude Research, Inc.**

For this question, please assume the following:

If you buy a pair of Costa Del Mar sunglasses with a <u>Lifetime Warranty</u>, any manufacturer defects with your sunglasses will be repaired for free.

However, if you buy a pair of Costa Del Mar sunglasses with a <u>Limited Lifetime Warranty</u>, you will be charged a processing fee of $11.95 per repair to have manufacturer defects repaired.

Next >

Completed:

11

### Amplitude Research, Inc.

Further assume that *$250.00* is the price of a pair of Costa Del Mar sunglasses which comes with a <u>Limited Lifetime Warranty</u> 🔵.

If the same pair of sunglasses came with a <u>Lifetime Warranty</u> 🔵 instead, what would you expect the total purchase price to be for these sunglasses? (In other words, if the sunglasses cost $250 with a <u>Limited Lifetime Warranty</u>, what cost would you expect if the <u>Limited Lifetime Warranty</u> was changed to a <u>Lifetime Warranty</u>?)

[ Next > ]

Completed:

[This question is shown to 50% of the respondents. The hover over text for "Limited Lifetime Warranty" is **You will be charged a processing fee of $11.95 per repair to have manufacturer defects repaired.** The hover over text for "Lifetime Warranty" is **Any manufacturer defects with your sunglasses will be repaired for free.**]

12

**Amplitude Research, Inc.**

Further assume that *$250.00* is the price of a pair of Costa Del Mar sunglasses which comes with a <u>Lifetime Warranty</u> ⓘ

If the same pair of sunglasses came with a <u>Limited Lifetime Warranty</u> ⓘ instead, what would you expect the total purchase price to be for these sunglasses? (In other words, if the sunglasses cost $250 with a <u>Lifetime Warranty</u>, what cost would you expect if the <u>Lifetime Warranty</u> was changed to a <u>Limited Lifetime Warranty</u>?)

[                                        ]

[ Next > ]

Completed: ▨▨▨▨▨▨▨▨▨▨▨▨

[This question is shown to 50% of the respondents. The hover over text for "Lifetime Warranty" is **Any manufacturer defects with your sunglasses will be repaired for free.** The hover over text for "Limited Lifetime Warranty" is **You will be charged a processing fee of $11.95 per repair to have manufacturer defects repaired.**]

13

**Amplitude Research, Inc.**

Thank you for your help and contribution today. We very much appreciate your participation in our research study.

Submit

Completed: