UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

   Plaintiff,
v.              Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

   Defendant.
_____/

**PLAINTIFFS' SUPPLEMENT TO MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT REGARDING 28 U.S.C. § 1712**

  Pursuant to the Court's direction at the July 17, 2020 hearing on Plaintiffs' Unopposed Motion for Preliminary Approval for Class Action Settlement, Plaintiffs hereby submit this supplemental motion addressing the inapplicability of the Class Action Fairness Act's ("CAFA") coupon settlement provision at 28 U.S.C. § 1712 to the instant action.

**INTRODUCTION**

  The instant settlement – whereby Costa has agreed to issue stackable and freely transferable vouchers ranging from $8.99 to $19.99 *per claim*, redeemable for any item on Costa's webstore – is not subject to CAFA's coupon provision. Although CAFA does not define the term "coupon," the legislative history and case law make clear that a coupon merely provides a *discount* towards future purchases from a defendant, while a voucher (or gift card) does not require a class member to spend their own money to take advantage of the settlement. As discussed herein, courts have acknowledged that $12 Walmart gift cards, $25 Lululemon gift cards, and Sony and Philips vouchers are not subject to CAFA's coupon provision, primarily because the vouchers: (i) do not require the consumer to come out-of-pocket, (ii) are not limited to select products or services, and

1

(iii) provide ultimate flexibility to the consumer. This settlement meets all three factors discussed above because the Costa vouchers: (i) can be redeemed for hundreds of items on Costa's webstore, and consumers are not required to come out-of-pocket for anything, *including shipping or tax*; (ii) can be used for any product on Costa's webstore, with no limitation on the types of products that can be redeemed; and (iii) are stackable, transferable, and do not expire for two years. Under the settlement, free product is delivered to consumers' doorsteps free of charge, and consumers need not leave their homes, pay shipping or handling fees, pay sales tax, or otherwise do any additional business with Costa in order to receive their product. The instant settlement is therefore not subject to CAFA's coupon provision.

## ARGUMENT

### A. Background on CAFA's Coupon Settlement Provision.

The Class Action Fairness Act, 28 U.S.C. § 1711 *et al.*, sets forth certain restrictions on coupon settlements. *See* 28 U.S.C. § 1712. Congress did not define the term "coupon" within the statute. *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267-AKK, 2015 WL 13629647, at *7 (N.D. Ala. Feb. 5, 2015). Accordingly, in interpreting the statute's meaning, courts have looked to CAFA's legislative history along with decisions of other courts.[1] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015).

CAFA's legislative history reflects Congress' concern about class settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." Class Action Fairness Act of 2005, Pub. L. No. 109–2, § 2, 119 Stat. 4 (2005). The Senate Judiciary Committee's report "focuses on settlements that involve a discount –

---

[1] The Eleventh Circuit has not directly addressed the applicability of CAFA's coupon provision to similar class action settlements. Nonetheless, district courts within the Eleventh Circuit have, and those cases are discussed herein.

2

frequently a small one – on class members' purchases from the settling defendant." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51. For example, the Senate Judiciary Committee's Report criticizes coupon settlement awards that provide class members with relatively small discounts off the future purchase of products such as cruises and computer hardware, "$1 off every subsequent $5 purchase" at a chain of restaurants, "a 30 percent discount on selected products" during a one-week time period, $55 to use on a purchase of a new crib that costs more than $55 from a defendant crib producer accused of making defective cribs, "$1.25 off a $25 dollar [video] game," and so on. S.Rep. No. 109–14, at 15 (2005), 2005 U.S.C.C.A.N. 15-17. "These discounts *require* class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 951 (emphasis added). They also require consumers come out of pocket to do additional business with the defendant—*e.g.*, a $30 to $40 discount off a cruise only has value if the consumer purchases a ticket for a cruise.

