UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,
     Plaintiff,

v.                            Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,
     Defendant.
_____/

## CLASS COUNSEL'S UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES AND CONDITIONAL REQUEST FOR INCENTIVE AWARDS TO CLASS REPRESENTATIVES

After approximately three and a half years prosecuting this complex litigation—which is comprised of three separate, large putative class actions in three different trial courts and one appellate court—and having successfully negotiated a settlement affording monetary benefits alone valued at more than $61 million to approximately 2.1 million class members ("Settlement"), Class Counsel respectfully requests an award of attorneys' fees and expenses of $12,000,000. On a conditional basis, Class Counsel also requests that the Court award each of the Class Representatives Incentive Awards of $10,000 for their time and dedication as class representatives.[1]

---

[1] As set forth in the Parties' Joint Notice [Doc. 104], Plaintiffs' request for Incentive Awards is conditioned on the full Eleventh Circuit vacating the panel decision in *Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). If the *Johnson* decision remains in effect at the time of the Final Approval Hearing, Plaintiffs withdraw their request for Incentive Awards,

The requested relief is reasonable, appropriate, and amply supported by the record and the accompanying evidence, including the declaration of former United States District Judge, Thomas E. Scott, who is eminently qualified to opine on the subject of attorneys' fees and expenses in this matter. Judge Scott's declaration is attached hereto as **Exhibit 1** ("Scott Declaration"). The Settlement in this matter expressly reflects the parties' arms-length and separately negotiated agreement to the attorneys' fees and expenses sought in this motion. This factor alone merits great weight and consideration by the Court in ruling on this motion. The requested award of attorneys' fees and expenses is well within the bounds of a reasonable fee award under the controlling "percentage of the benefit" fee-assessment method. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) ("*Camden I*").[2]  The requested award constitutes less than 20% of the pure monetary benefits of the Settlement, and even less when the value of the significant non-monetary benefits secured by the Settlement are considered.

The requested award is well below the presumptive benchmark of 25 percent. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999)

---

and the Parties have agreed to add $30,000 to the Cy Pres payment, if due to be paid. Plaintiffs make their request for Incentive Awards at this time out of an abundance of caution and because the Eleventh Circuit is still considering whether to grant en banc review in *Johnson*.

[2] Under *Camden I*, the benefit of the fund analysis controls. The lodestar/multiplier analysis is improper, although some courts use the latter valuation to cross-check the former. *See Waters*, 190 F.3d at 1302 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").

(affirming $13.3 million attorneys' fee award and $2,400,204 in expenses from a $40 million fund). It is also well below the percentage awarded by this Court in prior class action settlements. *Finerman v. Marriott Ownership Resorts, Inc.*, Case No. 3:14-cv-01154-TJC-MCR (Corrigan, J.) (26.5%); *In re Rayonier Inc. Securities Litigation*, Case No. 3:14-cv-01395-TJC-JBT (Corrigan, J.) (30%); *Black v. Winn-Dixie Stores, Inc.*, 2011 WL 13257526 (Corrigan, J.) (30% to Damages Class).

Also, Incentive Awards of $10,000 are conditionally requested for each of the three Class Representatives. The amount of the Incentive Awards is at or below awards this Court has previously granted to class representatives in prior cases and will fairly compensate the Plaintiffs for their time, efforts, and dedication.

## I.   <u>Background of the Litigation</u>

This Litigation stems from three putative class actions addressing Costa's warranty practices: (1) *Haney v. Costa Del Mar, Inc.*, Case No. 16-2017-CA-004794-XXXX-MA, Fourth Judicial Circuit of Florida, on appeal to Florida's First District Court of Appeal, Case No. 1D19-1787 ["*Haney* Action"]; (2) *Reed v. Costa Del Mar, Inc.*, Case No. 6:19-cv-1751-Orl-37LRH (M.D. Fla.) ["*Reed* Action"]; (3) *Smith v. Costa Del Mar, Inc.*, Case No.: 3:18-cv-1011-J-32JRK (M.D. Fla.) ["*Smith* Action"]. The Litigation, including the extensive effort undertaken by Class Counsel to prosecute the Litigation, is detailed in the Declaration of Peter Hargitai in Support of Preliminary Approval of Class Action Settlement, attached hereto as **Exhibit 2**

("Preliminary Approval Hargitai Declaration"), but briefly summarized below.[3]

### A. The *Haney* Action

The *Haney* Action was filed on July 28, 2017. *Haney* involved claims for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and breach of warranty under the Magnuson-Moss Warranty Act ("MMWA") arising out of Costa's promise that "if our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee."

