UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BRENDAN HANEY, GERALD REED,
and TROY SMITH, individually and on
behalf of all others similarly situated,                    Case No.: 3:18-cv-1011-J-32JRK

                              Plaintiffs,

            v.

COSTA DEL MAR, INC., a Florida
Corporation

                              Defendant.
_____/


**<u>OBJECTION TO PROPOSED SETTLEMENT</u>**

## I. INTRODUCTION

The Settlement of this case is designed primarily to provide Class Counsel with an exorbitant attorneys' fee award (representing nearly five times Class Counsel's claimed lodestar) while protecting defendant Costa Del Mar ("Costa") from facing any significant liability to the class by giving Settlement Class members only noncash "vouchers" toward Costa merchandise that few are expected to use. The Settling Parties pretend they will create a $40 million cash fund, "from which approved and valid Claims will be paid." DE98-1:12§II.36. But no claims are to be paid from the fund to any member of the Settlement Class—other, that is, than the three Named Plaintiffs, who settled expecting to receive $10,000 apiece as "incentive awards" (and who still hope to receive the cash if the Eleventh Circuit reconsiders *Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1248 (11th Cir. 2020) ("*NPAS*"). No cash is to be paid to any other class members unless this Court—against the Settling Parties' hopes—reduces Class Counsel's attorneys' fees from the requested $12 million, in which case the Settlement Agreement provides: "Any reduction by the Court in the amount of Attorneys' Fees, Costs, and Expenses to be awarded to Plaintiffs' Class Counsel shall inure to the benefit of the Class." DE98-1:27-28§X.A.

1

The Settlement Agreement clearly was designed with the expectation, however, that ordinary class members will receive not a penny from the illusory $40 "fund." Those who submit claims will only get product "vouchers" that, while bearing face values of from $8.99 to $19.99, cannot be redeemed for cash, that can only be used toward purchases from Costa's extremely limited line of products—few of which can be purchased for $8.99 to $19.99— that are "subject to one-time use with no residual value" (i.e., no "change" given if a voucher's face value exceeds a product's price), DE98:17§IV.F, and that expire worthless if not used within two years. DE98:14§IV.A. This fits the definition of a "coupon settlement."

The Settling Parties expect few class members to claim or redeem the "vouchers." They doubtless know that claims and redemption rates in similar consumer class actions seldom reach even two or three percent.[1] Their expectation that few class members will ever claim and redeem the Costa merchandise "vouchers" is confirmed by the fact that their Settlement

---

[1] *See, e.g., Galloway v. The Kansas City Landsmen, LLC,* 833 F.3d 969, 971 (8th Cir. 2016) ("of the 726,210 certificates mailed [to class members], 89 were redeemed at the $10 level and 237 were redeemed at the $30 level—a redemption rate of 0.045%," such that "[t]he total value of the redeemed certificates was $8,000"); *Dardarian v. OfficeMax N. Am., Inc.,* No. 11-CV-00947-YGR, 2014 WL 7463317, at *2 (N.D. Cal. Dec. 30, 2014) (observing that although the face value of the product vouchers distributed via the claims process exceeded $600,000, "by the conclusion of the redemption period, only 579 of the $10 vouchers had been redeemed."); *Moody v. Sears Roebuck & Co.,* 664 S.E.2d 569, 572, 574 (N.C. App. 2008) (317 valid claims filed out of 1,500,000-member class, for total of $2,402 in total redemption of coupons).

2

Agreement contains an express "kill switch" or "blow" provision invalidating the entire agreement if this Court happens to conclude that the vouchers are "coupons" subject to the Class Action Fairness Act ("CAFA") provision that "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of ***any attorney's fee*** award to class counsel ***that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed*.*" 28 U.S.C. §1712(a) (emphasis added). The Settlement Agreement states:

> [I]f the Court construes the settlement as a "coupon" settlement such that the provisions of 28 U.S.C. § 1712 apply, then the [class] certification shall be void and this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Class, shall become null and void and shall be of no further force and effect, and each Party shall retain all their respective rights as they existed prior to the execution of the Agreement….

DE98-1:14-15.

It is, to say the least, grossly improper for Class Counsel, as fiduciaries to the Class, to negotiate an agreement like this, explicitly placing their own interest in collecting attorneys' fees before the interests of the class. *See Staton v. Boeing Co.,* 327 F.3d 938, 969 (9th Cir. 2003); *see infra* pp. 14-16. Improper or not, it is compelling evidence that Class Counsel understand few Class Members will in fact redeem any vouchers.

