UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and TROY SMITH, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

COSTA DEL MAR, INC., a Florida Corporation

    Defendant.

_____/

Case No.: 3:18-cv-1011-J-32JRK

## OBJECTIONS TO EVIDENCE

**I.    Objection to Declaration of Stefan Boedeker**

Plaintiffs submit an expert declaration to put a financial value on the settlement's injunctive provisions. However, the analysis makes numerous unwarranted assumptions that inflate the projected value of the relief to the class substantially, leaving undetermined the actual value of the injunctive relief.

First, Boedeker's analysis does not apply to the injunction in this case. It purports to evaluate the value of the injunction "going forward" for two years. DE109-3:8, ¶28 & n.12. Crucially, however, Costa voluntarily changed its conduct over three years ago; the injunction itself only requires Costa not

1

to resume the practices alleged to be unlawful. *See* Davis Objection at 19-20. Therefore, the value of the injunction is first dependent upon the probability that Costa would revert to the challenged policies if left unchecked by the threat of contempt.

Given its genesis as a damages study, Boedeker's declaration is rooted in the assumption that all of the allegations against Costa are true, and resolves any factual issue in favor of Plaintiffs. However, if Costa's conduct was not actually as bad as Plaintiffs alleged, then correcting it is not as valuable as Plaintiffs assert. Boedeker's analysis does not address that possibility. The range of potential value to the Class is thus not comparable to a range of potential results if the case were tried and the facts were determined. It is a range of potential economic values at the extreme end of possibility.

For example, for the repair class, Boedeker assumes that 100% of glasses sold would need repairs, and that those customers would seek repairs from Costa. DE109-3:10-11, ¶¶38, 41. That is unrealistic. Some glasses will be lost, or fall into desuetude. Some customers would seek repairs from another source. Some glasses that need minor or cosmetic repair would go without. But there should be no need to speculate about the proportion of glasses returned for repair, as Costa itself certainly has data from which a reasonable expected returned-for-repair rate could be derived. Failing to

2

obtain that data, and instead assuming a 100% future repair rate, renders the resulting conclusions extremely unhelpful in assessing the value of injunctive relief.

Plaintiffs themselves appear to be conscious of these problems. After noting that "Plaintiffs have retained an expert, Stefan Boedeker, who has quantified the estimated monetary value of the injunctive relief secured by the settlement at between $47,618,189 and $58,210,558 for a two-year period," Plaintiffs other expert, Thomas Sccott, has to admit that Class Counsel advised him that they "believe Mr. Boedeker's analysis to be fairly aggressive." DE109-1:6n.2. Mr. Scott proposes as a fallback that the relief is worth at least "$5,000,000 because Costa's former Vice President and Controller, Felicia Morrisey, testified that the cost to Costa to alter the packaging of its non-promotional, non-prescription sunglasses would "easily reach $5,000,000." *Id*. That is quite a spread. Plaintiffs' own experts put the injunctive relief's value at between $5 million and $58 million. Moreover, Costa made the changes **before** being subject to any injunction.

Under the circumstances, the injunctive relief's value is too uncertain and too ephemeral to support a fee award. "Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund," and it is "only in the unusual instance where the value to individual

3

class members of benefits deriving from injunctive relief can be accurately ascertained [that] may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003).

## II.     Objection to Declaration of Thomas E. Scott

Plaintiffs offer the declaration of Thomas E. Scott, a lawyer and former judge, in support of the settlement and attorneys' fee request. *See* Declaration of Thomas E. Scott, DE109-1. He was retained to "render an opinion on the fairness and reasonableness of the settlement and on the reasonableness of their request for attorneys' fees and expenses." *Id*. at 2, ¶5.

No matter the declarant's close familiarity with the law and the case, his opinion is not the proper subject of expert testimony. There is no convention in American law by which a party retains a private judge to instruct the sitting judge on how to rule in a case in a sworn declaration. The declaration is argument, redundant to that already made by Class Counsel. Such testimony violates not only Fed. R. Evid. 702, but also Rule 403 because it does not assist the trier of fact. *U.S. v. Frazier,* 387 F.3d 1244, 1262-63 (11th Cir. 2004) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); *Butler v. First Acceptance Ins. Co.,* 652 F.

