## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| TROY SMITH, individually and on behalf of all others similarly situated, BRENDAN C. HANEY, individually and on behalf of all others similarly situated, and GERALD E. REED IV, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COSTA DEL MAR, INC., a Florida Company, <br><br> Defendant. | Case No. 3:18-cv-01011-TJC-JRK |

### OBJECTION OF AUSTIN VALLS AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING THROUGH COUNSEL

### Introduction

Respectfully, the Court's preliminary conclusion that this is not a coupon settlement under the Class Action Fairness Act (CAFA) is incorrect. Dkt. 102 at 4 n.1 (citing 28 U.S.C. § 1712). Though "coupon" is not defined by the statute and the Eleventh Circuit has yet to weigh in on the issue, these vouchers would be recognized as coupons in every Circuit Court that has.

The $8.99, $10, and $19.99 Costa vouchers are coupons because they require class members to use them with the defendant, serving more as a marketing campaign[1] than a disgorgement of ill-gotten gains. *See Synfuel Tech., Inc. v. DHL Exp. (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006); *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 489 (4th Cir. 2020). They are unlike Wal-Mart or Amazon gift cards that enable consumers to select from a wide range of products. The vouchers are confined to a narrow universe of products from a sunglasses company. Members of the Nationwide Warranty Class, for example, cannot purchase "hundreds of products" with a single $8.99 voucher. Dkt. 109 at 8. They must choose from 42 items like Costa decals, cleaning cloths, and cords for glasses. Dkt. 98-1 (Ex. 3 to Amended Settlement). Otherwise, they must spend out of pocket to benefit from the voucher.

The vouchers do not spend like cash. Cash does not have a two-year expiration date. And cash does not limit a consumer to products from a company that previously misrepresented the nature of its warranties and charged them improper fees.

Nor does class counsels' chosen nomenclature of "vouchers" remove the settlement from CAFA's reach as class counsel insist. Dkt. 99 *passim*. The Fourth

---

[1] The only reason for designating the vouchers one cent below the dollar (*i.e,* $8.99 and $19.99) is to induce consumers to spend beyond the voucher amount.

Circuit recently reversed on this very point in a case in which Robert Clore, one of the undersigned counsel, represented the objector. *See Lumber Liquidators*, 952 F.3d at 489-91 (reversing fee after court failed to apply CAFA to settlement with vouchers). Indeed, "CAFA's legislative history makes clear" that "labeling the relief awarded to the class as 'vouchers' is not dispositive." *Lumber Liquidators*, 952 F.3d at 489 (citing S. Rep. No. 109-14, at 16, 18-20 (2005) (criticizing settlements in which relief awarded was labeled 'voucher'); *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701 (7th Cir. 2015) (rejecting distinction between vouchers and coupons).

Application of CAFA here has two effects. *First*, it requires heightened scrutiny of the settlement and precludes approval if there is a disproportionate fee relative to actual class recovery. 28 U.S.C. § 1712(e); *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) (concluding CAFA requires "a greater level of scrutiny"); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("we note that in that statute Congress required heightened judicial scrutiny of coupon-based settlements"). *Second*, CAFA proscribes class counsels' proposed attorneys' fees as a percentage of coupons offered to the class. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1184 (9th Cir. 2013) ("the unambiguous command of § 1712(a) requires that 'any attorney's fee' awarded for obtaining coupon relief be calculated using the redemption value of

the coupons"). Class counsel are only entitled to a percentage of fees from the vouchers *redeemed*, not from those issued. *Id*.

Fees for all other relief, including injunctive relief, must come under the lodestar method. 28 U.S.C. §1712(b)(1),(c)(2). However, class counsel have not proffered sufficient material to allow the Court to make such an award. Dkt. 109-4. They provided no breakdown as to how hours were accumulated by task and thus no way for the Court to eliminate duplicative billing, an important consideration given the three overlapping cases. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).

Neither settlement approval nor an award of attorneys' fees is appropriate at this juncture without information on redemption rates. Unfortunately, the parties have structured the settlement so that the coupons cannot issue until *after* the Court approves the settlement. Dkt. 98 ¶ IV.D & II.(18); *In re HP Inkjet*, 716 F.3d 1173, 1186 (9th Cir. 2013). By moving for settlement approval and fees without this information, class counsel invite error. *HP*, 716 F.3d at 1186.

