# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.                               Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

      Defendant.

_____/

## PLAINTIFFS' RESPONSE TO THE OBJECTIONS FILED BY JOHN W. DAVIS, MITCHELL GEORGE MIORELLI, AND AUSTIN VALLS

Plaintiffs hereby respond to the Objections filed by John W. Davis, Mitchell George Miorelli, and Austin Valls ("Objectors") (Docs. 112, 115, and 117 are collectively referred to herein as "Objections") as follows:

## I.   *The serial objectors are infamous for filing meritless objections for personal gain.*

The Objections were filed just before the deadline by serial objectors, who are among the most notorious and prolific "professional objectors" in the country. These individuals have made a practice of throwing a wrench into class action settlements and thereby delaying class member benefits, all in an effort to extort a payoff.  By holding the settlement ransom and threatening a lengthy appeal if their demands are not met, these Objectors levy what is effectively a tax on class action settlements—a tax benefiting no one except counsel for the objectors.[1]  The Objections (filed without a scintilla of credible evidence) and the attacks on the Parties, their counsel, and even this Court are unfounded and insulting.  The Objections epitomize the practice of illegitimate and dilatory objections to class action settlements that led to the 2018 amendments to Rule 23(e)(5)(B). *See* Fed. R. Civ. P. 23 cmt. to subdiv. (e)(5)(B) 2018 amendment.  The Objections are not

---

[1] Each of the law firms, and a partial list of the cases in which they have filed objections, are listed in the "Serial Objector Index" located at www.serialobjector.com. Serial objector John W. Davis is a lawyer, and is represented by serial objector Eric Alan Isaacson.  Another objector is Mitchell George Miorelli, who is being represented by his brother, serial objecting lawyer Sam Miorelli. Also objecting is Austin Valls, who is represented by the Bandas Law Firm, an especially notorious firm that goes to great lengths in this case to distance itself—for good reason—from its founding partner, Christopher Bandas. (*See* Doc. 115 at 8) (explaining that Bandas represents Valls, but will not be counsel of record).

asserted in good faith based on prevailing law.  Instead, they constitute an eleventh-hour "potpourri" of objections, designed to allow counsel for the Objector to later apply to the Court for fees if the settlement is adjusted in any respect.

Objector Austin Valls is represented by the Bandas Law Firm, aptly described as an enterprise created for the purpose of "extorting money through class action objections with no basis in the law." *See* Complaint ¶ 1, *Edelson PC v. Bandas Law Firm PC*, No. 1:16-CV-11057 (N.D. Ill. Dec. 5, 2016), attached as **Exhibit 1**. The Bandas Law Firm has an especially dark and notorious history as counsel to serial objectors. Exhibit 1 to the Motion for *Pro Hac Vice* Admission of Attorney Clore (Doc. 120-1), barely mentioned in the Motion itself, fails to disclose the full history of wrongdoing that has led courts to deny *pro hac vice* admission to Clove and the Bandas Law Firm in other cases.  *See* Letter Order at 2, *Cole v. NIBCO, Inc.*, No. 3:13-cv-07871 (D.N.J. Apr. 5, 2019), attached as **Exhibit 2** (denying *pro hac vice* admission of Clore and stating "several courts around the country have expressed skepticism that Mr. Bandas' objections to class settlements have been made in good faith"); *Garber v. Office of the Comm'r of Baseball*, No. 12-CV-03704, 2017 WL 752183, at *6 (S.D.N.Y. Feb. 27, 2017) ("This Court joins the other courts throughout the country in finding that Bandas has orchestrated the filing of a frivolous objection in an attempt to throw a monkey wrench into the settlement process and to extort a pay-off.").[2] The egregious conduct is so extensive

---

[2] In *Chambers v. Whirlpool Corp.,* the court overruled an objection filed by Bandas, expressly finding that he was a serial objector who was "well-known for routinely filing meritless objections to class action settlements for the improper purpose of extracting a fee rather than to benefit the

that Bandas and his firm have been enjoined from appearing or participating in *any* class actions *anywhere* in the country except under specified, court-ordered conditions.[3]

The Bandas firm's appearance before this Court violates a federal injunction. In *Edelson, PC v. Bandas Law Firm PC*, the court found the Bandas firm "abuse[d] the nation's courts by filing frivolous, last-minute objections on behalf of purported class members that seek nothing in the way of substantive changes to the terms of the proposed class settlement" and enjoined Bandas and his entire firm from seeking admission to practice in *any state or federal court* unless the *Edelson* injunction is attached to the *pro hac vice* motion. *See* No. 1:16-cv-11057, 2019 WL 272812, at *1–2 (N.D. Ill. Jan. 17, 2019), attached as **Exhibit 5**. In clear violation of the injunction, Clore and West have failed to provide this Court with a copy of the injunction upon seeking *pro hac vice* admission in this case.

---

Class." 214 F. Supp. 3d 877, 890 (C.D. Cal. 2016), *vacated in part on other grounds*, 980 F.3d 645. The *Chambers* court is not alone. *See, e.g.*, *Clark v. Gannett Co., Inc.*, 122 N.E.3d 376 (Ill. App. Ct. 2018) (describing in great detail Bandas' "fraud on the court"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) ("Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain [and] has been excoriated by Courts for this conduct."); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) (holding that the objections filed by Bandas "were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections"); Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for Pro Hac Vice Admission at 2, *Brown v. WalMart Stores, Inc.*, No. 01-L-85 (Ill. 14th Cir. Ct. Oct. 29, 2009) ("Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'"), attached as **Exhibit 3**.

[3] *See* Michael J. Bologna, Notorious 'Serial Objector' May Have Filed His Last Objection, Bloomberg Law (Mar. 12, 2019), attached as **Exhibit 4**.

Further, the *Edelson* injunction enjoined Christopher Bandas from doing in the state of Illinois exactly what he is doing in this case—participating from the shadows and refraining from signing any documents while others act as figureheads. *See id.* (restraining Bandas from providing any advice or other service without obtaining admission or leave to appear pro hac vice); *see also Clark*, 122 N.E.3d at 390–91 (rebuking Bandas for "call[ing] the shots" behind the scenes, while at the same time attempting to avoid responsibility by not signing pleadings or appearing in front of the court).

Objector John Davis and his counsel, Eric Isaacson, are also serial objectors. *See Muransky v. Godiva Chocolatier, Inc.*, No. 15-60716-CIV, 2016 WL 11601079, at *3 (S.D. Fla. Sept. 16, 2016) ("[T]he Plaintiff aptly characterizes . . . Mr. Isaacson and Mr. Davis as 'professional objectors' who threaten to delay resolution of class action cases unless they receive extra compensation."). Davis, a lawyer, has filed his objection *pro se*, but has now hired Mr. Isaacson to represent him, as he has done on numerous other occasions. In his Declaration (Doc. 113), Davis omitted cases in which his game was exposed, such as a case in which the Northern District of Illinois ruled that, despite objecting to the settlement, he was *not even a class member*. *See* Notification of Docket Entry, *Davenport v. Discover Fin. Servs.*, No. 1:15-CV-06052 (N.D. Ill. Dec. 19, 2017), attached as **Exhibit 6**. In *Davenport*, Davis hired Isaacson, as he did here.

