**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

      Plaintiffs,

v.                                 Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

      Defendant.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  SUMMARY OF THE SETTLEMENT TERMS ................................... 5

   1.  The Settlement Class .................................................................... 5

   2.  Monetary and Non-Monetary Benefits for the Settlement Class ............... 5

   3.  Class Release ................................................................................ 9

III.  LEGAL STANDARD FOR FINAL APPROVAL ................................. 9

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD RECEIVE FINAL APPROVAL. ........................................ 10

   1.  Likelihood of Success at Trial Supports Final Approval. ........................ 10

   2.  Considering The Range Of Possible Recoveries, The Settlement Amount Is Clearly Within The Range Of Reasonableness. ....................... 13

   3.  The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval. ................................ 16

   4.  The Reaction of Class Members Weighs in Favor of Final Approval. ...... 17

   5.  The Stage of the Proceedings Strongly Supports Final Approval. ........... 19

   6.  The Settlement is the Result of Good Faith, Arm's-Length Negotiations Conducted by Highly Experienced Counsel. ....................... 20

   7.  Notice of the Settlement Satisfied the Requirements of Rule 23(e) and Due Process. ................................ 21

   8.  Certification of the Settlement Class is Appropriate. ................................ 21

   9.  Plaintiff's Counsel Should Be Appointed as Class Counsel. ..................... 21

   10.  Class Counsel's Request for an Award of their Attorneys' Fees and Costs is Reasonable. ................................ 22

Conclusion ........................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Behrens v. Wometco Enters*,
  118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................ 13

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) .................................................................*passim*

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir.
  1984) ...................................................................................................... 12

*Braynen v. Nationstar Mortg., LLC*,
  No. 14-CV-20726, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) .................. 17, 18

*Burden v. Costa Del Mar, Inc.*,
  No. 4:17-CV-3504 (S.D. Tex. Mar. 22, 2018) ......................................................3

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ..................................................................... 22, 23

*Canupp v. Sheldon*,
  No. 2:04-cv-260-FTM-99DNF, 2009 WL 4042928 (M.D. Fla.
  Nov. 23, 2009)......................................................................................10

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................10

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ........................................................................................ 21

*Garst v. Franklin Life Ins. Co.*,
  No. 2:97-CV-00074-ELN, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala.
  June 25, 1999) ................................................................................ 13

*Hall v. Bank of Am., N.A.*,
  No. 1:12-cv-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ............... 17, 18

*Hamilton v. SunTrust Mortg. Inc.*,
  No. 13-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) .............................18

*Holman v. Student Loan Xpress, Inc.*,
  No. 08-cv-305, 2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) ........................ 20

*Leverso v. SouthTrust Bank of Ala., N.A.*,
    18 F.3d 1527 (11th Cir. 1994) ............................................................10

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................ 16

*Marty v. Anheuser-Busch Cos., LLC*,
    No. 13-CV-23656, 2015 WL 6391185 (S.D. Fla. Oct. 22, 2015) ........................ 13

*Milano v. TD Bank USA, N.A.*,
    No. 3:18-CV-598-J-34JBT, 2019 WL 3802459 (M.D. Fla. Aug. 13,
    2019) ........................................................................................3

*Montoya v. PNC Bank, N.A.*,
    No. 14-20474, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) ............................. 13

*Parsons v. Brighthouse Networks, LLC*,
    No. 2:09-CV-267-AKK, 2015 WL 13629647 (N.D. Ala. Feb. 5,
    2015) ......................................................................................23

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) ........................................................ 17

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ........................................................ 17

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ........................................................10

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) .......................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................. 21

*Wilson v. EverBank*,
    No. 14-CIV-22264, 2016 WL 457011 (S.D. Fla. Feb. 3, 2016).................... 9, 20

## Other Authorities

28 U.S.C. § 1712 ........................................................................ 22, 23

Fed. R. Civ. P. 23..................................................................*passim*

Following three years of litigation, extensive discovery, a three-day evidentiary hearing on class certification, an appeal before Florida's First District Court of Appeal, ongoing mediations, and motion practice, the parties reached an arms-length resolution. Accordingly, on May 1, 2020, Plaintiffs Haney, Reed, and Smith (collectively, "Plaintiffs") moved for preliminary approval of the Settlement and certification of the Settlement Class.[1] Following hearings on July 17 and September 1, 2020, and after supplemental briefing and improvements to the Settlement, this Court granted the Motion for Preliminary Approval (Doc. 102).

Pursuant to the Court's Order Preliminarily Approving Settlement (Doc. 102), Plaintiffs now move, pursuant to Fed. R. Civ. P. 23, for final approval of the Settlement. Final approval is appropriate because the terms (memorialized by the Settlement Agreement at Doc. 98-1) are fair, adequate, and reasonable, and because the Settlement provides substantial relief for the Classes.

