# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

TROY SMITH, individually and on behalf of all others similarly situated, GERALD E. REED IV, individually and on behalf of all others similarly situated, *and* BRENDAN C. HANEY, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

COSTA DEL MAR, INC., a Florida corporation,

    Defendant.

Case No.: 3:18-cv-1011-J-32JRK

**JURY TRIAL DEMANDED**

## MOTION FOR ATTORNEY'S FEES AND COSTS

COMES NOW Mitchell George Miorelli, P.E. ("Mr. Miorelli"), Objector in the above-referenced matter, who moves this honorable Court pursuant to Federal Rule of Civil Procedure 54 and Middle District of Florida Local Rule 7.01(b) to award $189,961.80 in attorneys fees[1] (consisting of undersigned counsel's lodestar plus the 2.8x multiple awarded to Class Counsel by the Court) and $640.37 in costs. This fee should be paid from Class Counsel's fee award, not deducted from the $4 million awarded to the Class so that the Class is not double-billed for attorneys'

---

[1] This constitutes 4.75% of the $4 million benefit conferred on the Class.

1

work wining them this direct benefit.

## MEMORANDUM OF LAW

### I. Introduction

Objectors who provide a material benefit to the class through their objections are entitled to fees as a matter of law. *See In re Domestic Air Trans. Antitrust Litig.*, 148 F.R.D. 297, 358-60 (N.D. Ga. 1993); *Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) ("*Rodriguez II*"). The Court ordered a $4 million reduction to Class Counsel's attorneys' fee and directed that those funds be distributed to the Class as cash. The Order cited Mr. Miorelli's filing and justified this reduction along similar lines to those proposed by Mr. Miorelli in written and oral presentations to the Court. This $4 million is the only cash the Class stands to receive from this case and is a material benefit justifying attorneys fee and costs awards to the Objectors. Pursuant to Class Counsel's interpretation of *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), set forth in their fee motion (Dkt 109), the "benchmark" would suggest a $1 million, 25% fee. Obviously, the fee sought by Objector is significantly less than that.[2]

---

[2] Mr. Miorelli is aware that other objectors, particularly Mr. Valls, intend to similarly seek fees. To the extent that the total in objector fees sought does not exceed 25% of the $4 million cash benefit (which Mr. Miorelli understands will be the case) then Mr. Miorelli does not object to other objector-fee applications justified on the basis of the $4 million cash benefit.

## II. Objectors who provide a material benefit to the class are entitled to fees as a matter of law.

Courts in this Circuit and across the country have long recognized that objectors may receive a fee award if their "appearance sharpens the issues and debate on the fairness of the settlement[.]" *Domestic Air*, 212 F.R.D. at 358. This encourages broader participation in the settlement process when often objectors are the only ones providing any adversarial test of the proposals before the Court. *Id. See also, Great Neck Capital Appreciation Inv. Partnership, L.P. v. Pricewaterhousecoopers*, 212 F.R.D. 400, 413 (E.D. Wis. 2002). Courts may award fees when objectors improve the settlement, assist the court, or "enhance the recovery in any discernible fashion." *Id.* at 413.

However, when there is a material benefit to the class like the $4 million here, objectors are *entitled* to fees. "If these objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Rodriguez II*, 688 F.3d at 658. "It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. This participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002).

3

A. <u>The only cash available to the Class comes from the $4 million in reduced attorneys' fees, which is a material benefit to the Class.</u>

Setting aside for a moment whether the "vouchers" are "coupons" pursuant to the Class Action Fairness Act of 2005, the only *cash* which the Class gets from the Settlement is the $4 million arising from the reduced Class Counsel fee. While Mr. Miorelli does not know what distribution plan Class Counsel and Costa will propose on October 20, 2021, Mr. Miorelli's position ever since his objection has been that the $4 million should be distributed as cash payments to the Class *pro rata*. It should not be distributed as "vouchers" which the Court rightly recognized will result in a windfall to Costa. Dkt 151 at 45.

This cash is a material benefit to the Class. Considering that there are approximately 1 million class members who filed claims[3], this would be slightly less than $4 each – or about one-third of the maximum possible Warranty Class recovery at trial. *See* Dkt 151 at 19 *and* Dkt 135-2 at 3. Unlike vouchers, which Mr. Miorelli showed in his objection have single-digit redemption rates, this cash could (and should) be directly remitted to the Class.

No matter how the cash is distributed, even if by increased vouchers, the impact to the Class is material. The Court held that the aggregate face value of

---

[3] Epiq reported that there will be about 1.7 million vouchgers sent, but the number of class members, which is relevant if one considers a flat per-class-member distribution, is about 1 million as some class members stand to receive more than one voucher. *See* Dkt 135-2 at 3.

