UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

   Plaintiffs,
v.              Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

   Defendant.
_____/

**JOINT BRIEF ON INCREASING THE VALUE
OF THE SETTLEMENT TO THE CLASS BY $4 MILLION**

As requested in the Court's September 21, 2021 Order ("Order," Doc. 151), Plaintiffs and Defendant hereby jointly provide the Court additional briefing detailing the two alternatives for the distribution of $4 million to the class.

## Introduction

The Settlement Agreement between Plaintiffs and Defendant provides that "[a]ny reduction by the Court in the amount of Attorneys' Fees, Costs, and Expenses to be awarded to Plaintiffs' Class Counsel shall inure to the benefit of the Class." *See* Settlement Agreement § X. A. (Doc. 98-1). Plaintiffs applied for an award of $12 million in attorneys' fees, costs, and expenses. (Doc. 109.) The Court, in its discretion, and after a comprehensive analysis applying the percentage of the benefit and alternative lodestar with a multiplier methods, awarded Class Counsel $8 million.

Counsel for Plaintiffs and Defendant have conferred amongst themselves and with the class administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), to determine the best available methods to distribute the additional $4 million to the class members. For an additional cost of $391,000, Epiq has the capability to distribute cash payments to the class members (either electronically or by mail delivery of a check). Alternatively, the $4 million can benefit the class through increased voucher amounts with no additional administrative costs.

## Discussion

**I.     Option One: Distribution of the $4 million in cash.**

The $4 million can be distributed directly to class members in cash (minus the additional costs due to Epiq for administering the claims process) electronically or by mail delivery of a check.

**A.     The Method of Distributing the $4 million.**

Epiq can distribute payments to class members through a number of different electronic payment options:

- PayPal (transfer funds into class member's PayPal account);
- Prepaid Visa or Master Card (electronic Visa or Master Card usable anywhere Visa or Master Card are accepted);
- ACH (class members can provide their bank account details for an electronic funds transfer);
- Starbucks (gift card);
- Target (gift card);
- Amazon (gift card); and
- Lowes (gift card).

Epiq can also distribute payments via a physical check delivered by mail. For class members with a known email address, an email will be sent notifying the class member of their option to receive their cash distribution in one of these various forms of electronic payment, or through mail delivery of a check. The class member will merely have to identify his or her preferred method of payment. If the class member does not select a payment option after four attempts to notify the class member of this additional payment, the non-response default will be to choose PayPal as the option. A file containing all non-responder email addresses and award amounts, plus funding totaling their awards, is then sent to PayPal. For instances where the email address is also associated with a PayPal account, the money is deposited directly into the user's account. For instances where the email address is *not* associated with a PayPal account, an email is sent to the class member, and he or she will have 30 days to claim the funds through PayPal. If that class member does not claim his or her funds within that 30-day timeframe, the money will be returned to Epiq for payment to the *cy pres* recipient.[1]

If Epiq only has a mailing address, a check will be mailed to the class member at that address. This option is more expensive than the electronic payment due to printing and shipping charges, which in turn reduces the overall cash available for distribution. And this option is less flexible and convenient than the electronic payment option. Therefore, it is only being utilized if a class

---

[1] Pursuant to the Settlement Agreement, the *cy pres* payment would remain capped at $1 million.

member's email address is unavailable or if the class member opts to receive a physical check.

### B.   Allocation of the $4 million.

When determining the fair allocation of the funds across the four classes, counsel took into consideration that the Warranty Class is already close to being made whole for the maximum damages that a Warranty Class member could have suffered, such that additional cash payments are not necessary. As alleged by Plaintiff Smith, each member of the Warranty Class was improperly charged a warranty fee of $11.95. The Settlement Agreement provides each member of the Warranty Class a stackable, transferrable voucher in the amount of $8.99, plus guaranteed free shipping and handling and no tax on any items obtained from Costa. A pro-rata allocation of the injunctive relief, which the Court valued at $5 million, adds $2.87 per Warranty Class claim.[2]

In addition, the cost to distribute the payments to the Warranty Class was a consideration.  The cost to distribute the funds ranges from $0.70 (for an electronic payment) to $1 (for payment via a printed check by mail) per class member. In total, because the Warranty Class is so large, it would cost more than $600,000 to send payments (each likely under $1) to each of the 814,589 unique Warranty Class members, significantly reducing the pool of funds. In light of the

---

[2] The per-claim value of the injunctive relief was calculated by dividing $5,000,000 by the total number of claims (1,744,737).

foregoing, Plaintiffs and Defendant agree that, should this Court direct the $4 million to be distributed in cash, the $4 million, less costs of administration, should be evenly distributed to the Purchase Class, Florida Repair Class, and Nationwide Repair Class, as set forth below.

