UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf of
all others similarly situated,                                   Case No.: 3:18-cv-1011-TJC-JRK

                                   Plaintiffs,

                        v.

COSTA DEL MAR, INC., a Florida
Corporation

                                   Defendant.
_____/

## OBJECTOR JOHN W. DAVIS'S MOTION FOR AN AWARD OF ATTORNEY'S FEES

Pursuant to Order of this Court dated October 19, 2021, objecting class member John W. Davis submits this petition for an award of attorneys' fees and reasonable litigation expenses to his counsel, the Law Office of Eric Alan Isaacson.  As explained below, Mr. Davis and his counsel have made a significant contribution to this litigation and conferred a substantial benefit on the members of the class.

Mr. Davis and his counsel brought the benefit of adversarial analysis to the proposed settlement.  They directed the Court's attention to infirmities in the

settlement's terms and the arguments made in favor of it.  The Court has addressed specific infirmities identified by Davis, resulting in substantial benefits to the Class and the vindication of proper class procedures.

Mr. Davis and his counsel's work affected this case and benefited the Class two ways before they even appeared in it, for after Davis and Isaacson prevailed in *Johnson v. NPAS Sols.*, 975 F.3d 1244 (11th Cir. 2020), this Court altered the scheduling of the motion for attorney's fees "to ensure adequate time for class members to object to the motion, as required by *Johnson*." DE151:5, citing DE108. In addition, Plaintiffs had to recast their request for incentive awards as "conditional" on *Johnson* being overturned en banc, given that case holds them to be illegal.

Once Davis objected here, this Court sustained most of his objections to the settlement, while acknowledging that his unsuccessful argument about the relief being CAFA coupons presented "a close call."  DE151:37

Davis's objection in this case identified several impermissible provisions of the settlement.  These include a stipulation that objectors' counsel could not be paid from the settlement, which is an overtly improper attempt to stifle dissent from absent class members.  This Court agreed that the provision was void as against public policy and ordered the provision stricken from the Settlement. DE151 at 27.

2

Mr. Davis further pointed out that Class Counsel had arranged to scuttle the settlement if this Court found the voucher relief to be "coupons" under the Class Action Fairness Act (CAFA), though such a finding would only affect the calculation of Class Counsel's attorneys' fees.  Mr. Davis's objection called the parties out for including this grossly improper "kill switch" provision, explaining it manifested a disabling conflict of interest for Class Counsel. DE112: 3-4, 15-17. Unable to defend the provision, the settling parties instead abandoned it, assuring this Court that they would not seek to enforce it.  DE151:27.

Davis also capably challenged the evidence proffered to support the reasonableness and valuation of the settlement, filing a separate evidentiary challenge to the expert testimony proffered on the valuation of the settlement, including the injunctive relief.  DE114.  As explained below, the Court's ultimate disposition was substantially aligned with Davis's analysis.   DE151:22-3.

On the application of CAFA, both Mr. Davis and the other objectors provided briefing on "in-kind" or "voucher" relief, arguing that the vouchers in this case were not equivalent to cash but instead were "coupons" as that term is used in CAFA, and the effect of that analysis on any award of attorneys' fees. DE112:1-3, 9-15[1].  Concerning whether the relief offered fit the definition of "coupon" under CAFA, the Court stated, "To be sure, this settlement presents a

---

[1] Pinpoint citations are to ECF-assigned page numbers in the header unless otherwise noted, in the format DE[docket entry]:[page number(s)].

close call, but the Court is persuaded by several factors." DE151:37. Significantly, "the Eleventh Circuit has not yet provided guidance on the meaning of coupon settlements...." DE151:34. Accordingly, in response to concerns raised by Mr. Davis and other objectors, the Court undertook a detailed analysis of non-binding precedent in confirming its prior decision that the vouchers were not "coupons." DE151:34-39. Davis's objection helped to sharpen the issues concerning coupon settlements and the attendant calculation of attorneys' fees, presently a matter of substantial debate among district and circuit courts alike.

