UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

  Plaintiffs,
v.              Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

  Defendant.
_____/

## JOINT BRIEF ON $4 MILLION DISTRIBUTION TO THE CLASS

As requested in the Court's January 5, 2022 Order ("Order," Doc. 176), Plaintiffs and Defendant jointly provide the Court additional briefing addressing the inquiries raised by the Court in connection with the two alternatives for the distribution of an additional $4 million to the class.

## Introduction

For the reasons discussed below, it is challenging to ascertain the precise amount of additional vouchers Costa would need to issue such that Costa would ultimately pay out $4 million to the class. Acknowledging this challenge, the Parties therefore encourage the Court to adopt Option One, whereby the additional $4 million is distributed to class members in cash electronically or by mail. While Option One requires some additional fees to be paid to the settlement administrator, courts within the Eleventh Circuit are clear that these claim administration fees are a benefit to the class. Moreover, by making a slight

modification to the voucher payout amounts (which have still been increased from the amounts at the preliminary approval stage), the Parties have ensured that the entirety of the $4 million is distributed, in cash, to class members, with the full claims administration fees coming from the $40 million Settlement Fund, as the Settlement Agreement contemplates.

## **Discussion**

The Parties are committed to delivering the most value to the Class members. The Court's award of attorneys' fees to Class Counsel created an opportunity to distribute an additional $4 million to class members, consistent with the Settlement Agreement providing that "[a]ny reduction by the Court in the amount of Attorneys' Fees, Costs, and Expenses to be awarded to Plaintiffs' Class Counsel shall inure to the benefit of the Class." *See* Settlement Agreement § X. A. (Doc. 98-1).

The Parties offered two proposals for the Court's consideration: (1) distribute the $4 million in cash (either electronically or by mail delivery of a check) to class members, although the claims administrator would require an additional fee of $391,000 (Option One); or (2) increase the voucher amounts by $ 4 million with no additional administrative costs (Option Two).

The Court has requested additional briefing on three questions. The first two questions are as follows:

> **(1) Based on the settlement administrator's projections, what amount would Costa need to issue in additional voucher**

>    **amounts such that it would actually pay out approximately $4 million?**
>
> **(2)   If that amount cannot be ascertained, why is that the case?**

It is challenging to predict the actual redemption rate of vouchers, particularly in this case, due to the strong "tribe" affiliation of Costa's consumers, the flexibility of the vouchers, and the combination of claims-made and claims-paid elements to the settlement. Here, many consumers will be entitled to multiple vouchers thereby increasing their purchasing power and the likelihood of redemption. Moreover, the flexibility of the voucher program (transferrable, stackable, and available for use on any of Costa's products and merchandise for two years) will likely lead to higher redemption rates. Finally, this settlement is a combination of a claims-made and claims-paid settlement. The Florida Purchase Class is a claims-made class. In other words, because class members could not be readily identified through Costa's own records, class members were required to file a claim to become a member of the Florida Purchase Class. Given that these members have already submitted a claim, they are highly likely to redeem their vouchers and/or cash payments.

Although the parties expect redemption rates to be high, it is impossible for the Parties or the Settlement Administrator to predict a specific redemption rate with reasonable certainty or predictability. At any rate, the issue becomes irrelevant in light of the Parties' agreement to distribute cash, as set forth below.

### (3) If the Court adopts Option One, can the administrative costs be reduced? Who should bear these costs?

In light of the challenge in ascertaining a specific redemption rate, the Parties encourage the Court to adopt Option One and pay the additional $4 million to class members in cash. The administrative costs cannot be reduced, but can be allocated such that the entirety of the $4 million is paid in cash and the administrative costs are covered by the $40 million Settlement Fund, as set forth below.

