# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

TROY SMITH, individually and on
behalf of all others similarly
situated, BRENDAN C. HANEY,
individually and on behalf of all
others similarly situated, and
GERALD E. REED, IV, individually
and on behalf of all others similarly
situated,

     Plaintiffs,

v.

Case No. 3:18-cv-1011-TJC-LLL

COSTA DEL MAR, INC., a Florida
corporation,

     Defendant.

_____

# **O R D E R**

On September 21, 2021, the Court issued an Order granting in part, deferring in part, and denying in part Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses and Conditional Request for Incentive Awards to Class Representatives (Doc. 109) and Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. 135). (Doc. 151) ("Approval Order"). This case now comes before the Court a final time for resolution of two remaining matters: (1) the issue of how to distribute the $4 million difference between Class Counsel's attorneys' fees request and the Court's attorneys' fees award; and (2)

Objectors Austin Valls, Mitchell George Miorelli, and John W. Davis's Motions for Attorneys' Fees (Docs. 152, 153, 158, 159), to which Plaintiffs responded in opposition (Doc. 167).

## I.   DISCUSSION

### A.   Remaining Settlement Approval Issue

In the Approval Order, the Court asked for additional briefing regarding the handling of the $4 million difference between the attorneys' fees request of $12 million and the Court's decision to award $8 million:

> Under the settlement agreement, if that $4 million goes to attorneys' fees, Costa actually pays the $4 million in full to Class Counsel. Having now reduced attorneys' fees by $4 million, those funds do not revert to Costa; instead, under the settlement agreement, they inure to the benefit of the class assumedly through increased voucher amounts. But that means Costa will only pay a portion of the $4 million because not all class members will redeem their vouchers. The Court intends to reduce attorneys' fees for Class Counsel but increase the value of the settlement to the class by $4 million. The Court defers ruling on how the $4 million will be handled and asks that Class Counsel confer with Costa's counsel and file additional briefing on this discrete issue.

(Doc. 151 at 45). Accordingly, Class Counsel filed the Joint Brief on Increasing the Value of the Settlement to the Class by $4 Million (Doc. 157), to which Objectors filed responses in opposition (Docs. 160, 162, 163).[1] In the brief, the

---

[1] Objector Valls filed his Response to the Parties' Joint Brief on Increasing the Value of the Settlement to the Class by $4 Million (Doc. 160). He argued that the $4 million should be distributed in cash but was concerned that the Warranty Class members were excluded from the cash distribution. See id. Objectors Davis and Miorelli also expressed their preferences that the $4

parties presented two options. As Option One, the settlement administrator could distribute the $4 million in cash electronically or by mail. (Doc. 157 at 2). This option, the parties said, would require an additional $391,000 payment to Epiq, the claims administrator. Id. Members of the Florida Purchase Class, Florida Repair Class, and Nationwide Purchase Class would receive an additional $3.96 in cash per claim. Id. at 5. As Option Two, the settlement administrator could distribute the $4 million through increased vouchers. Id. at 6. This option would entail no additional administrative costs and would increase voucher amounts by $4.00 per claim to the Florida Purchase Class and by $4.50 per claim to the Florida and Nationwide Repair Classes. Id. at 7.

Upon review, the Court noted that Option Two did not address the Court's original concern that any action taken with the $4 million must bring $4 million in value to the class, as opposed to Costa issuing $4 million more in vouchers, only a portion of which would ultimately be used by class members. (Doc. 176 at 3). Thus, the Court directed the parties to file an additional brief to answer three remaining inquiries:

(1) Based on the settlement administrator's projections, what amount would Costa need to issue in additional voucher amounts

---

million be distributed as cash, not vouchers. (See Docs. 162, 163). The Objectors therefore simply asked the Court to adopt an option which was already before the Court. Also, the Court is satisfied with the parties' rationale that the Warranty Class is already close to being made whole for the maximum damages it could have suffered and will therefore be excluded from cash payments (see Doc. 157 at 4); thus, the objection on that score is not well-taken.

such that it would actually pay out approximately $4 million (even if this figure is a best estimate based on the projected number of class members who will redeem their vouchers); (2) If that amount cannot be ascertained, why is that the case; and (3) If the Court adopts Option One, can the administrative costs be reduced? Who should bear those costs?

