## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED, and
TROY SMITH, individually and on behalf
of all others similarly situated,

     Plaintiffs,

v.                              Case No.: 3:18-cv-1011-J-32JRK

COSTA DEL MAR, INC.,
a Florida corporation,

     Defendant.

_____/

## PLAINTIFFS' *TIME-SENSITIVE* MOTION FOR APPEAL BOND AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Appellate Procedure 7 and 8, and the Court's inherent powers, Plaintiffs respectfully request the entry of an order requiring Objectors John W. Davis, Austin Valls, and Mitchell George Miorelli to post a bond as a prerequisite for pursuing their appeals. Plaintiffs ask that the bond encompass two categories of relief. First, Plaintiffs seek the protections traditionally afforded to appellees during the pendency of an appeal: (a) security for anticipated appellate costs and expenses; and (b) preservation of the status quo on behalf of all non-objecting Class Members to account for the fact that the appeals will significantly delay the distribution of Class Member benefits. Second, Plaintiffs request that the Court exercise its inherent powers to protect the Class from the Objectors' bad-faith, vexatious, wanton, and oppressive appeals and thereby require them to post a bond securing Plaintiffs' expected attorneys' fees on appeal. As explained herein,

a bond encompassing each of these categories of relief is reasonable, appropriate, and amply supported by precedent and the record.

In addition, Plaintiffs seek expedited treatment of this motion.  The appeals by these three professional objectors significantly delay the distribution of Class Member benefits reflecting 1,744,737 non-objecting Class Members' claims nationwide and prevent the implementation of the parties' Settlement Agreement, as approved by the Court.

The Court has rejected each and every one of the Objectors' attacks on the settlement in this matter.  Perhaps more importantly, the Court ruled that—even applying the Class Action Fairness Act ("CAFA"), as Objectors urged the Court—the settlement warrants approval and the same amount of attorneys' fees is due to be awarded to Class Counsel.  The appeals filed by these Objectors are frivolous and vexatious, and will result in significant delay and harm to the Class.  Objectors' counsel have taken this tact time and time again.  With due regard for the Court's heavy case load and competing priorities, Plaintiffs respectfully request an order expediting Objectors' response to this motion and setting a hearing for the resolution of this motion at the Court's earliest opportunity.

## I.    Factual Background

The Settlement Agreement in this case confers substantial benefits to more than one million class members nationwide.  It was reached "[a]fter several years of litigation and extensive negotiations." *See* (Order, Doc. 156 at 1).  The parties implemented a comprehensive notice program that facilitated notice of the

2

settlement to every corner of the country, and the settlement received overwhelming support from the Class.  Only three Class Members filed substantive objections to the settlement, each represented by serial objector's counsel  who are infamous for filing meritless objections designed to delay class members benefits in an effort to extract a settlement.[1]

On September 21, 2021, the Court entered an Order [Doc. 151; Approval Order] granting in part, deferring in part, and denying in part Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses and Conditional Request for Incentive Awards to Class Representatives [Doc. 109] and Plaintiffs' Motion for Final Approval of Class Action Settlement [Doc. 135].  In the Approval Order, the Court held that each of the applicable factors "supports approval of the settlement."  (Order, Doc. 151 at 30).  The Court rejected all of the Objectors' attacks on the settlement, holding that the settlement "was not a coupon settlement, that the common fund doctrine applied, that fees need not be limited to Class Counsel's lodestar alone, that fees may be based on a percentage of both monetary and non-monetary benefits, and that attorneys' fees could be based on the percentage method, cross-checked with the lodestar plus multiplier method— all of which were decisions contrary to Objectors' arguments."  (Order, Doc. 181 at

---

[1] The history and practice of each Objectors' counsel is discussed in Plaintiffs' Response to the Objections filed by John W. Davis, Mitchell George Miorelli, and Austin Valls and, to the extent necessary, is incorporated herein by reference.  *See* (Response to Objections, Doc. 134); *see also* (Order, Doc. 151 at 25-26) ("All three Objectors or their counsel have a history as 'serial objectors.'").

