UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRENDAN HANEY, GERALD REED,
and TROY SMITH, individually and on
behalf of all others similarly situated,

Case No.: 3:18-cv-1011-TJC-LLL

Plaintiffs,

v.

COSTA DEL MAR, INC., a Florida
Corporation

Defendant.

_____

**JOINT OPPOSITION[1] OF OBJECTORS JOHN W. DAVIS AND
MITCHELL GEORGE MIORELLI TO PLAINTIFFS' *TIME-SENSITIVE*
MOTION FOR APPEAL BOND**

---

[1] Counsel for Objectors Davis and Miorelli believe that it would be a more efficient use of
judicial resources to collaborate on a single response rather than filing duplicative documents
and invited counsel for Objector Valls to join as well, but he opted to file separately.

Plaintiffs' motion for an appellate bond in the amount of $565,404.81 "as a prerequisite for pursuing their appeals" is a gross overreach, unsupported by fact or law and is, to be frank, genuinely frivolous.

The motion is plainly designed to block appellate review of this Court's rulings and should be rejected for that reason. District courts should not act as gatekeepers blocking appellate review of their own decisions – particularly not where class members raise objections as contemplated by Rule 23 itself. This Court is not entitled to require a large bond in order to quash Objectors Davis' and Miorelli's appeals merely because it may believe that the Eleventh Circuit is likely to affirm.

Even assuming Plaintiffs win the appeal, the costs they seek to have bonded are exorbitant and unwarranted. Plaintiffs' Rule 39 costs (for photocopying briefs and perhaps a supplemental appendix) are highly unlikely to reach even one thousand dollars – far below the $5,000 figure that Mr. Hargitai pulls out of the air. *See Hargitai Decl.* at ¶5 (DE190-1). Plaintiffs' claim is so frivolous that, when two of the objectors offered to agree to post bonds in the vicinity of *actual* Rule 39 costs, Plaintiffs refused to engage in a discussion of the appropriate amount, and just copied quotes from Objectors' e-mailed offers into a Local Rule 3.01(g) statement appended to their motion. DE190:22. This shows Plaintiffs are not serious about a bond for amounts they actually have any reasonable probability of entitlement to, but rather a bond which would smother objector appeals.

Absent authorization by statute or rule, moreover, costs on appeal do not include additional expenses, such as attorneys' fees, administrative expenses, or interest. *See Pedraza v. United Guar. Corp.,* 313 F.3d 1323, 1333 (11th Cir. 2002); *Tennille v. Western Union Co.,* 774 F.3d 1249, 1255-56 (10th Cir. 2014). Plaintiffs cite no statute or rule permitting such expenses to be taxed as costs. Instead, they reiterate unprofessional and banned-by-the-Eleventh Circuit *argumentum ad hominem* that this Court has previously rejected and demand a quasi-clairvoyant pre-determination that not-filed appellate arguments are frivolous. DE 190 at 15-21. This part of their request (constituting a demand for a $200,000 bond) is obviously frivolous and the Court should not only reject it, but engage in a Rule 11 inquiry as to whether even presenting it constituted sanctionable behavior.

Neither are Plaintiffs entitled to demand that Objectors post a supersedeas bond covering interest on the settlement fund. Rule 62(d) provides that if an appeal is taken by an appellant who desires a stay of judgment, "the appellant may obtain a stay by supersedeas bond." Fed. R. Civ. P. 62(d). Objectors, however, neither seek nor desire any stay of judgment. There is no reason to do so, because the settling parties themselves agreed that the settlement would not take effect until after the resolution of any appeals:

> if any appeal has been taken from the Final Order and/or Final Judgment, 'Final Effective Date' means the date on which all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order or Final Judgment

