```
                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                      JACKSONVILLE DIVISION

TROY SMITH, individually and    Jacksonville, Florida
on behalf of all others
similarly situated,             Case No. 3:18-cv-1011-TJC-JRK

      Plaintiffs,               February 21, 2020

vs.                             10:01 a.m.

COSTA DEL MAR, INC., a          Courtroom No. 10D
Florida corporation,

      Defendant.
_____



                      STATUS CONFERENCE
            BEFORE THE HONORABLE TIMOTHY J. CORRIGAN
                  UNITED STATES DISTRICT JUDGE







COURT REPORTER:

          Shannon M. Bishop, RDR, CRR, CRC
          221 North Hogan Street, #150
          Jacksonville, FL  32202
          Telephone:  (904)549-1307
          dsmabishop@yahoo.com


     (Proceedings reported by mechanical stenography;
transcript produced by computer.)
```

A P P E A R A N C E S

COUNSEL FOR PLAINTIFF:

**PETER P. HARGITAI, ESQ.**
**JOSHUA H. ROBERTS, ESQ.**
**LAURA BEARD RENSTROM, ESQ.**
**MICHAEL MANUEL GROPPER, ESQ.**
Holland & Knight, LLP
50 North Laura Street, Suite 3900
Jacksonville, FL  32202

COUNSEL FOR DEFENDANTS:

**SARA F. HOLLADAY-TOBIAS, ESQ.**
**EMILY YANDLE ROTTMANN, ESQ.**
McGuireWoods, LLP
50 North Laura Street, Suite 3300
Jacksonville, FL  32202

1                    P R O C E E D I N G S

2     February 21, 2020                          10:01 a.m.

3                           - - -

4          COURT SECURITY OFFICER:  All rise.  The United States

5     District Court in and for the Middle District of Florida is now

6     in session.  The Honorable Timothy J. Corrigan is now

7     presiding.

8               Please be seated, everyone.

9               THE COURT:  How is everybody doing?

10              MR. HARGITAI:  Fine.  Good morning.

11              THE COURT:  We are on the record in *Smith versus*

12    *Costa Del Mar*.  And that's 3:18-cv-1011.

13              We've kind of got a cast of thousands here.

14    Mr. Hargitai, Mr. Gropper, Ms. Renstrom, Mr. Roberts on one

15    side.  Ms. Holladay-Tobias and Ms. Rottmann on the other side.

16              We were preparing for a substantive hearing in this

17    case.  And we received notice that the parties wanted to go in

18    a different direction.

19              I received on February 12th a joint notice of

20    settlement, request to convert the hearing on substantive

21    matters to a status conference to discuss the settlement.

22              Of course, I was happy to oblige.  It did not -- it

23    helped me immensely to have this notice, because I had not

24    actually -- I'd done a little bit of work on the case, but not

25    a lot.

1              Unfortunately it didn't help Ms. Mulaney, who had

2     spent quite a bit of time on it, and -- but I'm sure -- I'm

3     sure she'll be able to use it in her memoirs.

4              You know, not to say, but if I had to have somebody

5     to have work on it and somebody not have to work on it, I think

6     it worked out just about fine, so...

7              All right.  So what's going on?  I -- in preparation

8     I -- I think I kind of got the drift from your notice where

9     you're heading here.  And we're going to have to -- we'll talk

10    about that.

11             In preparation for the hearing I did go pull some of

12    my other cases where we've certified a settlement class.  And

13    so I've got a little bit of working knowledge based on stuff

14    we've done before, how -- how I've done it in the past.  It

15    doesn't necessarily mean that's how y'all want to do it, but --

16    so who's going to talk?

17             MR. HARGITAI:  If I may, Your Honor?

18             THE COURT:  Sure, Mr. Hargitai.  Come on up.

19             MR. HARGITAI:  And I don't mind sort of being joined

20    by counsel --

21             THE COURT:  Sure.

22             MR. HARGITAI:  -- to fill in any gaps.

23             But, yes, Your Honor, we reached an agreement on the

24    11th, just short of oral argument with the DCA in the *Haney*

25    case.  And the DCA required us to present argument at any rate.

1  And so we did that.  And notified you the next morning.

2       The --

3       THE COURT:  So you did like a moot court or what?

4       MR. HARGITAI:  I think -- I think it's for real.

5       MS. HOLLADAY-TOBIAS:  It was --

6       MR. HARGITAI:  If you have a chance to watch the

7  video, the court was surprisingly angry with us.  I think they

8  were under the notion that we had a tentative settlement and

9  just wanted to put off the hearing.

10      But we let them know this was a deal, it required us

11 to actually go down to the trial court and get everything

12 approved.  So they came around.  But it was quite an

13 experience.