In light of CAFA's legislative history, courts have drawn a distinction between *discounts* off product (subject to CAFA's coupon provision) and *vouchers* for free product (not subject to CAFA's coupon provision).  A coupon settlement is "one that provides benefits to class members in the form of a *discount* towards the future purchase of a product or service offered by the defendant." *Parsons*, 2015 WL 13629647, at *7 (emphasis in original); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51 (coupons "merely offer[] class members the chance to receive a percentage discount on a purchase of a specific item"); *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 n.16 (D.D.C. 2010) (coupons "provide[] benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant."); *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod.*

3

*Liab. Litig.*, 952 F.3d 471, 489-91 (4th Cir. 2020) (persuaded by the fact that class members would have to spend more of their own money to receive the benefits of the settlement, the court concluded that the settlement terms constituted a "coupon" settlement upon finding that "class members will likely 'have to hand over more of their own money' before they can take full advantage of the vouchers"). On the other hand, vouchers do not require a consumer to spend any of his or her own money. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51 (vouchers are not subject to CAFA's coupon provisions because "[t]he class member need not spend any of his or her own money and can choose from a large number of potential items to purchase"); *Chaikin v. Lululemon USA Inc.*, No. 3:12-cv-02481-GPC-MDD, 2014 WL 1245461, *3 (S.D. Cal. 2014) (settlement providing class members with $25 vouchers to purchase product was not a coupon settlement because "[r]edemption of the credit vouchers will require no additional purchase"); Edward F. Sherman, CLASS ACTIONS AFTER THE CLASS ACTION FAIRNESS ACT OF 2005, 80 Tul. L.Rev. 1593, 1615 (2006) (where no additional purchase is necessary, credits are not "coupons" as Congress had intended that term to mean). Vouchers also do not require the consumers to do additional business with the defendant—the consumer receives the free product without any additional purchases.

The Ninth Circuit, in a seminal opinion analyzing the history and purpose of CAFA's coupon provision, held that a $12 gift card to Walmart did not qualify as a coupon under CAFA. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51. The court recognized that the gift card was "distinguishable from every single coupon-settlement example in the Senate report." *Id*. The court outlined three primary factors espoused by the legislative history guiding its conclusion that the $12 gift cards did not constitute a "coupon" under CAFA: (1) class members did not have "to hand over more of their own money before they [could] take advantage of" the gift card; (2)

4

the gift card was not limited to "select products or services," but provided class members money to spend on any item carried on the retailer's website; and (3) the gift card provided "considerably more flexibility than any of the coupon settlements listed in the Senate report" because, although the gift card could not be resold on a secondary market, they were freely transferable. *Id.* at 951.

Consistent with the Ninth Circuit, courts across the country agree that product vouchers (which do not require class members to spend their own money) are not subject to CAFA's coupon provision. *See, e.g.*, *In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,* MDL No. 1967, 2011 WL 1790603, at *2–3 (W.D. Mo. 2011) (vouchers to be used toward the purchase of other products manufactured by Philips were not subject to CAFA's coupon provision because the vouchers "do not necessarily require the class members' expend money of their own in order to realize the benefits of the settlement"); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, *8 (E.D. Mich. 2013) (settlement did not fall under CAFA's coupon provision as the "gift card [provided to class members] can be used to fund the entire purchase of small items"); *Chaikin*, 2014 WL 1245461, *5 (settlement offering $25 gift cards to Defendant's retail store did not fall under CAFA's coupon provision because the vouchers "require no additional purchase to redeem and therefore operate like cash."); *Johnson v. Ashley Furniture Indus., Inc.*, No. 13cv2445, 2016 WL 866957, at *4 (S.D. Cal. Mar. 7, 2016) (holding a $25 voucher to use at Ashley Furniture "is not a coupon and has actual value…. Class members do not have to buy more expensive items to redeem their vouchers."); *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2016 WL 7178421, at *10 (M.D. Pa. Dec. 9, 2016) (settlement not a coupon because "[t]he warranty relief does not offer a discount on other products or force class members to conduct business with Defendants"); *Seebrook v. Children's Place Retail Stores, Inc.*, No. C 11-837 CW, 2013 WL 6326487, at *1-2 (N.D. Cal. Dec. 4, 2013) (holding that a $10 voucher was not a coupon "because

much of the merchandise at Children's Place stores is priced for purchase at ten dollars or less, class members do not need to spend money in order to realize the settlement benefit"); *Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 215 n.17 (E.D. Pa. 2011) (finding that eighteen free months of defendant's credit monitoring service was not a coupon because "class members do not have to purchase a product in order to obtain a benefit").