In the *Haney* Action, Plaintiff successfully briefed and defended against Costa's Motion to Dismiss. Thereafter, the parties engaged in multiple rounds of written discovery, and Plaintiff reviewed and analyzed over 149,000 pages of documents produced by Costa. The parties had several discovery disputes, resulting in Plaintiff's filing of three Motions to Compel and a Motion for in Camera Review of Documents on Costa's Privilege Log and to Un-Designate Documents Marked "Confidential." In the *Haney* Action, Plaintiff deposed fourteen (14) Costa witnesses, including three (3) expert witnesses. Costa took the deposition of named Plaintiff Brendan Haney along with the depositions of

---

[3] The docket sheets from the *Haney* and *Reed* Actions are attached to the Preliminary Approval Hargitai Declaration. To the extent necessary, Plaintiffs respectfully request that the Court take judicial notice of the dockets and filings in the *Haney, Reed*, and *Smith* Actions. *Milano v. TD Bank USA, N.A.*, No. 3:18-CV-598-J-34JBT, 2019 WL 3802459, at *1 n.2 (M.D. Fla. Aug. 13, 2019) (taking judicial notice of the docket and filings in other cases).

Plaintiff's three (3) expert witnesses. Plaintiff successfully defended against Costa's Motion to Strike Stefan Boedeker as Expert Witness. Plaintiff then briefed and filed a comprehensive Motion for Class Certification with a detailed Statement of Facts in support thereof. After a three-day evidentiary hearing, involving testimony from fifteen (15) witnesses and argument of counsel, Plaintiff was successful in obtaining class certification of both the FDUTPA and MMWA classes. Costa appealed the Order Granting Class Certification, and after full appellate briefing, the First DCA heard oral argument on February 11, 2020.

### B.  The *Reed* Action

Plaintiff filed the *Reed* Action on April 3, 2019. Like the *Haney* Action, *Reed* involved claims for violations of FDUTPA arising out of Costa's "nominal fee" promise. In *Reed*, Plaintiff sought to certify a nationwide class for violations of FDUTPA arising out of Costa's charging a fee to repair or replace damaged parts of Costa sunglasses that Plaintiff contended was not nominal. Excluded from the class in *Reed* were citizens of the State of Florida.[4]

Like the *Haney* Action, the *Reed* Action involved significant efforts from both parties. The parties engaged in extensive written discovery. Moreover, after issuing

---

[4] The *Reed* and *Haney* Actions had material differences. *Haney* concerned only Florida consumers; *Reed* concerned consumers nationwide (except Florida). Additionally, *Reed* concerned only consumers who had sunglasses actually repaired; *Haney* concerned Florida consumers who purchased sunglasses as well as consumers who had sunglasses repaired.

a subpoena to McGarrah Jessee LP, Plaintiff was required to file an action in the U.S. District Court, Western District of Texas to enforce the subpoena, which was transferred to the Middle District of Florida. After oral argument and briefing, the Court granted Plaintiff's Motion to Compel Non-Party McGarrah Jessee LP to respond to the Subpoena to Produce Documents. Plaintiff also filed a Motion for Protective Order regarding the self-scheduled depositions of Costa's own witnesses and a Motion to Stay the case pending a ruling from Florida's First DCA in *Haney*. Class Counsel prepared for and defended the deposition of Plaintiff Gerald E. Reed IV. Plaintiff also deposed two Costa witnesses, issued subpoenas to four Costa retailers, and retained three expert witnesses.

### C. The *Smith* Action

Plaintiff filed the *Smith* Action on August 20, 2018. *Smith* involved a claim for Costa's failure to comply with the substantive requirements of the MMWA by charging consumers a "processing fee" for repairs to sunglasses performed under Costa's "Lifetime Warranty." Plaintiff sought to certify a nationwide class.

Again, the parties aggressively prosecuted and defended the action. The parties engaged in multiple rounds of written discovery. Plaintiff analyzed voluminous data provided by Costa regarding warranty claims made by consumers nationwide, in addition to tens of thousands of pages of documents produced by Costa. Plaintiff filed, and prevailed on, a Motion to Compel. Plaintiff

6

filed a Motion for Leave to Use Certain Depositions from an Earlier Action [the *Haney* Action]. Prior to oral argument, the parties stipulated to the use of the depositions. Plaintiff retained two expert witnesses who disclosed full expert reports. Plaintiff's counsel deposed Costa's expert witness, Ian Ratner. Plaintiff's counsel also deposed three Costa witnesses, and defended the deposition of Plaintiff Troy Smith, along with the depositions of Plaintiff's two expert witnesses.