Class Counsel somehow persuaded this Court, nonetheless, to find that the "vouchers" do not qualify as "coupons" subject to CAFA.[2] Davis respectfully submits that the Court erred: "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer,* 513 U.S. 179, 187 (1995). The ordinary meaning of a "coupon" clearly includes "a form surrendered in order to obtain an article, service, or accommodation." *Merriam-Webster's Collegiate Dictionary,* "Coupon," def. 2 (11th ed. 2012). The "vouchers" here are "coupons" within the ordinary meaning of the word, as it is used in CAFA. *See infra* pp. 8-14.

But even if this Court adheres to its ruling that the "vouchers" are not coupons, *see* DE102:4n.1, an award of reasonable attorneys' fees must account for the fact that the settlement delivers minimal value to the Class— far too little to support an award coming to 30% of an illusory $40 million "fund," DE98-1:27-28§X.A, and nearly five times Class Counsel's claimed (but insufficiently documented) lodestar.[3]

---

[2] *See* DE102:4n.1 ("Upon review of Plaintiffs' Supplement to Motion for Preliminary Approval of Class Action Settlement Regarding 28 U.S.C. §1712 (Doc. 99), which Plaintiffs submitted to address whether the proposed settlement is a coupon settlement, the Court is satisfied that the settlement is not a coupon settlement, and thus, that it need not adhere to the requirements of 28 U.S.C. § 1712.").

[3] *See* DE109:13n.7 (memorandum claiming lodestar of $2,615,374); DE109-4:4¶11 (Supplemental Declaration of Peter Hargitai, claiming but failing to adequately document lodestar of $2,615,374). The fee award of $12,000,000 represents a multiplier of 4.59 times the claimed lodestar.

Assuming that CAFA does not apply, Davis respectfully submits that any award of attorneys' fees should be capped at Class Counsel's unenhanced lodestar. The case asserts federal claims under the federal Magnuson-Moss Act, which limits prevailing counsel to an award of "attorneys' fees based on actual time expended." 15 U.S.C. §2310(d)(2). Class Counsel have not demonstrated that they are entitled to any multiplier of their flat lodestar. *See generally Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 543 (2010); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("*Dague*"). Class Counsel cannot receive a percent-of-fund or percent-of-benefit fee award under the common-fund principles of *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991) ("*Camden I*"), moreover, given the fact that the Settlement Agreement expressly provides "that the equitable common-fund doctrine does not apply to this Settlement." DE98-1:27§IX.C. *See infra* pp. 17-19.

Class Counsel should be limited to a lodestar award (assuming CAFA does not apply) for the further reason that under the *Erie* doctrine, the settlement of Florida state-law claims in a district court sitting in Florida must comply with the Florida Supreme Court's decision in *Kuhnlein v. Dep't of Revenue,* 662 So. 2d 309 (Fla. 1995). *Kuhnlein* prohibits percent-of-fund awards even in common-fund cases, and mandates that attorneys' fees be

based on the attorneys' lodestars.[4] Florida precedent caps lodestar multipliers far below the multiplier of nearly five that Class Counsel request.[5] Davis submits that Class Counsel have failed to demonstrate that they are entitled to ***any*** multiplier. Class counsel should be limited to their unenhanced lodestar.

That said, given the importance of ensuring a reasonable fee in light of the result actually obtained, Davis respectfully submits that any lodestar award in this case should be capped at a reasonable percentage of the "vouchers" that are actually redeemed even if they do not technically qualify as "coupons" subject to CAFA. The result obtained for the class remains an important consideration, and any lodestar award should be subject to a cross-check against the value of the "vouchers" that are actually redeemed. *See infra* pp. 15-17.

Ironically, it is only by reducing Class Counsel's fees without reference to CAFA that the Class will receive any monetary compensation. For, though the Settling Parties hoped for Class Members to receive nothing but

---

[4] *See id.* at 311-12; *cf. Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 461 (10th Cir. 2017) (reversing attorneys' fee award because percent-of-fund award was contrary to Oklahoma law which awards common-fund fees based on attorneys' lodestar).

[5] *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828, 834 (Fla. 1990); *see also State Farm Fire & Cas. Co. v. Palma*, 555 So. 2d 836, 838 (Fla. 1990) (reiterating *Quanstrom*'s "holding that the range of the multiplier" is "1.0 to 2.5.").

6

merchandise "vouchers," the Settlement Agreement also provides: "Any reduction by the Court in the amount of Attorneys' Fees, Costs, and Expenses to be awarded to Plaintiffs' Class Counsel shall inure to the benefit of the Class." DE98-1:27-28§X.A. That means that if this Court adheres to its determination that this is not a CAFA coupon settlement, but awards Class Counsel their claimed lodestar of $2,615,374 and expenses of $641,154.87 (DE109:13n.7), there will be more than $8 million available to distribute to the Class under §X.A of the Settlement Agreement.