Supp. 2d 1264, 1272 (N.D. Ga. 2009) (same); *Konikov v. Orange County, FL*, 290 F.Supp.2d 1315 (M.D. Fla. 2003) (barring testimony of attorney as to legal implications of conduct).

The declaration should be stricken for the further reason that it is contrary to law. It would, of course, "be a paradigmatic abuse of discretion for a court to base its judgment on an erroneous view of the law." *McNair v. Allen,* 515 F.3d 1168, 1173 (11th Cir.2008) (citations and internal marks omitted). "It is no less an abuse of discretion for a district court to base its decision on affidavits that are themselves based on legally erroneous assumptions." *Perdue v. Kenny A. ex rel. Winn,* 532 F.3d 1209, 1233 (11th Cir. 2008), *rev'd in part on other grounds,* 559 U.S. 542 (2010).

Scott's errors begin when he fails to consider the possibility that the "vouchers" in this case amount to a coupon settlement governed by the Class Action Fairness Act ("CAFA"). He offers no basis for concluding that the matter should not be subject to CAFA coupon-settlement fee limitations.

Scott next overlooks the fact that the Settlement Agreement provides that "the equitable common-fund doctrine does not apply to this Settlement." DE98-1:27§IX.D. The Settlement Agreement thus precludes application of the common-fund doctrine from *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991).

Asserting that he is "familiar with the law regarding the reasonableness of attorney's fees in common benefit/fund cases such as this case," and "[s]pecifically *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991)," Scott nonetheless proceeds on the erroneous assumption that attorneys' fees may be awarded under the common-fund doctrine that the Settlement Agreement specifically rejects. DE98-1:27§IX.D.

Occasionally referring to the matter as a "common benefit" case, Scott overlooks limitations on common-benefit fee awards. Common-benefit fees are "appropriate only where the defendant and the beneficiaries share an identity of interests," making it appropriate in only two types of cases: suits by shareholders against their corporations and suits by union members against their union." *Kenny A. ex rel. Winn v. Perdue,* 454 F.Supp.2d 1260, 1271-72 (2006), *aff'd sub nom. Perdue v. Kenny A. ex rel. Winn,* 532 F.3d 1209, 1233 (11th Cir. 2008), *rev'd in part on other grounds,* 559 U.S. 542 (2010).

Ignoring these limitations, Scott opines that a $12 million "common benefit/fund" fee should be awarded based on his personal evaluation "using the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 448 F .2d 714 (5th Cir. 1974)," as somewhat modified by *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768 (11th Cir. 1991). DE109-1:15¶44.

6

Scott fails to note that Supreme Court precedent disparages use of the *Johnson* factors as he employs them. In *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010), the Supreme Court directly repudiated use of the so-called "*Johnson* factors" to determine "a reasonable attorney's fee" in a contingent-fee class action that had settled producing a consent decree but no common fund. *Perdue* directs lower courts to recognize a strong presumption that attorneys' unenhanced lodestars— i.e., their reasonable hourly rates times the hours reasonably expended—provide them a reasonable attorneys' fee that is sufficient both to attract capable counsel and to equitably compensate them. *Perdue,* 559 U.S. at 552-53.

*Perdue* holds, moreover, that "unlike the *Johnson* approach, the lodestar calculation is 'objective,'" and that it "thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue,* 559 U.S. at 551-52. Scott's approach, on the other hand, produces "exactly the sort of unguided and freewheeling choice—and the disparate results that come with it—that [the Supreme] Court has sought to expunge" from attorney's fee determinations. *Murphy v. Smith,* 138 S.Ct. 784, 789-90 (2018).

Scott also ignores Supreme Court and Eleventh Circuit precedent condemning "double counting" engendered when the *Johnson* factors call for repeated consideration of elements already reflected in attorneys' lodestars.