One possible option would be for the parties to submit expert testimony concerning the value of the vouchers and the expected redemption rates. 28 U.S.C. § 1712(d) ("the court may, in its discretion upon the motion of a party, receive expert testimony from a witness qualified to provide information on the actual

value to the class members of the coupons that are redeemed"); *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 662 n.4 (9th Cir. 2020) (suggesting CAFA allows "using expert testimony to estimate" the coupon redemption value). Whatever the actual redemption rates, they are certain to be less than 10%. "Redemption rates are tiny[,]" "typically mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%." James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act,* 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005). Even a 10% redemption rate would make the vouchers worth just $3.7 million.[2] To the extent class counsel are entitled to recover a percentage of the sales tax and delivery costs that Costa has agreed to cover, those amounts are tied to the coupons and should likewise be valued based on redemption rates. Thus, if 10% of class members redeem the coupons, $20 million in waived shipping costs has a $2 million redemption value and the $1 million for no sales tax is worth $100,000. That would produce a $5.89 million in total coupon value.[3] A 25% benchmark

---

[2] Valls does not have data on the average number of vouchers that will be distributed per class member. If we assume an average of two per member, using the number of class members represented in the amended complaint (Dkt. 84 ¶88) and a generous claims rate of 10% among the Florida Purchase Class, the total face value of the vouchers issued would be $37,976,600. (529,000 Nationwide Repair Class Members x 2 x $19.99 = $21,149,420. 500,000 Nationwide Warranty Class Members x 2 x $8.99 = $8,990,000. 141,000 Florida Repair Class Members x 2 x $19.99 = $5,637,180. 1,100,000 Florida Purchase Class Members x 10% claims rate x 2 x $10.00 = $2,200,000. $21,149,420 + $8,990,000 + $5,637,180 + $2,200,000 = $37,976,600). 10% of $37,976,600 is $3,797,660.

[3] $3,797,660 + $2,100,000 = $5,897,660.

would allow nothing above a $1.47 million fee for the coupons.[4] *See In re Rayonier Inc. Sec. Litig.*, No. 3:14-CV-1395-J-32JBT, 2017 WL 4542852, at \*1 (M.D. Fla. Oct. 5, 2017) (noting that *Camden I* established 25% "as the benchmark for common fund cases in the Eleventh Circuit") (citations omitted); *see also Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991).

For the non-coupon relief, the most class counsel could theoretically recover would be their represented $2.6 million lodestar. As discussed *infra*, they are not even entitled to that. The highest theoretical fee allowable under CAFA would thus be $4.089 million (actually less).[5] According to the terms of the settlement, a minimum of the $7.91 million reduction in fees "shall inure to the benefit of the Class." Dkt. 98 at X.A.

### Standing, Objection Procedures, and Attorney Information

This objecting class member's full name is Austin Alexander Valls. His address is 201 Leming Avenue, Corpus Christi, Texas 78404. *See* Exhibit 1, Declaration of Austin Valls. His current phone number is (956) 285-5926. *Id.* at ¶ 2. As set forth in Valls' declaration, he is a member of the settlement class,

---

[4] $5,897,660 x .25 + $1,474,415.

[5] $1,474,415 + $2,615,374 = $4,089,789.

specifically the Nationwide Repair Class,[6] because he is a citizen of the United States (not from Florida) who (1) purchased Costa plano sunglasses before January 1, 2018, and (ii) was charged a repair fee by Costa from April 3, 2015 through the date of the entry of the Court's Final Order, to repair or replace his Costa plano sunglasses damaged by accident, normal wear and tear, or misuse. *Id*. at ¶¶ 3-8. Valls' declaration, which is incorporated herein by reference, describes when and where he purchased three different pair of Costa sunglasses and the dates of repairs of the sunglasses. *Id*. It also attaches a true and correct copy of a print-out from his online Costa account documenting the orders and the repair fees. *Id*. at Ex. 1-A. It also attaches a true and correct copy of email correspondence sent from Costa to Valls acknowledging the orders. Valls is thus a member of the settlement class as defined by the class notice and has standing to make this objection.

Mr. Valls objects to the proposed settlement and attorneys' fee request for the reasons stated herein.[7] This objection is asserted on behalf of Valls alone, but it applies equally to the entire class. Valls is represented by Bradley G. Bodiford (the undersigned), Terrell Hogan Yegelwel, P.A., 8th Floor, Blackstone Building, 233

---

[6] Valls believes he may also be a member of the Nationwide Warranty Class, but he was unable to get a breakdown of charges from Costa in time for the filing of this objection. Ex. 1 at ¶ 9. To the extent he subsequently obtains such information, he intends to supplement his declaration.