Indeed, Davis and Isaacson routinely join forces in an effort to extract fees for themselves through serial objections.[4] Not only do they team up disguised as legitimate objectors, they also enlist non-lawyers to pose as class members in support of their scheme. *See, e.g.*, Request to Withdraw Objection, *Chambers v. Whirlpool Corp.*, No. 8:11-cv-01733 (C.D. Cal. June 25, 2016), attached as **Exhibit 7**. In *Chambers*, Davis and Isaacson appeared as counsel of record for Kara Bowes—who later withdrew her objection due to her lack of standing. *See id.* In another class action, Isaacson represented the same Kara Bowes—whose meritless objections were again rejected—and her daughter, Brooke Bowes—who lacked standing to object. *See Melito v. American Eagle Outfitters*, No. 14-CV-2440, 2017 WL 3995619, at *14 (S.D.N.Y. Sept. 11, 2017).

Miorelli, who filed 76 pages of objections in this case, is also a serial objector and has previously joined forces with Bandas, Isaacson, and Davis. *See Chambers v. Whirlpool Corp.*, No. 8:11-cv-01733 (C.D. Cal.). In multiple cases, Miorelli's settlement objections have been overruled and his character has likewise been the subject of unflattering court orders. *See, e.g.*, *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2017 WL 1113293, at *9, *16, *22 (N.D. Cal. Mar. 24, 2017) (approving settlement, overruling Miorelli's objections, and noting that he is "a professional objector"); *see also Legg v. Lab. Corp. of Am.*, No. 14-61543-CIV, 2016 WL

---

[4] This duo also teamed up in *Muransky*, referenced above and discussed in Davis' Declaration (Doc. 113). There, Isaacson was the objecting class claimant and Davis served as his legal counsel. While they freely swap roles between objecting class member and objecting lawyer, the one constant is that they consistently file meritless objections.

3944069, at *3 n.2 (S.D. Fla. Feb. 18, 2016) (noting that Miorelli, who had withdrawn his objection, was not a member of the class and therefore lacked standing to object).

Indeed, the Northern District of Georgia previously exposed Miorelli and the other professional objectors' scheme for what it really is—a shakedown disguised as an objection. *See In re the Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*, No. 1:14-md-02583, 2016 WL 6902351, at *4–5 (N.D. Ga. Aug. 23, 2016) (rejecting Miorelli's "82-page objection" and noting that Miorelli is an objector of the "'professional' variety [whose] objections are typically made not for the benefit of the class, but solely to extract some sort of payment in exchange for dropping the[] objections").

The *Home Depot* court's characterization of Miorelli's tactics was well-founded, as Miorelli has previously attempted to extort a payoff from class counsel. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2016 WL 4942081, at *1 (D. Minn. Jan. 29, 2016) *rev'd on other grounds*, 847 F.3d 608 (8th Cir. 2017) (overruling objection and noting that Miorelli's "appeal is frivolous, perhaps best evidenced by his offer to drop the appeal for more than two million dollars"). In *Target*, the district court found that Miorelli was not even a member of the class,[5] but that did not stop him from objecting to the settlement and attempting to extort Class Counsel:

---

[5] *In re: Target Corporation Customer Data Sec. Breach Litig.*, 2016 WL 4942081, at *1 ("Objector Miorelli is not a class member, as this Court determined in the Order approving the

> I remain open to settling my objection, however today my terms would be monetary instead of the various low and no-cost changes which you would not even discuss with me in early November. . . . *If class counsel and/or Target would rather pay me than risk I win, I think a good negotiating starting place would be a fraction of the almost $9.3 million in combined costs Target faces* [if Target had to re-notice the class] and the millions in attorney fee reductions I also proposed. . . . I think 25% is the appropriate fraction. But, I'm a reasonable man open to reasonable counteroffers or discussions.

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-MD-0233, 2016 WL 4474366, at *5 n.5 (N.D. Cal. Aug. 25, 2016) (emphasis added) (overruling Miorelli's objections and recounting his extortion attempt in *Target*). The *Carrier IQ* court noted that Miorelli's previous behavior in cases such as *Target* raises "credibility issues." *See id.* at *5.

## II. Consistent with their well-earned reputation, the professional objectors have filed meritless Objections.

Perhaps the best evidence of the outstanding results obtained by Class Counsel, and the sharpest rebuke of the Objections, are the Objectors' *own Declarations*. Davis, a member of the Florida Purchase and Nationwide Warranty classes, paid $12.97 for his warranty repair (Doc. 113 ¶ 3), but according to his Declaration, he will receive vouchers totaling $20.99.[6] This recovery provides a

---

settlement."). In *Target*, Miorelli appealed and the appeal was dismissed. *See Miorelli v. Target Corp.*, No. 15-3915 (8th Cir. 2015).

[6] Objectors argue that the Product Vouchers have a "charm price," typically ending in .99, which is a "classic marketing trick to induce a larger purchase." (Doc. 117, Miorelli Obj. at 8). That is not accurate. The values of the Product Vouchers are the "*estimated minimum*" values of the Product Vouchers. As set forth in the Sternberg Declaration (Exhibit 11), now with the benefit of claims data, the minimum values of the Product Vouchers have increased. And the voucher amounts are subject to potential further increases—for instance, under the Settlement, any reduction in Class Counsel's requested fee must inure to the benefit of the class. (Agreement, Doc. 98-1 § X(A)). A reduction in Class Counsel's fee would operate to increase the Product Voucher amounts, not provide cash distributions to Class Members as Objector Davis contends.

value to Davis over 150% greater than what he paid to Costa for his warranty claim. Davis also does not mention that, as a result of this litigation, Costa **stopped charging** consumers for the warranty repairs that gave rise to his claim—a significant benefit to consumers throughout the country, including class members. *See* Declaration of T.J. McMeniman ¶ 5, attached as **Exhibit 8**.

Valls' positon is even more illustrative.  Because he is a resident of Texas, but for Class Counsel's extraordinary efforts and this Settlement, *he would otherwise have been entitled to nothing*.[7]  Valls is a typical avid Costa customer in that he has purchased multiple sunglasses since 2014 (*see* Doc. 115-1 ¶¶ 3–5). According to his Declarations, Valls will receive five (5) stackable vouchers worth at least $100.  Valls can choose from hundreds of high-quality Costa items, which he can obtain, and have delivered to his doorstep, free of charge.  Similarly, according to his Declaration, Miorelli paid for multiple wear and tear repairs and will receive seven (7) vouchers worth over $127. His statement that he can only obtain a "child's t-shirt, visor or mesh hat," (Doc. 117 at 8), is demonstrably false.[8]

---

[7] Class Counsel filed a class action in Texas, but were advised by Judge Hoyt that class relief would be unavailable. *See* Order at 1, *Burden v. Costa Del Mar, Inc.*, No. 4:17-CV-3504 (S.D. Tex. Mar. 22, 2018), attached as **Exhibit 9;** *see also* (Second Supplemental Decl. of Peter Hargitai (Doc. 131) ¶¶ 17-19) (describing *Burden*). Class Counsel spent, and lost, almost $140,000 fighting for Texas consumers to no avail.  (*Id.*).  Through the Settlement in this case, Class Counsel were able to secure relief for Texas consumers, including Valls. To the extent necessary, Plaintiffs request that the Court take judicial notice of the docket and filings in *Burden. See Milano v. TD Bank USA, N.A.*, No. 3:18-CV-598-J-34JBT, 2019 WL 3802459, at *1 n.2 (M.D. Fla. Aug. 13, 2019).