## I.   INTRODUCTION

Plaintiffs' Class Counsel reached a proposed class Settlement with Costa comprised of: (1) a $40 million fund, from which Costa will issue non-personalized, stackable, transferable Product Vouchers, ranging in value from $8.99 to $22.99 per Claim;[2] (2) guaranteed free shipping and handling and no sales tax on all items purchased with Product Vouchers; and (3) substantial injunctive relief prohibiting Costa from engaging in the conduct that gave rise to

---

[1] All capitalized terms not otherwise defined shall have the meanings provided in the Agreement.
[2] Based on the claims data, the estimated minimum amounts of the Product Vouchers have been revised upwards from what was set forth as the estimated minimums in the Motion for Preliminary Approval.

the Litigation.  As set forth in the Declaration of former United States District Judge Thomas Scott (Doc. 109-1, Scott Decl.), this Settlement is an excellent result for the Class particularly considering the risks, uncertainties, and expense associated with this novel Litigation.

The Settlement Provides Exceptional Value to Consumers: The Settlement creates a $40 million fund from which Class members will receive non-personalized, transferable, electronic Product Vouchers that operate like cash and can be redeemed for hundreds of different items of Costa merchandise (as opposed to a discount or coupon off the purchase price). Costa has guaranteed all Class Members free shipping and handling, and Class members will not be charged sales tax on products redeemed using their Product Vouchers. As a direct result of this Litigation, Costa also made noteworthy changes to its business practices and agreed to important injunctive relief prohibiting it from engaging in the practices that gave rise to the litigation.  This non-monetary relief provides additional value to the Classes.  (Doc. 96-1, Boedeker Decl. ¶ 47); (Doc. 109-1, Scott Decl. at 6 n.2).

The Unique Risks and Difficulties of the Action: Throughout this Litigation, Costa set forth numerous credible arguments on liability and damages that posed a risk of lesser or no recovery.  In the *Haney* Action, the key issue on appeal involved a novel legal question under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"): whether a plaintiff is required to prove that Plaintiff and the class members were uniformly exposed to a deceptive promise. (Doc. 109-1, Scott Decl. ¶ 19).  This issue was also raised in the *Reed* Action.  (*Id.* ¶

2

21).  In *Reed*, the parties also disputed the extraterritorial application of FDUTPA to consumers outside of Florida.  (*Id.*).  The *Smith* Action involved novel issues of federal law with no binding authority.  The Parties also heavily debated the issue of damages, particularly as to the FDUTPA claims.  (*Id.* ¶ 22).  Despite these challenges, Plaintiffs' Class Counsel remained steadfast in pursuit of their claims, ultimately securing a remarkable recovery on behalf of the Classes.  (*Id.* ¶ 27) ("The monetary and non-monetary benefits obtained under the settlement are an excellent recovery for the class.").

Extensive Litigation Efforts:  This Settlement is the product of three years of diligent work by Plaintiffs' Class Counsel, involving hotly-contested litigation of three separate cases in three separate forums.[3]  A settlement in principle was reached on February 11, 2020, two hours before oral argument in the *Haney* Action, ten days before a hearing on all pending motions (including certification and cross-motions for summary judgment) in the *Smith* Action, and while depositions were being taken in the *Reed* Action.  (Doc. 109-2, Hargitai Decl. ¶ 19).[4]

Class-Wide Support:  The Classes have overwhelmingly approved the Settlement.  While 2.1 million Class members received notice (Doc. 111-1, Azari

---

[3] Class Counsel also filed a putative class action against Costa in Texas, but was advised by the Court that class relief would be unavailable.  *See* Order at 1, *Burden v. Costa Del Mar, Inc.*, No. 4:17-CV-3504 (S.D. Tex. Mar. 22, 2018), attached as Exhibit 9 to Plaintiffs' Response to Objections ("While it is clear that the parties disagree as to the significance of the reliance element to this suit, the Court is of the opinion that it need not decide the propriety of the reliance element at this juncture because it appears that individual claim experience may predominate over common questions.").  Class Counsel did through the Settlement here what they were unable to do in Texas—secure class-wide relief for Texas consumers.

[4] The effort undertaken by Class Counsel to prosecute the Litigation is detailed in the Hargitai Declaration (Doc. 109-2).  The docket sheets from *Haney* and *Reed* are attached to the Declaration and, to the extent necessary, Plaintiffs request that the Court take judicial notice of the dockets and filings.  *See Milano v. TD Bank USA, N.A.*, No. 3:18-CV-598-J-34JBT, 2019 WL 3802459, at *1 n.2 (M.D. Fla. Aug. 13, 2019).