4

"vouchers" to be sent to the Class is $19.7 million. As such, even if the $4 million only results in increasing the "voucher" size, it would constitute a more than 20% increase for Class Members.

   B. <u>The Court's reasoning for reducing Class Counsel's fees follows the arguments presented by Mr. Miorelli in his objection and at the fairness hearing.</u>

The Court's reasoning for reducing Class Counsel's fee follows much of the same logic which Mr. Miorelli proposed in his objection. This, combined with the Court's statement that it had "weighed" the objections and that they had "been considered as stated herein" as part of its decision to reduce Class Counsel's fees by $4 million shows that Mr. Miorelli's objection was helpful to the Court in agreeing to reduce attorneys fees for the benefit of the Class. Dkt 151 at 11, 47.

>   1. *The Court agreed with Mr. Miorelli that the value of the Settlement for purposes of calculating an attorneys' fee should not include millions of illusory value Class Counsel claimed.*

In his objection, Mr. Miorelli argued that even if the Court was inclined to approve the Settlement, it should disregard, for purposes of calculating the "value" of the Settlement (the denominator of any *Camden I* common fund attorney fee benchmark comparison) many of the inflated or illusory items Class Counsel cited. The Court largely agreed with Mr. Miorelli's analysis and implemented it in its calculation which resulted in a $4 million fee reduction.

First, Mr. Miorelli was the only objector to show the Court that the notional

5

$20 million value of free shipping was illusory since "Costa already offers everyone free shipping on its website." Dkt. 117 at 22-23 *and* Dkt 117-3 (showing Costa's free shipping policy).

Second, Mr. Miorelli was the only objector to point out that the claimed $1 million in supposed sales tax savings was also illusory as a matter of state tax law. Dkt 117 at 23-25. Mr. Miorelli's objection showed that it was impossible to justify Class Counsel's claimed $1 million value for this term of the Settlement from a numerical basis because the claims rates for "vouchers" are so low that the maximum theoretical value would be around $75,000. *Id.* at 24. Mr. Miorelli also provided an analysis of Florida and California state sales tax law which showed that as a matter of law the state with the closest nexus to the case and the most populous state, the "vouchers," as structured in the Settlement, would not be taxable, so the claimed $1 million would result in double-counting. *Id.* at 24-25.

Third, Mr. Miorelli argued that the Court should ignore the $47-58 million valuation of the injunctive relief proposed by Class Counsel's expert because that valuation mismatched the time element of the Class definition. *Id.* at 26-27 (the Class consists of past-purchasers of Costa products, but the expert's report only purports to value the injunction for future purchasers, a class of persons who does not match the Class defined in the Settlement, "so the 'value' to the Class is *zero*" (emphasis in original)).

Ultimately the Court agreed with each of Mr. Miorelli's three points described above: it found the $20 million valuation of the "free shipping" term was "overblown for purposes of determining an appropriate attorney's fee award" and ignored the illusory sales tax savings and Class Counsel's expert's valuation of the injunction. Dkt. 151 at 40-41 (fn. 18).

> 2. *The Court agreed with Mr. Miorelli's argument that any reduction in fees should go to the Class.*

Mr. Miorelli addressed the possibility that the Court would disagree with his arguments to reject the Settlement altogether but agree with Mr. Miorelli that the attorneys' fees were excessive, and recommended how the Court should proceed in such a circumstance. "If the Court approves the Settlement Agreement but reduces Class Counsel's fees or costs, follows *Johnson* and denies the incentive awards, and/or denies approval of the *cy pres* giveaway, that reduction should result in a cash distribution to the Class." Dkt 117 at 62-63. The Court's order six months later recognizes that issue is now squarely before it. Dkt. 151 at 45. The Court recognized that just increasing the vouchers would turn the $4 million into a windfall for Costa. *Id.* As such, it has given Class Counsel and Costa an opportunity to propose solutions. *Id.*

Mr. Miorelli already proposed the best solution (*pro rata* cash distribution) months ago. That the Court did not simply order increased vouchers shows that the Court has given Mr. Miorelli's concerns significant weight.

7

    C. <u>Even on topics where the Court did not adopt Mr. Miorelli's proposals, the Court's decision shows improvements because of the presence of objectors.</u>

Even when an objector's arguments are not 100% successful, their participation in creating an adversarial test for the Settlement results in an non-pecuniary improvement for the Class. This case has one of those non-pecuniary benefits in the *cy pres* issue.