### C.  The Amount of the Cash Payment Per Claim.

Epiq agreed to administer the distribution of the $4 million for a total additional cost of administration of $391,000, which leaves the remainder (i.e., $3,609,000) available for distribution to the class members. There are 910,080 total payable claims in the Purchase Class, Florida Repair Class, and Nationwide Repair Class combined. Dividing the funds available for distribution after the cost of administration (i.e., $3,609,000) by the total number of claims (i.e., 910,080) yields $3.96 per claim. Accordingly, funds remain to pay $3.96 per claim to members of the Purchase Class, Florida Repair Class, and Nationwide Repair Class.[3]

This $3.96 per-claim payment is in addition to the voucher amounts of $21 for each Purchase Class claim, $22 for each Florida Repair Class claim, and $22

---

[3] This payment amount is contingent upon the Court's denial of the Motions for Attorneys' Fees filed by the Objectors, which have no merit. (Doc. 152, 153.)  The payment of the Objectors' attorneys' fees, if any, would be paid out of the $4 million reduction in Plaintiffs' attorney fee which could alter the payment amount. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 4776946, at *2 (N.D. Cal. Aug. 13, 2015) ("The Court nonetheless rejects Yang's request that her fees be paid from Class Counsel's award, rather than the Settlement Fund."); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1334 (D. Nev. 2014) ("Given the size of the common fund and the reasonable figure requested by class counsel, the Court finds that Andrews and Weber are entitled to fees from the common fund rather than class counsel or Hertz.").

for each Nationwide Repair Class claim.[4] Moreover, because many class members have multiple claims, many individual class members of the Purchase Class, Florida Repair Class, and Nationwide Repair Class will receive a multiple of the $3.96 payments. By way of example, a single individual member of the Florida Repair Class with three (3) repair claims would receive $66 in vouchers plus a payment of $11.88 by check, Visa, PayPal, ACH, or one of the gift card options at his or her option.

## II. Option Two: Distribution of the $4 million through increased vouchers.

The alternative is to use the entire $4 million to increase the voucher amounts payable to class members. There would be no additional administration costs to implement this option.

### A. The Method of Distributing the $4 million.

The full benefit of the $4 million can be distributed to the class members through increased vouchers. Epiq can increase the voucher amounts to all, or specific classes, without any additional administrative cost.

### B. Allocation of the $4 million.

As with the cash alternative discussed above, when determining the fair allocation of the funds across the four classes, the fact that the Warranty Class is

---

[4] The original projected voucher amounts were $10.00 for the Florida Purchase Class, and $19.99 for the Florida and Nationwide Repair Classes. After updated calculation of amounts based on the claims submitted on the Florida Purchase Class, and current estimated administration expenses, the voucher amounts have increased by $11.00 for the Florida Purchase Class, and by $2.01 for the Florida and Nationwide Repair Classes.

already being made whole remains applicable such that a Warranty Class member need not receive an increased voucher.

Under Option 2, vouchers can be increased by $4.00 per claim to the Florida Purchase Class, and $4.50 per claim to the Florida and Nationwide Repair Classes (in comparison to a cash payment of $3.96 per claim for each of those classes under Option 1).[5] Utilizing Option 2 also reduces the amount paid in *cy pres* to an estimated $5,991.57, compared to an estimated minimum cy pres payment of $51,208.77 under Option 1, above (which does not include any reverted unclaimed funds to the extent that becomes part of the cy pres).

By way of example, a single individual member of the Florida Repair Class with three (3) repair claims would receive an increase of $13.50 in vouchers, resulting in a total voucher distribution of $79.50 (which remain stackable and transferrable).[6]

## **Conclusion**

As set forth above, there are two viable options to utilize the $4 million for the benefit of the classes. The parties are amenable to the adoption of either option and defer to the Court as to its preference on the method of distribution of these funds.

---

[5] This is also contingent on the Court's denial of the Motions for Attorneys' Fees filed by the Objectors.
[6] Under this scenario, the class member receives an added $1.62 benefit under Option 2, albeit via voucher increase instead of cash.

**HOLLAND & KNIGHT LLP**

/s/ Joshua H. Roberts
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*

**MCGUIREWOODS LLP**

*/s/ Sara F. Holladay-Tobias*
Sara F. Holladay-Tobias
Florida Bar No. 0026225
stobias@mcguirewoods.com
Emily Y. Rottmann
Florida Bar No. 0093154
erottmann@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)
Secondary Service Emails:
flservice@mcguirewoods.com
clambert@mcguirewoods.com
csweeney@mcguirewoods.com

– *and* –

Justin R. Opitz (*admitted pro hac vice*)
jopitz@mcguirewoods.com
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 932-6471
(214) 273-7487 (fax)

*– and –*

Mark E. Anderson (*admitted pro hac vice*)
manderson@mcguirewoods.com
Jocelyn M. Mallette (*admitted pro hac vice*)
jmallette@mcguirewoods.com
434 Fayetteville Street, Suite 2600
Raleigh, North Carolina 27601
(919) 755-6600
(919) 755-6699 (fax)

*Attorneys for Defendant Costa Del Mar, Inc.*