Davis also argued that the attorneys' fees requested were much too high, even if the vouchers in the case were not deemed to be coupons under CAFA. DE112:6, 17-20. This Court agreed. The resulting fee is $4 million less than Class Counsel's requested fee, with the reduction to inure to the benefit of the class because Davis pointed out that the settlement actually calls for unawarded fees from the $12 million cash fund to "inure to the benefit of the class" rather than staying in the defendant's pocket. DE112:2, 7-8 quoting DE98-1:27-28§X.A.

Although the settling parties made no concomitant provision in the Settlement for how that distribution would occur if the Court cut the fee, Davis has consistently argued for a distribution of that savings to the Class in the form of cash, not vouchers. DE112:7-8 (Davis Objection); DE146:11-12, 14-16, 85 (April 20, 2021 hearing transcript, colloquies between Mr. Isaacson and the Court). This Court has now ordered the parties to provide post-approval briefing on the

issue. DE151:46. Thanks to Davis's objection, the benefit of the fee reduction can be expected to inure to the benefit of the class when it otherwise would have reverted to Defendant.  DE151:45. *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 367-68 (E.D.N.Y. 2010) (objections "served to clarify the proposed Settlement and [the corporation's] positions regarding implementation of the Settlement").

Davis's counsel's fee application is founded in several recognized bases for awarding fees to objectors in class actions.  Given the result obtained has conferred a substantial benefit on the class, as well as the risk taken by objector and his counsel in litigating this objection on a wholly contingent basis, Mr. Davis's counsel are entitled to be fully compensated for their efforts.  While it remains to be seen precisely how the $4 million will be distributed (and Mr. Davis continues to urge a cash distribution), a sufficient record exists for an award of fees to Mr. Davis's counsel.  Mr. Davis further submits that the Court has discretion to award Objector's fees from, preferably, class counsel's fee award or, alternatively, the common fund.

Mr. Davis's interest has always been, and remains, improvement of the proposed settlement and the improvement of class-action jurisprudence.  He has explicitly disclaimed an incentive award for himself, but believes that his counsel should be compensated for work on the case.  DE113 at 5. Without abandoning any of his prior objections and arguments concerning how fee awards should be

5

calculated in a common-fund case like this, Davis respectfully submits that the Court should apply similar principles to both the award of attorneys' fees to Class Counsel, and to the award of attorneys' fees to an objector whose objection benefits the class. As set forth below, Davis respectfully requests a fee award not to exceed five percent of the $4 million benefit to the class that his objection produced.

## MEMORANDUM OF LAW

### I.   Objectors are entitled to fees for preserving and increasing the fund available to the Class.

Courts have long recognized that the appearance of competent objectors in class actions can be critical to courts' understanding of the settlements brought to them.  Therefore, objectors who provide a material benefit to a class by prosecuting objections are entitled to an award of fees. *See, e.g., Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) (when "objections result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051-52 (9th Cir. 2002)); *accord, e.g., Rodriguez v. West Pub'g Co.*, 563 F.3d 948, 963 (9th Cir. 2009) (finding it "clearly erroneous" to deny fees to objectors when the district court adopted their arguments and thus increased the class's fund by $325,000); *In re Southwest Airlines Voucher Litig.*, 898 F.3d 740 (7th Cir. 2018) (reversing denial of fees to objector who conferred benefit on the class); *In*

*re Cendant Corp. Prides Litig.*, 243 F.3d 722, 743-44 (3d Cir. 2001); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (observing that when objections produce a more favorable class recovery, "the objectors will receive a cash award that can be substantial"); *Gottlieb v. Barry,* 43 F.3d 474, 491 n.16 (10th Cir. 1994) (applying "the established law that objectors who do indeed confer a benefit upon the fund may be compensated for that benefit").

Although this Court did not find the settlement relief involves coupons that would trigger CAFA's fee provisions, it nonetheless agreed with Davis that Class Counsel's requested fee was excessive, and reduced it by $4 million from the fee that Class Counsel requested.  More crucially, by arguing that the clause requiring unawarded amounts to "inure to the benefit of the class," Davis contributed not just to reducing the fee awarded, but to ensuring that the reduction would in fact inure to the class's benefit rather than reverting to Defendant.  As a consequence, the parties are now briefing precisely how that $4 million will be conveyed to the class.  The work of Davis's counsel thus preserved, protected, and augmented the common fund available to the class, justifying a fee on the same equitable basis as common-fund fees awarded to class counsel.