While Option One requires some additional fees to be paid to the settlement administrator, courts within the Eleventh Circuit have determined that these administration fees are a benefit to the class. *See Fosbrink v. Area Wide Protective, Inc.*, Case No. 8:17-cv-01154-JSM-CPT, 2019 WL 11097489, at *2 (M.D. Fla. Jan. 22, 2019) ("The Court finds that the services provided by the Settlement Administrator were for the benefit of the Settlement Class Members."); *Tweedie v. Waste Pro of Fla., Inc.*, No. 8:19-cv-1827-AEP, 2021 WL 5843111, at *12 (M.D. Fla. Dec. 9, 2021) ("The services provided by the Settlement Administrator were for the benefit of the Settlement Class."); *Harake v. Trace Staffing Sols., LLC*, No. 8:19-cv-00243-T-30CPT (M.D. Fla. Aug. 10, 2020) (same); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT, 2020 WL 256132, at *37 (N.D. Ga. Mar. 17, 2020) (acknowledging "[i]t has long been the practice in this Court" to include notice and administration costs as part of the class benefit because "notice and administration costs inure to the benefit of the class"), *aff'd in part, rev'd in*

*part and remanded (on other grounds)*, 999 F.3d 1247 (11th Cir. 2021); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993).[1]

Slightly modifying the voucher amounts – *i.e.*, negligibly increasing the amount of vouchers to the Florida Purchase Class and negligibly decreasing the amount of vouchers to the Florida Repair Class and Nationwide Repair Class – ensures that the entire $4 million will be paid out to the class in cash, and the entire amount of the administrative costs will be paid for separately. Overall, the class members will still receive substantially more than the Parties anticipated at the preliminary approval phase. The Parties therefore jointly propose that the final voucher and cash amounts be set as follows:

| Class | Estimated Voucher Amount at Preliminary Approval | Proposed Voucher Amount (Dkt. 157) | New Proposed Voucher Amount | Proposed Cash Payments |
|---|---|---|---|---|
| Florida Repair Class | $19.99 | $22.00 | $21.50 | $4.41 |
| Nationwide Repair Class | $19.99 | $22.00 | $21.50 | $4.41 |
| Florida Purchase Class | $10.00 | $21.00 | $21.50 | $4.28 |
| Warranty Class | $8.99 | $8.99 | $8.99 | None |

---

[1] This is consistent with the law nationwide. *See also In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) ("[T]he district court did not abuse its discretion by including approximately $750,000 in fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount."); *Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 713 (W.D. Pa. 2015) (acknowledging that administration costs constitute sums that class members "would otherwise be responsible for and therefore are part of the total benefit to the class").

This structure substantially reduces the *cy pres* payment to less than $1,000 (to the benefit of the class) and is consistent with the Settlement Agreement, which provides that costs of class administration and notice are to be paid out of the "Settlement Fund." (Dkt. 98-1 ¶ IV(A)). The amounts set forth above will result in allocation and exhaustion of the settlement fund as follows:

| | |
|---|---|
| **Total Fund** | **$40,000,000** |
| Voucher Payment | $27,070,286.43 |
| Cash Payment | $3,999,094.04 |
| Plaintiff Attorneys Fees | $8,000,000.00 |
| Administrative Fees | $900,000.00 |
| Incentive Payments | $30,000.00 |
| Cy Pres | $619.53 |

## Conclusion

The Parties therefore request that the Court adopt Option One, whereby the additional $4 million is distributed to class members in cash electronically or by mail.

<table>
<tr><td>

**HOLLAND & KNIGHT LLP**

/s/ Peter P. Hargitai
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900

</td><td>

**MCGUIREWOODS LLP**

*/s/ Sara F. Holladay*
Sara F. Holladay
Florida Bar No. 0026225
sholladay@mcguirewoods.com
Emily Y. Rottmann
Florida Bar No. 0093154
erottmann@mcguirewoods.com
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200

</td></tr>
</table>

6

Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*

(904) 798-3207 (fax)
Secondary Service Emails:
flservice@mcguirewoods.com
clambert@mcguirewoods.com
csweeney@mcguirewoods.com

– and –

Justin R. Opitz (*admitted pro hac vice*)
jopitz@mcguirewoods.com
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(214) 932-6471
(214) 273-7487 (fax)

*Attorneys for Defendant Costa Del Mar, Inc.*