Id.

In response, the parties filed the Joint Brief on $4 Million Distribution to the Class, informing the Court that "it is challenging to ascertain the precise amount of additional vouchers Costa would need to issue such that Costa would ultimately pay out $4 million to the class." (Doc. 177 at 1). The parties therefore encourage the Court to adopt Option One, meaning distribution of the $4 million through cash electronically or via mail, along with small modifications to voucher payout amounts such that the entire $4 million will be distributed in cash to class members, with administration fees coming from the $40 million settlement fund. Id. at 1–2. The Court appreciates the parties' efforts to modify their proposal and agrees that Option One, with the suggested adjustments, is the best option for distribution of the $4 million with maximal benefit to the class.

Courts within the Eleventh Circuit have said that administration fees are a benefit to class members. See, e.g., Fosbrink v. Area Wide Protective, Inc., Case No. 8:17-cv-1154-JSM-CPT, 2019 WL 11097489, at *2 (M.D. Fla. Jan. 22, 2019) ("The Court finds that the services provided by the Settlement

4

Administrator were for the benefit of the Settlement Class Members . . .”). Still, per the Court's original Approval Order, it is important that the $4 million reduction in attorneys' fees inure to the greatest possible extent to the benefit of the class. (Doc. 151 at 45). That aim may be realized by “negligibly increasing the amount of vouchers to the Florida Purchase Class and negligibly decreasing the amount of vouchers to the Florida Repair Class and the Nationwide Repair Class,” such that $4 million is paid out in cash to the class, and the additional administrative costs are paid for separately. (Doc. 177 at 5). The final voucher and cash amounts will be as follows:

| Class | Estimated Voucher Amount at Preliminary Approval | Proposed Voucher Amount (Doc. 157) | New Proposed Voucher Amount | Proposed Cash Payments |
|---|---|---|---|---|
| Florida Repair Class | $19.99 | $22.00 | $21.50 | $4.41 |
| Nationwide Repair Class | $19.99 | $22.00 | $21.50 | $4.41 |
| Florida Purchase Class | $10.00 | $21.00 | $21.50 | $4.28 |
| Warranty Class | $8.99 | $8.99 | $8.99 | None |

Id. Furthermore, “[t]he amounts set forth above will result in allocation and exhaustion of the settlement fund as follows:”

| Total Fund | $40,000,000 |
|---|---|
| Voucher Payment | $27,070,286.43 |
| Cash Payment | $3,999,094.04 |
| Class Counsel's Attorneys' Fees and Costs | $8,000,000.00[2] |
| Administrative Fees | $900,000.00 |
| Payments to the registry of the Court for possible incentive payments | $30,000.00 |
| Cy Pres | $619.53 |

Id. at 6.

Thus, the parties' request that the Court adopt Option One, whereby the additional $4 million shall be distributed to class members in cash electronically or by mail, is **GRANTED**. The parties and the claims administrator are authorized to distribute the $4 million according to Option One as described in the Joint Brief on Increasing the Value of the Settlement to the Class by $4 Million (Doc. 157 at 2–6) and as modified by the Joint Brief on $4 Million Distribution to the Class (Doc. 177). Distribution of the $4 million was the sole remaining issue from the original Approval Order (Doc. 151). The Court

---

[2] This amount is subject to the reduction explained infra.

6

therefore authorizes the Settlement Agreement (Doc. 98-1), subject to adjustments from the Approval Order (Doc. 151) and from this Order, to be executed.

### B.   Objectors' Attorneys' Fees Motions

Three class members actively objected to the settlement in this case and now request attorneys' fees for their efforts: Austin Valls, Mitchell George Miorelli, and John W. Davis.[3] (See Docs. 112, 113, 114, 115, 117, 118, 125, 152, 153, 158, 159).