12).  Although the Court concluded that the settlement was not a coupon settlement under CAFA, it nevertheless applied CAFA's requirements.  (Order, Doc. 151 at 39, 43-44).  The Court reviewed the settlement with heightened scrutiny (including directing multiple rounds of supplemental briefing and modifications to the settlement), and it awarded attorneys' fees to Class Counsel based on both the percentage-of-the-benefit approach and, alternatively, the lodestar-with-multiplier approach expressly authorized by CAFA.  *See* (Order, Doc. 181 at 13) ("Ultimately, the Court concluded that the settlement was not a coupon settlement, but still conducted a lodestar with multiplier cross-check for attorneys' fees and reviewed the settlement with heightened scrutiny.").  The Court reduced Class Counsel's attorneys' fees request by $4 million.  On appeal, it is *irrelevant* whether CAFA applies to this settlement because the Court analyzed the settlement under CAFA's lens and awarded attorneys' fees based on CAFA's requirements.  28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.").

In the Approval Order, the Court directed the parties to submit additional briefing regarding the distribution of the $4 million difference between the amount of attorneys' fees requested and the amount ultimately awarded.  (Order, Doc. 151 at 45).  The parties filed multiple briefs setting forth proposals to increase the value of the settlement to the Class by $4 million.  *See* (Doc. 157, 177).  On January 27, 2022, the Court entered an Order [Doc. 181; Final Order], adopting the parties' proposal to distribute the remaining $4 million in cash, along with small

4

modifications to voucher payout amounts such that the entire $4 million will be distributed in cash to class members, with administration fees coming from the $40 million settlement fund. *See* (Order, Doc. 181 at 4). In the Final Order, the Court also addressed each Objectors' request for attorneys' fees. (*Id.* at 15-16). The Court ruled that the Objectors did not bring value to the class, their attacks on the settlement were rejected, and that their claims to substantial attorneys' fees "were not justified" and "greatly exaggerated." (*Id.* at 11-12). The Court soundly rejected the notion that the Objectors had anything to do with the modifications to the settlement. (*Id.* at 13-14). The sole basis for the award of fees to the Objectors was that they "played the role of devil's advocate." (*Id.* at 14).

On January 27, 2022, the Court entered a Final Judgment approving the settlement subject to the adjustments in the Court's Approval Order and Final Order; awarding attorneys' fees; and directing the deposit of other fees into the Court's registry. (Final Judgment, Doc. 182 at 1-2). Having approved the settlement, subject to modifications, the Court dismissed the case with prejudice and closed the file. (*Id.* at 2).

The Court's Final Judgment should have put an end to this years-long dispute, spanning three separate class actions. Upon approval of the settlement, more than one million Class Members around the country should have received benefits they have been owed for years. However, because of the actions of three professional Objectors seeking to hold hostage class benefits, delivery of Class Member benefits will be further delayed. On February 28, 2022, each of the

5

Objectors filed Notices of Appeal of the Court's Final Judgment to the United States Court of Appeal for the Eleventh Circuit, thereby preventing the distribution of Class Member benefits under the settlement.  *See* (Amended and Restated Settlement Agreement, Doc. 98-1 at §§ II(18)(b), IV(A), IV(D), X(C)).

As explained below, a substantial appeal bond is appropriate under these circumstances.  Without an appeal bond, the Objectors will cause significant delay and damages to the Class without any impactful financial risk and without any likelihood of success on appeal.