DE98-1, ¶18(b) (ECF p.10). There is nothing to stay, so there is no need for anyone to seek a stay of judgment, and no basis for a supersedeas bond. *Tennille,* 774 F.3d at 1256 & n.5; *accord Vaughn v. American Honda Motor,* 507 F.3d 295, 298-99 & n.6 (5th Cir. 2007). Moreover, the Settlement Agreement further states that "subject to Court approval, if Plaintiffs' Class Counsel and Defendant agree in writing, the 'Final Effective Date' can occur on any other agreed date." DE98-1, ¶18(c). In other words, when the settlement is effectuated is entirely in the control of the settling parties. Accordingly, if Objectors' appeals really were genuinely frivolous, the settling parties could, at any time, ask to distribute the settlement benefits. They will not, of course, because they know the appeals are not frivolous.

## I.    ARGUMENT

### A.    This Court Should Not Seek to Foreclose Appellate Review by Imposing an Exorbitant Bond that Includes Unsupportable Costs

Plaintiffs' motion demands this Court impose a large bond to block appellate review of its judgment and orders. That would be a gross misuse of Rule 7.

District courts generally should not act as gatekeepers blocking appellate review of their own decisions. *Vaughn v. American Honda Motor Company*, 507 F.3d 295, 299 (5th Cir.2007) (warning against excessive bonds because "imposing too great a burden on an objector's right to appeal may

discourage meritorious appeals or tend to insulate a district court judgment in approving a class settlement from appellate review"); *accord, e.g., Dewey v. Volkswagen of Am.*, No. 07-2249, 2013 WL 3285105, at *2 (D.N.J. Mar. 18, 2013) (following *Vaughn*).[2] District courts impermissibly usurp the authority of appellate courts when they impose large bonds merely because they believe an appeal might lack merit:

> [T]he question of whether, or how, to deter frivolous appeals is best left to the courts of appeals, which may dispose of the appeal at the outset through a screening process, grant an appellee's motion to dismiss, or impose sanctions including attorney's fees under Rule 38. … Allowing districts court to impose high Rule 7 bonds on where the appeals might be found frivolous risks 'impermissibly encumber[ing]' appellants' right to appeal and 'effectively preempt[ing] this court's prerogative' to make its own frivolousness determination.

*Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (citation omitted). *See also In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (denying cost bond to the extent it was based on the alleged frivolousness of the appeal: "the Court

---

[2] *See also, e.g., Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 6069968, at *4 (E.D. Pa. Oct. 14, 2016) (observing that a joint and several bond for $120,000 "may likely preclude pursuit of an appeal," a result that "appears to be the Class goal" but determining that approach to be "contrary to the right of any disappointed objector to file a notice of appeal). *In re Certainteed Fiber Cement Siding Litig.*, No. 2270, 2014 WL 2194513, at *1 n.2 (E.D. Pa. May 27, 2014) (discussing extant authority and finding that a "motion seeking to impose a Rule 7 cost bond is not the appropriate mechanism" to raise "concerns regarding the merits of and motivations behind the . . . objectors' appeal").

of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs").

## B.   Plaintiffs' Rule 39 Costs on Appeal are Unlikely to Reach $1,000

Federal Rule of Appellate Procedure 7 provides in pertinent part: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary *to ensure payment of costs on appeal.*" Fed. R. App. P. 7 (emphasis added).

In most cases, the primary element covered by the term "costs on appeal" is the expense, under Rule 39, of copying the appellate briefs and appendix, as is reflected in the Eleventh Circuit "Bill of Costs" form, which includes lines for these items.[3] By its own Rule 39-1, the Eleventh Circuit permits the Clerk to set the going rate for these costs. *See* 11th Cir. R. 39-1 "Costs."[4] The Eleventh Circuit "Bill of Costs" form thus allows a prevailing party to seek fifteen cents a page for in-house copies, and up to twenty-five cents a page for commercially

---

[3] The Eleventh Circuit "Bill of Costs" form is available online at: http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormBillofCosts_19_JUN17.pdf