14      The catalyst in getting the case settled was, of

15 course, knowing that you had scheduled this intense hearing on

16 your birthday.  And so we didn't want that to happen.  So

17 there's --

18      THE COURT:  Well, I appreciate the acknowledgment of

19 my birthday.  I can say without equivocation that I can think

20 of no better way to spend my birthday than with you talking

21 about Troy Smith's sunglasses.

22      MR. HARGITAI:  That's one for the record books.

23      THE COURT:  And I mean -- I mean that sincerely.

24      So as long -- can I take a point of personal

25 privilege, as long as -- you mentioned my birthday.  It

1   actually is my birthday, but, more importantly, it's my

2   grandson's birthday.

3           He and I -- he was born on my birthday, which is

4   pretty cool.  And his name is Patrick.  And the reason I'm

5   saying this is because I'm going to get Shannon to type this up

6   and I'm going to give it to him someday.

7           And he was born on my birthday.  And so -- and he'll

8   be -- he's two years old today.  And the formula for

9   determining how old I am is you take however old Patrick is and

10  you add 62 to it.  And that's how old I am, so -- but happy

11  birthday, Patrick.

12          All right.  Let's get back to business.

13          MR. HARGITAI:  Very good.

14          So where we are, we're moving along pretty well.

15  We've circulated a draft of a settlement agreement.  We've

16  notified the two other courts, Judge Dalton and Judge Soud,

17  which the case has already been stayed pending the DCA

18  decision, of the settlement.

19          Those courts are on board and have just entered --

20  well, the DCA and Judge Dalton have issued orders that just

21  said, "Keep us up to speed.  Give us some regular updates with

22  some timing on that."

23          We are here to talk about -- and we also did pull

24  some of Your Honor's pleadings to get a feel for what your

25  preference is.  And so we've already circulated a list of a

1   joint -- for a joint submission of proposed dates to move this

2   thing along.

3          We anticipate, Your Honor, that we will file an

4   amended complaint early next week, hopefully as soon as Monday,

5   so that the Court has jurisdiction to look at the fairness of

6   the settlement and get us through this.

7          MS. HOLLADAY-TOBIAS:  Which is for all three -- or

8   four classes -- all four classes into one case.

9          THE COURT:  That was really the issue that

10  Ms. Mulaney and I were talking about as we were trying to

11  figure out what was going on here.

12         And I went back and re-read your notice this morning

13  and gleaned more clearly that -- so is it your intent to file

14  an amended complaint that encompasses the entirety of the cases

15  that -- were there three or four cases?  I --

16         MR. HARGITAI:  There are three, Your Honor.

17         MS. HOLLADAY-TOBIAS:  Three cases, four classes.

18         THE COURT:  Four classes.  Okay.  I see.

19         Is it your intention that you file an amended

20  complaint that will encompass all four of those classes and

21  that that -- and that this case would be the vehicle for

22  implementing the global settlement?

23         MR. HARGITAI:  Yes, Your Honor.  That's the plan.

24         THE COURT:  Okay.  How did I get so lucky?

25         MR. HARGITAI:  There's a lot of reasons for that.

1            THE COURT:  Okay.  Well, that makes some sense.  I

2      was -- I was wondering how -- for example, I said, "Well, I

3      know Judge Dalton will be happy to send the case up to me."

4            I wasn't so sure -- was it Judge Soud who was

5      handling it in the state court?

6            MR. HARGITAI:  Judge Soud has been transferred to

7      another division.  So we have a different judge there.

8            THE COURT:  I wasn't sure how that was going to work.

9      But the way it's going to work, at least in your envisionment,

10     is that those cases -- so an amended complaint gets filed here,

11     I accept that complaint, and then that allows you to either

12     dismiss, or whatever, these other cases; is that right?

13           MR. HARGITAI:  Yeah, those -- in theory, those cases

14     would be stayed.  And if for some unforeseen reason the

15     settlement doesn't work out --

16           THE COURT:  Right.

17           MR. HARGITAI:  -- then we'd go back to the status

18     quo.

19           MS. HOLLADAY-TOBIAS:  And in particular in the *Haney*

20     case, we have to get the court to relinquish jurisdiction to

21     undo the judgment in that case.

22           THE COURT:  Okay.

23           MS. HOLLADAY-TOBIAS:  So there's a few extra steps

24     once we get everything done here.

25           THE COURT:  Okay.  All right.  So I get an amended

1   complaint.  And that -- and that would be followed up by a

2   motion for preliminary approval?