Some cases, which generally fail to consider CAFA's legislative history, do not recognize the important distinction between coupons (discounts off product, which require additional business with the defendant) and vouchers (free product, which do not require additional business with the defendant). *See, e.g.*, *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) (rejecting distinction between vouchers and coupons and holding that replacement vouchers for free drinks on Southwest flights, which would have required class member to purchase an airline ticket from the defendant to redeem, are "coupons" subject to CAFA's coupon provision); *Redman v. RadioShack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014) (rejecting distinction between coupons and vouchers in an opinion highly cynical of any class settlement providing a non-pecuniary benefit, and the integrity of attorneys in the class action context, casting them as myopically focused on their own economic self-interest). However, the legislative history of CAFA makes clear that Congress was <u>only</u> concerned with instances in which class members receive "essentially valueless coupons." *See* S. REP. 109-14, 30, 2005 U.S.C.C.A.N. 3, 29-30 ("New section 28 U.S.C. 1712 is aimed at situations in which plaintiffs' lawyers negotiate settlements under which class members receive nothing but essentially *valueless coupons*, while the class counsel receive substantial attorneys' fees." (emphasis added)).  Congress recognized that consumers receive real benefits when they obtain product completely free of charge. *See id.* at 31 ("The Committee wishes to make clear that it does not intend to forbid all non-cash settlements. Such settlements may be

6

appropriate where they provide real benefits to consumer class members (e.g., where coupons entitle class members to receive something of actual value free of charge) or where the claims being resolved appear to be of marginal merit."). The weight of authority, cited herein, appropriately recognizes and pays due regard to the distinction between "valueless coupons" and vouchers for free product, which do not require class members to hand over money to the defendant.

District courts within the Eleventh Circuit have generally followed the rationale in *In re Online DVD-Rental*, distinguishing vouchers from coupons and holding that vouchers are not subject to CAFA's coupon provision because vouchers do not require class members to come out-of-pocket. For instance, in *Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267-AKK, 2015 WL 13629647, at *7 (N.D. Ala. Feb. 5, 2015), the court concluded that a $30 account credit to Brighthouse Networks, which could be used to purchase several months' worth of additional television programming or services, did *not* qualify as a coupon under CAFA. *Id.* (adopting the rationale in *Chaikin*, 2014 WL 1245461 and *Foos*, 2013 WL 5352969). The court was persuaded by the fact that the "account credits are not discounts off the purchase of services; they are essentially the equivalent of cash that can be spent to purchase new services outright, without spending any of the customers' own money." *Id.* at *7-*8; s*ee also David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. April 15, 2010) (settlement providing extended frame warranty and $40 credit toward parts, accessories, or services did not constitute a coupon settlement under CAFA because "[r]edemption of this award does not require any purchase on the part of class member"); *Hillis v. Equifax Consumer Servs., Inc.*, No. 104-CV-3400-TCB2007 WL 1953464, *11 (N.D. Ga. 2007) (settlement not subject to CAFA's coupon provisions because "Settlement Class Members are not required to spend any money in order to

avail themselves of the in-kind relief."); *Perez v. Assurion Corp.*, No. 06-20734-CIV, 2007 WL 2591180, at *2 (S.D. Fla. Mar. 23, 2006) citing legal commentary for the argument that, because no additional purchase is necessary, the vouchers and calling cards are not 'coupons' as Congress had intended the term to mean"); *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029, 2017 WL 9472860 at *6 (S.D. Fla. Nov. 17, 2017) (citing *In re Online DVD-Rental* and *In re Southwest Airlines Voucher Litig.* and acknowledging "the potential for abuse with coupon settlements is greatest when … the coupons have modest value compared to the new purchase for which they must be used, and when the coupons expire soon, are not transferable, and/or cannot be aggregated.").

In sum, CAFA's legislative history and subsequent decisions make clear that class settlements providing a discount to class members, thereby requiring class members to hand over more of their own money to the defendant, constitute coupons subject to 28 U.S.C. § 1712. On the other hand, vouchers or gift cards that operate like cash and do not require consumers to spend any of their own money are not subject to CAFA's coupon provision.

  **B. The Costa Vouchers Do Not Constitute "Coupons" And Are Not Subject to CAFA's Coupon Provision.**

Here, Costa has agreed to establish a $40 million settlement fund, from which over 2 million class members will be provided with up to $19.99 *per claim* to spend on *any item* on Costa's website. The voucher amounts, separated by class, are set forth below: [2]

| Class | Estimated Minimum Product Voucher Value |
|---|---|
| Florida Repair Class | $19.99 |
| Nationwide Repair Class | $19.99 |

---

[2] For the Florida Repair Class, Nationwide Repair Class, and Warranty Class, class members will receive a voucher corresponding to every repair or warranty claim made to Costa, with no cap on the number of vouchers received. For the Florida Purchase Class, there is no cap on the number of vouchers that a class member is entitled to receive, but a class member must submit verifiable proof-of-purchase in order to receive more than five (5) vouchers. *See* Dkt. 98-1, Amended and Restated Settlement Agreement, § IV(E).