Plaintiff prepared and filed a 40-page Motion for Class Certification (and a Reply in support), Motion for Summary Judgment, and Motion to Exclude the Testimony of Defendant's Expert. Plaintiff also filed an opposition to Costa's Motion for Summary Judgment. Plaintiff's counsel were heavily involved in preparations for a hearing on all pending motions scheduled for February 21, 2020. Shortly before the omnibus hearing, and on the day of oral argument in the *Haney* Action, the parties reached a global settlement of the Litigation.

### D. The Global Action

On February 11, 2020, the parties reached a global resolution of the *Haney*, *Reed*, and *Smith* Actions. To effectuate the Settlement, Plaintiff amended the Complaint in the *Smith* Action to consolidate the Plaintiffs, claims, and classes sought to be certified from the *Reed, Haney*, and *Smith* Actions. On September 3, 2020, the Court entered an order preliminarily approving the parties' Settlement [Doc. 102] and certifying four separate classes for settlement purposes. The classes

consist of approximately 2.1 million consumers.

## II.   <u>The Significant Benefits to Class Members Under the Settlement</u>

The Settlement is a modern class-action settlement that provides class members with various forms of relief and allows them to obtain such relief without ever having to leave their homes. (Scott Decl., Ex. 1 ¶ 11). In the opinion of Judge Scott, "[t]he settlement provides the Class with substantial monetary and non-monetary benefits." (*Id.* ¶ 74). "This substantial recovery is an excellent benefit to the settlement class, especially in light of the significant risks posed by continued litigation." (*Id.*). The settlement provides four principal benefits:

<u>Forty Million Dollar Fund</u>: The Settlement agreement in this case creates a $40 million fund from which class members can receive a non-personalized, transferable, electronic product voucher for Costa merchandise. The product vouchers are intended to operate like cash and can be redeemed for certain Costa whole good merchandise (as opposed to a discount or coupon off the purchase price)[5] without the necessity for class members to pay any amount of money to Costa, separate and apart from the product voucher, in order to receive Costa merchandise. The product vouchers can be redeemed directly on Costa's website for *hundreds* of products. Also, class members with multiple product vouchers can

---

[5] The Court has held that "the settlement is not a coupon settlement, and thus, that it need not adhere to the requirements of 28 U.S.C. § 1712." (Preliminary Approval Order, Doc. 102 at 4 n.1).

stack the vouchers, if they choose, and obtain higher-valued Costa merchandise.

Importantly, the Settlement in this case provides for automatic distribution of product vouchers to all class members in the classes for which Costa maintains consumer contact information—*i.e.*, the Florida Repair Class, Nationwide Repair Class, and Warranty Class. *See generally* (Joint Notice, Doc. 98); (Scott Decl., Ex. 1 ¶ 13). These classes represent over 1 million class members who will be entitled to receive product vouchers without ever having to make a claim. (*Id.*).

Shipping and Handling: Costa has agreed to bear the cost of all shipping and handling of products purchased by class members using their product vouchers, and such costs are not deducted from the settlement fund. Shipping and handling on Costa's website typically costs consumers $9.95. In other words, class members can purchase Costa merchandise that is shipped and delivered to them free of charge. The class in this case consists of approximately 2.1 million consumers; thus, the value of free shipping and handling exceeds $20 million.

No Sales Tax: Class members will not be charged sales tax on products redeemed by class members using their product vouchers, to the extent of the value of the product vouchers. This is a significant additional monetary benefit to class members, valued at over $1 million dollars.

Injunctive Relief and Changes to Business Practices: As a direct result of this Litigation, Costa made significant changes to its business practices, including: (i)

covering the "nominal fee" language printed on shipping boxes for plano sunglasses with a sticker; (ii) discontinuing the distribution of plano sunglasses in shipping boxes containing the "nominal fee" language; (iii) disposing of shipping boxes in inventory containing the "nominal fee" language; (iv) discontinuing the description on Costa's website of its warranty on plano sunglasses as a "Lifetime Warranty"; (v) creating new sunglass shipping boxes that remove any reference to "nominal fee" language related to repairs of sunglasses; and (vi) modifying the repair section of Costa's website to disclose repair pricing. (Scott Decl., ¶ 11(d)).