That Costa would agree to pay Class Counsel $12 million, which is nearly five times their lodestar, even though the unenhanced lodestar represents a presumptively reasonable fee should raise red flags concerning the adequacy of the Settlement Agreement under Rule 23(e). Costa has no reason to agree to such a fee award unless paying Class Counsel so generously has induced them to sacrifice the Settlement Class's real interests.

## II.  ARGUMENT

### A.   Plaintiffs' overreach on attorneys' fees and incentive awards has put Class Counsel and Lead Plaintiffs into a conflict of interest with the absent class they represent, resulting in inadequate representation

#### 1.   This is a coupon settlement subject to CAFA

This is a "coupon settlement" properly governed by CAFA's attorneys' fee provisions. This Court's ruling that it is not subject to CAFA, DE102:4n.1, should be revisited and reversed.

Congress did not define the term "coupon" in CAFA. See 28 U.S.C. §1711 (definitions). "Where a statute does not define a key term," however, courts must "look to the word's ordinary meaning." *In re HP Inkjet Litig.*, 716 F.3d 1173, 1181 (9th Cir. 2013) (citing *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S.Ct. 1885, 1891 (2011)).

The ordinary meaning of a "coupon" clearly includes a "voucher," since it is "a form surrendered in order to obtain an article, service, or accommodation." *Merriam-Webster's Collegiate Dictionary,* "Coupon," def. 2 (11th ed. 2012). The *Oxford English Dictionary* defines "coupon" just as broadly, to include "[a] form, ticket, part of a printed advertisement, etc., ***entitling the holder to a gift or*** discount, etc., or designed to be filled up by an intending user or purchaser and forwarded to the advertiser for

8

information, **goods**, etc." 3 *Oxford English Dictionary*, "coupon" def. 2.a. (2d ed. 1989) (emphasis added). Costa product "vouchers" clearly qualify.

Ordinary definitions of the term "coupon" thus include both entitlements to discounts, and also entitlement to a gift or free item, and clearly cover the "vouchers" in this case. The Ninth Circuit in *Inkjet* easily found that "e-credits" for the purchase of printers or printing supplies on the defendant's website were but a "euphemism for coupons." *Inkjet*, 716 F.3d at 1176. Many decisions recognize that gift cards and vouchers redeemable for merchandise, but not for cash are not equivalent to cash, even if they potentially provide for the acquisition of a product at no additional charge.[6] Product "vouchers," particularly ones for a product line as limited as Costa's,

---

[6] *See, e.g., In re Southwest Airlines Voucher Litig.,* 799 F.3d 701 (7th Cir. 2015) (rejecting distinction between "vouchers" and "coupons," and holding that "vouchers" for free drinks are "coupons" under CAFA); *Redman v. RadioShack Corp.,* 768 F.3d 622, 636-37 (7th Cir. 2014) (Posner, J.);  *Hofmann v. Dutch LLC,* 317 F.R.D. 566, 576 (S.D. Cal. 2016) (recognizing that, in general, coupons are worth less than the same amount of cash and therefore cannot be valued at face value); *Dardarian v. OfficeMax N. Am., Inc.,* No. 11-CV-00947-YGR, 2014 WL 7463317, at *1 & n.2 (N.D. Cal. Dec. 30, 2014) (settlement providing $10 "Merchandise Vouchers" to claiming class members was a "coupon settlement" under CAFA); *Davis v. Cole Haan, Inc.*, No. C 11–01826 JSW, 2013 WL 5718452 (N.D. Cal. Oct. 21, 2013) (classifying $20 credits toward Defendant Cole Haan's products as coupons); *True v. American Honda Motor Co.,* 749 F.Supp.2d 1052, 1075 (C.D. Cal. 2010); *Fleury v. Richemont North Am., Inc., No.* C-05-4525 EMC, 2008 WL 328+7154, at *2 (N.D. Cal. Aug. 6, 2008) (finding that a settlement providing $100 credits to class members was a coupon settlement); *Acosta v. Trans Union, LLC,* 243 F.R.D. 377, 390 (C.D. Cal. 2007);

are not as valuable as cash.[7] Neither is it likely than more than two or three

percent of them will actually be claimed and redeemed.[8]

This Court held that the vouchers do not amount to coupons under

CAFA after reviewing "Plaintiffs' Supplement to Motion for Preliminary

Approval of Class Action Settlement Regarding 28 U.S.C. §1712 (DE99),

which Plaintiffs submitted to address whether the proposed settlement is a

coupon settlement." DE102:4n.1 (Preliminary Approval Order). That

submission's reliance on "CAFA's legislative history" and the Ninth Circuit's

opinion in *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 950 (9th

Cir. 2015), to override clear statutory text was fundamentally wrongheaded.