7

In *Perdue,* the Supreme Court reiterated that "we have noted that 'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee,' [*Delaware Valley,* 478 U.S.] at 566, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue,* 559 U.S. at 553; *see also, e.g., City of Burlington v. Dague*, 505 U.S. 557, 563 (1992) (warning against *Johnson* analysis that "amounts to double counting" of factors already reflected in lodestar); *Blum v. Stenson*, 465 U.S. 886, 899 (1984) ("adjustment for quality of representation is a clear example of double counting").

> As the Eleventh Circuit recently noted:
>
> The Supreme Court has made it plain that 'most, if not all,' of the factors used to determine a reasonable fee are already subsumed in the lodestar, and it is not permissible to enhance a fee based on a factor that is subsumed. [*Perdue,* 559 U.S.] at 553. That would be 'double counting'—i.e., a windfall.

*In re Home Depot Inc.,* 931 F.3d 1065, 1083 (11th Cir. 2019).

Yet Scott's discussion of the factors from *Johnson* and *Camden I* double, triple, and quadruple count factors already presumptively reflected in Class Counsel's lodestar. He starts with "Factor 1 (The time and labor required," asserting that Class Counsel billed "over 6,000 hours on the Litigation," and thereby "put at risk" a lodestar of "over $2.5 million of attorney and paralegal time." DE109-1:18¶50. Moving on to "Factor 2 – the novelty and difficulty of the questions involved," ignoring the fact that this is

8

already reflected in the $2.5 million lodestar. *See Dague,* 505 U.S. at 562-63 ("the difficulty of establishing th[e] merits ... is ordinarily reflected in the lodestar—either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so"); *Blum v. Stenson,* 465 U.S. 886, 898 (1984) ("novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel").

Considering contingency risk also "would likely duplicate in substantial part factors already subsumed in the lodestar." *Dague,* 505 U.S. at 562. Yet Scott counts risk again, and again, and again. *See* DE109-1:18¶50 ("Class Counsel invested and put at risk over $2.5 million of attorney and paralegal time"); DE109-1:18¶51 (citing "risk and uncertainty"); DE109-1:21¶59 ("Factor 4 – The preclusion of other employment by the attorneys due to acceptance of the case," citing "substantial risk of non-payment or underpayment undertaken by Class Counsel"); DE109-1:25¶72 (Under "Factor 7 – (Time limitations imposed by the client or the court) and Factor 10 (the undesirability of the case)," asserting yet again that "The risks assumed by Class Counsel in handling the Litigation on a contingency basis were significant."); DE109-1:27¶81 (Under "Factor 8 (The amount involved and the results obtained," again asserting that "Class Counsel faced tremendous difficulty and risk"); DE109-1:29¶87 (Under "Other Relevant

9

Factors" once more citing "the large financial risk assumed in prosecuting the Litigation").

"In my opinion," Scott solemnly attests, "the attorneys' fees awarded in this case should compensate Class Counsel not only for the time incurred in prosecuting the Litigation, but also for the loan of those services and substantial risk that Class Counsel undertook in providing the services." DE109-1:24¶70 ("Factor 6 (Whether the fee is fixed or contingent"). Yet the opinion of the Supreme Court is quite to the contrary—that risk already is adequately reflected in the lodestar. *Dague,* 505 U.S at 562-63.

The Court should ignore Scott's declaration. But it should not ignore the red flag raised by the implicit assumption that this Court need not closely analyze the settlement and fee request because it has been vetted by another jurist in the employ of Class Counsel.

Date:  March 1, 2021             Respectfully submitted,

                                                  s/ John W. Davis

                                                  John W. Davis (FL Bar No. 193763)
                                                  john@johnwdavis.com
                                                  3030 N. Rocky Point Dr. W., Ste. 150
                                                  Tampa, FL  33607
                                                  (813) 533-1972

                                                  *Pro se*

**CERTIFICATE OF SERVICE**
CASE NO. 3:18-cv-1011-J-32JRK

I hereby certify that on March 1, 2021, I filed the foregoing document and attachments with the Clerk of the Court using CM/ECF. I also certify that the foregoing document and any attachments are being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date: March 1, 2021

                                                                         s/ John W. Davis
                                                                            John W. Davis