[7] In addition to the arguments contained herein, Mr. Valls incorporates by reference the arguments and authorities contained in other filed objections made in opposition to the fairness, reasonableness and adequacy of the proposed settlement, the adequacy of class counsel and to the proposed award of attorneys' fees and expenses that are not inconsistent with this objection.

East Bay Street, Jacksonville, Florida 32202.  Mr. Bodiford has served as an Asst. United States Attorney for the Middle District of Alabama for four years.  Most recently, he has been handling class action and mass tort litigation at Terrell Hogan.

Valls is also represented by Mikell West and Robert Clore, Bandas Law Firm, PC. 802 N. Carancahua Street, Corpus Christi, Texas 78401, (361) 698-5200. Although he will not be attorney of record, Christopher Bandas of the Bandas Law Firm also represents Valls. However, Mr. Bodiford, Mr. West, and Mr. Clore are jointly responsible for and will direct Valls' representation. It is anticipated that Mr. West and Mr. Clore will promptly seek special admission as non-resident lawyers with the Court pursuant to Local Rule 2.01(c). Valls does not intend to appear personally at the fairness hearing, but rather intends to appear and argue through his counsel Mr. West and Mr. Bodiford based on the papers filed in support of the objection at the hearing. Counsel for Mr. Valls do not anticipate calling any witnesses nor introducing exhibits during the fairness hearing but reserve the right to do so. Counsel also reserves the right to cross-examine any witness put forward in support of the proposed settlement or requested attorneys' fees.

By way of background, Mr. Clore has been with the Bandas Law Firm since 2016 and has had considerable success in representing objectors to unfair class

actions settlement agreements and/or excessive attorneys' fee requests. *See* Dorothy Atkins, Settling On Zoom: The Rise of Pro Se MDL Objectors, Law360 (Dec. 22, 2020)[8] (noting that "Robert Clore of Bandas Law Firm PC" is "a seasoned plaintiffs attorney who has successfully represented clients objecting to a number of big-ticket MDL settlements before trial courts and on appeal"). As noted, Mr. Clore and his client recently prevailed in *Lumber Liquidators*, where the Fourth Circuit reversed the district court's failure to apply CAFA to a settlement with vouchers. *Lumber Liquidators*, 952 F.3d at 489-91. He also represented the sole objector to advocate for application of CAFA in the Uber Safe Rides litigation in the Northern District of California, which prompted the district court to deny fees and require a renewed motion adhering to CAFA's requirements. *McKnight v. Uber Tech. Inc.*, No. 4:14-cv-05615, Dkt. 189 at 5-6, 11 (N.D. Cal. Aug. 13, 2019). Mr. Clore also recently won an appeal in the Ninth Circuit that resulted in the vacatur of an improper $52 million award of attorneys' fees and expenses where the Court created a new standard for fees after a bid to secure class counsel status. *In re Optical Disk Drive Prod. Antitrust Litig.,* 959 F.3d 922 (9th Cir. 2020); *In re Optical Disk Drive Prod. Antitrust Litig.*, 804 Fed. Appx. 443 (9th Cir. 2020). Earlier in 2020, Mr. Clore assisted in securing a $3 million monetary benefit to a settlement class of corn farmers, and also provided nonmonetary benefits to the

---

[8] Accessible at https://www.law360.com/articles/1337218 (last visited Feb. 26, 2021).

claims process in *In re Syngenta*, 2:14-MD-02591, Dkt. 4318 at 8-9; 4278 at 3, 6-7 (D. Kan. Jan. 6, 2020).

Mr. West recently joined the Bandas Law Firm, having previously worked as a partner for many years at a highly respected defense firm in South Texas. Mr. West was admitted to the State Bar of Texas in 2009 and is admitted to the United States District Courts for the Southern, Eastern, and Western Districts of Texas.