[8] Objectors say that the Settlement is a result of "collusion."  *E.g.*, (Doc. 117, Miorelli Obj. at 36). There is no evidence to support that accusation.  All of the evidence is to the contrary.  *See* (Decl. of Mediator, Terrence White, attached as **Exhibit 10**); (Hargitai Decl., Doc. 109-2 ¶ 5) ("[T]he negotiations were adversarial, non-collusive, and arms' length.").  The provisions of the Settlement that Objectors contend are "red flags" are standard class-action settlement provisions, which were adopted for legitimate and useful purposes.  *See Waters v. Int'l Precious Metals Corp.*,

## III.    The settlement does not constitute a coupon settlement.

Objectors' primary argument is that, contrary to the Court's prior ruling, the Product Vouchers issued by Costa are "coupons" under 28 U.S.C. § 1712. But their argument is meritless for numerous reasons. First, the Objectors' cherry-picked definitions of "coupon" do not support Objectors' position, and CAFA's legislative history belies any suggestion that CAFA applies to this settlement. Second, the cases cited by Objectors are plainly distinguishable from the Settlement in this case. Case law in this Circuit and elsewhere supports a finding that the Product Vouchers are not coupons. The Product Vouchers entitle Class Members, without any exclusions or limitations, to recover hundreds of whole-good items on Costa's webstore, without the necessity for class members to come out of pocket a dime and without the need for class members to visit any retail establishments in order to claim their free merchandise.[9] This Court was abundantly correct when it ruled that the Settlement here is not a "coupon" settlement. (Order, Doc. 102 at 4 n.1).

### A. Objectors ignore the most relevant cases defining a "coupon" and CAFA's legislative intent.

Objectors suggest that the ordinary meaning of the word "coupon" is clear; that the Court cannot and should not look to legislative history; and that the definition of "coupon" includes vouchers for *free* merchandise delivered directly to

---

190 F.3d 1291, 1293 (11th Cir. 1999) (stating that clear sailing provisions "are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure").
[9] Objectors take issue with the Product Vouchers because they may not entitle class members to receive free sunglasses. But this case was never about defective sunglasses; it was about improper warranty and repair charges. In any event, a significant percentage of the class will be entitled to multiple Product Vouchers which they can stack to redeem high-value Costa merchandise, including even sunglasses. (*See* Declaration of Amanda Sternberg ¶ 3, attached as **Exhibit 11**).

class members like the Product Vouchers here.  But, as numerous courts around the country have held, Objectors are wrong.

Objectors claim that *Merriam-Webster* defines a coupon as "a form surrendered in order to obtain an article, service or accommodation," but this definition is so broad that it would even include *cash*.  Moreover, Objectors completely gloss over the more salient definition in the very same dictionary:  "a part of a printed advertisement to be cut off to use in order to obtain a *discount* on merchandise or service."  *Merriam-Webster's Collegiate Dictionary*, "Coupon," def. 2 (emphasis added).   Contrary to the express intent of Congress, Objectors' definitions of "coupon" would include cash or *any* free items, regardless of the circumstances, and regardless of the value of those items in comparison to the value of the claims.

Every circuit court to weigh in on this issue disagrees with Objectors. Courts uniformly state that CAFA is "not a model of draftmanship" and that district courts should look to the "statute's purpose and legislative history" as a result of the ambiguity of the term "coupon."  *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 625 (6th Cir. 2020); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1176 (9th Cir. 2013).[10]

As explained in Plaintiffs' prior briefing on this issue (Doc. 99), the legislative history is clear: Congress was concerned about class settlements "that

---

[10] *See also In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 488 (4th Cir. 2020); *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 973 (8th Cir. 2016); *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014).

involve a discount —frequently a small one—on class members' purchases from the settling defendant." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950–51 (9th Cir. 2015). The Senate Judiciary Committee's Report criticizes coupon settlements that "*require* class members to hand over more of their own money before they can take advantage of the coupon," which is not the case if products are provided free of charge. *Id.* at 951 (emphasis added); *see, e.g.*, *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706 (7th Cir. 2015) (claimants were required to purchase an expensive airline ticket in order to redeem their free drink coupons); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 488 (4th Cir. 2020) (consumers with defective flooring received a credit towards flooring supplies but would still need a new floor to take advantage of the credit).  Here, Class members need not come out-of-pocket to use their vouchers. Class members can shop for hundreds of products without having to hand over any additional money to Costa.  Moreover, because this action did not involve a claim that the sunglasses themselves were defective, no class members are left with a defective product.

## B. Case Law in the Eleventh Circuit and Elsewhere Shows that the Vouchers Are Not Coupons Under CAFA.

The landscape of varied decisions interpreting 28 U.S.C. § 1712 makes one thing clear: whether class relief constitutes a "coupon" is a fact-specific inquiry. And the framework outlined by the Ninth Circuit's decision in *Online DVD* is the most logical and well-reasoned framework to consider the facts.  The framework requires district courts considering whether a settlement involves coupons to

11

evaluate: (1) whether class members have to hand over more of their money before they can use a credit, (2) whether the credit is valid only for select products or services, and (3) how much flexibility the credit provides, including whether it expires and whether it is freely transferrable. *In re Online DVD*, 779 F.3d at 951.

Objectors claim that the *Online DVD* analysis is the exception, not the rule. (Doc. 117, Miorelli Obj. at 14). That is not true. District courts within the Eleventh Circuit (and throughout the nation) have repeatedly followed the *Online DVD* rationale, holding that vouchers are not subject to CAFA's coupon provision because vouchers do not require class members to come out-of-pocket.[11] Even the Fourth Circuit in *Lumber Liquidators* applied the *Online DVD* factors:

> [P]ursuant to the Ninth Circuit's three-factor model, the vouchers are "coupons." Under the first factor thereof, class members will likely "have to hand over more of their own money" before they can take full advantage of the vouchers, which weighs in favor of applying CAFA's "coupon" settlement provisions. *See In re Easysaver Rewards Litig.*, 906 F.3d at 755 (internal quotation marks omitted). That is, in order to entirely replace their defective flooring, class members will be required to spend more money with Lumber Liquidators. Second, the Lumber Liquidators vouchers can be used only "to purchase items from a limited universe of products," such as flooring and flooring tools. *See In re Easysaver Rewards Litig.*, 906 F.3d at 757. . . . Third, these vouchers have somewhat limited flexibility.[12]

*In re: Lumber Liquidators,* 952 F.3d at 490–91. In fact, the only Circuit that did not apply the *Online DVD* factors is the Seventh Circuit in *Southwest.* But, *Online*

---

[11] *See* Supplement to Motion for Preliminary Approval (Doc. 99; Supplement) (collecting cases). In the interest of brevity, Class Counsel has made an effort to not re-hash points previously set forth in its Supplement. To the extent necessary, the Supplement is incorporated by reference.
[12] The credits in *Lumber Liquidators* were transferrable for 30 days, and only to family members or to a charity. *Id.* at 491.