#82640047_v5

Decl. ¶¶ 10, 12, 17–21), the Settlement generated a mere eight requests for exclusion and four procedurally valid objections (representing an infinitesimal percentage of the Class).[5]  Several objections tout Costa's product and customer service, thereby supporting the fairness and reasonableness of the settlement by demonstrating the good result obtained by Plaintiffs' Class Counsel.  (Doc. 109-1, Scott Decl. ¶¶ 82–85) ("These objections further demonstrate that the relief secured by the settlement is an excellent result for the class.").  And three are sham objections filed by serial objectors and their counsel.  None of the objections provide justification for denying final approval and relief to the millions of Class members who clearly support the settlement.[6]

Arm's-Length Settlement Negotiations:  This Settlement is the product of arm's-length negotiations between experienced counsel, assisted by a reputable mediator. *See* Declaration of Terrence White, attached hereto as **Exhibit A** ¶ 11; (Doc. 109-2, Hargitai Decl. ¶ 5 ("[T]he negotiations were adversarial, non-collusive, and arms' length.")).

Plaintiffs now seek final approval of the Settlement and final certification of the Settlement Classes.  In sum, the Settlement satisfies the standard for final approval under Rule 23, and is more than "fair, adequate and reasonable" under Eleventh Circuit precedent.   (*See* Doc. 109-1, Scott Decl. ¶ 17).

---

[5] In total, six objections were received by the Settlement Administrator, the parties, or the Court, but two of these were not filed with the Court, contrary to the requirements contained in the Court's Preliminary Approval Order (Doc. 102 ¶ 13–17).  These objections are therefore invalid.

[6] Contemporaneously herewith, Plaintiffs' Class Counsel is filing a Consolidated Response to the Objections filed by serial objectors Davis, Miorelli, and Valls.

## II.     SUMMARY OF THE SETTLEMENT TERMS

**1.     The Settlement Class.**  The Classes are defined as follows: [7]

**<u>Florida Repair Class</u>**: All citizens of the State of Florida who: (i) purchased Costa plano sunglasses before January 1, 2018; and (ii) were charged a fee by Costa, from July 28, 2012, through February 28, 2021, to repair or replace their Costa plano sunglasses damaged by accident, normal wear and tear, or misuse.

**<u>Nationwide Repair Class</u>**: All citizens of the United States (excluding citizens of the State of Florida) who: (i) purchased Costa plano sunglasses before January 1, 2018, and (ii) were charged a repair fee by Costa, from April 3, 2015, through February 28, 2021, to repair or replace their Costa plano sunglasses damaged by accident, normal wear and tear, or misuse.

**<u>Florida Purchase Class</u>**: All citizens of the State of Florida who purchased Costa plano sunglasses from July 28, 2013, to January 31, 2018.

**<u>Warranty Class</u>**: All citizens in the United States who: (i) purchased a pair of non-prescription Costa sunglasses prior to January 1, 2016; and(ii) paid Costa a warranty fee to repair or replace non-prescription sunglasses damaged by a manufacturer's defect from August 20, 2013 through February 28, 2021.

(Doc. 98-1, Agreement § II(A)(8)).[8]

**2.     Monetary and Non-Monetary Benefits for the Settlement Class.**

In connection with the Settlement, Costa has agreed to provide significant

monetary and non-monetary relief to Class Members. First, Costa has agreed to

---

[7] As a practical requirement and to maintain consistency with the approved Notice program, the ending date of the time period used to define the Classes was modified from "the date of entry of the Court's Final Order" to February 28, 2021.

[8] Excluded from the Class are: (1) Costa, any entity or division in which Costa has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the judge(s) to whom Litigation is or has previously been assigned and each judge's respective staff; (3) counsel for each of the Parties in this case; and (4) persons who timely and properly exclude themselves from the Class. (Doc. 98-1, Agreement § II(A)(8)(e)).

dedicate a Settlement Fund in the amount of $40,000,000 (Forty Million Dollars), from which the following will be paid: (i) payments to the Class Members in the form of Product Vouchers; (ii) Incentive Awards to Plaintiffs (if permitted by the Court); (iii) payments to Plaintiffs' Class Counsel for approved Attorneys' Fees, Costs, and Expenses; (iv) costs associated with implementing the notice program and claims administration, and (v) if due to be paid under the Agreement, a Cy Pres Payment of no more than $1,000,000 (One Million Dollars). (*Id.* § IV(A)). Costa has also agreed to guarantee free shipping and handling, and to cover applicable sales tax, for all items redeemed from Costa's online webstore using the Product Voucher.  (*Id.* § IV(D), (G)).