Initially the Settlement gave Costa completely unfettered discretion in how to distribute the almost-certainly-maxed-out $1 million *cy pres* fund. Dkt 117 at 43, 51-52. After Mr. Miorelli's objection, Costa vaguely suggested a few factors Costa "intends to donate any cy pre amounts to" without committing to any. Dkt. 134-8 at 2. Clearly, they smelled blood in the water. The Court correctly picked up on Mr. Miorelli's arguments and now is requiring *at least* Court approval before the *cy pres* is paid. Dkt 151 at 28. While the Class would be best served if the *cy pres* went to the Class, at least the Court has forced more supervision on the grants due to the adversarial challenge created by Mr. Miorelli's objection.

   **III. Class Counsel is likely to argue that the Court would have made these modifications without objector involvement and/or that the presence of multiple objectors means none should be awarded fees – those arguments all fail.**

Generally, in situations such as this Class Counsel responds to objector fee requests by arguing (a) the Court would have reduced their fees even if the objector(s) had not joined the case and/or (b) because multiple objectors made

8

similar arguments, none of them should be awarded fees.

Should Class Counsel make such an argument, it would beg the question: if their fee request was so obviously excessive, why would Class Counsel—particularly as a fiduciary of the Class—make such an excessive request to begin with? The reality is that courts in this Circuit—including this Court—have awarded attorneys' fees in excess of the 25% benchmark in a number of other cases, and it was appropriate for Mr. Miorelli and other objectors to submit briefing and thereby provide an adversarial setting to test the reasonableness of the request in this case. As the Court properly concluded, the $12 million request ultimately failed that test. Objectors such as Mr. Miorelli cannot know in advance, when they are deciding whether to invest the time and resources into objecting to an excessive fee request or objectionable settlement, how a court would rule without the advantage of the objector's adversarial briefing or whether another class member will file an objection on similar grounds. When an objector becomes involved in a case, the investment of time and resources generally cannot be divided argument by argument because he must analyze the settlement and fee request holistically and the issues often overlap. Class Counsel's own fee request reflects that indivisibility of labor, as there is no indication that they trimmed their lodestar to account for unsuccessful positions they took, their investigation and advancement of issues that turned out not to be meritorious, or their ultimate result achieving

only a tiny fraction of alleged damages – paid in "vouchers" instead of cash.

Here, Mr. Miorelli successfully argued that Class Counsel's fee request of $12 million was excessive, thereby achieved a $4 million pecuniary benefit for the Class, and should be granted his modest request for attorneys' fees as a result.

### IV. Mr. Miorelli's requested fee of 4.75% of the benefit conferred to the Class is reasonable.

Mr. Miorelli seeks an attorney's fee award which is 4.75% of the benefit conferred to the Class. This is significantly below the *Camden I* benchmark of 25% even if probable fee requests from other objectors were considered. Such a request is also well within the range of percentage-of-the-benefit fees awarded by Courts across the country to successful class action objectors. *See, e.g.*, *In re Easysaver Rewards Litig.*, No. 09-cv-02094-BAS-WVG, 2021 WL 230013 at *3 (S.D.Cal. Jan. 22, 2021) (awarding 25% of the objector-caused benefit in fees); *Eubank v. Pella Corp.*, No. 06-cv-4481, 2019 WL 1227832, *8-9 (N.D. Ill. Mar. 15, 2019) (beginning with the presumption that 25% of the objector benefit will be awarded as fees but then reducing the award on a lodestar cross-check such that each objector received a 6x multiplier); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 (D.N.J. 2012) (awarding "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery"); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d at 748 (finding an award of $2.7 million (3.8% of the benefit conferred) "was too small" and concluding that objector's counsel was entitled to $4.125 million (5.9% of the

10

benefit conferred); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector 25% of the increase in benefit to the class).

Mr. Miorelli will file a supplemental motion in due course to fully justify the amount sought as contemplated by Local Rule 7.01(c).

Just as in his objection, Mr. Miorelli believes fairness requires the Court conduct a lodestar cross-check of objector fee awards. Mr. Miorelli's request constitutes the same 2.8x multiplier the Court awarded to Class Counsel. While Mr. Miorelli recognizes he has not spent as many years working on the case as Class Counsel, that fact is reflected already in the lower lodestar, so need not be double-counted with a lower multiplier. Also, while Class Counsel was awarded their multiplier for an award of "vouchers" (which the Court admitted was "a close call" to distinguish from "coupons"), Mr. Miorelli seeks fees for an all-cash benefit to the Class, which is indisputably better than "vouchers" dollar-for-dollar.