## II.     Objectors are entitled to fees for improving the settlement and assisting the Court in its deliberations to the benefit of the Class.

Trial courts may consider both monetary and "nonmonetary factors in

determining whether an objector's participation improved a settlement." *In re*

*S.S. Body Armor I Inc.,* 961 F.3d 216, 226 (3d Cir. 2020); *see Zucker v. Occidental*

*Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) (objector's attorney made

"substantial" contribution "by providing an adversarial context in which the

district court could evaluate the fairness of attorneys' fees"); *Petrovic v. Amoco Oil*

*Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) (objectors' lawyers are entitled to fees

when they "demonstrate that their services were of some benefit to the fund or

enhanced the adversarial process"); *Great Neck Capital Appreciation Investment*

*Partnership, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400 (E.D. Wis. 2002).[2]

Objectors whose counsel bring these benefits to a proposed settlement are

entitled to their attorneys' fees.  *Great Neck Capital*, 212 F.R.D. at 412-13; *see also*

*Reynolds v. Beneficial National Bank*, 288 F.3d 277,288 (7th Cir. 2002) (Posner, J.)

(desirable participation of objectors in fairness hearings "is encouraged by

permitting lawyers who contribute materially to the proceeding to obtain a

fee."); *Elliott v. Sperry Rand Corp.*, 680 F.2d 1225,1227 (8th Cir. 1982) (fee awarded

---

[2] See also *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) (in settlement; courts lose benefits of adversarial process so that "objectors play an important role by giving courts access to information on the settlement's merits."); *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 743 (3d Cir. 2001) (noting objectors' "valuable and important role" in class action settlements) quoting *White v. Auerbach*, 500 F .2d 822, 828 (2d Cir. 1974).

from attorneys' fees fund to named plaintiffs who, representing group of objectors, "contributed to the adversarial nature of the proceedings" by their participation in the settlement hearing); *Frankenstein v. McCrory Corp.*, 425 F.Supp 762, 767 (S.D.N.Y 1977) ("The presence of an objector represented by competent counsel transformed the settlement hearing into a truly adversarial proceeding entitling objector to an award of attorneys' fees."); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F.Supp. 2d 942, 973-74, (E.D. Texas 2000) (awarding counsel for 14 objectors a $6 million fee for securing settling parties' agreement to 180 day extension in settlement coupon redemption period).

Davis's counsel assisted this Court in its understanding and analysis of the settlement proposed by the parties in this case.  This Court made Davis's argument about the proper disposition of unawarded fees a central issue in the April 20, 2021 final approval hearing, querying each of the parties' lawyers on the issue. DE146, *passim*. Faced with Davis's objection, Class Counsel also confirmed that they would not attempt to invoke the "kill switch" provision if this Court determined that the relief in the case were "coupons" under CAFA. DE151:27 ("As to the "kill switch" provision, the parties have agreed that they will not disavow the settlement if it is determined to be a coupon settlement.").

This Court struck from the Settlement the settling parties' attempt to discourage objections by prohibiting payment to objectors' counsel. DE151:9 (Davis's objection argued "that the settlement agreement provision limiting

Davis's counsel from retaining fees is unenforceable as against public policy."); DE151:27 ("The Court strikes that provision of the settlement agreement as against public policy, to ensure that objectors are not chilled from bringing forth reasonable objections.").  Two other objectors also made this argument.

This Court's analysis of the benefit of the settlement's injunctive provisions is also directly in line with Davis's criticisms.  Davis objected to the expert testimony of Stefan Boedeker, who valued the Settlement's injunctive provisions as being worth $58 million. DE114:1-4. Apart from pointing out the infirmities in Boedeker's analysis, Davis pointed out that Plaintiffs' other expert, Thomas E. Scott, severely undercut Boedeker's analysis and instead relied on the cost of compliance to Defendant Costa, which was assertedly $5 million. DE114:3, quoting and discussing DE109-1:6 n.2 (referencing Morrisey Decl. DE135-4:4). This Court found Boedeker's analysis unpersuasive for the same reasons Davis articulated, and instead adopted the $5 million figure, at the extreme low end of Plaintiffs' proposed valuation. DE151:22-3 (rejecting Boedeker valuations of injunctive relief and adopting the $5 million cost of compliance proposed by Thomas Scott).