---

[3] On November 15, 2021, Shiyang Huang, an individual who is not a class member, filed his Motion for Leave to File A Brief Amicus Curiae In Support of Distributing Propose [sic] Class Representatives' $30,000 "Incentive Awards" Along With This Court"s [sic] Order Regarding Distribution of $4 Million from Reductions of Attorney's Fee. (Doc. 165). The motion for leave has not been ruled upon but includes Huang's substantive argument. He contends that because incentive awards for named plaintiffs have been barred by Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020), the $30,000 for incentive awards (an issue the Court deferred and retained jurisdiction over in the event that Johnson is overturned) should be included with the pending $4 million cash distribution. Id. Class Counsel filed Plaintiffs' Response in Opposition to Shiyang Huang's Motion for Leave to File a Brief Amicus Curiae. (Doc. 168). Huang later filed a Notice of Plaintiffs' Self Disclosure of $0.86 Cash-Per-$1-Voucher Ratio, In Light of Plaintiffs' Brief Regarding "$4 Million Distribution to the Class," but he later withdrew the Notice. (Docs. 178, 179).

The Court has already comprehensively considered and decided the issues Huang raises prior to Huang filing his motion. (See Doc. 151 at 45–46). Additionally, Huang is not a member of the class, has not stated a cognizable interest in these proceedings, and filed what is essentially an objection well past the objection deadline of March 1, 2021. For these reasons, Huang's Motion (Doc. 165) is **DENIED**.

"As with awards of attorneys' fees in general, whether to grant, and the method for calculating, an award of fees to objectors' counsel rests within the court's discretion." Dewey v. Volkswagen of Am., 909 F. Supp. 2d 373, 395 (D.N.J. 2012), aff'd sub nom. Dewey v. Volkswagen Aktiengesellschaft, 558 F. App'x 191 (3d Cir. 2014). "An objector to a class action settlement is not generally entitled to an award of counsel fees." In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 358 (N.D. Ga. 1993); see also Dewey, 909 F. Supp. 2d at 395 (noting that objectors' role is different than that of Class Counsel and that objectors "are not entitled to an award of attorneys' fees unless the settlement was improved as a result of their efforts") (internal quotation marks omitted). However, "[i]f objectors' appearance sharpens the issues and debate on the fairness of the settlement, their performance of the role of devil's advocate warrants a fee award." In re Domestic Air Transp., 148 F.R.D. at 358.

Entitlement to fees depends on objectors' ability to show that they (1) conferred a benefit on the class; or (2) substantially improved the settlement. Faught v. Am. Home Shield Corp., 444 F. App'x 445, 446 (11th Cir. 2011) (per curiam) ("The burden is on the objectors to show one of these criteria has been met."). Fees may be appropriate where objections cause a court to spend more time analyzing and assessing a complex settlement agreement, where objections "transform[] the settlement hearing into a truly adversar[ial] proceeding," or where objections "cast in sharp focus the question of the fairness

and adequacy of the settlement to all the members of the class." <u>Frankenstein v. McCrory Corp.</u>, 425 F. Supp. 762, 767 (S.D.N.Y. 1977); <u>see also</u> <u>Howes v. Atkins</u>, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (stating that objectors' counsel may receive fees when "their efforts have been of assistance to the court"). A district court must consider "whether the efforts of objectors' counsel improved the settlement, assisted the court, and/or enhanced the recovery in any discernable fashion." <u>Great Neck Cap. Appreciation Inv. P'ship, LP v. PricewaterhouseCoopers, LLP</u>, 212 F.R.D. 400, 413 (E.D. Wis. 2002) (quoting <u>White v. Auerbach</u>, 500 F.2d 822, 828 (2d Cir. 1974)) (internal quotation marks omitted). It is not error "to deny fees to objectors whose work is duplicative, or who merely echo each others' [sic] arguments and confer no unique benefit to the class." <u>Rodriguez v. Disner, 688 F.3d 645, 658–59 (9th Cir. 2012)</u> (citing <u>Reynolds v. Beneficial Nat'l Bank</u>, 288 F.3d 277, 288–89 (7th Cir. 2002)). The Eleventh Circuit has not established specific guidelines for calculating attorneys' fees for objectors' counsel when a district court elects to grant such a request.