## II.    Argument

### a.  The Purposes of an Appeal Bond

Courts "routinely require objectors who appeal final approval of a class action settlement to post a bond to ensure payment of costs on appeal." *In re Equifax Inc. Customer Data Sec. Breach Litig.,* 999 F.3d 1247, 1282 (11th Cir. 2021) (quoting *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, at 4 (N.D. Ga. May 11, 2020)).  "The protection afforded by a bond is especially necessary where an objector appeals a final order approving a settlement in a class action." *Aboltin v. Jeunesse LLC*, No. 6:17-cv-1624-Orl-40TBS, 2019 WL 1092789, at *3 (M.D. Fla. Feb. 15, 2019); *see Meta v. Target Corp.*, No. 4:14 CV 832, 2018 WL 9802048, at * 1 (N.D. Ohio Sept. 24, 2018) ("When an appeal is taken by a serial objector without substantial grounds to challenge the validity of the underlying settlement, public policy weighs in favor of imposing a bond."); *In re Checking Acct. Overdraft Litig.*, No. 1:08-CV-23323-JLK, 2012 WL 456691, at

6

*3 (S.D. Fla. Feb. 14, 2012) ("The Court continues to find that the highly detrimental impact of an appeal as to the entire class renders it appropriate for the Court to require any and all Objector–Appellants to post an appeal bond.").

The reason for imposing an appeal bond is simple—"by requiring objectors to post a bond that would cover the costs of losing the appeal, the burden of litigating frivolous appeals shifts to them instead of to the class." *Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006).    Requiring too small a bond encourages frivolous, time-consuming, and harassing appeals, while requiring a sizable bond discourages them. *See Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002). ("Simply stated, an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond for anticipated attorneys' fees prior to filing the appeal."). *Cf. Young v. New Process Steel, LP*, 419 F.3d 1201, 1206 (11th Cir. 2005) (noting that a party unsuccessful in the trial court "should not be freed from the burden of an appellate bond that includes anticipated attorney's fees where the appeal is likely to be frivolous, unreasonable, or without foundation. On appeal, as at trial, applying full cost disincentives in those circumstances is consistent with the intent of Congress 'to protect defendants from burdensome litigation having no legal or factual basis.'" (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978))).    The purposes of an appeal bond fully support the imposition of a sizable appeal bond in this instance.

### b. The Court's Authority to Impose an Appeal Bond

There are several authorities empowering the Court to impose an appeal bond.  First, Federal Rule of Appellate Procedure 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7.  The district court has discretion to determine "the need for a bond for costs and its amount."  *Aboltin*, 2019 WL 1092789, at *3.

Second, a *supersedeas* bond is appropriate under Federal Rule of Appellate Procedure 8 to preserve the status quo and account for damage to the class resulting from a stayed judgment. *Id.*; *see also In re Checking Acct. Overdraft Litig.*, 2012 WL 456691, at *2 ("Rule 8 provides for supersedeas bonds to cover sums related to the merits of the underlying judgment.").  Where an appeal by an objector prevents the distribution of settlement proceeds as ordered by the Court, the appeal "operates as a 'stay of judgment,' which triggers Rule 8."  *See Aboltin*, 2019 WL 1092789, at *3; *In re Checking Acct. Overdraft Litig.*, 2012 WL 456691, at *2 (imposing $616,338.00 bond and stating, "Objector–Appellants insist that they cannot be required to post a supersedeas bond under FRAP 8 because they have not sought a stay. . . . However, because the filing of this appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate.").

Finally, as the Eleventh Circuit has held, "federal courts possess the inherent power to require the posting of cost bonds and to provide for the award of

#155845728_v1

attorneys' fees." *Pedraza*, 313 F.3d at 1335.  The courts possess these powers "even if procedural rules exist which [govern] the same conduct."  *Id.*  One instance in which federal courts are empowered to require the posting of a bond covering attorneys' fees is when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Id.*; *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991); *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 644 (N.D. Ohio 2016) ("In light of this Court's conclusions that all Objectors have shown some degree of bad faith or vexatious conduct, it is within this Court's discretion to 'include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs.'").  Each of these sources of authority justify the imposition of an appeal bond in this instance.