[4] FRAP 39(c) provides: "Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by Rule 30."  The local rule provides: 11th Cir. R. 39-1 *Costs.*  In taxing costs for printing or reproduction and binding pursuant to FRAP 39(c) the clerk shall tax such costs at rates not higher than those determined by the clerk from time to time by reference to the rates generally charged for the most economical methods of printing or reproduction and binding in the principal cities of the circuit, or at actual cost, whichever is less. Unless advance approval for additional copies is secured from the clerk, costs will be taxed only for the number of copies of the brief and appendix required by the rules to be filed and served, plus two copies for each party signing the brief. All costs shall be paid and mailed directly to the party to whom costs have been awarded. Costs should not be mailed to the clerk of the court.

printed briefs. FRAP 39(e) further provides that certain costs incurred by the appellant are taxable in the district court, but there is no reason to require a bond for any of them as they are not costs incurred by the appellees.[5]

Plaintiffs claim that a $5,000 costs bond (meaning approximately 20,000 pages at the Eleventh Circuit's commercially-printed rate) is "reasonable, particularly in light of the fact that this case involves a voluminous record." DE 190 at 11. Yet it is the appellant's responsibility to prepare and transmit the record, pay for the reporter's transcript, and pay the fee for filing the notice of appeal. The final fairness hearing before this Court was already transcribed, Davis will be paying the court reporter for additional transcripts that he has ordered for the appeal, and Plaintiffs have not designated any further transcripts as necessary for the appeal in this Court or the Eleventh Circuit. *See* Fed. R. App. P. 10. With that in mind and from Plaintiffs' motion, it is unclear what, other than reproduction of their brief, they could incur as costs on appeal. That means if Plaintiffs prevail and file a one-hundred-page brief they could seek only $25 for each copy of its brief. Here, there would be a total of 14 compensable briefs produced for filing (seven), service (five), and personal use (two). At $25 per copy, each appellee's costs for its brief might come to as

---

[5] FRAP 39(e) provides:

> The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
> (1) the preparation and transmission of the record;
> (2) the reporter's transcript, if needed to determine the appeal;
> (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
> (4) the fee for filing the notice of appeal.

much as $350. An appellee who files a supplemental appendix might incur a few hundred dollars more, but considering that Plaintiffs have not designated any additional parts of the record on appeal, that seems unlikely in this case. A 2011 Federal Judicial Center report on costs taxed on appeal confirms that appellees' costs typically do not exceed a few hundred dollars: "Leaving out the larger awards that were identified as outliers in several circuits, the data show that across all circuits average costs awarded to appellees under subsection 39(a)(1) ranged from $84.15 to $198.08 ($153.68 median average award); under subsection 39(a)(2) average costs awarded to appellees ranged from $18.20 to $345.04 ($219.06 median average costs) . . . ." MARY LEARY, THE COMPARATIVE STUDY OF THE TAXATION OF COSTS IN THE CIRCUIT COURTS OF APPEALS UNDER RULE 39 OF THE FEDERAL RULES OF APPELLATE PROCEDURE 3-4 (Federal Judicial Center, April 2011) (available online at: www.uscourts.gov/file/frap39reppdf).

It is therefore quite unlikely that Plaintiffs' Rule 39 costs will reach even a thousand dollars. Mr. Hargitai's "estimate" of $5,000 for Rule 39 costs is preposterous. *See, e.g.*, *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. Apr. 24, 2014) (unpublished) (in appeal of class settlement, vacating bond of $15,000 because appeal costs "rarely exceed more than a few hundred dollars when taxed against an appellant"); *Vaughn,* 507 F.3d at 299-300 (bond for Rule 39 brief-production costs reduced from $150,000 to $1,000); *Lundy v. Union Carbide Corp.*, 598 F.Supp. 451, 452 (D. Or. 1984) (rejecting appellees' request for a $2,500 bond and holding that "a bond in the

amount of $500 would be appropriate"). The *Equifax Customer Security Data Breach Litigation* was a far more complex case than this one, with a far larger record, and yet plaintiffs-appellees' taxable costs for the consolidated appeals came to only $420.75. *See Huang v. Spector*, No. 20-10249 (11th Cir. July 1, 2021) ($420.75 bill of costs allowed) (copy attached as Exhibit A to the Declaration of Eric A. Isaacson filed herewith).