3          Is that how it would work?

4          MR. HARGITAI:  Yes.  Yes, Your Honor.

5          THE COURT:  Okay.

6          MR. HARGITAI:  We have sort of calendared that

7   amongst ourselves.  Our deadline for doing that -- it looks

8   like it's going to be around March 9th.

9          We need to get some questions answered from the

10  settlement administrator, who we believe is going to be Epiq,

11  in the case.

12         And I would assume, just because it's a cumbersome

13  matter, that Your Honor would want proposed orders on both the

14  preliminary and final approval to scour over.

15         THE COURT:  Yeah.  I'll take all the help I can get.

16  I want -- you know, and if there's forms of notice, I want

17  that.  And I -- I will tell you that the one area -- or couple

18  of areas that I have tried mightily over the years to improve

19  is the form of the notice.

20         The ones I used to get were just gobbledygook, no --

21  you know, it's hard enough to get people to pay attention, but

22  at least we can write it in English.  And so I'm going to

23  encourage you-all to -- I know there's some legal

24  requirements --

25         MR. HARGITAI:  Uh-huh (affirmative).

1    THE COURT:  -- that you have to have.  But I'm going

2  to encourage you in all the pleadings that you file and

3  anything -- especially anything that's going to go to the

4  class, that it be written in as clear and simple language as is

5  possible, because that's -- that -- I have had occasions to go

6  back and forth with counsel when I felt like the notice was

7  obtuse.  So I just -- on the front end, I would encourage you

8  to try to do that.

9    MR. HARGITAI:  Yes, we will, Your Honor.

10    THE COURT:  So -- and I -- you said you looked at

11  some of my orders.  And I -- the ones I looked at this morning

12  was a case called *Finerman,* 3:14-cv-1154, and then *Rayonier,*

13  which was 3:14-cv-1395.

14    And I -- and we have some others, but -- so those

15  were ones that at least in the past I have found to be good

16  ways to go about it.  And so if y'all want to take a look at

17  those, that would be fine.

18    But I -- I'm not -- I'm not necessarily saying it has

19  to be word for word, but at least it's something that in the

20  past I have thought was workable.

21    So tell me how -- so tell me how it's going to work.

22  When are you going to file the amended complaint?

23    MR. HARGITAI:  The amended complaint, we're shooting

24  for early next week.  The first deadline that we've talked

25  about is March 9th for the motion for preliminary approval.

1    And then all of the deadlines really fall for the Court's

2    preliminary approval on -- and we're shooting for -- all of

3    the -- the notice and administration would happen -- there's

4    going to be a website.  There will be a toll-free number --

5    would be 30 days from Your Honor's order of preliminary

6    approval.

7         THE COURT:  And are we going to have four classes?

8         MS. HOLLADAY-TOBIAS:  We will -- so there are -- they

9    are going to be two classes that will slightly overlap.  And

10   then -- and we were just talking beforehand -- the two repair

11   classes have different statute of limitations.  So I don't know

12   if we're going to be able to combine those.  We're going to

13   talk about that.

14        But we've already been in contact with the settlement

15   administrators as to how best to go about notice and the

16   briefing for the various classes.

17        THE COURT:  Do we have an estimate on how many

18   potential class members there are?

19        MR. HARGITAI:  We do.  I believe it's probably going

20   to be between one and a half or -- about one and a half

21   million?

22        MS. HOLLADAY-TOBIAS:  So one class is 1.1 million.

23   And then there's about a million in the other class.

24        MR. HARGITAI:  Okay.  So 2.1 million.  Yeah.

25        MS. HOLLADAY-TOBIAS:  2.1 million.

1          THE COURT:  Okay.  All right.  I'm just trying to
2     think this through.
3          I've, of course, done this a number of times.  I've
4     not done it before where we've had other class actions that are
5     being folded into this one.
6          And I think -- I can't think of any reason why the
7     way you're proposing to proceed wouldn't work.  I think
8     probably for record purposes if you file -- I don't know if it
9     would be an unopposed motion for leave to file an amended
10    complaint or a joint filing or whatever.
11         But in that joint filing, or unopposed filing, I
12    guess I would like to have a little bit of explanation as to
13    what -- what the -- in other words, I don't want to just get
14    the amended complaint and have it just sitting there without
15    any explanation as to what it is.
16         So if there could be some discussion in a motion for
17    leave to file it that's either unopposed or joint, or however
18    y'all want to do it, I'd like to have a little explanation as
19    to where -- what's in -- you know, what the amended complaint
20    does and what the effect of it is on the other cases.
21         It doesn't have to be 30 pages.  But I'm talking
22    about something that just -- maybe five pages or so of
23    something, to just give the record, and me, some clear
24    understanding of, "All right.  Now, if I now read this amended
25    complaint, I'll understand what it is I'm reading," as opposed

1   to just having it sit there.