8

| | |
|---|---|
| Florida Purchase Class | $10.00 |
| Warranty Class | $8.99 |

Costa has also agreed to pay shipping and handling costs, and consumers will not be charged sales tax. *See* Dkt. 98-1, Amended and Restated Settlement Agreement, § IV(D), (G). In other words, a consumer need not come out-of-pocket a penny to redeem their vouchers The vouchers are also non-personalized, freely transferable and stackable, expire two full years after issuance, and can be redeemed easily via Costa's online webstore or a toll-free number. *Id.* at § IV(D). Class members may use multiple vouchers at different times prior to their expiration, or stack some or all of their vouchers to obtain higher-valued products at no cost. *Id.* at § IV(F). Again, for each voucher redemption, a class member never has to pay shipping costs (normally $9.95) or sales tax. To this end, the instant settlement is even more favorable than that in the *In re Online DVD-Rental Antitrust Litigation* case, as the purchases made by a gift card in that case reduced the parties' purchasing power due to the collection of sales tax and, for online purchases, shipping costs. As detailed in Exhibit 3 to the Settlement Agreement, Costa's website contains hundreds of items for redemption by class members without coming out-of-pocket. These popular items, sold at thousands of retail locations, can be obtained from the comfort and safety of class members' homes.[3] *See* Dkt. 98-1, Ex. 3. To allow for ultimate flexibility, class members can alternatively choose to apply their vouchers toward the purchase of higher-priced items, including Costa sunglasses.[4] *See* Dkt. 98-1, Amended and Restated Settlement Agreement, § IV(F). No items or merchandise available on Costa's website are excluded.

---

[3] This was particularly important to the parties in light of the ongoing COVID-19 pandemic.
[4] Costa sunglasses are not alleged to be defective. Rather, consumers were charged too much for the warranty. Thus, this case is distinguishable from instances where consumers are forced to take a discount off their future purchase of a product alleged to be defective in the first instance. *See*, *e.g.*, *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d at 489-91 (in case involving claims of defective flooring, court holds that coupons to be used for new flooring are subject to § 1712, primarily because the coupons did not "allow each class member to replace

The vouchers issued by Costa differ substantially from the troublesome class action settlements that drew the attention of Congress, in which class members merely received a small percentage discount on selected products and required the consumers to do additional business with the defendant. Also, the parties anticipate that: (i) many class members will be entitled to receive multiple product vouchers; and (ii) class members will readily participate in a settlement that provides them with free and popular Costa merchandise. *See* Dkt. 98-1, Ex. 5, Declaration of Travis Owens (recognizing Costa's strong "tribe" affiliation, its cult-like adoration from consumers, and the fact that a majority of consumers are repeat purchasers of Costa products). Application of the three factors from *In re Online DVD-Rental Antitrust Litigation* further compels the conclusion that the instant settlement is not subject to CAFA's coupon provision.

*First*, class members need not come out-of-pocket to redeem their vouchers. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51. Instead, the vouchers are redeemable for hundreds of whole good merchandise items (as opposed to merely a discount or coupon off the purchase price). *See* Dkt. 98-1, Amended and Restated Settlement Agreement, § IV(D); *Sony Elecs., Inc.*, 2013 WL 3945981, *7-8 ("Unlike a 'coupon,' the $60 gift card can be used to fund the entire purchase of small items or can be applied to the purchase of a more valuable item, at the consumer's option."). Even class members receiving vouchers at the *lowest* voucher amount –

---

entirely his or her purportedly defective flooring," and "in having to spend more money [with Lumber Liquidators] to obtain sufficient relief, the class members will be forced to benefit the company that allegedly lied to and injured them"); S. Rep. No. 109-14, at 16-17 (2005) (criticizing past settlement that provide class members with $55 to use on a purchase of a new crib from a crib producer accused of making defective cribs, and discounted and free bottled water from a company that purportedly misrepresented the source of its water); *see also In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 1790603, at *2-4 (settlement that provides class members with vouchers to obtain new products was not a coupon settlement because vouchers do not require class members to purchase the same or similar products as those that gave rise to the litigation).