In addition, Costa has agreed to: (i) not title its warranty for Costa's plano sunglasses as a "Lifetime Warranty" for so long as the terms and conditions of such warranty are substantially the same as currently offered by Costa; and (ii) refrain from describing fees for replacement of scratched lenses, frames and other parts caused by accidental damage, wear and tear, or misuse as "nominal" fees. *See* Agreement, § IV(C). Plaintiffs' expert, Stefan Boedeker, has opined that the value of this injunctive relief is between $47,618,189 and $58,210,558 for a two-year period. (Boedeker Decl., **Exhibit 3**).

## III.  The Requested Award of Attorneys' Fees and Expenses

### a.  *The Court Should Afford Substantial Weight to the Settlement*

The Settlement is the product of good faith, extensive, adversarial negotiations between experienced counsel, and also included a mediation

conducted by highly-respected mediator Terrence White. (Preliminary Approval Hargitai Decl., Ex. 2 ¶¶ 5, 12); (Settlement, Doc. 98-1, § X) (stating that "[a]fter agreeing to the principal terms set forth in this Settlement Agreement, the Parties' counsel negotiated the amount of Attorneys' Fees, Costs, and Expenses").

The Settlement is entitled to great weight because it resulted from adversarial, arms-length negotiations after the resolution of the merits was reached by the parties. *James D. Hinson Electrical Contracting Co. v. BellSouth Telecommunications, Inc.*, Case No. 3:07-cv-00598-TJC-MCR (Doc. 209 at 4) (Corrigan, J.) ("The Court finds that the parties' agreement with regard to the payment of fees and expenses was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud. As a result, the parties' agreement is entitled to substantial weight.").[6] Thus, as long as the requested fee falls within the range of reasonableness, it should be entitled to deference and approved.

### b. *The Requested Award of Attorneys' Fees and Expenses is Reasonable*

#### i. *Attorneys' Fee Awards in the Eleventh Circuit*

Attorneys' fees for class counsel are required to be based upon a percentage of the benefit obtained for the class. *Camden I*, 946 F.2d 768; *see Poertner v. Gillette*

---

[6] *See also Strube v. Am. Equity Inv. Life Ins. Co.*, No. 601CV1236ORL19DAB, 2006 WL 1232816, at *1 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-T-17B, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998).

#74889653_v3

*Co.*, No. 14-13882, 2015 WL 4310896, at *4 n.2 (11th Cir. July 16, 2015); Alba Conte, *Attorney Fee Awards* § 2.7, at 91 n. 41 ("The Eleventh . . . Circuit[ ] repudiated the use of the lodestar method in common-fund cases"). "[A] common fund is itself the measure of success ... [and] represents the benchmark on which a reasonable fee will be awarded." *Camden I*, 946 F.2d at 774. "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* However, a fee award of 50% of the benefit is the upper limit. The majority of fee awards fall between 20 and 30 percent of the fund. *Id.* at 774-75. Thus, 25 percent is the default "benchmark," which may be adjusted in accordance with the individual circumstances of each case pursuant to certain factors discussed below. *Id.* at 774-75; *see Waters*, 190 F.3d at 1294.

Although some courts utilize a lodestar calculation to "cross-check" the percentage-of-the-benefit analysis, a lodestar "cross check" is not required and is, in fact, disfavored. *See In re Home Depot Inc.*, 931 F.3d 1065, 1091 n.25 (11th Cir. 2019); *see Waters*, 190 F.3d at 1294. The Eleventh Circuit has "mandate[d]the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added). For this reason, many district courts in this Circuit award fees

based on a percentage of the fund without discussion of the lodestar at all.  *E.g.,* *Stahl v. MasTec, Inc.*, No. 8:05-CV-1265 T27TGW, 2008 WL 2267469, at *2 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Grp.*, Inc., No. 99-6181-CIV, 2002 WL 34343944, at *3 (S.D. Fla. May 3, 2002).  This Court (and others) has held that, under *Camden I*, it is inappropriate to rely upon a lodestar analysis in awarding fees to class counsel.  *See In re Rayonier Inc. Securities Litigation*, Case No. 3:14-cv-01395-TJC-JBT (Doc. 175 at 5 n.5) ("[C]onsistent with the Eleventh Circuit's discussion in *Camden I*, the Court has not tested the lodestar or relied upon it.") (Corrigan, J.); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) (declining to perform lodestar calculation and stating, under *Camden I*, the "percentage of the fund is the exclusive method for awarding fees in common fund class actions").[7]