Interpreting any statute, "a court's proper starting point lies in a careful

examination of the ordinary meaning and structure of the law itself," and

legislative history cannot "be used to 'muddy' the meaning of 'clear statutory

language.'" *Food Mktg. Inst. v. Argus Leader Media,* 139 S. Ct. 2356, 2364

(2019) (quoting *Milner v. Dept. of Navy*, 562 U.S. 562, 572 (2011)).

---

[7] *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 634 (6th Cir. 2020) ("[W]e know from experience (and Congress) that the face value of a coupon may be quite different from its actual value to class members—even if the coupon is for more than an 'illusory amount.'")(citing 28 U.S.C. § 1712; *Redman*, 768 F.3d at 633-35);

[8] *See, e.g., Dardarian v. OfficeMax N. Am., Inc.*, No. 11-CV-00947-YGR, 2014 WL 7463317, at *2 (N.D. Cal. Dec. 30, 2014) (observing that although the face value of the product vouchers distributed via the claims process was more than $600,000, "by the conclusion of the redemption period, only 579 of the $10 vouchers had been redeemed."); *see also Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 866 (S.D. Iowa 2020)(surveying recent studies and concluding that "a redemption rate of 3% would be largely in line with typical redemption rates in email coupon campaigns.");

We have seen that merchandise "vouchers" qualify as "coupons" within the term's ordinary meaning. *See supra* pp. 7-9. Congress sought to check settlements under which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value," Class Action Fairness Act of 2005, Pub. L. No. 109–2, § 2, 119 Stat. 4 (2005), by ensuring Class Counsel would have an incentive to ensure that coupons have real value to class members. It did so by providing: "If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. §1712(a). This provision assumes that coupons **can** have real value to class members, and that Class Counsel should be compensated **to the extent that they do**. Thus, both statutory text **and structure** support treating merchandise vouchers as coupons.

Although *OnlineDVD* placed inappropriate reliance on legislative history, the decision is critically distinguishable, as the *Online DVD* settlement provided a cash option. The district court in *Online DVD* "determined that CAFA's coupon-settlement provisions should not apply because the Walmart gift cards were sufficiently different from coupons — **especially given the fact that claimants could choose between gift**

11

***cards and cash***, the gift cards were freely transferrable, and they had no expiration date." *Online DVD*, 779 F.3d at 941 (emphasis added).  The Ninth Circuit affirmed, holding that the settlement differed from those targeted by CAFA precisely because class members ***had the option of choosing cash***: "Affording over 1 million class members $12 in cash or $12 to spend at a low-priced retailer does not leave them with 'little or no value.'" *Online DVD*, 779 F.3d at 950. A gift card from Wal-Mart, what's more, can be redeemed for any of many thousands of products—quite unlike a "voucher" from Costa.

The Ninth Circuit emphasized, moreover, that "our holding is limited. We conclude only that the gift cards in this case are not subject to CAFA, without making a broader pronouncement about every type of gift card that might appear." *Id*. at 952. Only if class members have option of choosing $12 cash, or a $12 gift card, does *Online DVD* deem the gift cards beyond CAFA's reach.

Here, there is no cash option. The value of a "voucher" used to acquire a product for less than its face value is lost, as it is "subject to one-time use with no residual value." DE98:17§IV.F. Class members who do not wish to lose this "residual value" will likely have to buy products that cost ***more*** than the voucher's face value.  Class members may only redeem vouchers from a small subset of products, including Costa-branded t-shirts and accessories,

without paying additional money.[9] Class members receiving less than the maximum allowable $19.99 voucher are confined to an even smaller universe of products. *See* Joint Notice of Settlement, DE98-1 at pp. 62-63; *see also* 98-6:5, ¶7 (concerning value of vouchers available to class members). Notably, Costa does not offer any sunglasses – the subject of this litigation – for anywhere close to $19.99. This settlement does not provide compensation for the harm alleged in the complaint so much as an opportunity for Costa Del Mar to distribute low-priced merchandise advertising its brand or, alternatively, to induce class members toward a profitable sale of more expensive items. And the "vouchers" expire worthless if not used within two years. DE98:14§IV.A. These "vouchers" are not "cash equivalents." Not even close.

Finally, even if legislative history is considered, the fact that legislators objected to coupons offering discounts, and to instruments of little or no value, does not mean that coupons for merchandise are somehow beyond Congress' concerns. The legislative history confirms that "vouchers" for merchandise fall within the ambit of a "coupon" settlement. *See Inkjet*, 716

---

[9] *See, e.g., Seebrook v. Children's Place Retail Stores, Inc.*, Case No. 11–cv–837 CW, 2013 WL 6326487, at *1–2 (N.D. Cal. Dec. 4, 2013) *cf. Dardarian v. OfficeMax N. Am., Inc.*, No. 11-CV-00947-YGR, 2014 WL 7463317, at *3 (N.D. Cal. Dec. 30, 2014) ("In the present case, unlike in *Seebrook*, about two thirds of the merchandise in OfficeMax's California locations could not be purchased using the more common $5 vouchers provided for via the settlement without additional payment.").