As a matter of transparency, Mr. Bandas has been the subject of judicial criticism in the past for his representation of objectors. *See* Exhibit to Motion for Special Admission of Non-Resident Lawyer Robert Clore.[9] However, Mr. Bodiford, Mr. Clore, and Mr. West are jointly responsible for and will direct Valls' representation. Further, with the amendments to Rule 23 effective December 2018, allegations that he filed objections for purposes of extracting an improper fee are now an impossibility since any settlement of an objection, including on appeal,

---

[9] Despite this criticism, Mr. Bandas' clients also had successes in fighting unfair settlements and reducing excessive fee awards in class action settlements. *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 12-4671-CV, 2016 WL 3563719, at *12 (2d Cir. June 30, 2016) (Mr. Bandas' client was part of an effort in which the court "vacate[d] the district court's certification of the class, reverse[d] approval of the settlement, and remand[ed] for further proceedings not inconsistent with this opinion"); *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ("The judgment [approving the settlement] is reversed and the case remanded for further proceedings"); *Litwin v. iRenew Bio Energy Sols.*, LLC, 172 Cal. Rptr. 3d 328, 333 (Cal. App. 2d Dist. 2014), *as modified* (May 29, 2014) (in a case in which Mr. Bandas represented the objector in the lower court, the "the order granting final approval of the settlement must be reversed"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 181-82 (3d Cir. 2013) ("We vacate the District Court's orders approving the settlement and the fund allocation plan[;] "[w]e vacate the Court's order awarding attorneys' fees and costs because this award was based on the now-vacated settlement"); *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) ("we reverse the district court's order approving the settlement and dismissing the case, vacate the judgment and award of attorneys' fees, and remand for further proceedings").

must be expressly approved by the district court. Fed. R. Civ. P. 23(e)(5)(B). Consistent with the requirements of Rule 23, Valls' objection will not be settled without this Court's approval. Ex. 1, Declaration of Austin Valls ¶ 10. This objection is brought in good faith for the purpose of improving the settlement for the members of the class. *Id.*

**Argument**

**I.     The Court has a fiduciary duty to the class.**

Courts "must 'exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions.'" *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007) (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002)). It is incumbent upon the Court "to protect the interests of absent class members" by "independently and objectively analyz[ing] the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312 (N.D. Ga. 1993) (citation omitted). This has been equated to a fiduciary obligation to the absent class members. *Figueroa*, 517 F. Supp. 2d at 1320 (likening "the Court's role in reviewing a settlement agreement" to "the high duty of care that the law requires of fiduciaries") (quotations omitted); *Sharleigh Assoc. LLC v. Windmere-Durable*

*Holdings, Inc.*, 184 F.R.D. 688, 693 (S.D. Fla. 1999) ("[t]he court bears fiduciary responsibilities to the class").

It is equally important for the Court to scrutinize fees since Costa agreed not to oppose up to $12 million in fees. Dkt. 98-1 ¶X.A. There is no true adversarial process here, thus, "the court must act as a fiduciary for class members and must be especially careful to scrutinize every factor relevant to determining the size of a reasonable attorney's fee." *Bowen v. SouthTrust Bank of Alabama*, 760 F. Supp. 889, 896–97 (M.D. Ala. 1991) (quotations omitted).

## II.    Section IX. C violates due process and should not be enforced; alternatively, it should be applied equally to class counsel.

Before returning to CAFA, there is an unlawful provision that calls into question the integrity of the settlement itself. In section IX.C., the parties purport to agree that class members who provide benefits to the settlement through an objection are nevertheless "not … entitled to recovery of all or any portion of Attorneys' Fees, Costs and Expenses, and … the equitable common-fund doctrine does not apply to this Settlement." Dkt. 98-1 ¶IX.C. To the undersigned's knowledge, no court has ever authorized that provision, and it is a deliberate by the parties to insulate the settlement from objections.

Rule 23 expressly allows for objections from class members. Fed. R. Civ. P. 23(e)(5)(A). A provision purporting to block fees for objectors who benefit the

class only discourages valid objections and undermines due process.[10] *Juris v. Inamed Corp.*, 685 F.3d 1294, 1320 (11th Cir. 2012) (discussing due process rights of class members objecting to settlements); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 359 (N.D. Ga. 1993) (awarding objector fees where the "objectors significantly refined the issues germane to a consideration of this complex settlement and their participation transformed the settlement hearing into a truly adversarial proceeding").

"Because parties to a settlement have a shared incentive to impose burdensome requirements on objectors and smooth the way to approval of the settlement, district courts should be wary of possible efforts by settling parties to chill objections." *Bezdek v. Vibram USA, Inc.,* 809 F.3d 78, 84 (1st Cir. 2015). These efforts should not be tolerated since objectors, in exercising their rights under Rule 23, "can be of immense help to a district court in evaluating the fairness of a settlement." *Redman v. RadioShack Corp.,* 768 F.3d 622, 629 (7th Cir. 2014).