*DVD* and *Southwest* were decided mere months apart and, regardless, *Southwest* is plainly a coupon settlement and fails the *Online DVD* factors—the settlement there provided for free drink vouchers, which required class members to purchase a plane ticket from the defendant in order to use the vouchers.

Then, Objectors claim that Plaintiffs' Class Counsel ignored the Ninth Circuit's decision in *In re Easysaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018), and suggest that it somehow modified the framework set forth in *Online DVD*.  But the opposite is true: *Easysaver* supports a finding that the credits in this case are not "coupons."  First, *Easysaver* reaffirmed the *Online DVD* factors that guide the "coupon" inquiry.  *Id.* at 755–56.  In *Easysaver*, plaintiffs claimed that the defendants, online vendors of flowers, chocolates, and fruit baskets, enrolled customers in, and billed them for, a monthly membership rewards program without their consent.  The settlement provided for a $20 credit that could be used to order Defendants' products.  *Id.* at 753.  However, the Court found that the settlement failed the *Online DVD* factors because: (i) *nothing* could be ordered and shipped from Defendants for $20; that is, class members would have to hand over *more money* to take advantage of the credits; (ii) the credits were only available for 15-25 products, *none of which could be obtained for free*; and (iii) the credits were not stackable, could not be combined with other promotions, could not be used when they have any real value ("in the lead-up to Christmas, Valentine's Day or Mother's Day" or "same day orders"), and expired in one year.  *Id.* at 756–57.  Moreover, not only did class members have to purchase something from

Defendants to use the credits, but "to do so they must hand over their billing information again to the very company that they believe mishandled that information in the first place, at the very least to pay for shipping." *Id.* at 757.

This settlement is remarkably different from *Southwest*, *Easysaver*, and *Lumber Liquidators*.  Here, class members do not have to pay a penny in order to choose from a selection of hundreds of products,[13] which are shipped directly to class members free of charge.  The credits are stackable, freely transferrable, can be used with any other Costa promotions, and are subject to no blackouts whatsoever.  In short, they may be used like cash to purchase any Costa products online, without restriction.  The credits expire after two years (which is longer than the validity of a check, and twice the validity period offered in *Easysaver*).[14]  And Costa consumers—a significant percentage of whom are repeat purchasers (including Objectors)—still have perfectly functioning sunglasses.

The Objectors cite a number of cases (*see* Doc. 112 at 9 n.6; Doc. 115 at 15), but these cases are distinguishable and fully consistent with this Court's prior

---

[13] This Settlement is worlds apart from the golf ball case cited by Objectors.  *See* S. REP. No. 109-14, at 18 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 18.  According to the Senate Report, a manufacturer falsely promised consumers free golf gloves if they purchased a dozen golf balls, but the customers instead received three free golf balls. Class members were unhappy with the receipt of golf balls (instead of a golf glove), but the settlement merely provided customers with more golf balls. There, the receipt of golf balls gave rise to the litigation in the first place, so the "relief" being made available had little to no value to class members.  Moreover, class members had no option with respect to what they would receive as compensation—it was only the golf balls that precipitated the litigation.  This case is vastly different—it was precipitated by excessive repair/warranty fees; not the credits now being made available to Class Members to choose from hundreds of items of free merchandise, which have real value to class members.

[14] This Settlement was negotiated in the midst of the COVID-19 pandemic, and was designed to allow Costa consumers to shop from the safety of their homes and have their products delivered free of charge without visiting retailers.

determination that the Product Vouchers here are **not** coupons.  *See In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1176 (9th Cir. 2013) (non-transferrable, non-stackable $2 to $6 e-credits that expired in 6 months required class members to come out-of-pocket since no items were available through HP for $6 or less); *Sw. Airlines Voucher Litig.*, 799 F.3d 701, 706 (7th Cir. 2015) (in-flight drink coupons were deemed coupons because class members would have to purchase an airline ticket from Southwest Airlines to redeem their coupon); *Hofmann v. Dutch LLC*, 317 F.R.D. 566, 575 (S.D. Cal. 2016) ($20 jean gift cards for jeans costing $205 were coupons); *Dardarian v. OfficeMax N. Am., Inc.*, No. 11-cv-00947, 2014 WL 7463317 (N.D. Cal. Dec. 30, 2014) ($5 OfficeMax vouchers were deemed coupons where two thirds of OfficeMax's merchandise could not be purchased for $5 or less, the coupons expired in 2-3 months, were usable only in California, and could not be combined with any other coupons or discounts); *Davis v. Cole Haan, Inc.*, No. C 11-01826 JSW, 2013 WL 5718452, at *3 (N.D. Cal. Oct. 21, 2013) (a 30% off coupon for Cole Hann products was deemed a "coupon" where it expired in 6 months, could only be redeemed in CA, could not be combined with other coupons, and the customer had to pay sales tax); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) (a $500 or $1,000 rebate to class members who purchased another Honda or Acura was deemed a coupon); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) (a $100 coupon for Cartier products where most Cartier products cost

significantly more than $100 would thus "be employed as a discount to purchase items exceeding the value of the credit.").[15]

In sum, the cases cited by the Objectors simply reiterate that a coupon offers a discount on the purchase price while a voucher does not require a class member to spend their own money. *See Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *7 (N.D. Ala. Feb. 5, 2015) ("Here, the account credits offered by BHN are not *discounts* off the purchase of services; they are essentially the equivalent of cash that can be spent to purchase new services outright, *without spending any of the customers' own money*.").[16]

## IV. *Because this is not a "coupon" settlement, attorneys' fees must be based on a percentage of the benefits obtained for the class.*

The Settlement here is a "common fund" settlement. *In re Home Depot Inc.*, 931 F.3d 1065, 1079 (11th Cir. 2019) ("A common-fund case is when 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client

---

[15] As Plaintiffs' Class Counsel previously acknowledged, the *Redman* court was highly cynical of any class settlement providing non-pecuniary benefits. (*See* Doc. 99); *Redman v. RadioShack Corp.*, 768 F.3d 622, 635 (7th Cir. 2014). The *Redman* decision is an outlier and is inconsistent with CAFA's legislative history, which makes clear that Congress was only concerned with instances in which class members receive "essentially valueless coupons." *See* S. Rep. 109-14 at 30 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 29–30. Congress recognized that consumers benefit from receiving free products. *See id.* at 31 ("The Committee wishes to make clear that it does not intend to forbid all non-cash settlements. Such settlements may be appropriate where they provide real benefits to consumer class members.").