All Claimants who submit a valid and timely Claim will receive a non-personalized, transferable, stackable Product Voucher with a two-year expiration date, which can be redeemed via Costa's online webstore or via a toll-free number for Costa merchandise. (*Id.* § IV(D), (F)). Based on the claims data received, the new estimated minimum value of Product Vouchers by class is set forth below:

| Class | Estimated Minimum Product Voucher Value |
|---|---|
| Florida Repair Class | $22.99 |
| Nationwide Repair Class | $22.99 |
| Florida Purchase Class | $12.00 |
| Warranty Class | $8.99 |

The Product Voucher values have increased from the estimated minimum amounts set forth in the Motion for Preliminary Approval, accounting for an accurate count of the number of class members and the number of claims made by the Florida Purchase Class. *See* Declaration of Amanda Sternberg ¶ 5, attached hereto as **Exhibit B**. The Product Vouchers are redeemable for hundreds of whole good merchandise items—as opposed to a discount or coupon off the purchase price. (Doc. 98-1, Agreement § IV(D)). Class Members are not required to pay any amount to Costa to receive Costa merchandise, and will not be required to travel to any retail establishment to redeem Product Vouchers.[9] Claimants may use multiple Product Vouchers at different times prior to their expiration, or stack Product Vouchers to obtain higher-valued products. (*Id.*, § IV(F)). For the Florida Repair Class, Nationwide Repair Class, and Warranty Class, Class Members will automatically (without the necessity for a claim) receive a Product Voucher corresponding to every repair and/or warranty claim made to Costa, with no cap on the number of Product Vouchers received. For the Florida Purchase Class, there is no cap on the number of Product Vouchers that a Class Member is entitled to receive, but Class Members were required to submit proof-of-purchase to receive more than five Product Vouchers. (*Id.* § IV(E)).

Costa has also agreed to significant non-monetary relief in connection with this Settlement, which benefits consumers nationwide. As a result of the Litigation,

---

[9] The structure of the instant Settlement was designed to be flexible to consumers, particularly in light of COVID-19. Consumers need not enter into a store and, much like a gift card, can redeem Product Vouchers online for hundreds of different items.

Costa has agreed to the following modifications to its product packaging and marketing materials: (i) agreeing to title its warranty for Costa's plano sunglasses as a "Limited Lifetime Warranty" for so long as the terms and conditions of such warranty are substantially the same as currently offered by Costa; and (ii) refraining from describing fees for replacement of scratched lenses, frames and other parts caused by accidental damage, wear and tear, or misuse as "nominal" fees. (*Id.* § IV(C)). Moreover, as a result of this Litigation, Costa has changed certain consumer-facing marketing materials and product packaging, including: (i) discontinuing the distribution of plano sunglasses in shipping boxes containing the "nominal fee" language; (ii) disposing of shipping boxes in inventory containing the "nominal fee" language, and discontinuing the description on Costa's website of its warranty on plano sunglasses as a "Lifetime Warranty"; (iii) creating new sunglass shipping boxes that removes any reference to a "nominal fee" language related to repairs of sunglasses; and (iv) modifying the repair section of Costa's website to disclose repair pricing to the consumer and describe such prices upfront, before sunglasses are sent in for repairs.[10] Also, Costa no longer charges consumers a processing fee for warranty repairs. *See* Declaration of T.J. McMeniman ¶ 5, attached hereto as **Exhibit C**.

---

[10] Costa has also agreed to a *cy pres* payment upon circumstances specified in the Agreement. (Doc. 98-1, Agreement § IV(I)). Objectors complain that Costa has not identified the particular *cy pres* recipient. (Doc. 112, Davis Obj. at 22). That argument has no merit. First, the parties are working cooperatively to attempt to exhaust the Settlement Fund by increasing the Product Voucher amounts to the maximum extent possible. There will only be a *cy pres* recipient if the Product Vouchers cannot be increased any more without exceeding the value of the Settlement Fund. Second, Costa has provided further information regarding the *cy pres* recipient(s), if any *cy pres* award is due to be paid, in the attached Declaration. *See* Ex. C, McMeniman Decl. ¶¶ 3-4.

#82640047_v5

**3.** **Class Release.** In exchange for the benefits conferred by the Settlement, Plaintiffs and all Class Members who do not file a timely written request for exclusion will be deemed to have released Costa (and the Released Parties) from any and all claims and damages of any kind and/or type that were or could have been brought related to Costa's "nominal fee" marketing language or Costa's "lifetime warranty," including any and all claims that arise out of or relate to the facts and circumstances giving rise to the claims which were brought or could have been brought in the Litigation.  (Doc. 98-1, Agreement § XII).

## III.   LEGAL STANDARD FOR FINAL APPROVAL

Federal courts strongly favor and encourage settlements, particularly in class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  "Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (quoting *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006)).

In determining whether to finally approve a class action settlement under Rule 23(e), the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994). The Eleventh Circuit has held that the following factors

#82640047_v5

should be considered under Rule 23(e):

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In evaluating a settlement, the Court "is entitled to rely on the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 WL 4042928, at \*5 (M.D. Fla. Nov. 23, 2009); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011).