Finally, Mr. Miorelli's lodestar does not include time spent preparing (and presumably later defending) this fee motion. Class Counsel's award includes time spent preparing and defending his fees. So even at the same multiplier, Mr. Miorelli's does not include that self-serving effort.

Consequently, Mr. Miorelli's request of 4.75% of the benefit conferred is reasonable.

### V. The Court should deduct any fee award for Mr. Miorelli or other objectors from the $8 million in fees awarded to Class Counsel.

"[T]he 'common benefit' theory is premised on a court's equity power." *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978). As between class members and Class Counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). The objector(s)' fees thus should be borne by Class Counsel, who had complete responsibility for the excessive fee request. The Class should not have to pay twice for a benefit they should have received at the outset. (Class Counsel has already been compensated for the $4 million the Blass is now receiving. *See* Dkt 151 at 43 (awarding 25% of total $32 million settlement value).) It would be inequitable if the Class were double-billed for Mr. Miorelli's success in ensuring that the $4 million benefits the Class rather than excessively compensates lawyers. *See McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) (debiting objector's fee award from class counsel's award because class benefit was only achieved on the "second try").

It would be highly inequitable to require the Class to foot the bill for **both** Class Counsel **and** objector(s)' counsel, when Class Counsel alone created the necessity of objection by tendering an unreasonable request in the first place. *Cf. Wilson v. SW Airlines*, 880 F.2d 807, 816 (5th Cir. 1989) ("class counsel … asked for unreasonably high enhancements and additional fees. Indeed, class counsel

12

produced a figure that would exhaust the entire surplus…. [F]or this reason we hold that, although class counsel's conduct does not destroy its equitable claim, it does diminish it."). Perhaps this is why many courts across the nation have held that objector fees should be paid out of class counsel's award.[4]

It is not punitive when objectors' fees are paid from the same pot awarded to class counsel. Rather, doing so recognizes several realities, equities, and best practices of settlement and class representation. The court's opinion in *Great Neck* provides pertinent discussion of this issue. 212 F.R.D. at 416-17. There, the court recognized its equitable discretion to impose the burden of paying objector fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds. *Id*. at 417. Instead, the court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

---

[4] *E.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067, 2014 WL 4446464, at *10 & n.1 (D. Mass. Sept. 8, 2014) (same); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010) (same); *Parker v. Time Warner Entm't Co.*, 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 273 F. Supp. 2d 563, 573 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 2 F. Supp. 2d 175, 176 (D. Mass. 1998) (same); *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1215 (D.N.M. 1998) (same); *In re Citigroup Sec. Litig.*, No. 07-cv-9901 (SHS), Dkt. No. 286, Order at 1-2 (S.D.N.Y. Sept. 10, 2013) (same with objector's expenses).

Awarding fees from Class Counsel's award is also good public policy. It provides a practical incentive for Class Counsel to avoid proffering excessive fee requests and settlements that have a high probability of being objectionable to class members and to the courts. Plenty of unfavorable settlements and excessive fee requests are approved quickly, quietly, and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors); *see generally In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) ("No class member objected either—but why should he have? His gain from a reduction, even a large reduction, in the fees awarded the lawyers would be miniscule.") Add to that the reality that small teams like Mr. Miorelli's have extremely limited resources themselves, and it is readily apparent why Class Counsel must be encouraged to submit good requests on their own. If they are not even responsible for paying the comparatively minimal fees of successful objectors, then there will be little if any incentive for them to request reasonable amounts of fees from the very outset. "Outside-chance opportunity for a megabucks prize must cost to play." *Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985).

## VI.   CONCLUSION

For the foregoing reasons Mr. Miorelli prays this honorable court find that,

pursuant to Fed. R. Civ. P. 54 and Local Rule 7.01(b):

- A) Mr. Miorelli is entitled to an award of attorneys fees of 4.75% of the benefit conferred, or $189,961.80, and reimbursement of $640.37 in costs

- B) The award should be deducted from Class Counsel's $8 million fee award so that the Class does not double-pay for their legal representation.

DATED: October 5, 2021

Respectfully submitted,

*/s/ Sam A. Miorelli, E.I., Esq.*
Sam A. Miorelli, E.I., Esq. (FL Bar # 99886)
**Law Office of Sam Miorelli, P.A.**
1141 Mission Ridge Court
Orlando, FL 32835
Telephone: 352-458-4092
E-Mail: sam.miorelli@gmail.com

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), I certify that I participated in e-mail discussions of proposed objector fee motions. Class Counsel and Costa opposed all objector fee motions in that discussion. Counsel for Objector Austin Valls stated they did not oppose this motion via telephone.

*/s/ Sam A. Miorelli*
Sam A. Miorelli, E.I., Esq.