Under these circumstances, Davis's counsel should be awarded his attorneys' fees and costs.

### III.     Application of the *Johnson* Factors Supports the Requested Fee.

Davis's counsel's fee request is predicated on the same common-fund principles as Class Counsel's.  Consequently, under prevailing law it should be analyzed under the same legal factors set forth in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (slightly modifying the factors earlier set forth in *Johnson v. Georgia Highway Express, Inc.*, 448 F .2d 714 (5th Cir. 1974)), to the extent that it concludes *Camden I* remains a binding precedent.

The *Johnson* factors include: "(1) [t]he time and labor required;" "(2) [t]he novelty and difficulty of the questions;" "(3) [t]he skill requisite to perform the legal service properly;" "(4) [t]he preclusion of other employment by the attorney due to acceptance of the case;" "(5) [t]he customary fee;" "(6) [w]hether the fee is fixed or contingent;" "(7) [t]ime limitations imposed by the client or the circumstances;" "(8) [t]he amount involved and the results obtained;" "(9) [t]he experience, reputation, and ability of the attorneys;" "(10) [t]he 'undesirability' of the case;" "(11) [t]he nature and length of the professional relationship with the client;" and "(12) [a]wards in similar cases." *Johnson*, 488 F.2d at 717–19.

Davis has previously explained the problems inherent in overcompensating by "double counting" in multi-factor fee analyses, particularly for contingent risk.  DE114:8-10 (Objection to Evidence).  That is far less likely when compensating objectors.  The risks inhering in prosecuting an objection to a class action settlement on contingency are very high, and in some ways far

11

outstrip those faced by attorneys who prosecute typical contingent cases. On whole, relatively few objections result in a substantive change to a settlement or a reduction in attorneys' fees are therefore. Indeed, the risk function faced by objectors' counsel is essentially the inverse of that faced by other contingent-fee counsel, who have a greater than 90% chance of settling their case before a trial on the merits.[3]

The most salient factor is "the amount involved and the results obtained" (*Johnson* factor number eight).  As Davis explained above, his objection elucidated the key point that requires any reduction in the fee fund to go to the Class, and is thus directly responsible for making an additional $4 million available to the Class in this case. In addition, his work contributed to actual changes to the terms of the settlement – one obtained by the joint concession of the Settling Parties themselves and another by which this Court struck a provision as void against public policy.  All of these results were to the benefit of the Class in this case.  Davis also believes his analysis and critique of the settlement terms, and the evidence and expert testimony submitted to support it, was of use to this Court in its analysis of the fairness of the settlement.

Those results are all the more remarkable because objections in class action settlements face tremendous hurdles and are rarely successful.  A settlement that

---

[3] Harry T. Edwards, *Alternative Dispute Resolution: Panacea or Anathema*, 99 Harv. L. Rev. 668 (1986).

has been given preliminary approval and for which notice has issued has
enormous inertia. Class-action settlements and fee requests are all-too-often—
indeed, in the vast majority of cases—routinely approved wholly unchanged,
even when there are objections. Christopher R. Leslie, *The Significance of Silence:
Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 105 (2007)
("Courts have approved proposed settlements in over 90% of the cases in which
class members filed objections."). At the same time, filing and prosecuting
competent objections is costly, relative to the potential benefit to any individual
class member. *Id*. at 97-101.

The next natural question is the time and labor required to bring about the
result (the first *Johnson* factor), which is closely connected to the experience,
reputation, and ability of the attorneys" (*Johnson* factor number nine).  Here, the
requested fee is reasonable by reference to the time necessary to bring about the
result.  As set forth in the Declaration of Eric Alan Isaacson filed herewith, the
time necessary to prosecute the objection to date amounts to 98.6 total hours.
Isaacson Decl. ¶16.  In addition, given that the case is still ongoing and Mr.
Isaacson is presently undertaking full-time graduate study at the Harvard
Divinity School, Mr. Davis anticipates bringing on additional counsel to assist in
completing the case.