Valls's counsel claims that his assistance led to a $4 million benefit to the class and that he provided "an adversarial context for consideration of settlement approval and class counsels' [sic] motion for $12 million in fees." (Doc. 152 at 2). Counsel requests $250,000, or 6.25 percent of the $4 million

increase in benefit to the class, but does not include his lodestar.[4] Id. at 3. Valls also moves for an objector incentive award of $2,500.00, conditioned on reversal of Johnson v. NPAS Solutions, LLC, 975 F.3d 1244 (11th Cir. 2020), for "willingness to oppose the excessive fee request knowing that an objection might be met with ad hominem attacks and possible discovery." Id. at 12. Valls's counsel asks that attorneys' fees be funded from Class Counsel's fee award. Id. at 3.

Like Valls's counsel, Miorelli's counsel contends that his filings led to the $4 million reduction in attorneys' fees for Class Counsel, which benefited the class. (Doc. 153 at 2). According to Miorelli's counsel, "[t]his $4 million is the only cash the class stands to receive from this case and is a material benefit justifying attorneys [sic] fee and costs awards to the Objectors." Id. He claims Miorelli made unique contributions that helped the Court better understand the true value of the settlement by arguing that shipping benefits were illusory, by providing tax analysis, and by showing that the high valuation of injunctive relief should be ignored. Id. at 6. He requests $189,961.80 in attorneys' fees, which he claims is counsel's lodestar with a 2.8 multiplier or 4.75 percent of the

---

[4] Valls does state that "[t]his percentage-based request will fall below class counsels' [sic] own 2.8 lodestar multiplier on cross-check." (Doc. 152 at 3).

benefit to the class, in addition to $640.37 in costs.[5] Id. at 1. Miorelli's counsel also asks that the fee be paid from Class Counsel's fee award. Id.

Davis "explicitly disclaim[s] an incentive award for himself, but believes that his counsel should be compensated for work on the case." (Doc. 158 at 5). (Davis is also an attorney who regularly objects to class action settlements. (See Doc. 113)). Davis claims he "identified several impermissible provisions of the settlement," aided the Court's calculation of the settlement's value, and insisted that the requested attorneys' fees were too high. (Doc. 158 at 2). The lodestar for Davis's counsel's work on this case amounts to $87,261, or 98.6 hours at a rate of $885 per hour. Id. at 14. He claims the lodestar would be $69,020 at a "more conservative" hourly rate of $700 per hour, such that his requested award of five percent of the $4 million—$200,000—equates to a multiplier of roughly 2.9 of the lodestar.[6] Id. at 15.

The Court disagrees with all three Objectors that they brought substantial value to the class. See Faught v. Am. Home Shield Corp., No. 2:07-

---

[5] Presumably, this equates to a lodestar of $67,842.50. Miorelli does not inform the Court of his hourly rate or how many hours he spent objecting to the settlement in this case. (See Doc. 153).

[6] In his original briefing, Davis stated, "I did not seek a fee in either Muransky or Johnson [two class action cases to which Davis objected before the Eleventh Circuit], and do not intend to seek compensation for my own personal efforts in this instant matter, but reserve the right to seek attorneys' fees for my counsel if my objection confers a substantial benefit on the class." (Doc. 113 at 5). Now, he seeks $200,000 as attorneys' fees. (Doc. 158 at 24).