### c.  A Bond under Rule 7 is Warranted

In considering whether to impose a bond under Rule 7, courts have evaluated the following factors: "(i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful . . . and (v) the appellant's attorney's prior actions." *Aboltin*, 2019 WL 1092789, at *3; *Marty v. Anheuser-Busch Companies, LLC*, No. 13-23656-CIV, 2016 WL 397593, at *1 (S.D. Fla. Feb. 2, 2016).  The Eleventh Circuit has held that the fourth factor—the risk of non-payment—is the most important factor in the analysis.  *In re Equifax Inc. Customer Data Sec. Breach*

*Litig.*, 999 F.3d at 1283 ("[I]f there is a risk the appellant will not pay the costs on appeal, then an appeal bond helps make sure the costs are paid.").

Here, Objectors' financial ability to post a bond is presumed. *Aboltin*, 2019 WL 1092789, at *3. Each Objector is represented by professional objectors' counsel known for filing serial objections to class action settlements in an effort to extract a payout. These Objectors have been actively involved in this litigation for more than a year and should not be heard now to claim that they cannot afford to post a bond to pursue their appeals. *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (holding that "the Objectors' ability to [post a bond] is presumed"). Moreover, the Objectors are geographically dispersed and there is no guarantee of payment of costs that might be assessed against them. *Id.* ("[T]he Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them."). If the Objectors are unsuccessful on appeal, Plaintiffs would need to commence collection actions in numerous jurisdictions to recover costs against them. *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2010 WL 1253741, at *2 (S.D.N.Y. Mar. 5, 2010) ("[T]he appellants are dispersed around the country, and Class Counsel would need to institute numerous collection actions to recover their costs."). As explained below, there is no merit to the Objectors' appeals, and their prior actions and vexatious conduct all warrant the imposition of a sizable bond. All of the factors support the imposition of a Rule 7 bond.

"Rule 7 permits courts to impose appeal bonds to cover the costs of appeal." *In re Checking Acct. Overdraft Litig.*, No. 1:09-MD-02036, 2012 WL 456691, at *2 (S.D. Fla. Feb. 14, 2012); *see also Aboltin*, 2019 WL 1092789, at *3. Although taxable costs under Fed. R. App. P. 39(e) and 28 U.S.C. § 1920 form the basis for a Rule 7 cost bond, *see In re Equifax*, 999 F.3d at 1284 n.30, the Eleventh Circuit has held that a Rule 7 bond is not limited to these costs. *See Pedraza*, 313 F.3d at 1323. Instead, district courts have discretion to determine the amount necessary to ensure payment of appeal costs. *Id.* at 1327; *see Young*, 419 F.3d at 1207–08.

Plaintiffs estimate that they will incur approximately $5,000 in direct costs and expenses on appeal. (Hargitai Decl., **Exhibit 1** ¶ 5). This amount is reasonable, particularly in light of the fact that this case involves a voluminous record from three separate, large class actions pending in three different trial courts (and one appellate court). Three separate appeals have been filed by the Objectors from multiple orders of this Court. The amount requested is below the amount awarded by other courts in similar circumstances. *In re Currency Conversion Fee Antitrust Litig.*, No. M 21-95, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) (imposing $50,000 taxable cost bond); *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liability Litig.*, No. 11-MD-2247, 2012 WL 3984542, at *3 (D. Minn. Sept. 11, 2012) (imposing $170,000 total appeal bond, apportioning $25,000 to taxable costs, and stating, "Courts routinely approve bonds for appeal-related costs of $25,000."); *In re Petrobas Sec. Litig.*, No. 14-cv-9662, 2018 WL

4521211, at *11 (S.D.N.Y. Sept. 21, 2018) (finding $50,000 taxable cost bond reasonable).

Accordingly, Plaintiffs respectfully request an order requiring Objectors to post a Rule 7 bond in the amount of $5,000.