It is wholly appropriate to deny an appeal bond where the applicant neither adequately justifies the amount sought, nor shows that the appellant cannot be trusted to pay the small amounts taxable under Rule 39. *Pan American Grain Mfg. Co. v. Puerto Rico Ports Authority*, 193 F.R.D. 26, 43 (D. P.R. 2000); *see also Vaughn*, 507 F.3d at 299-300 (staying Rule 7 bond of $150,000 imposed upon appealing objector and reducing it to $1000 where the bond imposed was "not supported by any findings or reference to evidence in the record"). It is insufficient simply to throw out a range of costs taken from other cases, as Plaintiffs have done here, without explaining their estimate of costs for this particular case. *Tennille v. W. Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014) (rejecting cost estimates where plaintiffs made "no effort to justify their $25,000 estimate" and instead relied on amounts awarded in other cases, because "Plaintiffs have not explained how the costs at issue in those cases are similar to the costs Plaintiffs expect to incur here").

As set forth below, the requested bond for administrative expenses and interest on the class fund is completely without legal support, and overtly interposed for the improper purpose of preventing the appeal. Consequently,

the only bondable expenses are likely to be the standard, enumerated Rule 39(e) costs. As such, the Court should question whether the effort of bonding potential expenses of a few hundred dollars – in the absence of any indication that Objectors, represented by counsel admitted before the Eleventh Circuit and one of whom resides in this District would refuse to pay them if Class Counsel bothered to demand them – is worth the candle.

### C. Plaintiffs are not Entitled to a Rule 7 Bond Beyond Costs Enumerated in Rule 39 or a similar bond under the Court's inherent power

Plaintiffs' argument for $200,000 in attorneys' fees being added to the bond is incoherent. Plaintiffs make a clairvoyant claim about Objectors' appeals, lob *argumentum ad hominem* in such a reckless manner that they had to correct themselves to avoid a Rule 11 motion from Objector Miorelli, and conclude that the Court should preemptively shift fees not based on statute as Rule 7 and *Pedraza* contemplate, but based on the Court's inherent authority. DE 190 at 15-21. Yet *Pedraza* sharply limits the district court's inherent authority to require a bond covering appellate attorney's fees. The Eleventh Circuit held in *Pedraza* that the district court's inherent power to manage its affairs did not support its inclusion of estimated attorney fees within appellate cost bond where there was no indication that the appellant willfully disobeyed any court order or had acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Pedraza v. United Guar. Corp.,* 313 F.3d 1323 (11th Cir.

2002). Moreover, the very fact Plaintiffs say they will incur attorney's fees of $200,000 demonstrates that the appeals are not frivolous. It should not cost $200,000 to defend against a truly frivolous appeal.

Beyond the basic Rule 39 costs, additional "costs" sometimes may be specifically authorized by statute or rule, and thus bondable. *See Pedraza,* 313 F.3d at 1333; *Tennille,* 774 F.3d at 1255-56. Though they differ on some other points, all "circuit courts addressing the meaning of 'costs on appeal' have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Tennille,* 774 F.3d at 1254. Costs that are not statutorily recoverable are not properly subject to a bond. *In re Target Corp. Customer Data Sec. Breach Litig* 847 F.3d 608, 615 (8th Cir. 2017) (costs from delays in administering a settlement cannot be included in a Rule 7 appeal bond where such costs could not be "recover[ed] under a specific rule or statute applicable to the case at hand").