2           So, now, is there any legal requirement that that

3   complaint be responded to?  Or can you just do a -- I guess you

4   can just do a preliminary approval off of a complaint.

5           MR. HARGITAI:  I believe that was our intent, Your

6   Honor.

7           THE COURT:  Okay.  All right.  That's probably right.

8   Because I think I've done it before when motions to dismiss

9   were pending.  And so it's really no different than that.

10  Yeah, so...

11          Okay.  All right.  What am I missing?  Or what do we

12  need -- what else is there to talk about?

13          MR. HARGITAI:  I think that's all.

14          MS. HOLLADAY-TOBIAS:  I think the only other thing I

15  wanted to get the Court's guidance on is, we are probably --

16  for three out of the four classes, we have at least initial

17  contact information and e-mail addresses.

18          So our thought was to do an initial e-mail notice,

19  followed by a hard copy notice, to the extent that there are

20  any bounce-backs or undeliverables or something like that.  I

21  wanted to make sure the Court was comfortable with --

22          THE COURT:  I think I am.  I mean, I guess that's

23  just the way the world is now, right?  I think probably -- you

24  know, we're -- one of the things that has always bothered me

25  about class actions, among others, is that the response rate is

1   usually so poor, and -- but I think probably you're more likely

2   to get responses off of an e-mail than you are a piece of --

3   piece of mail.

4        I think people tend to view their paper mail these

5   days as junk.  There are very few real things you get in the

6   mail anymore.  So I think I'm probably okay with that.  I don't

7   know of any legal requirement of -- of U.S. Mail or delivery.

8   So I -- I think I'm probably okay with that.

9        MS. HOLLADAY-TOBIAS:  And our class administrator has

10  actually indicated that we're probably actually likely to get a

11  higher response rate because the Costa brand is so popular and

12  high, given kind of the way that we're structuring settlement.

13       MR. HARGITAI:  And there will be a marketing

14  campaign.  There will be a toll-free number.  There will be an

15  internet website.  There will be a lot of things that, in this

16  day and age, aid the consumer in making a claim.

17       THE COURT:  Okay.  I guess I'll get all this in the

18  motion.  But is this a common-fund settlement?  Is it a

19  settlement in which the fees -- proposed fees are separately --

20  separate from the fund?  What's it going to look like?

21       MR. HARGITAI:  It's a common-fund settlement.  It's a

22  $40 million common fund, from which the defendants have

23  consented to us applying for a percentage fee from the fund,

24  which will provide a deadline for doing that as well.

25       So between us we don't have any argument as to the

1   amount of fees, as long as they're fair to Your Honor.  And so

2   I -- that -- that --

3            THE COURT:  So, in other words, the defendants put up

4   $40 million and then they're done?

5            MS. HOLLADAY-TOBIAS:  Well, so the structure of the

6   settlement is a cash product hybrid.  So the current plan is to

7   fund the cost of administration and attorneys' fees in cash.

8            And then the various class members, depending on

9   which class they get in, would fall into a range of products

10  they can pick from.

11           And we'll have a website -- like a web store set up

12  where they can go do that.  And they'll get a coupon code or

13  something to -- to go on and particularly pick out what they

14  want.

15           THE COURT:  So is this going to -- are they going to

16  have to make a claim?

17           MS. HOLLADAY-TOBIAS:  Yes.  They will have to at

18  least verify for three out of the four classes.  So the

19  warranty and repair classes -- all we're asking them to do is

20  essentially verify that they are who they are.

21           We're not asking for separate proof of purchase or

22  anything, because we have actually pretty good data on those

23  folks.

24           For the purchase class, because we only have data on

25  maybe 4 to 5 percent of those, we would be asking them to do a

1  proof of purchase for that class, but nothing really beyond
2  those --
3        THE COURT:  But if somebody doesn't get back to you
4  in some way, even with the little bit of information you're
5  asking for, they would not be included in the relief?
6        MS. HOLLADAY-TOBIAS:  Correct.
7        MR. HARGITAI:  Well, the --
8        MS. HOLLADAY-TOBIAS:  Well, they would be included in
9  the relief, but not in -- they wouldn't get a product.
10        MR. HARGITAI:  And we've also agreed to a million
11  dollar cy pres payment.  If for some reason the fund is not
12  exhausted, that million would go to cleaning the oceans, and I
13  think some other ocean-related/Costa-related philanthropy.
14        THE COURT:  Okay.  Well, obviously in these things
15  the devil is in the details.  And I'm not going to try to parse
16  all that out with you.  I will -- you know, I do -- even though
17  this is agreed upon, and even though I certainly am favorable
18  toward a negotiated resolution of the matter, I -- you know,
19  the whole reason that a court has to be involved in the
20  preliminary approval is the court has to make some legal
21  findings, and the court has to be convinced that members of the
22  class are properly defined and are being properly protected,
23  and all that kind of -- and so -- so I'll have to do all that.
24        And I'll await your filing.  And -- and I'll make
25  that analysis.  And if I feel like I need a hearing to further

1    discuss that, I'll call one.  If I don't, I won't.