$8.99 for the Warranty Class[5] – have over forty separate items they can choose from on Costa's website, without spending a penny. *See* Dkt. 98-1, Ex. E. This settlement is, therefore, comparable to that in *Sony Electronics, Inc.*, 2013 WL 3945981, *8 (gift cards could "be used to fund the entire purchase of small items"), or *In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 2011 WL 1790603, at *2–3 (vouchers "do not necessarily require the class members' expend money of their own in order to realize the benefits of the settlement"), or *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 950-51 (class members did not have "to hand over more of their own money before they [could] take advantage of" the gift card). *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 323 (N.D. Cal. 2018) (credit monitoring services did not amount to a coupon settlement because "Settlement Class Members need not hand over any more money to obtain the benefits of the Settlement"); *Foos v. Ann, Inc.*, No. 11cv2794-L(MDD), 2013 WL 5352969, at *2 (S.D. Cal Sept. 24, 2013) ("[A] voucher is more like a gift card or cash where there is an actual cash value, is freely transferable, and does not require the class members to spend any additional money in order to realize the benefits of the settlement."). These settlements were aptly scrutinized by courts, which ultimately concluded the benefits, which were comparable to the benefits offered by the instant settlement, were *not* coupons subject to CAFA's coupon provision. Likewise here, because class members need not expend their own money to realize the benefits of the settlement, the Costa vouchers are not subject to CAFA's coupon provision.

*Second*, the Costa vouchers are not limited to select products or services. Instead, the vouchers allow a class member to purchase any item on Costa's website – which offers hundreds of products ranging from apparel to sunglasses to drink coolers. *See* Dkt. 98-1, Ex. 3; *see also In*

---

[5] As explained in the Motion for Preliminary Approval, the benefits obtained for the Warranty Class—product vouchers worth $8.99 per warranty claim, plus free shipping, plus free sales tax—exceed the total damages that these class members could have recovered if class members in the Warranty Class were successful on all of their claims and Costa's defenses.

11

*re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51 ("[P]art of what separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products"); *In re Bisphenol–A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,* MDL No. 1967, 2011 WL 1790603, at *3 (W.D. Mo. 2011) (vouchers are "unique in that they do not require class members to use the vouchers on the same (or even similar) products to those that gave rise to this litigation"); *Morey v. Louis Vuitton N. Am., Inc.*, No. 11CV1517 WQH BLM, 2014 WL 109194, at *8–9 (S.D. Cal. Jan. 9, 2014) (vouchers were not coupons, as "there are several items for sale at Louis Vuitton retail stores in California that are priced below $41.00."). No item or merchandise available on Costa's website is excluded from the instant settlement.

*Third*, the settlement provides ultimate flexibility to class members. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 950-51 ("Even if the [Walmart] gift card is only worth $12, it gives class members considerably more flexibility than any of the coupon settlements listed in the Senate report."); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 256 (E.D. Pa. 2011) (holding $20 Rite Aid gift cards were freely transferable and thus "are more like 'cash' than 'coupons'"); *Benware v. Hugo Boss, U.S.A., Inc.*, No. 12CV1527-MDD, 2014 WL 11430864, at *6 (S.D. Cal. Mar. 7, 2014) (vouchers were transferrable and "[t]he gift cards will be stackable, meaning that any single customer may use multiple gift cards in a single purchase transaction."). The vouchers are non-personalized, freely transferable and stackable, expire a full two years after issuance, and can be redeemed via Costa's website or a toll-free number. *See* Dkt. 98-1, Amended and Restated Settlement Agreement, § IV(D). Thus, like the freely transferable $12 Walmart gift cards in *In re Online DVD-Rental Antitrust Litigation*, these Costa vouchers also provide ultimate flexibility to a consumer. *Id.* at § IV(F).

## CONCLUSION

The instant settlement, which affords over 2 million class members up to $19.99 *per claim* to spend on *any item* on Costa's website (which offers hundreds of items at or below a $19.99 price point), without the added expense of shipping or tax, does not leave class members with "little or no value." *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 951. Instead, the vouchers: (i) can be redeemed for hundreds of items on Costa's webstore, and consumers are not required to come out-of-pocket for anything, including shipping or tax; (ii) can be used for any product on Costa's webstore, with no limitation on the types of products that can be redeemed; and (iii) are stackable, transferable, do not expire for two years, can be redeemed easily on Costa's website, and can even be applied to higher-priced items, if the customer so chooses, allowing for ultimate flexibility. The instant settlement is therefore not subject to CAFA's coupon provision at 28 U.S.C. § 1712.

Respectfully submitted this 14th day of August, 2020.

**HOLLAND & KNIGHT LLP**

/s/ Peter P. Hargitai
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*