---

[7] Although the percentage-of-the-benefit analysis controls and a lodestar calculation would be inappropriate, in the interest of full transparency to the Court and the Class, Class Counsel has incurred more than $2,615,374 in attorneys' fees and $641,154.87 in expenses since the inception of this Litigation.  *See* (Supplemental Decl. of Peter Hargitai, **Exhibit 4**).  When an appropriate lodestar multiplier is applied, Class Counsel's requested award of attorneys' fees and expenses is well within the range of approved awards in similar class actions.  *See In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221301, at *16 (E.D. Pa. June 2, 2004) ("[D]uring 2001–2003, the average multiplier approved in common fund class actions was 4.35 . . . ."); *see also In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (6.96 times multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("Finally, in 'cross-checking' the percentage fee against the lodestar-multiple, it clearly appears that the modest multiplier of 4.65 is fair and reasonable."); *Mun. Auth. of Town of Bloomsburg v. Com. of Pa.*, 527 F. Supp. 982, 993 (M.D. Pa. 1981) (multiplier of 4.5 times); *Bos. & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894 (1st Cir. 1985) (multiplier of 6 times); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (multiplier

Here, utilizing the operative percentage-of-the-benefit analysis, "all of the applicable factors weigh in favor of approval of Class Counsel's request for an award of $12,000,000 in attorneys' fees and expenses." (Scott Decl., Ex. 1 ¶ 49).

### ii. All of the monetary and non-monetary relief secured as a result of the Settlement is included in the "common fund"

The "fund" upon which an amount of reasonable attorneys' fees is based is the entirety of the relief being made available to the class, including the product vouchers, shipping and handling benefits, tax benefits, attorneys' fees, expenses, incentive awards, and cy pres payments. *Waters,* 190 F.3d at 1295–96 (affirming $13.3 million attorneys' fee award and $2,400,204 in expenses from a $40 million fund to pay claims, attorneys' fees and expenses); *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class.").

In the Eleventh Circuit, in addition to monetary benefits provided by the Settlement, the Court should also consider non-monetary relief in valuing the benefits to the class. *Poertner*, 618 F. App'x at 628 ("[T]he district court concluded that the value of the nonmonetary relief and cy pres award were part of the settlement pie. Neither conclusion rests on an incorrect or unreasonable

---

of 5.3 is "toward the high end of acceptable multipliers, [but] it is not atypical for similar fee-award cases."); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (cross-check resulted in a 5.2 times multiplier, which was acceptable because "there is ample authority for such awards resulting in multipliers in this range or higher.").

application of our precedents.").[8] Accordingly, courts include the value of this relief in the common fund and award class counsel a percentage of the total fund. Courts also consider changes to a defendant's business practices. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class—like company-wide policy changes ..."). The Settlement includes monetary benefits to the Class, and significant non-monetary relief, such as injunctive relief and important changes to Costa's business practices.

### iii.   The factors support the requested fee and expenses award

As explained in detail in the Scott Declaration, all of the applicable factors weigh in favor of approval of Class Counsel's request for an award of $12,000,000 in attorneys' fees and expenses. (Scott Decl., Ex. 1 ¶ 49). The requested attorneys' fee constitutes approximately 11% of the total monetary and non-monetary benefits obtained if the low end of Mr. Boedeker's valuation of the injunctive relief is accepted. And, even if the nonmonetary relief is not considered at all (which Plaintiffs believe would be inappropriate), the requested attorneys' fee constitutes

---

[8] *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1372 (N.D. Ga. 2019) ("Courts also take into account the fact that non-monetary relief adds value to a settlement."); *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *11 (S.D. Fla. Feb. 3, 2016) ("Finally, courts rightly consider the value of injunctive and monetary relief together in assessing whether a class action settlement provides sufficient relief to the class."); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide.").

#74889653_v3

less than 20% ($12,000,000 / $61,000,000) of the total monetary benefits alone. (*Id.*).

Thus, the requested fee award is below the 25% benchmark in the Eleventh Circuit

and fully consistent with the range of customary fee awards in common fund

cases. *See Waters,* 190 F.3d 1291 (affirming fee award of 33 1/3 %).[9]

1. *Factor 1 (the labor required), Factor 11 (the relationship with the client), and Factor 13 (the time required).*

As explained in the Scott Declaration and Preliminary Approval Hargitai

Declaration, the time and labor required to obtain a favorable settlement of the

Litigation was extraordinary. (Scott Decl., Ex. 1 ¶ 50). Class Counsel filed three

separate putative class actions against Costa raising a variety of claims and seeking

to certify a number of different classes. The Litigation began more than two and a

half years before a settlement in principle was reached on February 11, 2020.

Timekeepers alone at Holland & Knight LLP incurred over 6,000 hours on the

Litigation. Class Counsel invested and put at risk over $3.2 million of fees and

expenses, with the potential for no return on their investment.  The Litigation was

prosecuted completely on a contingency-fee basis, and Class Counsel has never

been paid or reimbursed for any of its expenses. (*Id.*).