13

F.3d at 1194 (citing S. Rep. No. 109-14 (2005), which includes examples such as a free crib-repair kit, free spring water, and free golf gloves or golf balls). Senate Report 109-14 shows that among the coupon settlements that moved Congress to action were ones offering class members merchandise, such as free golf balls or bottled water.[10]

### 2. By providing that application of CAFA's coupon-settlement provisions will kill the settlement, Class Counsel acted unethically, placing their own interest before the Class's

Precisely because application of CAFA would mandate a much lower fee than Class Counsel seeks, the Settling Parties inserted a "kill switch" or "blow provision" in the Settlement Agreement to destroy the Settlement if this Court found it subject to CAFA's coupon-settlement fee provisions:

> [I]f the Court construes the settlement as a "coupon" settlement such that the provisions of 28 U.S.C. § 1712 apply, then the certification shall be void and this Agreement and all orders entered in connection therewith, including but not limited to any order conditionally certifying the Class, shall become null and void and shall be of no further force and effect, and each Party shall retain all their respective rights as they existed prior to the execution of the Agreement….

DE98-1:14-15.

---

[10] Sen. Rep. 109-14, at 18 ("The settlement provided that the manufacturer would send each class member three more free golf balls"); *id.* at 17 ("The settlement calls for discounts **or free water** to Poland Spring customers over five years and contributions of $2.75 million to charities. In addition, the named plaintiff will receive $12,000. Plaintiffs' lawyers received $1.35 million.") (emphasis added).

14

Placing Class Counsel's own interest in maximizing attorneys' fees ahead of the Settlement Class's interests is grossly improper.  "By proceeding in this fashion with respect to attorneys' fees and then attempting to justify the fees not as statutory fees but as common fund fees, the parties followed an irregular and ... improper procedure."[11] Even outside of class actions, it is unethical to hold a settlement hostage to the fee demands of the lawyers.[12]

This is reason enough to deny Class Counsel *any* fee award, for

> under long-standing equitable principles, a district court has broad discretion to deny fees to an attorney who commits an ethical violation. In making such a ruling, the district court may consider the extent of the misconduct, including its gravity, timing, willfulness, and effect on

---

[11] *Staton*, 327 F.3d at 969. The Ninth Circuit explained:

> When the ordinary procedure is not followed and instead the parties explicitly condition the merits settlement on a fee award justified on a common fund basis, the obvious risk arises that plaintiffs' lawyers will be induced to forego a fair settlement for their clients in order to gain a higher award of attorneys' fees. That risk is, if anything, exacerbated where, as here, the agreement provides for payment of fees by the defendant, as in a statutory fee-shifting situation, but the parties choose to justify the fee as coming from a putative common fund. Where that is the case, courts have to be alert to the possibility that the parties have adopted this hybrid course precisely because the fee award is in fact higher than could be supported on a statutory fee-shifting basis, yet the deal is so dependent upon class counsel receiving a greater-than-lodestar amount of fees that the parties were not willing to give the court supervisory discretion to determine the distribution of the total settlement package between counsel and the class.

*Staton,* 327 F.3d at 970-71.

[12] *Shapo v. Engle*, 463 F.3d 641, 646 (7th Cir. 2006) (observing that settling defendant's counsel "would have been in breach of its fiduciary duty to its client had it blocked settlement merely to obtain an advantageous forum in which to collect its legal fees if the client failed to pay them.").

the various services performed by the lawyer, and other threatened or actual harm to the client.

*Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012) (citing Restatement (Third) of Law Governing Lawyers § 37 (2000)); *see also* Fla. State Bar Rule 4-1.7(a)(2) (representation of adverse interests).

**B.    Even if CAFA does not apply, Class Counsel should be limited to an unenhanced lodestar fee award to be awarded only after actual claims and redemption rates for the vouchers are known**

The only federal claims being asserted and settled are under the Magnuson-Moss Warranty Act, which limits prevailing counsel to an award of "attorneys' fees based on actual time expended," 15 U.S.C. §2310(d)(2). Their unenhanced lodestar represents a presumptively reasonable fee, and Class Counsel have not demonstrated that they are entitled to multiplier—let alone one of nearly five times their lodestar. *See generally Perdue,* 559 U.S. at 543 (2010); *Dague*, 505 U.S. at 562.

To the extent that the case involves Florida law claims, moreover, if neither CAFA nor Magnuson Moss control the award of fees, then the *Erie* doctrine requires the Court to apply Florida law on attorneys' fees. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  And for state-law claims, "the matter of attorney's fees is a substantive legal issue and is therefore

16

controlled by state law."[13] Notably, *Haney* is a Florida state-court case, and while *Reed* is a federal action, it sought damages under Florida law–specifically, FDUTPA.  Only *Smith* concerns the prosecution of a federal claim (Magnuson-Moss) in a federal court.  DE109-2:4-15.