---

[10] Valls objects that the class notice improperly imposes unduly burdensome requirements on objectors that were not authorized in the Court's preliminary approval order or the settlement. For example, the notice requires the objection to be received by the Claims Administrator no later than March 1, 2021. *See* https://sunglassessettlement.com/Content/Documents/Notice.pdf (last visited Feb. 28, 2021. The preliminary approval order requires the objection be filed with the Court, with "copies to Plaintiffs' class counsel and Costa's counsel … such that it is received by all parties no later than March 1, 2021." Dkt. 102 at ¶13. The order reiterates that the objection need only be served on class counsel and Costa's counsel and provides their address. *Id.* at ¶16; *see also* Dkt. 98 § IX.A (settlement requiring "copies to Plaintiff's Class Counsel and Costa's Counsel").

To the extent the Court is nevertheless inclined to enforce the purported waiver of the "equitable common-fund" against objectors, it should apply equally to class counsel, meaning their own recovery as a percentage of the fund or benefit is prohibited under the express terms of the settlement. That is, if "the equitable common-fund doctrine does not apply to this Settlement[,]" then that provision should be applied uniformly. *See Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) (discussing equitable common fund doctrine that allows fee from a "common benefit" or "common fund" as an exception to "the so-called 'American Rule' prohibits the award of attorneys' fees in the absence of a specific statutory or contractual provision").

## III.   This is a coupon settlement.

"Congress passed CAFA 'primarily to curb perceived abuses of the class action device.' One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *HP Inkjet,* 716 F.3d at 1177. As noted, CAFA requires application of strict scrutiny to coupon settlements and forbids awarding attorneys' fees attributable to coupons without ascertaining their redemption value.

Again, the Eleventh Circuit has not yet spoken to the coupon requirements in CAFA. A district court in the Southern District of Florida found that vouchers had the "hallmarks of the coupon settlements that Congress sought to more closely

scrutinize." *Mahoney v. TT of Pine Ridge, Inc.,* No. 17-80029-CIV, 2017 WL 9472860, at \*6 (S.D. Fla. Nov. 20, 2017). The court noted that "the voucher[s] can only be used [with the defendant], the entity that allegedly harmed the class," they "expire within one year of issuance," and "they are not redeemable for cash." *Id*.[11] The vouchers here have one more year of use, but otherwise share these traits. They can only be used with Costa, the company that harmed the class, they expire within two years of issuance, and they are not redeemable for cash.

Class counsel argue that the vouchers are not coupons because they allow class members to make complete purchases of Costa products without having to spend out of pocket. Dkt. 99 at 1-2, 7. That is but a single factor and courts have found vouchers to be coupons in that same context. For example, vouchers that enabled class members to purchase complete products from Art.com without having to spend their own money were nevertheless coupons under CAFA. *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 836-38 (N.D. Cal. 2017). The reason was the class members were only able to use the vouchers for a limited universe of products from the defendant, making the vouchers unlike cash. If they had been gift cards at a large retailer like Walmart, then they might be comparable to cash and thus not coupons. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 952 (9th Cir. 2015) ("Like the gift cards to Rite Aid in *Reibstein,* part of what

---

[11] *Mahoney* nevertheless found CAFA inapplicable because a lesser cash option was made available.

separates a Walmart gift card from a coupon is not merely the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different *types* of products.")(emphasis added). The fact that class members must use the vouchers with Costa "also triggers the policy concerns that defendants in coupons settlements are not forced to 'disgorge … ill-gotten gains' and often benefit from coupons because customers are lured back to spend more money." *Knapp*, 283 F. Supp. 3d at 836-38.

Vouchers for Office Max products were also coupons even though they allowed for purchase of complete Office Max products without spending out of pocket. *Dardarian v. OfficeMax N. Am., Inc.,* No. 11-CV-00947 YGR, 2013 WL 12173924, at *2–3 (N.D. Cal. July 12, 2013). As the district court in *Dardarian* observed, "substantively the question centers on the difference of the benefit to each class member when compared to a cash settlement." *Id*. at *3. Like this case, the vouchers were transferrable and did not require class members to spend out of pocket; however, they had a limited lifespan and could only be redeemed with the defendant for a limited universe of products (Costa's products are even more limited). *Id*.; *see also Lumber Liquidators*, 952 F.3d at 490 (vouchers were coupons under CAFA where they could "be used only 'to purchase items from a limited universe of products' such as flooring and flooring tools"). Further, as in

this case, the vouchers could not be redeemed for cash. *Id*. The vouchers for more Costa products that expire after two years are thus coupons under CAFA.