[16] Contrary to Objectors' arguments, there is nothing improper or "unethical" about what Objectors dub the so-called "blow-provision" if the Court determines that this is a coupon settlement. First, the Court has already held that this is not a coupon settlement, so Objectors' argument is a red herring. (See Doc. 102). Second, the Eleventh Circuit has expressly acknowledged "blow provisions" in class settlements and has never once indicated that they are unenforceable or unethical. *See In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009). Regardless, to avoid unnecessary delay, Class Counsel and counsel for Costa have agreed to, and do hereby, strike that provision from the Settlement.

is entitled to a reasonable attorney's fee from the fund as a whole.' . . .   This is typical in class actions, where the class might receive a large payout, from which the attorney derives his fees.").[17]   In addition to other substantial benefits, the Settlement creates a $40,000,000 "fund," which will be used to pay: claims of class members; attorneys' fees, costs, and expenses; incentive awards; costs of class administration and notice; and, if due to be paid, the cy pres payment. (Agreement, Doc. 98-1 §§ II(A)(36), IV(A)).   The Settlement calculates attorneys' fees as a percentage of this fund, and the fees come from the fund itself.   A key fact is that, under the Settlement, any reduction in Class Counsel's fee request inures to the benefit of the class, meaning that the class and Class Counsel share the same pool of funds being made available by the Settlement.   The $40,000,000 fund is only a portion of the relief established by the Settlement—the Settlement also provides other benefits, changes to Costa business practices, and injunctive relief.[18]

---

[17] It does not matter that FDUTPA and the MMWA contain a statutory fee shifting provision.  *E.g.*, *Diaz v. Hillsborough Cty. Hosp. Auth.*, No. 8:90-CV-120-T-25B, 2000 WL 1682918, at *7 (M.D. Fla. Aug. 7, 2000) ("Although this case began as a statutory fee shifting case, the lump sum settlement agreement converted the litigation to a common fund case.").   The Court may award fees that are "authorized by law *or* the parties' agreement."  Fed. R. Civ. P. 23(h).

[18] When the parties negotiated this Settlement, Costa charged customers purchasing merchandise from Costa's website a shipping-and-handling fee.   On March 16, 2021, Costa advised Class Counsel that it is currently covering shipping and handling charges for online purchases.   The Settlement, nevertheless, ensures that class members will be guaranteed free shipping and handling on purchases using their Product Vouchers, even if Costa changes its policy again or excludes certain purchases.   Miorelli suggests that the value of the no-sales-tax provision is zero, but that is not correct.  (Doc. 117, Miorelli Obj. at 23).   The Product Vouchers are actually more valuable than gift cards.   While a customer using a gift card would still have to cover the sales tax on items purchased using a portion of the gift card, customers using Product Vouchers will not be charged sales tax at all.   Instead, when a class member uses a Product Voucher, Costa automatically remits the applicable tax, and the class member is not charged and does not have to use a portion of the Product Voucher to cover the tax.  *See* Declaration of Emilia Flamini ¶ 3, attached hereto as **Exhibit 12**.

In the Eleventh Circuit, a "common fund" need not be "funded" and can be a "claims made" fund. *Poertner v. Gillette Co.*, 618 F. App'x 624, 629 n.2 (11th Cir. 2015) ("no principled reason" counsels against extending *Camden I's* percentage-of-the-recovery rule to claims-made settlements). And the possible reversionary nature of a fund does not make it any less of a "common fund." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (in reversionary fund case, affirming $13.3 million attorneys' fee award and $2,400,204 in expenses from a $40 million common fund). In fact, the Eleventh Circuit's seminal decision in *Camden I* involved a reversionary fund, *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991) ("The settlement provided any unclaimed funds would revert to the County."), and the Court held that class counsel's fee **must** be based on a percentage of the total benefits established for the class, not the ultimate payouts, *id*.[19]

Objector Davis employs a sleight of hand to (falsely) argue that the parties agreed the Settlement is not a "common fund" settlement. (*See* Doc. 112 at 5, 19, 24 n.21). He contends that the Settlement says "the equitable common-fund doctrine does not apply to this Settlement" so the Court cannot award fees based on the "common fund" doctrine. (*Id.*). But that argument is a ruse. The full sentence Davis should have quoted to the Court provides: "the Parties hereto agree

---

[19]   The parties are working cooperatively to ensure that any remaining funds in the Settlement Fund get allocated to increase the Product Voucher amounts for class members. For that reason, the "estimated minimum value" of the Product Vouchers has increased based on claims data. This Settlement is not properly characterized as "reversionary" because Class Members will receive the full benefit of the Settlement Fund, including any reduction in Class Counsel's fee award.

that a **Class Member who objects** to the Settlement shall not be entitled to recovery of all or any portion of Attorneys' Fees, Costs and Expenses, and that the equitable common-fund doctrine does not apply to this Settlement." (Agreement, Doc. 98-1 § IX(C) (emphasis added). This provision is supposed to act as a limitation on professional objectors' (like Davis) rights to recover fees for asserting meritless objections designed to delay distribution of benefits to class members. For that reason, the sentence is included in the section of the Settlement titled "Objections to Settlement" (a fact Davis also does not mention). (Agreement, Doc. 98-1 § IX). Davis' reading of this provision does not even garner support among the other Objectors, who recognize the provision merely purports to prevent professional objectors from recovering their fees. (*See* Doc. 115, Valls. Obj. at 11) ("In section IX.C., the parties purport to agree that class members who provide benefits to the settlement through an objection are nevertheless [not entitled to attorneys' fees].").  The Settlement in this case is a "common fund" settlement such that the "common fund" doctrine applies. Davis' argument is simply misdirection.

The Objectors also argue that even if CAFA does not apply, Class Counsel should be limited to a lodestar fee award. (*E.g.*, Doc. 112, Davis Obj. at 17). <u>But, that's not the law in this Circuit</u>. *Camden I* is clear that attorneys' fees **must** be based on a percentage of the fund established for the benefit of the class. *Camden I*, 946 F.2d at 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund <u>shall</u> be based upon a reasonable percentage of the fund established for the benefit of the class." (emphasis added)).  This Court has

repeatedly followed *Camden I* and, in common fund cases, awarded fees based on a percentage of the benefits being made available to the class. *See, e.g.*, *Finerman v. Marriott Ownership Resorts, Inc.*, No. 3:14-cv-01154-TJC-MCR (Corrigan, J.); *In re Rayonier Inc. Sec. Litig.*, No. 3:14-cv-01395-TJC-JBT (Corrigan, J.) (30%); *Black v. Winn-Dixie Stores, Inc.*, No. 3:09-cv-00502-TJC-JRK, 2011 WL 13257526 (Corrigan, J.).  Objectors and their counsel know that *Camden I* is the law in this Circuit because their same arguments have been rejected in the past.  *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1262 n.14 (11th Cir. 2020) (stating, in a case where Objector Davis and his counsel represented Dickenson, that *Camden I* remains good law); *Poertner*, 618 F. App'x, at 628; *see also Waters*, 190 F.3d at 1295 ("Contrary to defendants' assertion, no case has held that a district court must consider only the actual payout in determining attorneys' fees.").  Instead, fees must be based on a percentage of all of the benefits being made available to the class—monetary and non-monetary benefits.  *See Camden I*, 946 F.2d at 774; *Poertner*, 618 F. App'x at 628 (affirming lower court opinion that the settlement's allocation of benefits was fair based upon the value of the nonmonetary relief and cy pres award); *Waters*, 190 F.3d at 1295–96.[20]