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD RECEIVE FINAL APPROVAL.

Application of the *Bennett* factors fully supports final approval.

### 1. Likelihood of Success at Trial Supports Final Approval.

In considering the first *Bennett* factor, "the Court can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697–98 (M.D. Fla. 2005) (internal quotations omitted); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1345 (noting that a court need not determine if the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial").

While Plaintiffs' Class Counsel is confident in the claims in each of the *Reed*, *Haney*, and *Smith* Actions, a favorable outcome was not certain and continued

10

litigation posed risks.  In each case, Costa advanced several arguments disputing liability, class certification, and damages.  (Doc. 109-1, Scott Decl. ¶¶ 18–26).  In the *Haney* Action, a key issue on appeal involved a legal interpretation of the FDUTPA standard—whether a plaintiff is required to prove that plaintiff and all class members were uniformly *exposed* to a deceptive promise.  This was a novel issue, with limited on-point authority.  An unfavorable appellate court ruling could have resulted in a reversal of the trial court's certification of the FDUTPA class.  Another key issue in the *Haney* Action was whether reliance was required under Florida law for a claim for breach of a written warranty, which Costa argued destroyed predominance and commonality.  The FDUTPA exposure issue in *Haney* was also relevant to the *Reed* Action.  In *Reed*, the parties also disagreed about the application of FDUTPA to consumers outside of the state of Florida.

*Smith* involved a novel claim under the substantive provisions of the Magnuson-Moss Warranty Act ("MMWA").  The claim was subject to cross-motions for summary judgment with Costa contending that its warranty was "limited" by its terms and that a claim under the MMWA required a breach of warranty.  If either of those arguments were ultimately successful, class members in the *Smith* Action would not have obtained any recovery.

Further, even if Plaintiffs were successful in obtaining certification (or, in the *Haney* Action, obtaining an affirmance of the trial court's certification), the parties vigorously disputed the range of potential damages.  Damages under FDUTPA are generally measured by the "price premium" or the difference in value

11

of the product as advertised and the value of the product received.  To determine the "price premium" attributable to Costa's "nominal fee" promise, Plaintiffs engaged expert economist Stefan Boedeker to conduct a survey to determine how much Costa's use of the "nominal fee" claim increased the price of Costa sunglasses.  Plaintiffs also engaged Alexander Rey, a certified valuation analyst and forensic accountant, to opine on the value of this "nominal fee" repair charge.  In *Haney* and *Reed*, Costa was prepared to dispute the "value" of its "nominal fee" promise and disclosed a marketing expert, Hillary Ellner, that opined that Costa's "nominal fee" warranty was merely marketing language and that consumers do not typically purchase premium products, like Costa sunglasses, because of the warranty.  In the *Smith* Action, Costa argued that it was entitled to charge consumers for incidental expenses, which if successful would have significantly reduced any recovery to the class members.  Continued litigation posed significant risks to the Class, and Costa would likely have appealed any adverse judgment (as it did in the *Haney* Action), leading to many years of continued litigation.  The Settlement effectively balances those risks and weighs in favor of approval.

The proposed Settlement provides certain, timely, and substantial relief. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349–50 (S.D. Fla. 1982) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confer[red] . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

### 2. Considering The Range Of Possible Recoveries, The Settlement Amount Is Clearly Within The Range Of Reasonableness.

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, No. 2:97-CV-00074-ELN, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999). "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). This is because a settlement must be evaluated "in light of the attendant risks with litigation." *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement.").[11]

The range of possible recovery supports a finding that the settlement is fair, adequate, and reasonable. (Doc. 109-1, Scott Decl. ¶¶ 27–36). For the Warranty Class, the maximum possible recovery at trial is $11.95 plus tax – the total amount that Costa improperly charged the Class Members for their warranty repair. The settlement recovery of a tax-free product voucher worth $8.99 per class member,

---

[11] "Under Eleventh Circuit law, injunctive changes . . . represent a benefit to the class and should be considered when approving a class settlement." *Marty v. Anheuser-Busch Cos., LLC*, No. 13-CV-23656, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015) (citing *Poertner v. Gillette Co*., 618 F. App'x 624, 629 (11th Cir. 2015)). Thus, "courts rightly consider the value of injunctive *and* monetary relief in assessing whether a class action settlement provides sufficient relief to the class." *Montoya v. PNC Bank, N.A*., No. 14-20474, 2016 WL 1529902, at *14 (S.D. Fla. Apr. 13, 2016).

13

plus guaranteed free shipping and handling, is therefore *well over 100%* of the maximum recovery for the Warranty Class.[12] (*Id.* ¶ 28).