Mr. Davis and his counsel have excellent records of success both in
representing named plaintiffs in class-action litigation, and also in objecting

before district courts and on appeal. Davis has handled many such cases. DE:113 (Davis Declaration). And Davis's lawyer, Eric Alan Isaacson, has a long career of litigating class actions on behalf of plaintiff classes.[4] He has an excellent record, moreover, when objecting to abusive class action settlements and excessive attorney's fee awards.[5] Their success is a consequence of long familiarity with class action practice and class settlements.  In prior class-action litigation Mr. Isaacson's time has been regularly billed at a rate of $885 an hour.[6] Applying that rate to his time in this case produces a lodestar of $87,261.  Applying a more conservative hourly rate of $700 to his time in this case produces a lodestar of $69,020.  Thus, an award of five percent of the $4 million savings to the Class

---

[4] *See, e.g., Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 575 U.S. 175 (2015); *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27 (2011); *Dura Pharmaceuticals, Inc., v. Broudo,* 544 U.S. 336 (2005); *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.,* 762 F.3d 1248 (11th Cir. 2014); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,* 632 F.3d 762 (1st Cir. 2011); *In re Constar International Inc. Securities Litig.,* 585 F.3d 774 (3d Cir. 2009).

[5] *See, e.g., Johnson v. NPAS Sols., LLC,* 975 F.3d 1244, 1248-49 (11th Cir. 2020) (reversing on multiple grounds approval of settlement and illegal incentive awards); *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917 (11th Cir. 2020) (en banc) (vacating approval of class-action settlement entered by representative plaintiff who suffered no injury and lacked Article III standing to represent the class); *Chieftain Royalty Co. v Enervest Energy Institutional Fund XIII-A, L.P.,* 888 F.3d 455 (10th Cir. 2017) (vacating $17.3 million attorney's fee award); *Lee v. Buth-Na-Bodhaige, Inc.,* 2019 IL App (5th) 180033, 143 N.E.3d 645 (vacating final approval of settlement on multiple grounds).

[6] *See* Declaration of Michael J. Dowd Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, *Lawrence E. Jaffe Pension Plan v. Household Internat'l, Inc.,* No. 02-5893, ECF Docket Entry 2225-2, Ex. A, at ECF PageID#86572 (N.D. Ill. Aug. 29, 2016) (billing Isaacson's time at $885 an hour); *see also* Order Awarding Attorneys' Fees and Expenses, *Lawrence E. Jaffe Pension Plan v. Household Internat'l, Inc.,* No. 02-5893, ECF Docket Entry 2265, at 1, ¶4, ECF PageID#87335 (N.D. Ill. Nov. 10, 2016) (approving fee award).

here would yield a multiplier of slightly less than 2.9 on hourly billings at the conservative rate of $700.  That parity with the Class Counsel's 2.8 multiplier confirms the reasonableness of the request under this Court's approach to awarding fees in this case.

Davis's counsel's skill and experience are no accident, and attest to the high degree of "skill requisite to perform the legal service properly" (*Johnson* factor number three). Objecting to a class-action settlement requires knowledge and skills beyond those possessed by most lawyers not experienced in class action litigation. Leslie, *supra* at 97-98; *see also* Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal F. 403, 462 (2003) (arguing for policies that would encourage qualified lawyers to advise courts and act as external guardians of settlement fairness). Thus the "skill required" factor favors a fee.

Unfortunately, in the case of experienced objectors' counsel, the "undesirability of the case" (*Johnson* factor number ten) is a major factor.  Among lawyers who prosecute class actions and who therefore possess the type of experience required to object effectively, the prosecution of settlement objections is unpopular. Leslie, *supra*, 59 Fla. L. Rev. at 98-99; Brunet, *supra*, 2003 U. Chi. Legal F. at 411 ("[O]bjectors may be the least popular litigation participants in the history of civil procedure.").  Any lawyer who makes a practice of challenging

class settlements can expect to endure withering personal and professional attacks unknown in any other type of litigation.

The Court may look to this case for a ready example. Davis's objection raised reasonable, meritorious questions about the terms and merits of the settlement. Yet Class Counsel launched in response a wholly improper and false ad hominem attack on Mr. Davis and Mr. Isaacson, including citing a superseded and vacated magistrates' report and recommendation in *Muransky v. Godiva Chocolatier, Inc.* where the Magistrate characterized Mr. Davis and his counsel as "professional objectors." DE134:5. The district court there expressly and pointedly ***refused to adopt*** the magistrate judge's conclusions about professional objector status, entering instead its own order describing the objections to the settlement as "meaningful," while expressly "ignoring the comments" of the magistrate judge disparaging counsel and disavowing any reliance on them. *Muransky v. Godiva Chocolatier, Inc.*, No. 0:15-CV-60716-WPD, 2016 WL 11601080, at *4 (S.D. Fla. Sept. 28, 2016).