CV-1928-RDP, 2010 WL 10959224, at *2 (N.D. Ala. May 26, 2010) ("The burden is on the Objectors to establish that their efforts conferred a benefit on the class.") (emphasis in original), aff'd, 444 F. App'x 445 (11th Cir. 2011). In the Approval Order, the Court said that "[w]hile objections are to be taken seriously, after close scrutiny, the objections here do not merit disapproval. The reaction of the class more broadly also shows that the settlement is fair, reasonable, and adequate." (Doc. 151 at 29–30). The Court rejected nearly all of Objectors' arguments by finding that this was not a coupon settlement, that the common fund doctrine applied, that fees need not be limited to Class Counsel's lodestar alone, that fees may be based on a percentage of both monetary and non-monetary benefits, and that attorneys' fees could be based on the percentage method, cross-checked with the lodestar plus multiplier method—all of which were decisions contrary to Objectors' arguments. Also, from the beginning, the Court was concerned that the $12 million fee request was too high. The Court was already actively considering the attorneys' fees issue and whether the settlement was a coupon settlement prior to Objectors' appearances and briefing. For example, in the Notice of Hearing at the preliminary approval stage, the Court advised:

> At the hearing, the Court anticipates a discussion of various issues related to the proposed settlement terms, including but not limited to why it is necessary for class members to submit claims, why class members will be provided with vouchers instead of payments, and

the basis for the parties' projections as to the total value of the settlement to the class.[7]

(Doc. 93 at 1–2). At the preliminary approval hearing on July 17, 2020, the Court requested supplemental briefing before preliminary approval regarding whether the settlement was a coupon settlement, in addition to an amended proposed settlement agreement to allow some class members to receive vouchers automatically, without making claims. (See Doc. 97). Though the Court reported it was satisfied that the settlement was not a coupon settlement for purposes of its Order Preliminarily Approving Settlement (Doc. 102 at 4 n.1), the issue was already flagged as one that would need attention at the final approval stage. Moreover, in its September 24, 2020 Order, the Court directed the parties to file additional briefing regarding how Johnson, 975 F.3d 1244, may affect the proposed settlement and schedule. (Doc. 103 at 1). Thus, the Court was already aware of the incentive award issue. Objections from those who now request fees were not filed until March 1, 2021. (See Doc. 112).

Ultimately, the Court concluded that the settlement was not a coupon settlement, but still conducted a lodestar with multiplier cross-check for attorneys' fees and reviewed the settlement with heightened scrutiny. (Doc. 151 at 39, 43–44). The reduction of $4 million in fees—the only decision that led

---

[7] The "total value of the settlement to the class" was tied to the proper amount of attorneys' fees. (See Docs. 91, 98).

directly to an increased benefit to the class—would have occurred with or without objections. Thus, Objectors' claims that they are entitled to fees totaling $639,961.80 based upon a percentage of the $4 million increase to the class are not justified. Additionally, the three Objectors' filings were largely duplicative with little basis to distinguish one objection from another. Thus, the Court finds Objectors' fee requests greatly exaggerated. However, it is true that Objectors' arguments and appearance at the final fairness hearing sharpened the debate on the fairness of the settlement, ensured that the final fairness hearing was an adversarial proceeding, and played the role of devil's advocate. Thus, Objectors will receive some compensation for their efforts.

To calculate reasonable attorneys' fees, courts consider the number of hours reasonably expended along with the customary rate for similar legal services, which provides the lodestar.[8] See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "Adjustments to that fee then may be made as necessary in the particular case." Blum v. Stenson, 465 U.S. 886, 888 (1984). While the Court may conduct an hour-by-hour analysis to evaluate the reasonableness of the hours expended, the Court, if appropriate, can also apply an across-the-board reduction. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008);

---

[8] There are likely other ways to calculate an objector's fees, but the Court has chosen to use the lodestar method. The Court declines to engage in a percentage of the benefit analysis here. There is no quantifiable benefit on which to base that analysis.

14

Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994); Trujillo v. Banco Central Del Ecuador, 229 F. Supp. 2d 1369, 1375 (S.D. Fla. 2002).