### d. A Bond Under Rule 8 is Warranted

When an appeal operates as a stay of judgment, a district court may also impose a *supersedeas* bond under Rule 8. *See Aboltin*, 2019 WL 1092789, at *3; *In re Checking Account*, 2012 WL 456691, at *2. A *supersedeas* bond under Rule 8 is "retrospective covering sums related to the merits of the underlying judgment." *See Adsani v. Miller*, 139 F.3d 67, 68 n.2 (2d Cir. 1998). Put simply, *supersedeas* bonds assist in the "preservation of the status quo" on behalf of the class by ensuring that the lost use of funds during the pendency of the appeal is accounted for through delay damages. *See In re Checking Account*, 2012 WL 456691, at *1.

In *Aboltin*, the Middle District of Florida held that a class member's appeal of a final order approving a class action settlement prevented the distribution of the settlement proceeds as ordered by the court. 2019 WL 1092789, at *3. Therefore, the appeal operated "as a 'stay of judgment, which trigger[ed] Rule 8.'" *Id.* The court ruled that "[c]onsidering the delay in completing the settlement caused by [the class member's] appeal, and the parties' anticipated costs to defend her appeal, a $70,000 bond is reasonable." *Id.* In *In re Checking Acct. Overdraft Litigation*, the Objectors argued that "they cannot be required to post a supersedeas bond under FRAP 8 because they have not sought a stay." 2012 WL

12

456691, at *2.  The court rejected that argument and held that "because the filing of this appeal prevents the distribution of the Settlement proceeds as ordered by this Court's Final Judgment, it is an actual stay of Judgment and bond is appropriate."  *Id.*

Here, the pending appeals operate as a stay of this Court's Final Judgment and prevent the parties from implementing the terms of the Settlement Agreement, as approved by the Court.  More than a million class members will be deprived of benefits for over a year as a result of the appeals.  Under these circumstances, a sizable bond to compensate the Class for delay is appropriate.

Courts imposing appeal bonds on objectors have calculated the costs to the class associated with delay by reference to the federal post-judgment interest rate.  These courts calculate the post-judgment interest that will accrue on the settlement amount (less attorneys' fees) during the pendency of the appeal and impose a bond in the amount of the anticipated interest.  *See In re Checking Account*, 2012 WL 456691, at *3 n.6 (imposing $616,338 *supersedeas* bond calculated using two years' interest on the judgment less attorneys' fees); *Barnes v. Fleetboston Fin. Corp.*, No. 01-10395-NG, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) (imposing $643,750 in delay damages calculated by taking 5.15% interest on a settlement of $12.5 million for one year); *see also  In re Broadcom Corp. Sec. Litig.*, No. SACV01275DTMLGX, 2005 WL 8152912, at *3 (C.D. Cal. Dec. 5, 2005) (imposing bond in the amount of $517,700 because "Objectors appeal effectively postpones distribution of the entire judgment for well over a

13

year"); *Aboltin*, 2019 WL 1092789, at *4 (imposing $70,000 bond because of "delay in completing the settlement caused by Ms. Xiong's appeal").

Here, the settlement provides for the distribution of $31,069,380 in monetary benefits to Class Members, comprised of $27,070,286 in Product Vouchers and $3,999,094 in cash. (Order, Doc. 181 at 16). The Final Judgment was entered on January 27, 2022. Assuming that the appeals will take two years to resolve, the interest that will accrue on the Class' monetary benefits is $360,404.81. *In re Checking Account*, 2012 WL 456691, at *3 n.6 (calculating amount of supersedeas bond by multiplying two years of interest on the judgment less attorneys' fees).[2] Accordingly, Plaintiffs respectfully request the imposition of a supersedeas bond in the amount of $360,404.81 which will be distributed to the Class to compensate it for the delay if Objectors are unsuccessful on their appeals.[3]

---

[2] The amount of the bond sought herein is justified, but will not fully compensate the Class for the delay occasioned by the Objectors' appeals. The interest rate for judgments entered on January 27, 2022 is .58%. Since the Final Judgment was entered, the federal post-judgment interest rate has almost doubled. For judgments entered between February 28, 2022 and March 6, 2022, the interest rate is 1.14%. Rising interest rates and record-level inflation will further diminish the value of the settlement to the Class.