Here, Plaintiffs do not argue that there is a statutory basis for their attorneys' fee request. As the Tenth Circuit explained in *Tennille*:

> Circuit courts, in any event, consistently define "costs on appeal" for Rule 7 purposes as appellate costs expressly provided for by a rule or statute. But Plaintiffs have not identified, nor could we find, any rule or statute that permits them, should they succeed in defending Objectors' merits appeals . . . to recover the cost of maintaining the class settlement fund pending the merits appeals. Therefore, the district court erred in requiring Objectors to post an appeal bond covering these costs.

*Tennille,* 774 F.3d at 1255. "What Plaintiffs really appear to be seeking is an appeal bond that includes damages due to the delay Objectors' merits appeals might cause. But that is not the purpose of a Rule 7 bond." *Id.* at 1256.

> Although Plaintiffs can point to several unreported district court cases imposing appeal bonds that cover delay damages or increased administrative costs to maintain a class settlement pending appeal, we do not find the reasoning of those cases persuasive in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute.

*Id. See also Eastwood Enters., LLC v. Farha,* No. 8:07–cv–1940–T–33EAJ, 2011 WL 2681915, at *1 (M.D.Fla. July 11, 2011) (questioning bond for prospective damages in *Allapattah Servs.*, 91–0986–CIV, 2006 WL 1132371, at *18 (S.D.Fla. Apr.7, 2006), because the Eleventh Circuit's decision in *Pedraza* "did not address or approve including potential damages to a class in an appeal bond"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML02151 JVS FMOX, 2013 WL 5775118, at *3 (C.D. Cal. Oct. 21, 2013) (concluding that absence of statutory authorization "precludes inclusion of increased settlement administration costs in the amount of a bond imposed on appeal"); *In re Navistar Diesel Engine Prod. Liab. Litig.*, No. 11 C 2496, 2013 WL 4052673, at *2 (N.D. Ill. Aug. 12, 2013) (concluding Rule 7 does not permit a court to require an appeal bond for extra administrative costs that otherwise would not be incurred, and finding unpersuasive the contrary results in cases such as *Heekin v. Anthem, Inc.,* No.

1:05–cv–01908–TWP, 2013 WL 752637, at *1–2 (S.D.Ind. Feb. 27, 2013) and *In re Uponor, Inc. F1807 Plumbing Fittings Products Liab. Litig.,* No. 11–MD–2247 ADM/JJK, 2012 WL 3984542, at *2 (D.Minn. Sept. 11, 2012)); *see also In re Navistar*, 2013 WL 4052673, at *3 n.1 (noting that "plaintiffs could have negotiated for a fee and expense award that expressly covered any additional administrative costs resulting from an appeal" but failed to).

Plaintiffs cite several district court orders to support their argument that Rule 7 costs may exceed taxable costs under Fed. R. App. P. 39 including *In re Uponor*. But Plaintiffs ignore that case's subsequent history where the Eighth Circuit reversed the district court. *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, 716 F.3d 1057, 1062 (8th Cir. 2013); *see also Sciaroni v. Consumer Plaintiffs (In re Target Corp. Customer Data Sec. Breach Litig.),* 847 F.3d 608 (8th Cir. 2017). Other orders cited by Plaintiffs are unavailing, inapposite, or contrary to Plaintiffs' position. For example, in *Young v. New Process Steel, LP*, 419 F.3d 1201, 1208 (11th Cir. 2005), the appellate court *reversed* the district court's order imposing a $61,0000 bond finding that fees could be awarded only if the Eleventh Circuit found that the appeal was frivolous, unreasonable, or without foundation. And while a litigant might be sanctioned for a truly frivolous appeal, "'[f]rivolous,' ... is not a synonym for 'unsuccessful,' or 'unlikely to succeed.'" *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 887 (7th Cir. 2020). In particular, "'courts do not penalize

12

litigants who try to distinguish adverse precedents, argue for the modification of existing law, or preserve positions for presentation to the Supreme Court.'" *Id.* (quoting *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 809 (7th Cir. 2003).