2          You know, having at least a little bit of discussion

3    here today may help obviate the need for a future hearing, but,

4    you know, I -- I -- you know, I -- obviously, as I know you do,

5    I take it seriously.

6          And so I'll be looking for the substance of it, but

7    also I'll be looking to make sure that the Ts are crossed and

8    the Is are dotted.  And -- but I will appreciate a proposed

9    order.

10         I'll appreciate the -- I'm sure the notices will be

11   drafted.  You know, if you'll -- if you put all that in with

12   the motion for preliminary approval, I'll be able to look at

13   everything at one time, and -- and then we'll go from there.

14   So I'll look for your amended complaint.

15         Is March 9th a date -- I mean, do I need to -- should

16   I set a date?  Are y'all just telling me that's when you think

17   you're going to do it?  I mean, I guess in some way it

18   doesn't -- it doesn't matter a whole lot to me.

19         MR. HARGITAI:  I think what we're going to do, Your

20   Honor, is consistent -- what has happened in some of your other

21   cases is submit to you a joint submission of proposed dates, so

22   we're -- so the Court and the parties are all on the same

23   calendar and all looking to -- you know, unless we need extra

24   time or relief, in which we'll come to Your Honor, we'll all be

25   shooting towards the same deadlines.

1        THE COURT:  Okay.  That's fine.  I meant in terms of

2   the actual joint motion for approval of the class action

3   settlement.  You're anticipating that will be filed on March

4   the 9th?

5        MR. HARGITAI:  Yes.

6        THE COURT:  Okay.  All right.  Okay.

7        I am -- this is just inside baseball, but it's

8   something that is -- something we have to take a look at.  I've

9   got a bunch of motions pending from you-all that are getting

10  kind of older.  And that was what we were going to hear on

11  February 21st.

12       So I'm going to do something to term those motions.

13  They can be revived if something falls apart.  But I just

14  wanted to let you-all know that -- I'll think about how to do

15  it without -- without doing anything else that would be of

16  consequence.

17       But you'll likely see some type of adjustment to the

18  status of the pending motions, which I take it do not need to

19  be considered if the settlement goes through, right?

20       MS. HOLLADAY-TOBIAS:  Correct.

21       THE COURT:  Okay.

22    (Judge confers with law clerk.)

23       THE COURT:  Anything else, Mr. Hargitai?

24       MR. HARGITAI:  No, Your Honor.

25       THE COURT:  Anything else, Ms. Holladay-Tobias?

1          MS. HOLLADAY-TOBIAS:  No, Your Honor.

2          THE COURT:  Okay.  Well, I appreciate the good hard

3    work that y'all have put into this.  And I look forward to

4    getting your papers.

5          You know, give me -- I know this is of moment to you,

6    but March is a particularly busy month for us.  And so, you

7    know, don't -- don't expect miracles, is all I'm saying.

8          I'll do the best -- I'll do the best I can.  And if I

9    need a hearing, I'll call one.  Otherwise, you'll -- you'll get

10   an appropriate order.  I will -- I guess I'll promise you this.

11   I won't deny the motion without a hearing, and -- but I -- I

12   well may be able to grant it without one.

13         And -- but just give us a little bit of time, because

14   it will -- we'll -- we've got other things in the hopper in

15   March there.  But we'll -- I'll just get to it just as quickly

16   as I can.  Okay?

17         MR. HARGITAI:  Thank you, Your Honor.

18         MS. HOLLADAY-TOBIAS:  Thank you.

19         MR. HARGITAI:  Enjoy your birthday and the weekend.

20         THE COURT:  Thank you.  Good to see everybody.

21         COURT SECURITY OFFICER:  All rise.

22      (The proceedings concluded at 10:25 a.m.)

23                           - - -

24

25

**<u>CERTIFICATE</u>**

UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )


        I hereby certify that the foregoing transcript is a true

and correct computer-aided transcription of my stenotype notes

taken at the time and place indicated herein.


        DATED this 31st day of August, 2022.



                        s/Shannon M. Bishop
                        Shannon M. Bishop, RDR, CRR, CRC