---

[9] *See also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 %); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 %); *Gutter v. E.I. Dupont De Nemours & Co.*, 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (33 1/3 %); *Diaz v. Hillsborough Cty. Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 WL 1682918, at *7 (M.D. Fla. Aug. 7, 2000) (30%); *In re Home Shopping Network Sec. Litig.*, Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33%).

## 2. *Factor 2 (the difficulty of the questions involved).*

The complexity and novelty of the claims asserted in the Litigation also establish that the requested fee award is reasonable. (Scott Decl., Ex. 1 ¶ 51). "The Litigation was complex and required sophisticated counsel." (*Id.*). "[T]his is no copy-cat Litigation." (*Id.*) ("[E]very aspect of the present case is original, which added more risk and uncertainty to the Plaintiffs and their counsel.").

The underlying facts of the *Haney* and *Reed* Actions both involve Costa's "nominal fee" promise. Costa disputed that each consumer in the class was exposed to this promise, that its promise constituted a warranty, and that its repair fees were not "nominal." The claims were subject to extensive fact and expert discovery. The trial court in *Haney* ultimately granted Plaintiff's Motion for Class Certification in a 93-page order, after holding a three-day evidentiary hearing on the motion. Costa appealed the ruling to Florida's First DCA and argued that, for purposes of the FDUTPA class, Plaintiffs had failed to demonstrate that class members were uniformly "exposed" to the same deceptive conduct, which defeated class certification. Whether uniform "exposure" is required under FDUTPA is a novel concept under Florida law. (Scott Decl., Ex. 1 ¶ 52).

In the *Haney* Action, Costa also argued on appeal that, for purposes of the MMWA class, Florida law requires each consumer to rely on a written warranty, destroying certification. "Whether reliance is required under Florida law for

#74889653_v3

purposes of a breach of written warranty claim is also unsettled." (*Id.* ¶ 53).

The *Reed* Action also presented the issue of the extraterritorial application of FDUTPA to a class of non-Florida consumers. In other words, in *Reed*, the Plaintiff needed to establish that FDUTPA applied to each class member, even though each class member was a citizen of a state other than Florida. (*Id.* ¶ 54).

*Smith* involved a claim under the substantive requirements of the MMWA, a claim that had only been addressed by a handful of courts around the country and which was not subject to any binding authority. Plaintiff's claim was subject to cross-motions for summary judgment, and Costa contested certification on a number of different grounds. (*Id.* ¶ 55). This Litigation was complex and "involved novel issues across three separate putative class actions." (*Id.* ¶ 56).

### 3. *Factor 3 (the skill required) and Factor 9 (the experience, reputation, and ability of the attorneys).*

"The Litigation was lengthy and required substantial expertise and resources." (Scott Decl., Ex. 1 ¶ 57). Class counsel are experienced in complex commercial litigation, invested substantial resources, and according to Judge Scott "displayed considerable expertise in the subject matter of these cases." (*Id.* ¶ 57). A high degree of skill was required to prosecute the Litigation. Costa is a wealthy adversary and was represented by experienced and sophisticated counsel from McGuireWoods LLP, a large national law firm with substantial resources and experience in class actions. (*Id.* ¶ 58). According to Judge Scott, "[t]he file and

dockets reflect that defense counsel was tenacious and required Class Counsel to vigorously prosecute the Litigation." (*Id.*).

### 4. Factor 4 (the preclusion of other employment by the attorneys due to acceptance of the case).

The Litigation required a large investment of resources in both attorney and paralegal time and investment of out-of-pocket expenses over a long period of time. (*Id.* ¶ 59). As Judge Scott opines, "[t]his cost Class Counsel not only the revenue it would have ordinarily derived from its traditional hourly billing practice, but also precluded Class Counsel from concentrating on and expanding its practice with its existing client base and with respect to potential new clients." (*Id.*). Moreover, the resources required and substantial risk of non-payment or underpayment undertaken by Class Counsel effectively precluded Class Counsel from accepting other contingent matters during the representation. (*Id.*).

### 5. Factor 5 (customary fee) and Factor 12 (similar awards).

The parties reached a Settlement resulting in over $60 million in monetary benefits. Class Counsel's requested fee and expenses award of $12,000,000 is reasonable when compared to the $40 million fund alone—even if this fund was the only relief afforded under the Settlement (which it is not). *Waters*, 190 F.3d at 1295-96; *see also* (Scott Decl., Ex. 1 ¶ 68) (stating that Class Counsel's requested award is less than 20% of the monetary benefits of the Settlement alone).