Florida law mandates a fee award based on attorneys' lodestar, rather than percentage of a common fund or common benefit. *Kuhnlein v. Department of Revenue*, 662 So.2d 309, 312–313 (1995). And while Florida precedents permit a multiplier of from 1.0 to 2.5, they certainly do not permit a multiplier approaching five such as Class Counsel seek. *Standard Guar. Ins. Co. v. Quanstrom*, 555 So.2d 828, 834 (Fla. 1990); *see also State Farm Fire & Cas. Co. v. Palma*, 555 So. 2d 836, 838 (Fla. 1990) (reiterating *Quanstrom*'s "holding that the range of the multiplier" is "1.0 to 2.5."). In any event, Class Counsel have neither supported their lodestar with competent evidence, nor demonstrated they are entitled to a multiplier on that lodestar.

## C.   Assuming arguendo that the case is not subject to CAFA, no attorney's fee may be awarded under the common-fund or common-benefit doctrines

---

[13] *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455, 461 (10th Cir. 2017) (quoting N. *Tex. Prod. Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 817 (10th Cir. 2000); *see also Trans Coastal Roofing Co. v. David Boland, Inc.,* 309 F.3d 758, 760 (11th Cir. 2002) ("Since Boland's claim for attorneys' fees sounds in state law and reaches us by way of federal diversity jurisdiction, we apply the substantive law of Florida, the forum state."), *certified question answered sub nom. David Boland, Inc. v. Trans Coastal Roofing Co.,* 851 So. 2d 724 (Fla. 2003)*; McMahan v. Toto,* 256 F.3d 1120, 1132 (11th Cir. 2001), *amended on reh'g on other grounds,* 311 F.3d 1077 (11th Cir. 2002) (statute that allows recovery of attorneys' fees is substantive).

17

Citing *Camden I,* Plaintiffs' Counsel say "[a]ttorneys' fees for class counsel are required to be based upon a percentage of the benefit obtained for the class." DE109:11. But that is not so. The Eleventh Circuit's decision in *Camden I* calls for percent-of-fund fee awards only when and if fees are paid from a cash common-fund settlement. *Camden I*, 946 F.2d at 774-75. Here there is no genuine common-fund recovery—for Settlement Class members are to receive vouchers. The Settlement Agreement specifies, moreover, that "***the equitable common-fund doctrine does not apply to this Settlement***." DE98-1:27§IX.C (emphasis added).

Neither does the case qualify for a fee award under the far narrower "common benefit" doctrine, which "is appropriate only where the defendant and the beneficiaries share an identity of interests," and ordinarily applies "in only two types of cases: suits by shareholders against their corporations and suits by union members against their union." *Kenny A. ex rel. Winn v. Perdue,* 454 F. Supp. 2d 1260, 1271-72 (N.D. Ga. 2006), *aff'd sub nom. Perdue v. Kenny A. ex rel. Winn,* 532 F.3d 1209, 1219 & 1232-33 (11th Cir. 2008), *rev'd in part on other grounds,* 559 U.S. 542 (2010). So, Plaintiffs' counsel cannot seek a fee award under either the common-fund doctrine or the common-benefit doctrine.

The Settlement Agreement includes a "clear sailing" provision, that "Defendant agrees not to oppose, an application for an award of Attorneys' Fees, Costs, and Expenses in the Global Action equal to 30% (thirty percent) of the total Settlement Fund." DE98-1:27§X.A. But there's no explanation for why Costa would choose to pay Class Counsel nearly five times a reasonable lodestar fee. That raises red flags, since Costa would not agree to pay Class Counsel the extra millions unless they were getting something in return, in the form of reduced liability to the Class.

## D.   The injunctive relief does not support a common fund percentage award

Plaintiffs refer to the settlement's injunctive relief as supporting the approval of the settlement and their fee request.  However, the injunctive relief is substantially obviated by the fact that Costa voluntarily discontinued the conduct challenged in *Haney* over three years ago.[14] Likewise, "Costa no longer advertises a 'Lifetime Warranty,' which was the subject of Plaintiff's claims in the *Smith* Action."[15]

---

[14] Hargitai Decl., DE109-2:9 at ¶21 (maintaining that Costa "stopped advertising to consumers its 'nominal fee' promise on its sunglass packaging as of January 1, 2018."); *see also id.* at 15, ¶34 (asserting that "…Costa no longer advertises the 'nominal fee' promise, which was the subject of the *Reed* and *Haney* Actions").

[15] Hargitai Decl., DE109-2:12 at ¶28.  DE98-1:15-16 ("As a result of this Litigation, Costa modified its product packaging and marketing materials….").