## IV. The settlement should not be approved without more information and a significant reduction in fees.

CAFA's heightened scrutiny precludes approval of a settlement in which attorneys' fees are "grossly disproportionate to the actual value of the coupon relief obtained for the class." *HP Inkjet*, 716 F.3d at 1179; 28 U.S.C. § 1712(e). As noted, the actual redemption value of the coupons is unlikely to reach even $4 million. The claimed $47-$58 million value of the injunctive relief cannot be taken seriously since even class counsel "believe Mr. Boedecker's analysis to be fairly aggressive." Dkt. 109-1 at 6 n.2. More likely, it is closer to the $5 million discussed by Judge Scott based on Costa's former Vice President and Controller, Felicia Morrisey's testimony about costs of the injunctive relief to Costa. *Id*. Of course, even then, the question is not how much it cost Costa, but what value it provides to the class. This claimed value also ignores that this prospective relief benefits people outside the class as much as those within. Even assuming the injunctive relief is worth the claimed $5 million, that brings the settlement value to no more than $9 million.

The represented $20 million in shipping benefits and $1 million for no sales tax are intrinsically intertwined with the vouchers, and thus cannot be taken at their accepted face value. That is, there is no $20 million waiver of sales tax if the class

redeem less than $4 million in vouchers. If 10% of the vouchers issued are redeemed (again, a very generous proposition), then those benefits are worth $2 million and $100,000, respectively. As such, the most this settlement is possibly worth is $11.1 million. For that, class counsel are requesting a $12 million fee. Under CAFA, they are not entitled to $900,000 more than the entire class.

Since actual redemption rates cannot be determined under the settlement, if the Court does not want to disapprove the settlement outright, it could allow for an estimate of the coupons' redemption value. 28 U.S.C. § 1712(d); *Whirlpool*, 980 F.3d at 662 n.4. Fees would still have to be adjusted downward significantly for the settlement itself to survive heightened scrutiny. Regardless, the settlement cannot be approved with the information currently before the court. *See Dardarian*, 2013 WL 12173924, at *3 (denying preliminary approval where there was no information on the claims rate, voucher redemption rate, or real monetary value of the vouchers, which precluded the court from assessing the adequacy and reasonableness of the settlement).[12]

---

[12] Valls recognizes that in addition to CAFA, the Court must consider the *Bennett* factors for purposes of settlement approval. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The primary focus of Valls' objection, however, is CAFA's application to the settlement and proposed fee.

## V.   Attorneys' fees cannot be awarded under the percentage method without knowing the redemption value of the vouchers.

As a matter of law, class counsel cannot recover a percentage of the claimed $40 million in vouchers, $20 million in shipping costs, or $1 million in sales tax covered by Costa that has been made available to the class. "Under § 1712 of CAFA, a district court may not award attorneys' fees to class counsel that are 'attributable to' an award of coupons without first considering the redemption value of the coupons." *HP Inkjet*, 716 F.3d 1187. That is, "if fees are to be calculated as a percentage of the value of the coupons in a coupon settlement, that percentage must be calculated based on the value of coupons *redeemed* by the class, rather than the value of the coupons *made available* to the class." *Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *9 (N.D. Ala. Feb. 5, 2015) (emphasis original). Thus, the only percentage-based fee permitted under CAFA can only come as a percentage of the redeemed coupons. Again, to the extent $20 million in shipping costs and $1 million in sales tax can be included in the sum when calculating fees, they are directly linked to the vouchers. If the Court allows expert testimony on the redemption value, Valls submits, as discussed previously, that the total coupon value, including vouchers, shipping, and sales tax, is no more than $5.89 million. A benchmark 25% would allow a $1.47 million fee.

**VI.    Class counsel can only recover fees from the injunctive relief based on their lodestar, which they failed to substantiate.**

Class counsel cannot recover a percentage of the claimed value of the injunctive relief as sought in their motion. Those fees must come through the lodestar method under CAFA.

Section 1712(c) makes clear that when a coupon settlement consists of coupon relief and injunctive relief, fees for the injunctive relief *must* be awarded under the lodestar method. 28 U.S.C. § 1712(c) (providing "that portion of the attorney's fees to be paid to class counsel that is not based upon a portion of the recovery of the coupons *shall* be calculated in accordance with subsection (b) [*i.e,* the lodestar method]"); *see* 28 U.S.C. § 1712(b)(1),(2); *HP Inkjet*, 716 F.3d at 1183 (CAFA's language requiring the lodestar method for non-coupon relief "is not permissive").