---

[20] Objectors argue the injunctive relief secured here is worthless because Costa has already changed its business practices.  But Objectors ignore that changes to a defendant's business practices as a result of the litigation constitute a benefit to the class.  *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243–44 (11th Cir. 2011) (portion of fee properly allocated to compensation for "non-monetary benefits [counsel] achieved for the class — like company-wide policy changes...").  The injunctive relief will ensure Costa does not simply revert to its prior business practices after the litigation has concluded.  The injunctive relief benefits consumers nationwide, including class members.

**V.**   ***Whether CAFA applies is <u>irrelevant</u>; the Court can and should alternatively award Class Counsel a lodestar fee with an appropriate multiplier.***

At the initial preliminary approval hearing, this Court asked Class Counsel whether 28 U.S.C. § 1712 applied to this Settlement.  Counsel answered that it did not, but that attorneys' fees and costs sought to be recovered under the Settlement were reasonable under either standard (*i.e.*, as a percentage of the fund or a lodestar with a multiplier).  After briefing, this Court correctly ruled that this was not a "coupon" settlement subject to 28 U.S.C. § 1712. Nevertheless, in its Motion for Attorneys' Fees, counsel provided the Court with lodestar cross-check data in support of its "percent of the fund" request. *See* (Doc. 109 at 13 n.7). Contemporaneously with this Response, Class Counsel now provides this Court with its detailed time records reflecting fees and costs incurred in the three consolidated cases, as well as an expert declaration regarding the reasonableness of the fees incurred and appropriateness of a multiplier.  Class Counsel does so because they seek to avoid the substantial delay of benefits to class members threatened by the serial and professional objectors in this case who—consistent with their past practices—seek to gain personally by hijacking and delaying this Settlement. Accordingly, Class Counsel requests an order awarding Class Counsel fees: (i) as a percentage of the common fund; and (ii) alternatively, even if CAFA were to apply, as a lodestar with a multiplier, which is fully consistent with CAFA and Eleventh Circuit precedent.  In fact, district courts in the Eleventh Circuit have taken this precise approach. *Parsons v. Brighthouse Networks, LLC*, No. 2:09-

CV-267-AKK, 2015 WL 13629647, at *7 (N.D. Ala. Feb. 5, 2015) (finding that a settlement providing for account credits was not a "coupon" settlement, awarding fees under *Camden I*, but alternatively ruling that, even if the settlement was deemed a "coupon" settlement, the Court would award the same fees under the lodestar-with-multiplier approach). Class Counsel respectfully submits that the attorneys' fees awarded should be the same under either approach.

Objectors misrepresent the law and argue that, if CAFA applies, this Court must base its attorneys' fee award on the value of the Product Vouchers redeemed.[21] (Doc. 117, Miorelli Obj. at 35–36); (Doc. 112, Davis Obj. at 4, 12); (Doc. 115, Valls Obj. at 19). That is not the law.[22] CAFA's plain language provides two separate methods to calculate attorneys' fees in a coupon settlement. Only if plaintiffs opt for recovery of attorneys' fees calculated as a percentage of the coupons should the attorneys' fee award be based on the coupons redeemed. 28 U.S.C. § 1712(a). However, that option is inapplicable here insofar as Class Counsel is not seeking an attorneys' fees award based upon a percentage of the value of the coupons. Instead, if the Court were to determine this to be a coupon settlement, Class Counsel seeks an attorneys' fee award based on a lodestar calculation:

> If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the

---

[21] Objectors compound their error by using redemption rates in class actions with little to no direct mail notice. (Doc. 117, Miorelli Obj. at 20). In this case, there is actual notice to over a million class members. Over 1.6 million Product Vouchers are being automatically distributed to class members without the necessity for a claim.

[22] This is Objectors' classic "squeeze" play. They advance this flawed argument in an effort to leverage a settlement from counsel for fear that fees will not be awarded for years—not until after the Court has received information regarding the number of vouchers actually redeemed by class members. This is precisely why Congress allows for the lodestar option, discussed herein.

coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

28 U.S.C. § 1712(b)(1). As courts around the country have concluded, section 1712(b) allows district courts to use the lodestar method to award attorneys' fees in coupon settlements. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) ("[Section] 1712 permits a district court to use the lodestar method to calculate attorney fees to compensate class counsel for the coupon relief obtained for the class."); *accord Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016) (same); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 5 (2d Cir. 2012) (affirming the district court's award based on the lodestar method). Objectors ignore the clear text of Section 1712(b), an abundance of case law (including from this Circuit), and CAFA's legislative history:

> [T]he proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement. Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action. *Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief.*

*See* S. Rep. 109-14, at 30 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 30 (emphasis added); *see also Perez v. Asurion Corp.*, No. 06-CIV-20734, 2007 WL 2591180, at *2 (S.D. Fla. Aug. 8, 2007) ("As CAFA's legislative history shows, [Section 1712(b)] allows a district court to use the lodestar method to calculate a reasonable attorneys' fee award in cases involving a 'coupons' . . . .").

23

The lodestar method has been widely adopted by district courts addressing coupon settlements or setting forth alternative bases for fee awards in the event that CAFA was deemed to apply, including district courts in the Eleventh Circuit. For instance, in *Parsons*, the court held that "account credits" akin to the product vouchers here did not constitute a coupon settlement under CAFA, but it awarded attorneys' fees based upon a lodestar calculation in the alternative. *See* 2015 WL 13629647, at *7. First, the *Parsons* court held that, because CAFA did not apply, it would award attorneys' fees based on a percentage of the recovery, as required by *Camden I*. *Id.* But the *Parsons* court also held that, even if CAFA was deemed to apply, the court was permitted to award fees based on a lodestar calculation, with a multiplier, and the same amount of attorneys' fees were therefore awarded by the court under that approach. *Id.* at *15; *see also Perez*, 2007 WL 2591180, at *2 (commenting that phone cards and vouchers supplied in the case were not "coupons" in that they did not require the class to purchase anything, but holding that CAFA gave the court the discretion to award fees using the lodestar method with a multiplier). Even if this settlement was a "coupon settlement" (it is not), the Court could and should award fees based on a lodestar with a multiplier.