For the Florida and Nationwide Repair Classes, the amount of potential recovery for class members was uncertain and depended upon a jury determination of what constitutes a "nominal fee." A jury could have determined that a "nominal" fee on a pair of luxury sunglasses (costing over $149) was relatively substantial (*i.e.*, $25 or more), which would have greatly reduced any recovery to the class, even if liability was established. In fact, for purposes of valuing the injunctive relief secured by the settlement, Plaintiffs' expert Stefan Boedeker surveyed consumers about what they viewed as a "nominal fee" expressed as a dollar amount. The participants' responses averaged to $25.45. (Doc. 96-1, Boedeker Decl. ¶ 40). A voucher of at least $22.99 for the Florida Repair Class and Nationwide Repair Class, coupled with guaranteed free shipping and handling, reflects a strong recovery for the class. (Doc. 109-1, Scott Decl. ¶¶ 30–31).

The Florida Purchase Class consists of Florida consumers who purchased Costa sunglasses. The consumers in the Florida Purchase Class never sent their sunglasses to Costa for repair and never paid Costa any fees to have their sunglasses repaired. Plaintiffs' theory of damage was that these consumers paid a

---

[12] Costa disputed the applicable limitations period for the Warranty Class. The Settlement Agreement's definition of the Warranty Class adopts Plaintiffs' view of the applicable limitations period and provides benefits to tens of thousands of additional class members who may have had time-barred claims under Costa's view of the applicable limitations period.

"price premium" when they purchased their sunglasses because Costa's "nominal fee" promise came with the sunglasses.  As discussed above, Plaintiffs engaged two experts to value the "nominal fee" promise. While the valuation of the "nominal fee" promise by Plaintiffs' experts was not complete at the time of the settlement, a Product Voucher of at least $12.00 for the Florida Purchase Class reflects a strong recovery for the members of this class as well.  (Doc. 109-1, Scott Decl. ¶ 32).  Indeed, Costa's expert, Hillary Ellner, opined that "the vast majority of consumers do not consider a warranty policy as a major reason for their purchase of premium products (excluding consumer electronics)." (*Id.*).

As part of the Settlement, members of the Florida Purchase Class are entitled to claim Product Vouchers for each pair of Costa sunglasses purchased during the class period, and proof of purchase is not required (except if class members are claiming more than five product vouchers).  Moreover, according to the Claims Administrator, *over 31% of Class Members are entitled to receive multiple Product Vouchers*.[13] *See* Ex. B, Sternberg Decl. ¶ 3.  Within the Florida Purchase Class, 87% of Class Members will receive more than one Voucher, and 48% will receive five or more Vouchers.  Further, members of the Florida Repair Class, Nationwide Repair Class, and Warranty Class receive an automatic distribution of Product Vouchers without having to make a claim.  More than $19.7 million in Product Vouchers will automatically be distributed to Class Members without the necessity for a claim,

---

[13] According to their Declarations and the current estimated minimum Voucher amounts, Valls will receive approximately $100.95 and Miorelli will receive approximately $127.96 in Vouchers. (*See* Doc. 115-1, Valls Decl. ¶¶ 3–5); (Doc. 117-1, Miorelli Decl. ¶¶ 2–4).

and an additional $7.5 million in Product Vouchers will be distributed to Class Members that made a direct claim and are therefore highly likely to redeem these Vouchers. (Doc. 109-1, Scott Decl. ¶ 34).

The recoveries obtained are even more notable upon consideration of the injunctive relief secured from Costa. (*Id.* ¶ 36). No longer will Costa be permitted to advertise a "nominal fee" repair promise or a "Lifetime Warranty" while charging consumers for warranty repairs. Plaintiffs' expert, Stefan Boedeker, has placed considerable value on the injunctive relief secured. (Doc. 96-1, Boedeker Decl. ¶ 44). In addition, Felicia Morrisey, Costa's former Vice President and Controller, has stated that the cost to Costa to alter the packaging of Costa's non-promotional, non-prescription sunglasses alone would exceed $5,000,000. *See* Declaration of Felicia Morrisey at ¶ 9, attached hereto as **Exhibit D**. This factor strongly favors final approval of the settlement.

### 3. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Final Approval.

In evaluating this factor, "[t]he court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (internal quotations omitted). As described in the Hargitai and Scott Declarations, the Parties have already expended substantial resources in litigating these cases—Class Counsel devoted over 6,000 hours of time across the *Haney, Reed,* and *Smith* Actions, and Costa's counsel devoted more than 15,000 hours in

16

the defense.  The time and labor required to obtain a favorable settlement of the Action was "extraordinary."  (Doc. 109-1, Scott Decl. ¶ 39); (Doc. 109-2, Hargitai Decl. ¶¶ 16, 25, 32) (detailing efforts undertaken by counsel).