Class Counsel made this attack despite Mr. Davis filing with his objection a declaration describing the *Muransky* case and disclosing that Davis had won the case before the Eleventh Circuit, resulting in a vacation of the lower court proceedings entirely. DE113:¶9, citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) (en banc). Notably with regard to *Muransky*, Mr. Davis and his client *rejected* repeated offers of payment to abandon the cause and chose,

16

instead, to seek a determination on the merits – which they were favorably granted by the full Eleventh Circuit.  DE113:3-4.  Class Counsel were thus well-aware the citation was neither accurate, current, nor citable, but they cited it anyways.

That tactic meant that Mr. Isaacson had to open his comments at the April 20, 2021 final approval hearing not discussing the merits of the settlement, but instead objecting to the false ad hominem attack and attempting to debunk it. DE146:7. However, this Court interjected, explaining that "I'm not really too interested in spending much time on that – or any time on it.  I'm interested in hearing what your substantive objections are on behalf of Mr. Davis to the settlement." *Id*. at 8.  Accordingly, Mr. Isaacson proceeded to the merits.

Nevertheless, despite Mr. Davis's declaration, and despite Mr. Isaacson's objection at the April 20, 2021 fairness hearing, and despite this Court's response to it, this Court has since ***adopted and repeated the same false allegation*** in the context of assessing Mr. Davis's "motivations" for objecting. DE151:25-26.[7]

---

[7] Though this Court did not reference them, the other cases cited by Plaintiffs concerning Mr. Davis's "game" are equally unavailing. DE134 at 5-6. In fact, a closer review of cases cited by Plaintiffs (and, at least partially, adopted by this Court) reveal that Mr. Davis files meritorious objections, does not seek improper payments, and promptly, and appropriately, withdraws objections if warranted by intervening facts or law. In *Davenport*, Mr. Davis was advised by class counsel in the notice to class members that he was part of the class.  Mr. Davis participated accordingly.  Later, class counsel advised the Court that, despite the contents of the Notice, Mr. Davis was not, in fact, a class member.  The *Davenport* court approved the settlement despite the apparent ascertainability issue created by the parties and exposed by Mr. Davis.  Mr. Davis did not appeal.  The *Chambers* objection was withdrawn because, despite the client's assertion that she was a class member, she was unable to locate a receipt for an eleven-year-old dishwasher.  Based on "prequalification" language in the Settlement Agreement, the

Despite Mr. Davis and Mr. Isaacson's best efforts, the false charge simply will not die because of its constant repetition.

Lawyers routinely subject to these attacks are necessarily impeded in effectively representing their clients because they must commit substantial time and effort (not to mention limited briefing pages and argument time) to undoing potential bias against their clients, rather than advancing their clients' cases. It is thus highly undesirable to have to expend resources in every single case playing whack-a-mole debunking the same false and irrelevant ad hominem attacks, only to see their professional reputation dragged through the mud nonetheless. Davis therefore asserts that the "undesirability of the case" factor militates in favor of a generous fee.

As for *Johnson* factors five (the "customary fee") and twelve ("awards in similar cases,") the five percent sought here is well below the typical "benchmark" for percentage awards in this Circuit. This Court has already found: "In the Eleventh Circuit, the 'benchmark range' or typical award is between twenty and thirty percent." DE151:31; *cf., e.g., Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (following "well-settled law from this court that 25% is generally recognized as a reasonable fee award in common

---

objection was withdrawn. Neither client nor counsel accepted payment. Regarding *Melito*, the same argument concerning incentive awards characterized as "meritless" by Class Counsel was later adopted as the law by the Eleventh Circuit in *Johnson v. NPAS Sols.*, 975 F.3d 1244 (11th Cir. 2020).