Valls does not report a lodestar, Miorelli reports a lodestar of approximately $67,843.50[9] but does not state his hourly rate, and Davis reports a lodestar of $87,261 at a $885 per hour rate, or $69,020 at a $700 per hour rate.[10] (Docs. 152, 153 at 1, 158 at 14–15). The Court finds that a $500 per hour rate more accurately reflects the rates for lawyers of comparable quality in the relevant legal community of the Middle District of Florida. See, e.g., Norman v. Housing Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) ("A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."). The Court also determines that a total of 102 hours of billable time is reasonable, thereby yielding a lodestar of $51,000. There is no basis to apply a multiplier or to give Objector Valls an incentive award. The three Objectors' (all veteran class actions objectors) positions and advocacy were duplicative and overlapping, and they made no effort to

---

[9] The Court deduces Miorelli's lodestar amount from his claim that his request of $189,961.80 in attorneys' fees equates to his lodestar plus a multiplier of 2.8. (Doc. 153 at 1).

[10] There is no need for bifurcated briefing on entitlement and amount as contemplated by Local Rule 7.01(a) because Objectors have given sufficient information to determine an amount.

coordinate with each other. Thus, there is no basis to award more than $51,000 in total attorneys' fees to Objectors, or to distinguish amounts among Objectors.

The Court therefore awards $17,000.00 in fees to each of the Objectors. In total, Objectors shall be paid a combined $51,000.00, to be taken from Class Counsel's $8 million attorneys' fee award.[11] Final allocation of the total fund shall be as follows:

| Total Fund | $40,000,000 |
|---|---|
| Voucher Payment | $27,070,286.43 |
| Cash Payment | $3,999,094.04 |
| Class Counsel's Attorneys' Fees and Costs | $7,949,000.00 |
| Objectors' Attorneys' Fees | $51,000.00 |
| Administrative Fees | $900,000.00 |
| Payments to the registry of the Court for possible incentive payments | $30,000.00 |
| Cy Pres | $619.53 |

---

[11] While Objectors' fees could also be taken from the class settlement fund, the Court determines in this circumstance to deduct them from Class Counsel's fee award.

## II.   CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1.     Class Counsel, Defendant, and the Settlement Administrator are authorized to implement and consummate the Settlement Agreement (Doc. 98-1) pursuant to its terms and conditions, as adjusted in the Court's prior Approval Order (Doc. 151) and as adjusted herein, including distribution of the remaining $4 million to class members as described.

2.     The issue of service awards for each of the named Plaintiffs remains **DEFERRED** for the reasons stated in the Court's prior Approval Order (Doc. 151 at 45–46). Defendant shall deposit $30,000 into the registry of the Court no later than **March 1, 2022**. The parties should notify the Court once <u>Johnson</u> is final and seek further instructions.

3.     Objector Austin Valls' Motion for Attorneys' Fees and Conditional Objector Incentive Award (Doc. 152), Objector Mitchell George Miorelli's Motion for Attorney's Fees and Costs (Doc. 153), and Objector John W. Davis's Motion for an Award of Attorney's Fees (Docs. 158, 159) are **GRANTED in part**, to the extent stated herein, and are otherwise **DENIED**.

4.     The Court retains jurisdiction to implement, administer, consummate, and enforce the Settlement Agreement (Doc. 98-1), the prior Approval Order (Doc. 151), this Order, and the final judgment.

5.      As requested in the Settlement Agreement (Doc. 98-1 at 30), the Court directs the parties to take all steps necessary to ensure that the <u>Reed</u> and <u>Haney</u> actions are dismissed with prejudice, including the pending appeal in the <u>Haney</u> action.[12]

6.      No later than **June 1, 2022**, the parties will file a report regarding compliance with the Court's Orders and distribution of the settlement fund.

7.      The Court will separately enter a final judgment dismissing this action with prejudice and directing the Clerk to close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 27th day of January, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

tnm
Copies:

Counsel of record

---

[12] These related cases are described in the Court's prior Approval Order (Doc. 151 at 2 n.2); <u>see</u> <u>Reed v. Costa Del Mar, Inc.</u>, No. 6:19-cv-1751-RBD-LRH; <u>Haney v. Costa Del Mar, Inc.</u>, No. 16-2017-CA-004794-XXXX-MA, Fourth Judicial Circuit of Florida, on appeal to Florida's First District Court of Appeal, Case No. 1D19-1787.