[3] If the Court declines to require the posting of a *supersedeas* bond under Rule 8, Plaintiffs respectfully request that the amounts sought to compensate the Class for delay as a result of the appeals be included in the bond as part of the Court's inherent authority or, alternatively, under Rule 7. The Eleventh Circuit has held that this Court has "inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees." *Pedraza*, 313 F.3d at 1335. In addition, a bond under Rule 7 is not limited to taxable costs. *Id.* at 1323. Numerous courts have required objectors to post a bond that includes the costs associated with delay. *In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d 635, 645 (N.D. Ohio 2016) (describing the "concrete additional costs" imposed on the class by delay, and stating: "each appeal deprives the class of interest that would otherwise accrue."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986-CIV, 2006 WL 1132371, at *18 (S.D. Fla. Apr. 7, 2006) (stating that, "the Court will require Westheimer to post an

### e.  A Bond Covering the Class's Attorneys' Fees is Warranted

Plaintiffs also request that the bond include the estimated attorneys' fees the Class will incur on appeal.  The Eleventh Circuit has made clear that district courts have the inherent power to include attorneys' fees as part of an appeal bond. *Pedraza*, 313 F.3d at 1336 (noting that a district court can "include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs"). "[I]n addition to enjoying broad discretion to manage litigation before them, federal courts possess the inherent power to require the posting of cost bonds and to provide for the award of attorneys' fees." *Id.* at 1335; *see also Baynham v. PMI Mortg. Ins. Co.*, 313 F.3d 1337, 1341 (11th Cir. 2002) (noting that a district court can use its inherent authority and "require[ ] appellants to include attorneys' fees in an appellate bond pursuant to its inherent power to manage its affairs").

The Supreme Court has identified three circumstances in which this exercise of inherent power is appropriate: (1) the "common fund exception," (2) as a sanction for willful disobedience of a court order, or (3) when a party has acted "in

---

appeal bond in an amount sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal" and setting the amount of the bond at $13,500,000); *Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *3 (D. Mass. Aug. 22, 2006) ("Accordingly, I order that objector Nancy Feldman post a bond in the amount of Six Hundred Forty–Five Thousand, One Hundred Eleven and 60/100 ($645,111.60) Dollars."). Valls' counsel—the Bandas Firm—has been required to post a similar bond by other courts. *Conroy v. 3M Corp., et al.,* Case No. C00-2810 CW (N.D. Cal. Aug. 10, 2006) (ordering the Bandas Firm, jointly with one other objector, to post a bond in the amount of $431,167.00); *Embry v. Acer Am. Corp.*, No. C 09-01808 JW, 2012 WL 13059909, at *1 (N.D. Cal. Aug. 22, 2012) (denying motion to stay the requirement that the Bandas Firm post a bond in the amount of $70,650 as a condition of appeal).

bad faith, vexatiously, wantonly, or for oppressive reasons." *Pedraza*, 313 F.3d at 1336 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)); *see also In re Polyurethane Foam Antitrust Litig.*, 178 F. Supp. 3d at 644 ("In light of this Court's conclusions that all Objectors have shown some degree of bad faith or vexatious conduct, it is within this Court's discretion to 'include attorneys' fees in an appellate bond pursuant to its inherent authority to manage its affairs.'"). As applicable here, "an action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Pedraza*, 313 F.3d at 1336 (quoting *Baker v. Health Mgmt. Sys., Inc.*, 264 F.3d 144, 149 (2d Cir. 2001)).