**D.     Plaintiffs' *Ad Hominem* Attacks are Groundless and Should be Stricken**

Plaintiffs assert in conclusory fashion that the appeals are "without merit and asserted for purposed of delay." DE190, p. 17. In reaching this conclusion, and in urging this Court to exercise its "inherent power" to sanction appellants with an excessive bond, Plaintiffs rely on innuendo and unrelated litigation involving other unspecified "objectors." Ironically, Plaintiffs subsequently acknowledge the statement of Davis's counsel that one primary and potential goal is Supreme Court review of issues of national importance (as opposed to delay and a "payout" as Plaintiffs obtusely suggest elsewhere in their brief). DE190, p. 20.

Plaintiffs also were so hasty lobbing their *ad hominem* attacks that they were forced by Objector Miorelli to correct the record to avoid a Rule 11 motion for sanctions. DE 197. This hammer and tongs attack on objectors, expressly because of those objectors' choice of counsel, is unprofessional and prohibited by the Eleventh Circuit. 11th Cir. R. 25-6(a)(1).

Despite relying heavily on innuendo suggesting that the appeals are frivolous, Plaintiffs fail to identify a single argument either Objector made that was not directed to issues in the case and supported by citation to relevant facts and law, or a single filing that was frivolous. Nor do Plaintiffs cite any testimony to support a negative inference about the motivation of Objectors or their counsel in this case.

It should go without saying that "the mere isolated fact that an individual or organization objects with unusual frequency does not necessarily mean that a court should view the individual or organization in a negative light." *Williams v. Reckitt Benckiser LLC*, No. 20-23564-CIV, 2021 WL 4459454, at *5 (S.D. Fla. Sept. 29, 2021). As it happens, Davis and his lawyers have a remarkable record of prosecuting meritorious objections and winning appeals both in the Eleventh Circuit and elsewhere. *See, e.g., Johnson v. NPAS Sols.,* 975 F.3d at 1248-49 (11th Cir. 2020); *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 935-36 (11th Cir. 2020) (en banc); *Chieftain Royalty Co. v Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455 (10th Cir. 2017). The decision they obtained in *Johnson v. NPAS,* for example, not only benefited class members in that case, it has improved the quality of class-action practice in the Eleventh Circuit.

A single example of the issues presented by Objectors' current appeals shows that they are not frivolous. This Court held that whether the vouchers

14

in this case are "coupons" presents is a "close question." This Court has said that although it found "that the Costa product vouchers are not coupons" it nonetheless "understands that determining whether a settlement constitutes a coupon settlement under CAFA is a fact-specific inquiry, and this settlement presents a close call." DE151:26 (09/21/2021 Order). "To be sure," this Court reiterated, "this settlement presents a close call" on whether it triggers CAFA's coupon-settlement provisions. DE151:37 (09/21/2021 Order). Whether this court ruled correctly presents a question of law that the Eleventh Circuit will subject to nondeferential de novo review.[6] Appeals invoking de novo review of a concededly "close question" cannot possibly be deemed frivolous, or interposed in bad faith.

If the "vouchers" might actually be held by the Eleventh Circuit to qualify as coupons, then Objectors also clearly have a sound basis for arguing that the part of the fee attributable to coupons should **only** be based on the redemption value of those coupons, and that any lodestar-based fee would have to be separately evaluated the value of the non-coupon relief "to ensure the §1712(b) lodestar calculation does not overcompensate class counsel for work

---

[6] *See, e.g., McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 603 (9th Cir. 2021) ("de novo review applies to determine the applicability of CAFA's coupon provisions"); *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483 (4th Cir. 2020) (appellate court "review[s] de novo a question of statutory interpretation, such as the applicability of CAFA's 'coupon' settlement provisions to these proceedings").

unrelated to the non-coupon relief." *Chambers v. Whirlpool*, 980 F.3d 645, 663 (9th Cir. 2020).