However, case law in this Circuit is clear that the value of non-monetary

benefits secured for the class, such as changes to Costa's business practices and injunctive relief, should be included in the settlement fund. *See Poertner*, 618 F. App'x at 628; *see also* (Scott Decl., Ex. 1 ¶¶ 47, 48, 68). Under the Settlement, consumers nationwide will obtain significant injunctive relief that prohibits Costa from engaging in the conduct that gave rise to the Litigation. "The injunctive relief is a significant value to the class." (Scott Decl. Ex 1 ¶ 66). Mr. Boedeker has opined that the value of this injunctive relief is between $47,618,189 and $58,210,558, for a two year period. (Boedeker Del., Ex. 3); (Scott Decl., Ex. 1 ¶11(d)). And, Judge Scott has opined that the value of the injunctive relief should be, "at a very minimum," $5,000,000 — the cost Costa has testified it would incur to alter the packaging of its non-promotional, non-prescription sunglasses. (Scott Decl., Ex. 1 at 6 n.2).

Thus, the total value of the benefits afforded by the Settlement ranges from in excess of $100 million at the high end (if Mr. Boedeker's valuation of the injunctive relief is accepted, (Scott Decl., Ex. 1 ¶ 67)) to $66 million at the low end (if only Costa's cost of compliance is considered). Regardless, Class Counsel's requested award falls well below the 25% "benchmark" for attorneys' fees awarded from common fund settlements in the Eleventh Circuit. (*Id.* ¶¶ 67-68,). And, the requested fee award is also below the percentages previously awarded by this Court in similar circumstances. *See Finerman*, Case No. 3:14-cv-01154-TJC-MCR (Corrigan, J.); *In re Rayonier Inc. Securities Litigation*, Case No. 3:14-cv-01395-

TJC-JBT (Corrigan, J.); *Black*, 2011 WL 13257526 (Corrigan, J.). "The attorneys' fees sought in this case are well within the range of attorneys' fees typically awarded in similar class actions." (Scott, Decl., Ex. 1 ¶¶ 60, 68, 88).

### 6. *Factor 6 (fixed or contingent fee) and Factor 16 (the economics involved in prosecuting a class action).*

Class Counsel prosecuted each of the *Reed*, *Haney*, and *Smith* Actions completely on a contingency fee basis.  (Scott Decl., Ex. 1 ¶ 69). The Litigation has been ongoing for almost four years, and Class Counsel has not been paid any attorneys' fees or reimbursed for any expenses. (*Id.*).

This factor strongly favors approval of the attorneys' fees and expenses requested. In the opinion of Judge Scott, "the attorneys' fees awarded in this case should compensate Class Counsel not only for the time incurred in prosecuting the Litigation, but also for the loan of the services and substantial risk that Class Counsel undertook in providing the services." (*Id.* ¶ 70).

### 7. *Factor 7 (time limitations) and Factor 10 (the undesirability of the case).*

"Class Counsel took on a corporate defendant with vast resources necessary to withstand a lengthy legal battle." (*Id.* ¶ 72). The Litigation was lengthy and expensive with no periodic payments. "The risks assumed by Class Counsel in handling the Litigation on a contingency basis were significant." (*Id.*). "At its inception it was difficult, if not impossible, to know what results would be

obtained, the amount of time that would be involved, the costs necessary to pursue the case, or the time necessary to obtain a successful resolution." (*Id.* at 73).

> ### 8. Factor 8 (the amount involved and results obtained) and Factor 15 (non-monetary benefits).

"The settlement provides the Class with substantial monetary and non-monetary benefits . . . [t]his substantial recovery is an excellent benefit to the settlement class, especially in light of the significant risks posed by continued litigation." (Scott Decl., Ex. 1 ¶ 74). For the Warranty Class, the maximum possible recovery for these class members was $11.95 plus tax. (*Id.* ¶25). "The settlement recovery of a product voucher worth $8.99 per class member (plus free shipping and handling, typically $9.95) is therefore over 100% of the total maximum recovery to class members in the Warranty Class." (*Id.* ¶ 28).[10]

For the Florida and Nationwide Repair Classes, the amount of potential recovery for class members depended upon a jury determination of what constitutes a "nominal fee." (*Id.* ¶ 30). A jury could have determined that a "nominal" fee on luxury sunglasses was relatively substantial, which would have reduced any potential recovery to the class. "A product voucher of $19.99 for the Florida Repair Class and Nationwide Repair Class, coupled with free shipping and

---

[10] The Warranty Class adopts Plaintiffs' view of the applicable limitations period and provides benefits to tens of thousands of additional class members who may have had time-barred claims under Costa's view of the applicable limitations period. (Scott Decl., Ex. 1 ¶ 29).

handling (valued at $9.95), reflects a strong recovery for the class." (*Id.* ¶ 31).