Consequently, the injunctive relief essentially requires Costa to continue refraining from doing what it was already voluntarily refraining from doing.  That casts doubt as to its value going forward.[16]  For that reason, also, the damages report used here to describe the value of the injunction to the class is flawed.  *See* Davis Objections to Evidence at pp. 2-3.

Nevertheless, reducing the practice to a judicially-enforceable injunction may support a prevailing-party determination for the purposes of statutes with fee shifting provisions such as Magnuson-Moss.[17] That, of course, would be a lodestar-based fee and not a percentage.

## E.    The proposed "Incentive Awards" are precluded by binding Supreme Court authority

Named Plaintiffs agreed to settle this action on terms obtaining mere product "vouchers" for the rest of the Class, but $10,000 apiece for themselves. DE98-1:29 §X. B. (Class Counsel to seek $10,000 per plaintiff as an "Incentive Award."). Those incentive awards are patently illegal under longstanding Supreme Court precedent that the Eleventh Circuit honored in

---

[16] *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 945 n.8 (9th Cir. 2011) ("We note, however, that the value of the injunctive relief is not apparent to us from the face of the complaint, which seeks to recover significant monetary damages for alleged economic injury, nor from the progression of the settlement talks, the last of which occurred after defendants had already voluntarily added new warnings to their websites and product manuals.").

[17] *See, e.g.*, *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2001); *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach,* 353 F.3d 901, 905 (11th Cir. 2003).

*Johnson v. NPAS Sols.*, LLC, 975 F.3d 1244, 1255 (11th Cir. 2020), and in *Medical & Chiropractic Clinic, Inc. v. Oppenheim,* 981 F.3d 983, 994 (11th Cir. 2020) ("such awards are foreclosed by Supreme Court precedent"); *see Trustees v. Greenough*, 105 U.S. 527, 537-38 (1882); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 122 (1885).

The expectation of such awards has compromised Named Plaintiffs' ability to adequately represent the class.  "If anything," *NPAS* warns, "we think that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough*." 975 F.3d at 1258. Indeed, where special side payments or incentive awards significantly exceed what absent class members can expect upon settlement approval they create "a patent divergence of interests between the named representatives and the class."[18]

Those concerns are directly implicated here.  Class members obtain a voucher worth between $9 and $20 for Costa's products, while the Named Plaintiffs expected to receive $10,000 each—between 500- and 1,000-times

---

[18] *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009); *see also Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013).  "Incentive payments to class representatives raise 'grave problems of collusion.'" *Reed v. Contintental Guest Servs. Corp.*, 2011 WL 1311886, at *4 (S.D.N.Y. Apr. 4, 2011) (citation omitted); *accord, e.g., Lee v. Buth-Na-Bodhaige, Inc.*, 2019 IL App (5th) 180033, ¶104, 143 N.E.3d 645, 675 ("Incentive payments raise questions about collusion and whether the interests of the class have been relegated to a less prominent role in the litigation.").

21

what class members get, in cash.  That is a powerful incentive to agree to an

otherwise inadequate settlement and to capitulate to their lawyers'

machinations on fees. A Settlement Agreement that Named Plaintiffs

acquiesced in expecting awards of $10,000 apiece should not be approved.

## F.  The Court cannot find that the cy pres provisions provide a benefit to the class

Under the cy pres provisions, Costa is only required to pay over the

unclaimed voucher benefits or $1 million, ***whichever is less***. DE98, ¶13.  The

remainder stays in Costa's pocket. That reinforces the ephemeral and

reversionary nature of the settlement.

Moreover, the settlement permits Costa to unilaterally select a

recipient after the fact, and makes no provision that this Court evaluate

whether that recipient is proper under the cy pres doctrine.  That does not

meet the requirements for legitimate cy pres relief.[19]  Costa's commitment to

---

[19] *See, e.g.*, *Nachsin v. AOL LLC* 662 F.3d 1034, 1036 (9th Cir. 2011) (approval reversed where cy pres provisions impermissibly failed to "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity."); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir. 2010) ("[W]ithout any specific proposal for a cy pres distribution before us, we are unable to determine whether such a distribution would be "for the next best use which is for indirect class benefit," and would be for uses "consistent with the nature of the underlying action and with the judicial function[.]")(citations omitted); *Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (reversing settlement approval where proposed cy pres recipients were not identified in the settlement notice and emphasizing its "concerns are not placated by the settlement provision that the charities will be identified at a later date and approved by the court."); *BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1066 (8th Cir.2015) (to give class members a voice and limit the appearance of overreaching, "the district court should make a cy pres proposal publicly available and allow class members to object or suggest alternative recipients before this court selects a cy

pay up to $1 million to some unidentified recipient(s) cannot be considered even an indirect benefit to the Class.