However, class counsel have not proffered sufficient evidence to satisfy their "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 433. Under the lodestar method, the district court is charged with deducting "excessive, redundant, or otherwise unnecessary' hours." *Norman*, 836 F.2d at 1301. "Redundant hours generally occur, … where more than one attorney represents a client." *Id*. at 1301-02.

Many of the same attorneys here worked on three substantially similar cases. Dkt. 109-4 at Ex. A. There is bound to be overlap and redundancy. Yet class counsel only submitted total hours without any breakdown of how they were incurred.

The court should require "records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303; *William B. Rubenstein*, NEWBERG ON CLASS ACTIONS § 15:47 (5th ed.) ("while 'great detail' is not required, the records must 'identify the general subject matter of [the] time expenditures.' The time records . . . should demonstrate that the attorneys did not bill for hours that were unproductive, excessive or redundant"). Further, the class should be given access to the records with an attendant opportunity to object. *Cf. Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016) ("[c]lass members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record").

## VII. Class counsel are not entitled to an upward multiplier; a negative multiplier is required to avoid double recovery of fees for coupon relief.

Whatever the true lodestar, the proposed settlement does not support a multiplier. The Supreme Court in *Perdue v. Kenny A. ex rel. Winn* held that

multipliers are only allowed in "rare and exceptional" circumstances and only when the lawyer seeking fees has provided "specific evidence that the lodestar fee would not have been adequate to attract competent counsel." 559 U.S. 542, 552 (2010). Under *Perdue*, the lodestar calculation "presumptively" yields a "reasonable" fee. *Id*. at 552.

According to the Eleventh Circuit, *Perdue* and the lodestar method are inapplicable in common fund cases. *Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1194-95 (11th Cir. 2019) ("*Perdue* addresses fee-shifting statutes and says nothing about the award of attorney's fees from a common fund."). However, the Eleventh Circuit has never considered the standard for applying a multiplier when fees are governed by CAFA and the lodestar method under 28 U.S.C. § 1712(b), as opposed to lodestar on cross-check.

Other courts apply *Perdue* in this context. *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 665 (9th Cir. 2020) (applying *Perdue* in a case governed by CAFA); *Linneman v. Vita-Mix Corp.*, No. 19-3993, 2020 WL 4668561 (6th Cir. 2020) (*Perdue* applies to a fee under CAFA awarded under the lodestar method and reversing multiplier without exceptional circumstances); *Bateman v. Am. Multi-Cinema, Inc.*, No. 207CV00171JHNAJWX, 2011 WL 13213596, at *3 (C.D. Cal. Oct. 11, 2011) (in a coupon settlement under CAFA refusing to apply a multiplier where there were no "rare or exceptional circumstances" as required by *Perdue*).

There is nothing exceptional about the injunctive relief that would suggest class counsels' hourly rates are inadequate to attract competent counsel. To be certain, it is not worth $47-$58 million. Even one of class counsels' own expert recognizes that the injunctive relief is worth closer to $5 million than Mr. Boedeker's $58 million valuation, which class counsel themselves acknowledge is "fairly aggressive." Dkt. 109-1 at 6 n.2.

Not only is an adjustment above class counsel' lodestar improper, a negative multiplier must be applied so class counsel are not paid twice for the coupon relief. *Chambers*, 980 F.3d at 662 ("a court can take the lodestar for the entire case, and then use a negative multiplier to discount that sum because the lodestar, by definition, includes work done on behalf of the coupons portion of the settlement" or the "court can try to parse through the billable hours to apportion" the hours spent on the coupons versus the injunctive relief). Since the injunctive relief is worth (at best) $5 million, it makes up less than half of the total $11.1 settlement value (after adjusting for redemption rates). As such, a .45 multiplier should be applied to class counsels' adjusted lodestar. Even assuming all of class counsels' $2.6 million lodestar is non-duplicative, that would allow a total lodestar award of $1,176,918.30[13]

---

[13] $2,615,374 x .45 = $1,176,918.30.

Although the *Johnson* factors should not factor into the equation under the lodestar method, they would not allow for an upward adjustment.[14] Factor 8—the amount involved and the results obtained is the most important factor. Yet. class counsel failed to proffer the aggregate amount involved for the entire class, likely because this settlement is a mere token payment relative to that amount.