Objectors next argue that, if fees are based on a lodestar calculation, Class Counsel is not permitted to receive a multiplier, citing the Supreme Court's decisions in *Dague* and *Perdue*. (Doc. 115, Valls Obj. at 114); (Doc. 117, Miorelli Obj. at 54); (Doc. 112, Davis Obj. at 6). Again, that is not the law. The Supreme Court's decisions in *Dague* and *Perdue*—cases addressing fee-shifting statutes—

say nothing about an award of attorneys' fees from a common fund settlement. What Objectors fail to mention is that the Eleventh Circuit has already rejected their argument and explicitly recognized that *Perdue* and *Dague* do not apply to common-fund cases like this one:

> There is no question that the Supreme Court precedents stretching from *Hensley* to *Perdue* are specific to fee-shifting statutes. .... Thus, these precedents are not binding outside of the statutory context.
>
> For this reason, we have held that the Supreme Court precedent requiring the use of the lodestar method in statutory fee-shifting cases does not apply to common-fund cases.

*In re Home Depot Inc.*, 931 F.3d 1065, 1084–85 (11th Cir. 2019); *see Muransky v. Godiva Chocolatier, Inc.*, 922 F.3d 1175, 1195 (11th Cir. 2019) ("*Perdue* addresses fee-shifting statutes and says nothing about the award of attorney's fees from a common fund."), *vacated on other grounds*, 979 F.3d 917 (11th Cir. 2020) (vacating on grounds that Plaintiff lacked standing to bring suit).[23]  And, since *Perdue* and *Dague* are about interpreting statutory language, they are particularly not applicable here, as CAFA's plain language explicitly permits the Court to award a multiplier: "Nothing in this subsection shall be construed to prohibit application of a lodestar **with a multiplier** method of determining attorney's fees." 28 U.S.C. § 1712(b)(2) (emphasis added); *see also Parsons*, 2015 WL 13629647, at *15 (using a multiplier and stating, "[t]he court finds that the lodestar/multiplier method

---

[23] The Eleventh Circuit is not alone.  *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564–65 (7th Cir. 1994) ("[W]e conclude that the holding in *Dague* . . . forbidding risk multiples in statutory fee-shifting cases . . . has no application to common fund cases."); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*Dague's* rationale for barring risk multipliers in statutory fee cases does not operate to bar risk multipliers in common fund cases.").

provides an independent justification for the fee requested here, irrespective of the valuation of the Settlement."); *see also Perez,* 2007 WL 2591180, at *2 ("CAFA gives the Court discretion to award fees using the lodestar method . . . . [and] provides that the Court may award a multiplier of the lodestar to enhance the fee award under the appropriate circumstances.").  Under the plain text of CAFA and Eleventh Circuit precedent, even if the Court finds that this is a coupon settlement, it should award fees based on a lodestar calculation with an appropriate multiplier.

Objectors next argue that, "to the extent the case involves Florida law claims," the "*Erie* doctrine requires the Court to apply Florida law on attorneys' fees." (Doc. 112, Davis Obj. at 16).  <u>But that is not the law either</u>.  "Eleventh Circuit attorneys' fee law governs this request, not the law of Florida." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.32 (S.D. Fla. 2011); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) ("The district court presiding over a diversity-based class action pursuant to Fed.R.Civ.P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law.").

Objectors only make this argument so they can then *misrepresent* the range of possible multipliers.  They argue that Florida precedents "certainly do not permit a multiplier approaching five such as [sic] Class Counsel seek." (Doc. 112, Davis Obj. at 18).  But, Florida precedents certainly do.  The Florida Supreme Court has held that, in class actions in Florida state court, Class Counsel may be awarded a multiplier of five times the lodestar.  *Kuhnlein v. Dep't of Revenue*, 662 So. 2d

309, 315 (Fla. 1995) (holding that a multiplier of five times is permitted in class actions in Florida).  So have Florida District Courts of Appeal.  *Ramos v. Philip Morris Cos., Inc.*, 743 So. 2d 24, 32 (Fla. 3d DCA 1999) (applying five times multiplier based upon *Kuhnlein*.).  And, *Parsons* makes clear that the **_average_** multiplier awarded in complex cases such as this one is almost four. *See* 2015 WL 13629647, at *15 (collecting cases and other authorities including a class action treatise indicating that "the average multiplier found to be reasonable was 3.89"). This case is far from average.

## VI.   *Class Counsel's lodestar analysis:*

District courts have "great latitude" in setting fee awards in class action cases.  *In re Home Depot*, 931 F.3d at 1078. It is also proper to award attorney's fees based solely on affidavits in the record. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

The first step in determining the amount to award under the "lodestar" approach is to multiply the number of hours reasonably worked by a lawyer by the lawyer's reasonable hourly rate. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996).  The district court also may consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974), when deciding to adjust the fee upward or downward, although many of these factors are often subsumed within the initial lodestar calculation.[24]

---

[24] The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the

### A.   Class Counsel charged reasonable hourly rates.

A reasonable hourly rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299.  Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. *Id.* A court is "itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303. Here, to aid the Court in this alternative analysis, Class Counsel has filed the declaration of Barry Richard. (Doc. 132.)  Mr. Richard opines that the rates charged by Class Counsel are prevailing market rates for similar services by lawyers of reasonably comparable skill, experience, and reputation.[25]

### B.   Class Counsel expended a reasonable number of hours.

The Haney Action was first filed in July 2017, *more than three and a half years ago,* in the Fourth Judicial Circuit Court, Duval County.  Costa aggressively defended the case. Since then and through the date of this Response, Class Counsel

---

customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

[25] Although there is legal support for the use of current rates (as opposed to historical rates) in order to compensate counsel for inflation and delay in receipt of payment, Class Counsel takes the more conservative approach and applies the hourly rate that the Firm regularly charged its clients for each attorneys' services when the time was incurred. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

has incurred more than 6,500 hours on the combined matters comprising the Litigation. (*See* Hargitai 2d Suppl. Decl. ¶ 9 (Doc. 131).)  The number of hours incurred by Class Counsel is significantly less than the 15,111 hours that Costa's counsel expended in defending the *Smith*, *Haney*, and *Reed* Actions.[26]

Class Counsel prosecuted the litigation efficiently.  However, "[i]n the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F.2d at 1301. While redundant, duplicative work should be deducted, there is nothing inherently unreasonable about a client having multiple attorneys. *Id*. They may all be compensated if they are being compensated for the distinct contribution of each lawyer. *Norman*, 836 F.2d 1301–02; *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1188 (11th Cir. 1983) ("All attorneys who contribute their services to a case may be awarded reasonable attorneys' fees."); *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work. While Johnson recognizes the possibility of unnecessary duplication for which double compensation should not be granted . . . a reduction is warranted only if the attorneys are *unreasonably* doing the *same* work." (internal citations omitted) (emphasis in original)), *cert. denied*, 464 U.S. 994 (1983).

---

[26] (Doc. 131 ¶ 10.) Defense counsel have expended over 15,000 hours of time (not counting any of the time expended on the *Burden* matter that was pending in Texas). This is more than double all of the hours that Class Counsel expended in the Litigation. Importantly, defense counsel did not perform work on a contingency basis as did Class Counsel.  *See Perez*, 2007 WL 2591180, at *3.