### 4. The Reaction of Class Members Weighs in Favor of Final Approval.

The positive reaction of class members and the absence of substantial objections "is strong evidence of the propriety and acceptability" of a request for final approval. *See Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992).  The Court should "consider[ ] the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness." *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at \*6 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at \*5 (S.D. Fla. Dec. 17, 2014). Obviously, "a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014).

Here, the reaction from Class Members has been overwhelmingly positive, and the Settlement has been met with near-universal approval.  The Claims Administrator issued notice to 2.1 million Class Members.  (Doc. 111-1, Azari Decl. ¶¶ 16–20). "In any class of this size, it would be no surprise if a settlement produced numerous objections and exclusions." *Braynen*, 2015 WL 6872519, at \*6.  Yet here, just eight (8) Class Members requested exclusion, (*see* Doc. 111-1,

Azari Decl. ¶ 27) and six (6) Class Members objected—a trivial fraction of the Class. Neither the United States Attorney General nor any other state attorney general objected to the Settlement despite being directly notified. *See Braynen*, 2015 WL 6872519, at *7; *Hall*, 2014 WL 7184039, at *5 (where objections "equate[ ] to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and few objections to class settlement, "such facts are overwhelming support for the settlement").

The receipt of eight requests for exclusion out of a class of 2.1 million represents less than 0.0004% of the Settlement Class. Moreover, at least one of the class members opted out because: "I had no problems with this product or company," *see* Exclusions, attached hereto as **Exhibit E**, at 8, further demonstrating the good result obtained by Class Counsel and underscoring the reasonableness of the Settlement.

Six Class Members objected to the Settlement. (*See* Doc. 109-1, Scott Decl. ¶ 42); (*see also* Docs. 112, 115, and 117). Six objections out of a class of 2.1 million individuals represents less than 0.0003% of the Settlement Class. Three of these objections (Docs. 112, 115, and 117) were filed at the eleventh hour by professional objectors and their counsel, and, as addressed in Plaintiffs' Class

Counsel's separate Response filed contemporaneously, these objections raise no legitimate arguments and instead merely attempt to re-tread issues this Court has already considered.

The remaining three objections also fail, procedurally and/or substantively. Two of the objections—submitted by Edmiston and Stewart—were not actually filed with the Court and only sent to the Claims Administrator, in contravention of the requirements set forth in the Court's Preliminary Approval Order (Doc. 102 ¶¶ 13–16). *See* Composite Exhibit of Objections, attached hereto as **Exhibit F**. These objections are procedurally invalid and cannot be considered by the Court. At any rate, these objections primarily tout Costa's product and customer service and do not set forth any reasonable or persuasive basis to oppose the settlement. (*See* (Doc. 105) ("My personal feeling about this suit is that I have had a perfect relationship with this company"); **Ex. F** at 3 ("I am not sure of another sunglass company that stands behind their products like Costa does."); *id.* at 1 ("The product is superior to any other I have tried.")). These objections, which contain no legal argument, are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. (*See* Doc. 109-1, Scott Decl. ¶¶ 82–85) (reviewing objections and stating that they demonstrate the relief secured is an excellent result).

### 5.  The Stage of the Proceedings Strongly Supports Final Approval.

The stage of proceedings at which settlement is reached is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate

#82640047_v5

the merits of the case and weigh the benefits of settlement against further litigation." *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *7 (S.D. Fla. Feb. 3, 2016). Here, the Litigation was ongoing for nearly three years before a settlement was reached. The parties had the benefit of depositions, consultation with expert witnesses, voluminous discovery, a lengthy mediation conference with an experienced mediator, extensive motion practice, and a three-day evidentiary hearing on class certification in which both sides' positions, testimony and legal arguments were presented and challenged. This factor supports settlement approval. (Doc. 109-1, Scott Decl. ¶ 43).

### 6. The Settlement is the Result of Good Faith, Arm's-Length Negotiations Conducted by Highly Experienced Counsel.

This Settlement is the product of extended arm's-length negotiations between experienced counsel, including ongoing mediation sessions conducted with Terrence M. White, a highly respected and experienced mediator. Mr. White found that settlement negotiations before him were "extremely hard-fought . . . completely at arm's-length, and fully conducted in good faith," and that "the advocacy on both sides of the case was outstanding." *See* Ex. A, White Decl. ¶¶ 11–12; (Doc. 109-2, Hargitai Decl. ¶ 5). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Wilson*, 2016 WL 457011, at *6. The negotiation process demonstrates beyond question that there was no fraud or collusion in reaching a settlement of this Action. *See Holman v. Student Loan Xpress, Inc.*, No. 08-cv-305, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (no fraud where a "settlement [was] the

product of . . . an arm's-length, 'protracted and contentious' negotiation with a mediator").