fund cases" and approving "the 25% fee that this circuit has said is the benchmark").  The request is also well within the range of awards typically granted to objectors' counsel in other similar cases.  *In re Easysaver Rewards Litig.*, No. 09-CV-02094-BAS-WVG, 2021 WL 230013, at *3-4 (S.D. Cal. Jan. 22, 2021) (awarding 25% of a $3.23 million increase to the common fund for cy pres beneficiaries); *Arnett v. Bank of Am., N.A.*, No. 3:11-cv-1372-SI, 2014 WL 5419125, at *3 (D. Or. Oct. 22, 2014) (awarding objector's counsel 25% of increase to settlement fund); *Eubank v. Pella Corp.*, No. 06-CV-4481, 2019 WL 1227832, at *8 (N.D. Ill. Mar. 15, 2019) ("It is well recognized that objectors who add value to litigation through their successful objections are entitled to recover a substantial share of overall attorney's fees. Seventh Circuit caselaw has previously placed such recoveries around 20% of the total attorney's fees."); *Kaufman v. American Express Travel Related Servs., Co.*, 2016 WL 806546, at *13-*14 (N.D. Ill. Mar. 2, 2016) (awarding objector fees of 34% of the benefit); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objector fee of 25% of the benefit); *see also Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 (D.N.J. 2012) ("10% of the benefit conferred [is] well within the range of acceptable . . . recovery[.]"); *see also In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 743 (7th Cir. 2011) (determining 3.8% award to be "too small" and determining that objector's counsel was entitled to $4.125 million, equal to 5.9% of the benefit conferred).

As to the novelty and difficulty of the questions (*Johnson* factor number two), this case presents complicated questions about the application of CAFA and common fund settlements.  Davis and his counsel have not previously encountered, and are not aware of, the sort of settlement terms challenged in this case, by which the settling parties agreed to withhold compensation in advance from objectors' counsel, or to permit Class Counsel to scuttle the settlement if the Court jeopardized their preferred fee theory by finding the "vouchers" to be "coupons."

In objections, the "[t]ime limitations imposed by the . . . circumstances" (*Johnson* factor number seven) are almost always a consideration.  Successfully objecting to a proposed settlement requires the analysis of numerous case documents and the production of argument within a very short window of time between the publication of the notice and the filing deadlines, typically with no assistance from the proponents of the settlement. Brunet, *supra*, at 448 (objectors' counsel "have little time to collect their own information, formulate a coherent position, and formally object to the court.").

Factor six is simple to answer: the fee requested is entirely contingent. Isaacson Decl., ¶17 (objector Davis is not liable for fixed or other fees to counsel).

Davis's counsel had no means of payment absent achieving a result entitling them to compensation from named parties or from the common fund.[8]

For all of the above reasons, an objection that assists a court, raises important issues, and has a real effect upon the final approval process should be well-compensated, given the overall difficulty and risk encountered in achieving that status.

### IV.    The Court may award the fee from the fund preserved for the Class, or alternatively from Class Counsel's fee award.

Davis's counsel's efforts support a fee award, and that award can be taken from the $4 million unawarded remainder of the money Costa pledged as class counsel fees, on the theory they were part of a "constructive common fund" in the settlement, and that Davis secured the proper application of that fund under the law. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011) (discussing constructive common fund theory, by which fees pledged to be paid separately by a settling defendant are considered to be a part of the class relief).

Fee awards for this type of service have long been recognized, on a variety of similar equitable principles. *Trustees v. Greenough*, 105 U.S. 527, 527 & 532

---

[8]Factors four (the preclusion of other employment by the attorney due to acceptance of the case), and eleven (the nature and the length of the professional relationship with the client) are of limited value in assessing the fee in this particular case, and do not weigh heavily one way or the other in the assessment of the requested fee.

(1881) ("One jointly interested with others in a common fund, who, in good faith, maintains the necessary litigation to save it from waste and secure its proper application, is entitled in equity to the reimbursement of his costs as between solicitor and client, "either out of the fund itself, or by proportionate contributions from those who receive the benefit of the litigation."); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168-69 (1939) (a district court had power in equity to make an award of fees to attorneys who established the claims of others in certain bonds); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389-90 (1970) (petitioner establishing legal violations by corporation and its officials should be reimbursed by the corporation for the cost of doing so).