This is one of those exceptional cases where the Court's exercise of its inherent power is warranted. As explained in Plaintiffs' Response to Objections [Doc. 134] the Objectors in this case are represented by some of the most prolific serial objector's counsel in the country. As other district courts have recognized, "[r]epeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements . . . The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal)." *Barnes v. Fleetboston Fin. Corp.*, No. CA 01-10395-NG, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006). That is precisely what the Objectors seek to do in this

case.[4] The Objectors' actions have real costs, as Class Member benefits are delayed
by years until appeals are resolved:

> In recent years, however, it has become obvious that some objectors
> seek to pervert the process by filing frivolous objections and appeals,
> not for the purpose of improving the settlement for the class, but of
> extorting personal payments in exchange for voluntarily dismissing
> their appeals. These extortionate efforts, which the Seventh Circuit
> recently termed 'objector blackmail,' have increasingly interfered with
> the prompt and fair resolution of class litigation at a direct cost to class
> members, who may thereby be prevented from collecting the
> settlement funds owed to them for months and even years unless they
> succumb to the blackmail.

*In re Petrobras Sec. Litig*., No. 14-CV-9662 (JSR), 2018 WL 4521211, at *1
(S.D.N.Y. Sept. 21, 2018).  As they have done in so many cases before, these
Objectors seek to hold the settlement hostage all in an effort to extract a payout.

 The appeals by the Objectors are without merit and asserted purely for
purposes of delay.  On appeal, the Objectors will be limited to the attacks on the
settlement that they made to this Court, which have been rejected at every turn.
(Order, Doc. 181 at 12).  In disputing that the settlement in this case is fair,
adequate, and reasonable, the Objectors contend that the settlement is a coupon
settlement under CAFA.  But that argument is *irrelevant* because the Court
approved the settlement after applying the heightened scrutiny required by CAFA.
28 U.S.C. § 1712(e); *Smith v. Costa Del Mar, Inc.*, No. 3:18-CV-1011-TJC-JRK,
2021 WL 4295282, at *15 (M.D. Fla. Sept. 21, 2021) ("Even so, the Court reviews

---

[4] Valls' counsel previously sought $250,000 in attorneys' fees for filing his meritless
objections.  Miorelli's counsel sought $189,961.80 in attorneys' fees.  Davis sought
$250,000 in attorneys' fees.  (Order Doc. 181 at 9-11).

this settlement with heightened scrutiny and with awareness of CAFA's requirements to ensure fairness to the class."). In other words, even accepting the Objectors' erroneous argument that CAFA applies, the Court approved the settlement under CAFA. In order to prevail on their appeal, the Objectors will need to demonstrate that the Court abused its discretion in approving the settlement, despite the fact that the Court applied heightened scrutiny and ordered multiple rounds of modifications to the settlement, which among other things resulted in the addition of a cash component, automatic distributions, and increased voucher amounts. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) ("We also review the district court's approval of a class action settlement agreement for abuse of discretion."). The Objectors cannot come close to the required showing.

Nor can Objectors demonstrate that the attorneys' fee award to Class Counsel is inappropriate. Plaintiffs believe the Court was imminently correct in ruling that the settlement is not a coupon settlement under CAFA. However, it simply does not matter whether CAFA applies because, even if it did, the Court awarded attorneys' fees to Class Counsel based on the lodestar-with-multiplier approach too. (Order, Doc. 151 at 40) ("[T]he Court here awards attorneys' fees according to a percentage of the recovery under *Camden I*, and also holds that even if CAFA applied, the Court may award fees based on a lodestar and a multiplier."). The text of CAFA expressly authorizes this award. 28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees."). This is precisely why Class