There is no on-point Eleventh Circuit precedent defining coupons, or applying CAFA attorney's fee rules to a coupon settlement. With clear circuit splits on what constitutes a "coupon," and on how CAFA rules apply to fee awards, Objectors' appeals cannot be deemed "frivolous," or taken in bad faith. Should Objectors' appeals succeed, moreover, the likely outcome would be a dramatic reduction of the attorneys' fees.

Objectors should not be punished for pursuing appeals of close questions in cases like this one.  A history of objecting to class-action settlements "alone is not indicia of bad faith or vexatious conduct." *In re Bayer Corp. Combination Aspirin Prod. Mktg. and Sales Practices Litig.*, 2013 WL 4735641, *2 (E.D. N.Y. 2013). Moreover, the sort of "objector blackmail" Plaintiffs baselessly accuse Objectors of was eliminated with a 2018 change to Rule 23 that requires Court approval of any payment for "forgoing, dismissing, or abandoning an appeal" of a class-action settlement appeal. Fed. R. Civ. P. 23(e)(5)(B); *see also* Committee Notes on Rules – 2018 Amendment, Subdivision (e)(5)(B). Plaintiffs certainly know about that rule change. And they have no basis for accusing Davis or Miorelli of pursuing appeals for improper reasons. As such, their accusation is objectively frivolous and potentially sanctionable. *See Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996).

### E.      Objectors Cannot be Required to Post a Supersedeas Bond to Cover Interest on the Gross Class Fund

As stated above, Plaintiffs' argument concerning Rule 8 is a red herring given that the Settlement Agreement contemplates class members' appeals and provides for them by deferring the Settlement Agreement's "Final Effective Date" until the appeals process is complete. That obviates any need for a stay of the Court's judgment. Moreover, settling parties really believed the appeals to be frivolous, and thus doomed to fail, the Settlement Agreement allows them to agree to distribute the fund at any time with this Court's permission.

There is therefore no reason for Objectors to seek a stay of execution, and nothing in the text of Fed. R. Civ. P. 62(d) or Fed. R. App. P. 8(a) permits Plaintiffs to demand, or this Court to require, that any appealing objector seek a stay. *U.S. for Use of Terry Inv. Co. v. United Funding & Inv'rs, Inc.*, 800 F. Supp. 879, 880–81 (E.D. Cal. 1992) (rejecting argument that plaintiff's inability to enforce judgment was a *de facto* stay permitting court to impose a supersedeas bond on the motion of appellee); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. CIV.A. 99-20593, 2000 WL 1665134, at *3 (E.D. Pa. Nov. 6, 2000) ("Although the consequences of an appeal from approval of a class action settlement may be similar to a stay, the

court nevertheless concludes that it has no authority to impose a supersedeas bond in the absence of an appellant's motion for a formal stay of execution.").

Even more fundamentally, and regardless of any statutory entitlement, under the Settlement, interest is not an item of "damages" that Objectors would owe to the Class on any theory, even if they lose the appeal. This case is the same as *Vaughn v. American Honda Motor*, 507 F.3d 295, 298-99 & n.6, (5th Cir. 2007), in which the Fifth Circuit explained that:

> The settlement agreement makes no provision for the payment of pre-judgment interest on the benefits Honda has agreed to pay, and the settlement does not become effective, by its terms, until any appeals are concluded. The parties to the settlement thus agreed that the financial time-value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs.

*Vaughn,* 507 F.2d at 299. *See also In re Enfamil LIPIL Mktg. & Sales Practices Litig. MDL 2222*, No. 11-MD-02222, 2012 WL 1189763, at *3 & n.2 (S.D. Fla. Apr. 9, 2012) (distinguishing *Allpattah Services, Inc. v. Exxon Corp.*, No. 91–0986–CIV, 2006 WL 113271, at *18 (S.D.Fla. Apr. 7, 2006) and holding that "'[i]f claims are not being paid while appeals are pending, it is solely because the Appellees agreed to that limitation in their settlement instead of insisting that class members be entitled to interest during a pending appeal'"); *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (refusing to bond delay costs because "the settlement agreement already contemplates the harm to the class upon an appeal because

it allows the defendants to wait to implement the settlement until all appeals are complete. . . . It appears, then, that the benefits to the class under the settlement already capture the costs of delay incident to an appeal").