The consumers in the Florida Purchase Class never sent their sunglasses to Costa for repair nor paid for any repairs. Plaintiffs' theory of damage was that these consumers paid a "price premium" for their sunglasses because Costa's "nominal fee" promise came with the sunglasses. "Coupled with free shipping and handling, members of the Florida Purchase Class are entitled to receive almost a $20 per voucher monetary benefit, which is an excellent result." (*Id.* ¶ 32).

As Judge Scott opines, "[t]hese recoveries are outstanding given that settlements generally, and in class actions particularly, are usually considered fair, adequate, and reasonable even when they only represent a small percentage of the potential recovery." (*Id.* ¶¶35-36). "The recoveries obtained become even more significant when one includes the injunctive relief secured from Costa . . . ." (*Id.*).

### 9. *Factor 14 (objections to the Settlement).*

To date, there have been only three objections. These objections tout Costa's product and customer service and explain the objectors' positive experiences with Costa. None of the objections set forth any reasonable or persuasive basis to oppose the settlement. (*Id.* ¶¶ 82-84) (reviewing each objection and stating: (1) "I do not view these comments as a basis for opposing the settlement," (2) "I do not view these comments as a basis to in anyway negate the settlement agreement," and (3) the "objection underscores the fairness and reasonableness of the

settlement."). According to Judge Scott, the objections "further demonstrate that the relief secured by the settlement is an excellent result for the class." (*Id.* ¶ 85).

### 10. *Other Relevant Factors*

Other factors weigh in favor of approval of the requested attorneys' fees and expenses award. First, "[t]he sheer number of consumers who are eligible to obtain relief under this settlement supports Class Counsel's requested fee award." (*Id.* ¶ 86). Also, "Class Counsel negotiated a settlement that provides automatic distribution of monetary benefits to approximately 50% of the class." (*Id.*). Moreover, "the significant non-monetary injunctive relief and the large financial risk assumed in prosecuting the Litigation both support the fee requested." (*Id.*).

## IV.   Conditional Request for Incentive Awards to Class Representative

The Settlement also provides that Costa will not oppose an award of $10,000 to each Class Representative. (Settlement, Doc. 98-1 at § X(B)). After the parties entered into the Settlement, the Eleventh Circuit decided *Johnson*, 2020 WL 5553312.[11] If *Johnson* is vacated or otherwise no longer in force at the time of the Final Approval Hearing, Plaintiffs submit that the Incentive Awards are appropriate. Each of the Class Representatives actively and meaningfully participated in their respective cases and were deposed at length. (Preliminary

---

[11] Plaintiffs respectfully disagree with the *Johnson* decision. *See Shane Grp. Inc v. Blue Cross Blue Shield of Michigan*, No. 19-2260, 2021 WL 129067, at *1 (6th Cir. Jan. 14, 2021) (approving service awards post-*Johnson*).  However, *Johnson* is the law in this Circuit until vacated or overruled.

Approval Hargitai Decl., Ex. 2 ¶¶ 35-38). The awards will fairly compensate these individuals for their service and the benefits they provided to the Class.[12]

## V.   Conclusion

Class Counsel respectfully requests an Order (a) awarding Class Counsel $12,000,000 in attorneys' fees and expenses, (b) awarding Class Representatives $10,000 in Incentive Awards, and (c) granting other relief as the Court deems just.

## <u>CERTIFICATE OF CONFERENCE</u>

Plaintiffs' counsel hereby certifies that they conferred with counsel for Costa regarding the relief sought herein, and Costa does not oppose this motion.

Dated: February 8, 2021

**HOLLAND & KNIGHT LLP**

/s/ Peter P. Hargitai
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*

---

[12] *Bastian et al. v. United Services Automobile Association et al.*, Case No. 3:13-cv-1454-J-32MCR (M.D. Fla.) (Doc. 145 at 32-33) (Corrigan, J.) ($10,000 to Class Representatives Chantal Bastian, William Laker, and Oliver Sutton); *James D. Hinson Electrical Contracting Co. v. BellSouth Telecommunications, Inc.*, Case No. 3:07-cv-00598-TJC-MCR (Doc. 209 at 6) (Corrigan, J.) ($15,000).

#74889653_v3