## G.   The Settling Parties would deprive the class of competent adversarial challenge by purporting to deny objectors' counsel attorneys' fees in the settlement

Courts have long understood and reiterated the benefits that competent counsel for objectors bring to proposed settlements. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) (in settlement, courts lose benefits of adversarial process so that "objectors play an important role by giving courts access to information on the settlement's merits.").

> In our adversarial system, judges are ill-equipped to investigate and discover evidence against a proposed settlement on their own initiative. Professor Brunet notes that "a district judge lacks the incentive, information, and practical ability to effectively monitor class counsel. Under these conditions, the trial court alone cannot be an effective check on the potential abuse that can arise in the class action settlement process." This makes objectors important because class members can potentially provide critical objective viewpoints on the adequacy of a proposed settlement.

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 86-87 (2007) (footnote omitted) (*quoting* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 406).

---

pres recipient."). S*ee also Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 480-81 (5th Cir. 2011) (Jones, Ch. J., concurring in reversal of cy pres award, collecting and discussing authority that cy pres awards in class actions are susceptible to abuse and violate the Constitution and Rules Enabling Act).

Courts have consistently awarded objectors' counsel fees when their objections assist the courts, particularly when they preserve or create a common fund for the benefit of the class.[20]  In this case, because unawarded fees "inure to the benefit of the Class," a reduction in the requested fees would represent a preservation of the class fund normally entitling the lawyers responsible to fees.  But the parties purport to agree in advance that objectors' counsel cannot be paid.[21]

There is no plausible explanation for this clause other than an attempt to disincentivize competent counsel from representing absent class members. The clause should be deemed void, because it is against public policy favoring meritorious objections, and because the settling parties have no authority to limit this Court's discretion.[22] The parties' clumsy attempt to dissuade

---

[20] *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("If … objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 359 60 (N.D.Ga. 1993)  (fees proper where objectors "significantly refined the issues … and their participation transformed the settlement hearing into a truly adversarial proceeding."); *cf. Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527, 547 (5th Cir. 1980) (award of fees under prevailing party fee shifting statute when objectors defeated settlement, leading to a trial resulting in a higher recovery); *Reynolds v. Beneficial National Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (desirable participation of objectors in fairness hearings "is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee.").

[21] DE98-1:28, §IX C. ("[T]he Parties hereto agree that a Class Member who objects to the Settlement shall not be entitled to recovery of all or any portion of Attorneys' Fees, Costs and Expenses and that the equitable common-fund doctrine does not apply to this Settlement.").

[22] *See Hart v. BHH, LLC*, 334 F.R.D. 74, 78-79 (S.D.N.Y. 2020) (explaining court's fiduciary role precluded proposed arbitration of class counsel's fees: "Plaintiffs' assertion that an arbitrator can decide what fees are reasonable is contrary to law. Attorneys' fees

24

professional scrutiny bespeaks a strong consciousness that the Settlement will not withstand it.

## H.      Plaintiffs submitted an incorrect CAFA Notice

Plaintiffs say they directed notice to the appropriate federal and state officials identified in 28 U.S.C. § 1715(a).  DE98-1:7, 126-128.  It is not accurate to say, as Plaintiffs did in their CAFA letter, that class members cannot be identified because the class period continues to final judgment. Class membership is defined by the purchase date, which for all subclasses is no later than January, 2018. DE98-1:8-9.   According to the settlement, Costa long ago discontinued charging the fees giving rise to the action, so that it is impossible that any person not already a class member would become one between the settlement execution and final approval.

## III.  CONCLUSION

The motions for class certification, settlement approval, attorneys' fees, and incentive awards should be denied.

---

are awarded at the discretion of the court.") (citing Fed. R. Civ. P. 23(e)(2)(C)(iii)).  The same court later explained that "arbitration would usurp this Court's discretion to award fees and eviscerate its duty to '"act as a fiduciary who must serve as a guardian of the rights of absent class members."' *Hart v. BHH, LLC*, No. 15CV4804, 2020 WL 5645984, at *1 (S.D.N.Y. Sept. 22, 2020) (*quoting* Hart, 334 FRD at 78, *quoting McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)).

Date:  March 1, 2021                Respectfully submitted,


    s/ John W. Davis
_____

John W. Davis (FL Bar No. 193763)
john@johnwdavis.com
3030 N. Rocky Point Dr. W., Ste. 150
Tampa, FL  33607
(813) 533-1972

*Pro se*

26

## CERTIFICATE OF SERVICE

CASE NO. 3:18-cv-1011-J-32JRK

I hereby certify that on March 1, 2021, I filed the foregoing document and attachments with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document and any attachments are being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  March 1, 2021

s/ John W. Davis
John W. Davis