## VIII. Unless the parties amend the *cy pres* provision, the settlement should be disapproved

The last problematic provision in the settlement is found in Section IV. I. Rather than attempt to reallocate funds to class members if the Settlement Fund has been exhausted, the *cy pres* provision purports to distribute $1 million or less to a charity of Costa's choosing. This provision should be modified to (1) include the entire amount of unexhausted funds, (2) provide for at least one attempt to distribute this amount back to the class, and (3) be directed at a charity aligned with the interests of the class members, not their adversary in the litigation. *See* American Law Institute's Principles of the Law of Aggregate Litigation, § 3.07 (2010) ("the settlement should presumptively provide for further distributions to

---

[14] The factors include: (1) "the time and labor required," (2) "the novelty and difficulty of the questions," (3) "the skill requisite to perform the legal service properly," (4) "the preclusion of other employment by the attorney due to acceptance of the case," (5) "the customary fee," (6) "whether the fee is fixed or contingent," (7) "time limitations imposed by the client or other circumstances," (8) "the amount involved and the results obtained," (9) "the experience, reputation, and ability of the attorneys," (10) "the 'undesirability' of the case," (11) "the nature and length of the professional relationship with the client," and (12) "awards in similar cases." *Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair"); *In re Lupron Marketing and Sales Practices Litigation*, 677 F.3d 21, 25–26, 31 (1st Cir. 2012) (endorsing the ALI Principles while affirming a *cy pres* distribution as provided in a settlement agreement); *Klier v. Elf Atochem North America, Inc.*, 658 F.3d 468, 475-76 (5th Cir. 2011) (citing ALI Principles with approval). Further, the *cy pres* distribution should be excluded from the sum from which class counsel seek their fee since that amount does not directly benefit the class members.

<strong>Conclusion</strong>

The settlement should not be approved without further information, including actual voucher redemption value of the vouchers, shipping costs, and covered sales tax. Once this amount is determined, the settlement should be disapproved under CAFA unless the class members take more under the settlement than class counsel.  If the Court nevertheless approves the settlement, it should apply CAFA to class counsels' proposed attorneys' fees as described *supra* and reduce them substantially so that the excess returns to the class. Finally, this Court should refuse to enforce the parties' attempt to disavow the equitable common fund doctrine's application to the objectors. To the extent the Court does not reject this provision, the Court should apply the doctrine in the same fashion to class

counsel and award no fee.

Dated:        March 1, 2021          Respectfully submitted,

                                    **TERRELL HOGAN YEGELWEL, P.A.**
                                    /s/ Bradley G. Bodiford
                                    BRADLEY G. BODIFORD, ESQ.
                                    Fla. Bar No. 84897
                                    E-mail:  bodiford@terrellhogan.com
                                    kdavid@terrellhogan.com
                                    8th Floor, Blackstone Building
                                    233 East Bay Street
                                    Jacksonville, FL 32202
                                    Tel: (904) 632-2424
                                    Fax: (904) 632-0549

                                    Mikell A. West
                                    Texas State Bar No. 24070832
                                    Email: mwest@bandaslawfirm.com
                                    Robert W. Clore
                                    Email: rclore@bandaslawfirm.com
                                    Texas State Bar No. 24012436
                                    BANDAS LAW FIRM, P.C.
                                    802 N. Carancahua, Suite 1400
                                    Corpus Christi, Texas 78418
                                    Tel: (361) 698-5200
                                    Fax: (361) 698-5222
                                    Motion for Special Admission Anticipated

                                    *Attorneys for Austin Valls*

Dated:     3/1/2021

*Austin Valls*

Austin Valls
Objecting Class Member

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that today he filed the foregoing document and attached exhibit on ECF which will send electronic notification to all attorneys registered for ECF-filing.  Additionally, a copy of the objection was mailed via First Class Mail to (1) Smith v. Costa Del Mar, Inc. Settlement, Settlement Administrator, PO Box 3259, Portland, OR 97208-3259; (2) Peter Hargitai, Holland & Knight LLP, 50 N. Laura Street, Suite 3900, Jacksonville, FL 32202; and (3) Sara F. Holladay-Tobias, McGuireWoods LLP, 50 N. Laura Street, Suite 3300, Jacksonville, FL 32202. Out of an abundance of caution, the objection will be hand-delivered in the evening to Peter Hargitai, Holland & Knight LLP, 50 N. Laura Street, Suite 3900, Jacksonville, FL 32202 and Sara F. Holladay-Tobias, McGuireWoods LLP, 50 N. Laura Street, Suite 3300, Jacksonville, FL 32202.

Dated: March 1, 2021

/s/ Bradley G. Bodiford
BRADLEY G. BODIFORD, ESQ.