A detailed overview of the extensive effort undertaken by Class Counsel to prosecute the Litigation is provided in the Declaration of Peter Hargitai in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 109-2 at 3–15), and summarized in the Unopposed Motion for Attorneys' Fees and Expenses (Doc. 109 at 3–8). As reflected in the timesheets, the attorneys who worked on the Litigation carried out their duties in a highly productive manner, understanding the risk that the firm may never be paid for these services. (Doc. 132, Richard Decl. at 10-11.) For example, rather than incur the time and expense of Firm lawyers reviewing, analyzing, and coding Costa's voluminous document productions, the Firm hired outside document reviewers (third year law school students) at a rate of $31 per hour to review Costa's productions in the most economical manner possible. (*Id.*, Richard Decl. at 8.) The expenses associated with this review were billed as a cost to the Firm, and are not reflected as Firm services that would otherwise be billed to the client. *Id.* Rather than re-depose, in the *Smith* Action, all of the deponents from the *Haney* Action, Class Counsel filed a motion to deem all of the prior depositions from the *Haney* Action admissible in the *Smith* Action. *See* (Motion, Doc. 22). Costa ultimately stipulated to the relief Class Counsel sought. (Stipulation, Doc. 35). And, Class Counsel obtained stipulations that all of the documents Costa produced in the *Haney* Action would be deemed produced in *Reed* and *Smith*. (CMR, Doc. 5 at 5).

An additional factor considered in determining the reasonable number of hours expended in the Litigation is the novelty and complexity of the cases. *See In*

*re Home Depot*, 931 F.3d 1065, 1083 (11th Cir. 2019) ("[T]he novelty and complexity of the issues are reflected in the number of hours spent on the case, as complicated litigation will demand more time"). With respect to this factor, Judge Scott explains that the Litigation is not a "copy-cat" suit, and the "cases filed by Plaintiffs are unique and the first of their kind against Costa." (Doc. 109-1, Scott Decl. ¶ 51); (Doc. 132, Richard Decl. at 10-11). "The litigation was both factually and legally complex and involved novel issues across three separate putative class actions." (Doc. 109-1, Scott Decl. ¶ 56).

In sum, Class Counsel reasonably expended more than 6,500 hours on the Litigation. (Doc. 132, Richard Decl. at 10). The Second Supplemental Declaration of Mr. Hargitai contains: (i) timesheets listing the hours reasonably expended by each attorney or paralegal in each Action and the reasonable hourly rate charged by that attorney or paralegal (i.e., the lodestar); (ii) a list of costs and expenses reasonably incurred in each case; and (iii) a summary of hours expended in each phase of the *Haney*, *Smith*, and *Reed* Actions.

### C.    Class Counsel is entitled to a multiple of the lodestar.

The district court must determine whether the fee arrangement was contingent, the sixth *Johnson* factor, and enhance the lodestar when it is shown that an enhancement is necessary to obtain competent counsel. *See Bowen v. SouthTrust Bank of Ala.*, 760 F. Supp. 889, 898-99 (M.D. Ala. 1991) (citing *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 483 U.S. 711, 734 (1987)). The evidence on this point is indisputable. Mr. Richard confirms that he

cannot think of any reputable firm willing to risk non-payment on a multi-year class action representation alleging complex, nuanced issues of law against a multi-billion dollar company with highly qualified opposing counsel on a contingency fee basis (let alone three of those actions) without the prospect of a significant multiplier if successful. (*See* Doc. 132. Richard Decl. at 11) ("A small percentage of firms in Florida have the financial wherewithal to carry out a class action litigation of this magnitude on a contingent basis. I am confident that no firm with the experience and ability to handle the case would have done so without the prospect of a significant lodestar multiplier, or percentage of the fund award, if successful."); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 998) ("If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risk of recovering nothing."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Other Circuits agree that a multiplier should be applied in this context. *See, e.g., Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) ("Having determined that risk multipliers remain available in common fund cases after *Dague*, we further note that we have held, in a pre-*Dague* case, that a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services.'" (emphasis added)).

"In this circuit, where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman*, 836 F. 2d 1302. Although Class Counsel has not pursued a lodestar calculation using current hourly rates, delay in payment should be considered in the Court's analysis of the appropriate multiplier. *See Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (noting that when there is a delay, "district courts should take into account inflation and interest, *perhaps by adjusting the contingency factor to reflect delay, not just contingency*." (emphasis added)).

In his analysis of the twelve *Johnson* factors applicable to the Litigation, Judge Scott provides additional support for application of a multiplier.  In terms of the results obtained by this Settlement, Judge Scott opines that "[t]he substantial benefits available to class members under the settlement greatly outweigh the risks of continued litigation." (Doc. 109-1, Scott Decl. ¶ 78). "In addition to the substantial monetary benefits available under the settlement, Costa is prohibited from engaging in the conduct that gave rise to the Litigation, which benefits all consumers of Costa sunglasses, in addition to class members. (*Id*. ¶ 80). In sum, Class Counsel obtained excellent relief for the Class. (*Id*. ¶ 81).

In complex cases such as this one, courts routinely approve multipliers of three or more. *See Parsons*, 2015 WL 13629647, at *15 (citing *Behrens*, 118 F.R.D. at 549 ("In cases as complex as this, with risks of establishing liability as great as in this case, and with legal representation as fine as it was here, a lodestar multiple

of three appears to be average.") (collecting cases with multipliers ranging from a low of 2.26 to a high of 4.5)); Stuart J. Logan et al., *Attorney Fee Awards In Common Fund Class Actions*, 24 Class Action Reports 167, 197 (Mar.–Apr. 2003) (average multiplier found to be reasonable was 3.89); *Weiss v. Mercedes-Benz of N. Am.., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (multiple of 9.3 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (multiple of 6 times lodestar); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (multiple of 8.74); *Glendora Comm. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (Cal. Ct. App. 1984) (multiple of 12 times lodestar). Under Florida law, a similar multiple would be available:

> [W]e set the maximum multiplier available in this common-fund category of cases at 5. By allowing for this increased maximum multiplier, we recognize that it is appropriate in common-fund cases. . . **Furthermore, a multiplier which increases fees to five times the accepted hourly rate is sufficient to alleviate the contingency risk factor involved and attract high level counsel to common fund cases while producing a fee which remains within the bounds of reasonableness**.

*Kuhnlein v. Dep't of Revenue*, 662 So. 2d 309, 315 (Fla. 1995) (emphasis added). Class Counsel respectfully suggests that this is not an average case—it involves three large class actions in multiple fora, with non-payment over the course of four years—and that a multiplier of at least 4.25 the lodestar is justified under the circumstances.   (Doc. 132, Richard Decl. at 11) ("It is my opinion that the extraordinary outlay of expenses and investment of attorney time, and delay in payment for nearly four years, justifies a lodestar multiplier on the high end of the

spectrum.").   Class Counsel respectfully requests that the Court overrule the objections, and award Class Counsel a fee award that is justified and appropriate under both the *Camden I* approach and the lodestar with multiplier approach.

Dated: March 19, 2021

**HOLLAND & KNIGHT LLP**

/s/ Peter P. Hargitai
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*