### 7.    Notice of the Settlement Satisfied the Requirements of Rule 23(e) and Due Process.

For the reasons set forth in detail in the Declaration of Cameron R. Azari, Esq. (Doc. 111-1), the notice program satisfied Rule 23(e)(1)'s requirement that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005), and must be "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75 (1974).[14]

### 8.    Certification of the Settlement Class is Appropriate.

For the reasons set forth in the Motion for Preliminary Approval (Doc. 91), which is incorporated herein by reference, the requirements of Rule 23(a) and Rule 23(b)(3) are met such that the Settlement Class should be certified.[15]

### 9.    Plaintiff's Counsel Should Be Appointed as Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  As explained in the declaration of Plaintiffs' Class Counsel (Doc.

---

[14] Also, the CAFA Notice requirement has been satisfied. On May 8, 2020, the Claims Administrator sent the Notice and related materials to the Attorneys General of all U.S. states and territories, and the Attorney General of the United States.  (Doc. 111-1, Attach. 1 ¶ 6).

[15] On April 12, 2019, the *Haney* court entered a 93-page order granting class certification (Doc. 24-1).

109-2, Hargitai Decl. ¶¶ 39–44), proposed Class Counsel have extensive experience with similar class actions and complex litigation. Further, Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the litigation of these claims, and have successfully negotiated the Settlement of this matter. *Id.* Accordingly, the Court should appoint Peter Hargitai, Joshua Roberts, Laura Renstrom, and Michael Gropper from Holland & Knight LLP as Class Counsel.

### 10.   Class Counsel's Request for an Award of their Attorneys' Fees and Costs is Reasonable.

Despite objections to the contrary from serial and professional objectors, this Court has correctly ruled that this Settlement is not a "coupon" settlement under 28 U.S.C. § 1712.  (*See* Doc. 102 at 4 n.1).  Therefore, the law in this Circuit is clear that Class Counsel's fee must be based on a percentage of the total benefits—monetary and non-monetary—established for the class.   *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991).  The fees and expenses sought in Class Counsel's motion for attorneys' fees (Doc. 109) are reasonable, appropriate, and amply supported by the record and evidence.

Nevertheless, as set forth in the Response to Objections and Supplement to the Motion for Attorneys' Fees (filed contemporaneously herewith), even if this case was a  "coupon" settlement under CAFA (it is not), the fees sought would still be reasonable and appropriate.  As explained in the Response and Supplement, in coupon settlements, district courts are permitted to award attorneys' fees based on a lodestar calculation, with an appropriate multiplier.  28 U.S.C. § 1712(b), (c);

22

*Parsons v. Brighthouse Networks, LLC*, No. 2:09-CV-267-AKK, 2015 WL 13629647, at *13–15 (N.D. Ala. Feb. 5, 2015) (stating that "even if this were a coupon settlement, Class Counsel would be entitled to seek a fee award based on the lodestar with multiplier method, pursuant to CAFA 28 U.S.C. § 1712 (b) (1) and (2) and (c)(2)," and holding that the same attorneys' fee awarded under the percentage-of-the-recovery method would be justified and awarded by the Court under CAFA: "either a percentage-of-recovery analysis or a lodestar/multiplier analysis provides an independent basis supporting the requested fee as reasonable"). Multipliers in this setting are on ***average*** nearly four. *Id.* at *15 (collecting cases and other authorities, including a class action treatise indicating that "the average multiplier found to be reasonable was 3.89"); *see also Kuhnlein v. Dep't of Revenue*, 662 So. 2d 309, 315 (Fla. 1995) (multiplier of up to five times the loadstar permitted in class actions in Florida state court). This case is far from average. Class Counsel respectfully requests a ruling awarding attorneys' fees under *Camden I*'s percentage-of-the-benefit approach for non-coupon settlements, but alternatively ruling that, even if the settlement was a "coupon" settlement under CAFA, the fees awarded would be reasonable and justified under 28 U.S.C. § 1712(b) and (c), the lodestar-with-multiplier approach.

## Conclusion

**WHEREFORE**, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement; (2) grant final certification of the Settlement Classes; (3) confirm the appointment of undersigned counsel from Holland & Knight LLP

23

as Plaintiffs' Class Counsel; (4) award Plaintiffs' Class Counsel reasonable expenses and attorneys' fees as requested in Plaintiffs' motion for attorneys' fees and expenses (Doc. 109) and the Supplement to Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses (Doc. 133); and (5) grant any further relief the Court deems just and proper.[16]

## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel conferred with counsel for Costa regarding the relief sought herein, and Costa does not oppose this motion.

Dated: March 19, 2021

**HOLLAND & KNIGHT LLP**

*/s/ Peter P. Hargitai*
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202

*Attorneys for Plaintiffs and the Class*

---

[16] If the Eleventh Circuit's decision in *Johnson v. NPAS Sols., LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), has been vacated at the time of the final approval hearing, Plaintiffs also request incentive awards to the named class representatives in the amount of $10,000 each.

#82640047_v5