These same equitable principles apply to intervenors and objectors in class actions when they preserve, protect, or increase a class fund. *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) (error to refuse award to objectors' counsel when they successfully appealed fee award, resulting in a fee reduction: "[W]hen objections "result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel."); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 288 (7th Cir. 2002) ("[W]hen professionals render valuable albeit not bargained-for services in circumstances in which high transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their

services.").[9]  As the fund, and thus the class, is the recipient of the services, it is typical to take the fees from that fund.

Alternatively, Objector's relatively modest requested fee may be taken from the still very substantial amount awarded to Class Counsel.  *See In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-MD-02143-RS, 2021 WL 4124159, at *3 (N.D. Cal. Sept. 9, 2021), citing *Hendricks v. Starkist Co*, 2016 WL 5462423, at *16 (N.D. Cal. Sept. 29, 2016)(giving objector a portion of plaintiff's fee award "is an appropriate and justified result"), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510, 513 n.1 (9th Cir. 2018)("[W]e affirm the district court's award of attorney fees to [objector's] counsel and its corresponding reduction in fees to Plaintiff's counsel."); *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7261313, at *2 (N.D. Cal. Dec. 10, 2020) ("The Court is further persuaded that the award [to objector] should be paid out of class counsel's fee award.").  That approach may be best employed when Class Counsel bear a high degree of responsibility for the infirmities in the Settlement.  *Optical Disk Drive*, 2021 WL 4124159, at *3 (holding that requiring the class to pay for the correction of class counsel's fee overpayment was "less equitable" than taking objector's "relatively modest fees from the substantial amount previously awarded" to class counsel.)

---

[9] *Virginia Hosp. Assn. v. Kenley*, 74 F.R.D. 417, 420 (E.D. Va. 1977) (where intervenors' counsel obtained injunctive relief conferring financial value on plaintiff hospitals, equitable principles supported requiring the benefitted plaintiffs to compensate them).

Here, objectionable provisions of the settlement were intended to insulate the attorneys' fees request from scrutiny expressly permitted by Rule 23. The challenged provisions did not benefit the class in any way. On the contrary, the "kill switch" provision would have permitted Class Counsel to eliminate the entire settlement altogether – along with any benefit to the class – if their favored theory of fee recovery did not apply. The parties similarly attempted to eliminate this Court's discretion to award fees to successful objectors (to eliminate financial incentives for competent counsel to challenge the settlement and fee request). The objectionable provisions identified by Mr. Davis were plainly and solely intended to insulate Class Counsel's fee demand from competent scrutiny. They were not the result of inadvertence or mistake. Indeed, it remains Davis's position that these provisions manifested a conflict of interest and overreach amounting to inadequate representation, such that a forfeiture of Class Counsel's fee is justified. At a minimum, the original conflict created by Class Counsel justifies taxing Class Counsel's fee award rather than awarding fees from the Class's now enhanced recovery.

**WHEREFORE, o**bjecting class member John W. Davis respectfully requests that this Court grant his motion for attorneys' fees in the amount of $200,000.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for John W. Davis certifies that he conferred with other parties' and objectors, informing them by email that he would be filing this motion for attorneys' fees.  Plaintiffs' counsel indicated that they intend to oppose the relief sought herein. Miorelli's counsel indicated that he would oppose the request only the extent that it would cause (a) the total request of the three objector attorneys fee requests to collectively exceed 25% of the $4 million [it does not], or (b) result in a lodestar multiplier in excess of the 2.8x multiplier awarded to class counsel.  Counsel for objector Valls was unable to state a position without first seeing the motion.

Date:  November 3, 2021          Respectfully submitted,


                              /s/ Eric Alan Isaacson
                              Eric Alan Isaacson (pro hac vice)
                              LAW OFFICE OF ERIC ALAN ISAACSON
                              6580 Avenida Mirola
                              La Jolla, CA  92037-6231
                              ericalanisaacson@icloud.com
                              (858) 263-9581

                              *Counsel for Objector John W. Davis*

25

**CERTIFICATE OF SERVICE**

CASE NO. 3:18-cv-1011-TJC-JRK

I hereby certify that on November 3, 2021, I am filing the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document and any attachments are being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

/s/ Eric Alan Isaacson
Eric Alan Isaacson