Counsel requested an alternative ruling on the amount of attorneys' fees: to avoid a vexatious, time-consuming appeal. (Transcript, Doc. 146 at 69:12-24) ("We also ask, though -- because what we're not interested in is the objectors taking this on to a meritless appeal. And that's why we've come forward to Your Honor with the supplemental materials on lodestar, because we think that with an appropriate multiplier -- and, again, within the Court's discretion as to the value of this deal, we believe that they would be one and the same and, therefore, there's nothing to appeal."). Circuit Courts around the country have held that, in coupon settlements, CAFA permits attorneys' fees to be calculated using the lodestar-with-multiplier approach. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) ("We hold that § 1712 permits a district court to use the lodestar method to calculate attorney fees to compensate class counsel for the coupon relief obtained for the class."); *see Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016) (same); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 5 (2d Cir. 2012) (affirming the district court's award based on the lodestar method); *see also See* S. Rep. 109-14, at 30 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 30 ("Section 1712(b) confirms the appropriateness of determining attorneys' fees on this basis in connection with a settlement based in part on coupon relief.").[5]  Under the text of CAFA, its legislative history, and the law of every Circuit Court that has ruled on

---

[5] The only outlier Circuit—the Ninth Circuit—also allows the use of the lodestar approach where, like here, there is a cash component to the settlement. *In re Easysaver Rewards Litig.*, 906 F.3d 747, 759 (9th Cir. 2018).

19

the issue, the Court's use of the lodestar-with-multiplier approach was clearly correct as a matter of law, *even if the Objectors are correct that this was a coupon settlement* (which they are not). And, the Objectors cannot take issue with the amount of fees awarded under this approach because they did not challenge a single time entry by Class Counsel or Class Counsel's hourly rates.

There is simply no path to a successful appeal for the Objectors. Even accepting their incorrect arguments that the settlement in this case constitutes a coupon settlement, the settlement was correctly approved and attorneys' fees were awarded under the correct legal standard. Enough is enough. If these three Objectors seek to delay Class Members benefits to the million plus Class Members who support the settlement, they should be required to post a substantial appeal bond, securing Plaintiffs' attorneys' fees on appeal. Class Counsel estimates that it will incur approximately $200,000 in attorneys' fees on appeal. (Hargitai Decl., **Ex. 1**, ¶ 6). That amount may increase, depending on whether the appeal involves motion practice, mediation, oral argument, and/or petitions for rehearing or rehearing en banc. (*Id.*). The estimated amount of attorneys' fees is reasonable, especially considering that at least one of the Objectors has indicated that, it is his goal to get before the U.S. Supreme Court. (Transcript, Doc. 146 at 4:16-21) (Mr. Isaacson: "I'm very much interested in getting some of the fees and incentive award issues in class action cases up to the U.S. Supreme Court.").

Plaintiffs respectfully request that the Court exercise its inherent power and require the posting of an appeal bond that secures Plaintiffs' expected appellate attorneys' fees.

## III.    Conclusion

**WHEREFORE**, Plaintiffs respectfully request the entry of an order requiring Objectors John W. Davis, Austin Valls, and Mitchell George Miorelli to post a bond as a prerequisite for pursuing their appeals in the total amount of $565,404.81, representing costs and expenses Plaintiffs anticipate incurring on appeal, costs for preserving the status quo, and expected attorneys' fees on appeal. Plaintiffs also request any further relief the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that counsel for the Plaintiffs conferred with counsel for Objectors John W. Davis, Mitchell George Miorelli, and Austin Valls regarding the relief sought herein.  Mr. Valls' counsel indicated that "Mr. Valls is willing to deposit a bond for his share of the aggregate costs, which should not exceed $1,000.  Otherwise he will oppose the motion."  Mr. Miorelli's counsel indicated that he would be amenable to depositing a pro rata share of $1,000 into the Court's registry, but that "[a]nything more than that we oppose."  Mr. Davis' counsel indicated that he opposed the motion.  Counsel for Costa stated that Costa does not oppose the relief sought herein.

#155845728_v1

Respectfully submitted this 9th March, 2022.

**HOLLAND & KNIGHT LLP**

/s/ Michael M. Gropper
Peter P. Hargitai (FBN 85375)
peter.hargitai@hklaw.com
Joshua H. Roberts (FBN 042029)
joshua.roberts@hklaw.com
Laura B. Renstrom (FBN 108019)
laura.renstrom@hklaw.com
Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone: (904) 353-2000
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs and the Class*