Objectors have not sought to keep Plaintiffs and Defendant from distributing the settlement fund while they pursue an appeal. Rather, the parties agreed between themselves that the settlement should not take effect until after all appeals have been completed. Those are the terms agreed to by the parties, and approved by this Court. Those terms make a stay unnecessary, and preclude a supersedeas bond.

## II.        Conclusion

Plaintiffs' motion for an appellate bond under Rules 7 and 8 is without legal merit and devoid of the most basic factual support necessary to justify an appellate bond. Objectors submit that this Court should reject the motion altogether. At most, this Court might exercise its discretion to impose bonds of a few hundred dollars – in line with the costs typically taxed on appeal. Even that would be purely discretionary, for Rule 7 does not require the Court to impose a bond. The rule says a district court "may" require a bond for costs on appeal, not that it "shall" do so.

However, if the Court intends to impose a large bond, greatly exceeding the ordinary Rule 39 costs typical in an Eleventh Circuit appeal, or encompassing delay damages or interest on the common fund, Objectors would request that the Court also stay the order requiring a bond, pending appeal of

19

the bond order itself. Objectors will seek immediate review of such an order so that the Eleventh Circuit can resolve the issue of whether fees or interest are permitted to be included. However, to move for a stay of the bond order pending review, Objectors must first seek a stay in this Court. *See* Fed. R. App. P. 8(a)(1) and (2). Thus, if this Court will either (1) stay the bond pending appeal, or (2) explicitly deny a stay, doing so would eliminate any delay attending the requirement to seek that relief from this Court in the first instance.

Finally, if the Court decides to impose a bond, Objectors request that the Court apportion the bond amount among appellants, rather than introducing the complexity and potential unfairness of a joint-and-several bond among unrelated appellants, such that the compliance or noncompliance of one appellant affects the appeal of the other. *See Rougvie*, 2016 WL 6069968, at *3 (refusing request for joint and several bond for $121,200 and imposing individual bonds of $1,235.52 for "each continuing appeal"); *cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML02151 JVS FMOX, 2013 WL 5775118, at *2 (C.D. Cal. Oct. 21, 2013) (observing, in the course of denying bonds altogether, that imposing full bond on each of the four appellants would impermissibly result in bonds for four times the potential recoverable costs).

Date:  March 25, 2022                    Respectfully submitted,


/s/ Sam A. Miorelli                       /s/ Eric Alan Isaacson

Sam A. Miorelli, E.I., Esq.              Eric Alan Isaacson (pro hac vice)
Florida Bar # 99886                       (CA #120584)
LAW OFFICE OF SAM                        LAW OFFICE OF ERIC ALAN
MIORELLI, P.A.                            ISAACSON
1141 Mission Ridge Court                  6580 Avenida Mirola
Orlando, FL 32835                         La Jolla, CA 92037
Telephone: 352-458-4092                   Telephone: (858) 263-9581
E-Mail: sam.miorelli@gmail.com            E-Mail: ericalanisaacson@icloud.com

*Attorney for Objector Mitchell*          C. Benjamin Nutley (pro hac vice)
*Miorelli*                                (CA #177431)
                                          C. BENJAMIN NUTLEY,
                                          ATTORNEY AT LAW
                                          75-5915 Walua Rd
                                          Kailua Kona, HI 96740
                                          Telephone: 808-238-8783
                                          E-Mail: nutley@zenlaw.com

                                          *Attorneys for Objector John Davis*

21